1  George W. Shufelt

2  CDC # T-65129; Housing C-4-1D2

3  Kern Valley State Prison

4  P. O. Box 5103; Delano, CA 93216

5

6  In Pro-Per

7

**FILED**

JUN - 2 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8         UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

10  George W. Shufelt,          Case No. '08 CV 0991 JAH CAB

11         Petitioner,

12  V.                          EXHIBITS IN SUPPORT OF

13  A. Hedgepeth, Warden        PETITION FOR HABEAS CORPUS

14         Respondent,          "A" through "TT"

15

16

17

18

19

20

21

22

23

24

25

26

27

RT PAPER
S.   OF CALIFORNIA
ST   113 (REV. 3-95)
OSP 98 10924

## LIST OF EXHIBIT'S

| EXHIBIT | PG'S NO. | DISCRIPTION | TOTAL |
|---------|----------|-------------|-------|
| "A" | [ 1 ] | TRIAL STATEMENT, UPHILL BATTLE ON STRIKE | 1 |
| "B" | [ 2 - 8 ] | FIRST HEARING ON STRIKE ISSUE, RT.2261-2267 | 7 |
| "C" | [ 9 - 34 ] | SECOND HEARING ON STRIKE ISSUE, RT.2872-2897 | 26 |
| "D" | [ 35 - 40 ] | TRIAL COURT'S RULING ON "STRIKE", RT.3086-3088 | 6 |
| "E" | [ 41 - 73 ] | OPENING BRIEF, DIRECT APPEAL | 33 |
| "F" | [ 74 - 83 ] | RESPONDENT'S BRIEF, DIRECT APPEAL | 10 |
| "G" | [ 84 - 99 ] | REPLY BRIEF, DIRECT APPEAL | 16 |
| "H" | [100 - 105] | OPINION FROM APPELLATE COURT DENYING DIRECT APPEAL | 6 |
| "I" | [106 - 109] | STATE V. RISK, (1974) 520 P.2D 215 | 4 |
| "J" | [110 - 115] | STATE V. DURRANT (1977) 561 P.2D 1056 | 6 |
| "K" | [116 - 120] | STATE V. CHAVEZ (1979) 605 P.2D 1225 | 5 |
| "L" | [121 - 126] | STATE V. RUBEN (1983) 663 P.2D 445 | 6 |
| "M" | [127 - 131] | INFORMATION FILED 12/05/01, CT. 0001-0005, SCD163510 | 5 |
| "N" | [ 132 ] | UTAH INFORMATION, CASE NO. 941913828 | 1 |
| "O" | [133 - 134] | UTAH ABSTRACT OF JUDGMENT | 2 |
| "P" | [135 - 142] | STATEMENT OF DEFENDANT/CERTIFICATE OF COUNSEL, UTAH | 8 |
| "Q" | [143 - 154] | CHANGE OF PLEA HEARING TRANSCRIPTS, UTAH | 12 |
| "R" | [ 155 ] | PENAL CODE SECTION § 1192.8(a) | 1 |
| "S" | [156 - 163] | ORDER ON GROUNDS 1 THROUGH 5, HC18018, HABEAS COURT | 8 |
| "T" | [164 - 179] | ORDER ON GROUNDS 6 THROUGH 28, HC18018 HABEAS COURT | 16 |
| "U" | [180 - 181] | ORDER FROM HABEAS COURT, DATED MAY 2, 2005 | 2 |
| "V" | [182 - 185] | ORDER FROM HABEAS COURT, DATED JULY 26, 2005 | 4 |
| "W" | [186 - 187] | CALJIC 2.50, CT. 0510-0511, AS GIVEN | 2 |

3/17/05
1/24/07

| EXHIBIT | PG'S | DISCRIPTION | TOTAL |
|---------|------|-------------|-------|
| "X" | [ 188 ] | CALJIC 2.50.1 NOT GIVEN OR MODIFIED | 1 |
| "Y" | [ 189 ] | CALJIC 2.50.2 NOT GIVEN OR MODIFIED | 1 |
| "Z" | [190 – 195] | FIRST HEARING ON UNCAHRGED CRIME EVIDENCE RT.1379-1384 | 6 |
| "AA" | [196 – 199] | SECOND HEARING ON UNCHARGED CRIME EVIDENCE, RT.1626-1629 | 4 |
| "BB" | [200 – 209] | 402 HEARING ON 1101(B) EVIDENCE RULING, RT.1741-1750 | 10 |
| "CC" | [210 – 213] | CALJIC'S 2.03, 2.06, 2.15, AND 2.52, AS GIVEN CT. 199-512 | 4 |
| "DD" | [ 214 ] | PHOTO LINEUP GIVEN TO DIANE GOEDHUY | 1 |
| "EE" | [ 215 ] | PHOTO LINEUP GIVEN TO PHILLIP HAMMERLING | 1 |
| "FF" | [216-217] | APPELLATE COURTS OPINION DENYING PETITION | 2 |
| "GG" | [218-243] | PETITION FOR RECONSIDERATION | 16 |
| "HH" | [ 244 ] | APPELLATE COURTS OPINION 9/11/07 | 1 |
| "II" | [245-250] | MOTION FOR RECONSIDERATION, CLAIM ONE | 6 |
| "JJ" | [251-252] | LEGAL MAIL INCOMING LOG, 2007 | 2 |
| "KK" | [253-254] | LEGAL MAIL OUTGOING LOG, 2007 | 2 |
| "LL" | [255-256] | LETTER FROM APPELLATE COUNSEL 2/19/04 | 2 |
| "MM" | [257-259] | ORDER APPOINTING HABEAS COUNSEL 10/20/05 | 3 |
| "NN" | [260-261] | LETTER DECLARING CONFLICT OF INTEREST | 2 |
| "OO" | [262-264] | ALLAN WILLIAMS APPOINTE, LETTER 3/15/06 | 3 |
| "PP" | [265-303] | SUPPLEMENT FILED BY COUNSEL ON 9/20/06 | 39 |
| "QQ" | [304-319] | DISTRICT ATTORNEYS INFORMAL RESPONSE | 16 |
| "RR" | [320-321] | LETTER FROM COUNSEL INFORMING WRIT DENIED | 2 |
| "SS" | [322-325] | ORDER, JAN 30, FROM SPL CT. 1/30/07 | 4 |
| "TT" | [326-327] | LETTER AND FINAL ORDER, SUP. CT. 4/30/08 | 2 |

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: RT. 2221, Trial court expressing

Case No.
People v.   Concerns about validity of "Strike" allegation

Number of pages to this Exhibit ___(1)___ pages.   E-1

JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☒ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

1          THE COURT:  MR. GUTHRIE, WHAT'S YOUR POSITION?

2          MR. GUTHRIE:  THERE IS A PICTURE OF CHARLES

3     MIRABILE.  ALBEIT, NOT THE GREATEST PICTURE.  IT'S A

4     PHOTOGRAPH.

5          WE COULD SHOW THAT TO HER AND SEE IF THIS IS

6     THE GUY.  WE MIGHT WANT TO LET HER LOOSE.  I DON'T

7     KNOW HOW CLOSE SHE IS TO THIS FELLOW.

8          THE COURT:  YOU CAN ASK HER THOSE QUESTIONS TOO.

9          MR. GUTHRIE:  SURE.

10         THE COURT:  OKAY.  SO, LET'S FIGURE OUT A TIME

11    DURING THE DAY TO DO IT.  I'M NOT SURE WE SHOULD DO IT

12    NOW, IF WE HAVE ALL OF THE JURORS, BECAUSE I'D LIKE TO

13    GO AHEAD AND START ON TIME WITH THEM.

14         ONE OF THE THINGS WE COULD DO, IF WE DON'T

15    HAVE ALL THE JURORS HERE, IS WE CAN BRING HER IN AND

16    ASK HER NOW.

17         AND, MR. HELLSTROM, JUST SO THAT YOU'RE

18    AWARE, PRELIMINARILY, I THINK YOU MAY HAVE AN UPHILL

19    BATTLE ON THE DEFENSE TO STRIKE THE STRIKE.

20         SO, WE DEFINITELY NEED YOU TO GET THAT MOTION

21    TO US, YOUR RESPONSE, IN THE MORNING ON MONDAY.

22         MR. HELLSTROM:  WILL DO.  I'LL WORK ON IT OVER THE

23    WEEKEND.

24         THE COURT:  CAN LYNN CHECK THE STATUS OF THE JURY?

25         THE CLERK:  ABSOLUTELY.

26         THE COURT:  ONLY IF ALL OF THEM AREN'T THERE.  IF

27    ALL OF THEM ARE HERE, I WANT TO GO WITH THE JURY.

28         MR. GUTHRIE:  CAN WE HAVE A MOMENT RIGHT NOW?

# EXHIBIT COVER PAGE **B**

EXHIBT

Description of this Exhibit: First Hearing on Strike allegation,

Case No.
People v. RT. 2261 ~2267

Number of pages to this Exhibit ___(7)___ pages. (2-8)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☑ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

2261

```
1        THE COURT:  THE WAY I MASSACRED THE NAME, I'M NOT
2  SURPRISED.
3             THANK YOU, VERY MUCH.  I APPRECIATE IT.
4             SO, YOU'RE EXCUSED.
5             YOU NEED TO CHECK OUT WITH THE JURY
6  COMMISSIONER, TOO.
7        JUROR SEVEN:  OKAY.  THANK YOU.
8        THE COURT:  DO YOU HAVE YOUR PERSONAL STUFF?
9        JUROR SEVEN:  YES.
10        THE COURT:  OKAY.
11             (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN
12  COURT, OUT OF THE PRESENCE OF THE JURY.)
13        THE COURT:  I'LL SEE EVERYONE AT ONE O'CLOCK.
14        MR. HELLSTROM:  THERE'S ONE ADDITIONAL -- I WAS
15  SEEKING SOME GUIDANCE FROM THE COURT REGARDING THE
16  MOTION MATTER.
17             THE CASE THAT I WOULD TO SITE THE COURT TO IS
18  PEOPLE VS. THOMPSON AT 79 CAL. APP. 4TH, PAGE 40.
19             I GUESS WHAT I'M LOOKING FOR IS SOMEWHAT
20  UNUSUAL, AND THAT IS A LITTLE GUIDANCE AS TO THE AREA
21  THE COURT WISHES ME TO RESEARCH, BECAUSE I WILL BE
22  MORE THAN HAPPY TO DO THAT.
23             I COULD GIVE A PREAMBLE TO MY TAKE ON THIS,
24  IF THE COURT WISHES TO HEAR THAT, SO YOU KNOW WHERE
25  I'M COMING FROM.  THEN MAYBE THE COURT CAN FOCUS MY
26  ATTENTION.
27             HERE'S MY --
28        THE COURT:  GO AHEAD, YEAH.  I'M TRYING TO DECIDE
```

1    IF THERE IS A WAY I CAN ADEQUATELY VERBALIZE A

2    SPECIFIC QUESTION.

3         MR. HELLSTROM:  I UNDERSTAND.  MAYBE MY ANALYSIS

4    MAY IN SOME WAY -- MAYBE THE COURT CAN DIRECT ME IF

5    I'M EITHER GOING ASTRAY, OR NOT FOCUSING ON THE RIGHT

6    ISSUE.

7              HERE'S THE WAY SEE IT, THE 1192.8 SITUATION.

8    IT IS ARE THE ELEMENTS OF THE UTAH STATUTE MET UNDER A

9    192(C)(3) ANALYSIS.

10         THE COURT:  WELL, OKAY.  LET ME TWIST THAT A TAD

11   BIT.

12         MR. HELLSTROM:  OKAY.

13         THE COURT:  AND THAT IS, AS I UNDERSTAND IT, ALL

14   OF THE ELEMENTS UNDER THE UTAH STATUTE HAVE TO FIT

15   UNDER THE CALIFORNIA STATUTE.

16             IN OTHER WORDS, IF THE UTAH STATUTE HAS AN

17   ASPECT OF IT THAT IS OUTSIDE THE CALIFORNIA STATUTE,

18   THEN IT DOESN'T FIT.

19         MR. HELLSTROM:  IF IT IS MORE RESTRICTIVE, THERE'S

20   NO PROBLEM.  IF IT'S LESS RESTRICTIVE, WE HAVE A

21   PROBLEM.

22         THE COURT:  CORRECT.

23         MR. HELLSTROM:  SO, THE WAY I VIEW IT, WE'VE GOT

24   FOUR ELEMENTS THAT I DON'T THINK ARE SUBJECT TO

25   DISPUTE IN TERMS OF WHAT THE UTAH -- WHAT MR. SHUFELT

26   PLEAD TO.

27             THAT IS, HE DROVE A CAR, HE WAS OVER .08 AT

28   THE TIME.  HE DROVE IT NEGLIGENTLY, AND PROXIMATELY

1    CAUSED THE DEATH OF ANOTHER HUMAN BEING.

2            SO, THE ONLY QUESTION THAT I SEE IS DOES THAT

3    FIT 1192(C)(3).  ARE THOSE ELEMENTS IN COMMON.

4            THE WAY I LOOK AT IT -- I'M SORRY 192(C)(3).

5            THERE ARE TWO AREAS.  MR. GUTHRIE'S MOVING

6    PAPERS ADDRESSES ONE AREA, AND MY FEELING IS THAT THE

7    COMMON ELEMENTS WERE MET IN THE OTHER AREA.

8            THERE'S TWO WAYS YOU CAN GET TO A 192(C)(3)

9    CONVICTION.  ONE, YOU COMMIT AN UNLAWFUL ACT.  THAT

10   ACT HAS TO THEN BE PLEAD AND PROVEN IN THE ELEMENTS AS

11   ONE OF THE ELEMENTS.  THAT'S CONTAINED WITH THE

12   CALJIC.

13           THAT'S POSSIBILITY NUMBER ONE.

14           I AGREE THAT WE DON'T HAVE THAT.  THAT'S

15   ABSOLUTELY TRUE.  MR. GUTHRIE IS RIGHT ABOUT THAT.

16           IT'S THE SECOND PART THAT CAUSES ME TO

17   BELIEVE THAT IT'S A 192(C)(3) SITUATION, A LAWFUL ACT

18   COMMITTED UNLAWFULLY.

19       THE COURT:  OR NEGLIGENTLY.

20   MR. HELLSTROM:  NEGLIGENTLY.

21           SO, THE QUESTION IS, UNLAWFUL ACT.  WHAT'S

22   THE LAWFUL ACT THAT HE PLEAD TO?  DRIVING.  THEN THE

23   QUESTION IS, DID HE DO A LAWFUL ACT UNLAWFULLY?

24           WELL, WHEN HE DROVE NEGLIGENTLY, AND THAT'S

25   THE LANGUAGE IN THOMPSON.  WHEN YOU DRIVE NEGLIGENTLY,

26   THAT'S A LAWFUL ACT COMMITTED UNLAWFULLY AS I READ IT.

27           I KNOW, AND MR. GUTHRIE, I'M SURE, HAS POINTS

28   OPPOSING THAT.  SO, I SEE THE FOUR ELEMENTS AS HAVING

1    BEEN MET.

2              HE DROVE, HE WAS OVER .08, HE COMMITTED A

3    LAWFUL ACT IN AN UNLAWFUL FASHION.

4              IN OTHER WORDS, HE DROVE NEGLIGENTLY, AND IT

5    PROXIMATELY CAUSED THE DEATH OF ANOTHER HUMAN BEING.

6              SO, THAT'S -- I WAS ASKING FOR THE COURT'S

7    ASSISTANCE, BECAUSE THOMPSON TALKS ABOUT THE TWO

8    CONJUNCTIVE THEORIES, AND STATES SPECIFICALLY -- LET'S

9    SEE HERE.

10             I CAN ACTUALLY READ WHAT I CONSIDER TO BE THE

11   IMPORTANT LANGUAGE HERE.

12             FROM THESE CASES, WE GLEAN THE FOLLOWING.

13   THEY HAVE JUST TALKED ABOUT THAT ORDINARY NEGLIGENCE.

14   THAT DRIVING, QUOTE, "IN AND OF ITSELF IS UNLAWFUL,"

15   UNQUOTE, UNDER THE MANSLAUGHTER STATUTE.  READING FROM

16   PAGE 53.  QUOTE, THERE'S A CASE THAT HOLDS THAT.

17             THE THOMPSON COURT'S CONCLUSION IS FROM THESE

18   CASES, WE GLEAN THE FOLLOWING:

19             COMMITTING A LAWFUL ACT IN AN UNLAWFUL MANNER

20   SIMPLY MEANS TO COMMIT A LAWFUL ACT THAT IS WITHOUT

21   REASONABLE CAUTION AND CARE.

22             WELL, WHEN YOU PLEAD GUILTY TO DRIVING A CAR

23   NEGLIGENTLY, YOU FIT UNDER THAT.

24             THAT IS MY ARGUMENT.

25             SO, THAT'S WHY I SEEK THE COURT'S ASSISTANCE.

26             IS THERE AN AREA THAT I'M MISSING HERE THAT

27   THE COURT WISHES ME TO FOCUS MY ATTENTION ON?

28        THE COURT:  NO.

1          MR. GUTHRIE, ARE YOU FOCUSED AS TO THE ISSUE

2     AS WELL?  I'M SURE YOU'RE GOING TO WANT TO BE ABLE TO

3     RESPOND AND ARGUE THIS ONE.

4          MR. GUTHRIE:  JUST BRIEFLY.

5          AT LEAST I THINK THE ISSUE IS, SIMPLY PUT, IF

6     THE CALIFORNIA COURTS WERE PRESENTED WITH THE RECORD

7     OF CONVICTION, SUBTRACT THE HEARSAY, AND --

8          THE COURT:  OKAY.  LET'S DEAL WITH THAT TOO.

9          AS I UNDERSTAND THE CASE LAW, THE COURT CAN

10    USE THE COURT RECORDS.  THE PROBATION REPORT IS NOT

11    PART OF THE COURT RECORDS.  SO, I WOULD BE LOOKING AT

12    THE COURT RECORDS.

13         MR. GUTHRIE:  ABSOLUTELY.

14         THE COURT:  MEANING THE CHANGE OF PLEA FORM, WHAT

15    WOULD BE PUT ONTO THE INFORMATION.

16         OKAY.  GO AHEAD.

17         MR. GUTHRIE:  THE TRANSCRIPT.

18         THE COURT:  THE TRANSCRIPT OF?

19         MR. GUTHRIE:  THE TRANSCRIPT OF THE CHANGE OF

20    PLEA.

21         THE COURT:  CORRECT.

22         MR. GUTHRIE:  THE WRITTEN CHANGE OF PLEA SIGNED BY

23    MR. SHUFELT.

24         THE COURT:  THE CHANGE OF PLEA FORM.

25         MR. GUTHRIE:  THE ACTUAL CHARGING DOCUMENT TO

26    WHICH MR. SHUFELT PLEAD GUILTY, WHICH WAS AMENDED TO

27    SIMPLE NEGLIGENCE.  THEY USE THE TERM NONCRIMINAL

28    NEGLIGENCE, BUT IT'S DEFINED AS WHAT WE KNOW IS

```
 1    NEGLIGENCE.
 2         THE COURT:  SO, THE ISSUE --
 3         MR. GUTHRIE:  THE ISSUE --
 4         THE COURT:  GROSS NEGLIGENCE VERSUS SIMPLE
 5    NEGLIGENCE, IN YOUR MIND, TO A CERTAIN DEGREE.
 6         MR. GUTHRIE:  IT IS.  MR. THOMPSON'S CASE IS ABOUT
 7    GROSS NEGLIGENCE.
 8              THERE'S A DIFFERENCE BETWEEN GROSS
 9    NEGLIGENCE, AND SIMPLE NEGLIGENCE.  AND GROSS
10    NEGLIGENCE CAN BE CRIMINAL.
11              THE OTHER THING, THOUGH, IS THAT IF
12    MR. SHUFELT ENTERED A PLEA TO, OR TRIED TO ENTER A
13    PLEA IN CALIFORNIA COURT WITH THE FACTUAL BASIS, EVEN
14    INCLUDING THE RECORD OF CONVICTION IN UTAH, WE WOULD
15    ARGUE THAT THE CALIFORNIA COURT WOULD NOT TAKE IT,
16    BECAUSE THE LAW WOULD REQUIRE THERE BE SOMETHING ELSE
17    OTHER THAN DRIVING UNDER THE INFLUENCE, AND A HOMICIDE
18    OCCURRING, THAT HE WOULD HAVE TO PLEAD GUILTY TO ON
19    THE RECORD, AND THAT'S OUR OFFER.
20         THE COURT:  I THINK WE ARE ALL ON THE SAME PAGE.
21              BUT OKAY.  SO, I DON'T IGNORE ANY ASPECTS OF
22    IT, BUT I THINK THE ISSUE HAS TO DO WITH THE NATURE OF
23    THE ACT.  SIMPLE NEGLIGENCE VERSUS GROSS NEGLIGENCE.
24    THAT'S AN OVERSIMPLIFICATION.  IT'S JUST NOT --
25         MR. HELLSTROM:  AS I UNDERSTAND 192(C)(3), THAT
26    THE SIMPLE NEGLIGENCE, THAT'S THE FELONY WOBBLER, AND
27    THEN THERE'S THE GROSS NEGLIGENCE WHICH BUYS YOU MORE
28    PUNISHMENT.
```

1        THE COURT:  IT'S YOUR POSITION THAT THE 192(C)(3)

2    IS A STRIKE OFFENSE?

3        MR. HELLSTROM:  YES, IT IS.  1192.8.

4        THE COURT:  OKAY.  AND I'M JUST --

5        MR. HELLSTROM:  I'M LOOKING FOR A RULE.  I'M NOT

6    LOOKING FOR A PREAMBLE.  IT ONLY ADDRESSED --

7        THE COURT:  YEAH, AND I SPECIFICALLY RAISED THE

8    ISSUE SO THAT YOU WOULD -- AND, I MEAN, YOU, BUT

9    REALLY MEANING YOU AND MR. GUTHRIE WOULD TAKE THE

10   ISSUE SERIOUSLY OVER THE WEEKEND, BECAUSE I WOULD LIKE

11   TO BE ABLE TO DEAL WITH IT AT THE BEGINNING OF NEXT

12   WEEK SOME TIME.

13       MR. HELLSTROM:  UNDERSTOOD.

14       THE COURT:  I SUSPECT WE'RE GOING TO NEED TO DO

15   THAT.

16           I HAVE NO ILLUSIONS ABOUT IT CHANGING WHETHER

17   WE CAN CONTINUE WITH THIS TRIAL OR NOT.  I JUST DON'T

18   WANT TO LEAVE IT HANGING TOO LONG IF I CAN FIT IT IN

19   SOMEWHERE.

20       MR. HELLSTROM:  UNDERSTOOD.

21       THE COURT:  OKAY.

22       MR. HELLSTROM:  THANK YOU.

23       THE COURT:  OKAY.  SO, I WILL SEE YOU BOTH AT

24   ONE O'CLOCK.

25           (END OF MORNING PROCEEDINGS THIS DATE.)

26                        *****

27

28

# EXHIBIT COVER PAGE  **C**

EXHIBT

Description of this Exhibit: *Second Hearing on "Strike" allegation*

Case No.    *R.T. 2872 - 2897,*
People v.

Number of pages to this Exhibit **26** pages. *(9-34)*

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☒ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

1    ME --

2              YOU NEED A FEW MINUTES, LYNN, OR ARE YOU

3    OKAY?

4       THE CLERK:  ACTUALLY, BY THE TIME HE'S BACK I'LL

5    BE DONE.

6              OKAY.  THIS IS THE MOTION TO STRIKE THE

7    STRIKE ALLEGATION.

8              IT HAS SEVERAL COMPONENTS TO IT.  ONE IS THE

9    JURISDICTIONAL ISSUES, WHETHER THE COURT HAS

10   JURISDICTION TO EVEN DEAL WITH THIS ISSUE.

11             THEN THE SECOND IS WHETHER THE PRIOR UTAH

12   CONVICTION FALLS UNDER A SERIOUS FELONY STATUTE THAT

13   WAS IN EXISTENCE -- I'M GOING TO THROW THIS IN -- AT

14   THE TIME OF THE OFFENSES IN THIS CASE.

15             SO, MR. GUTHRIE, IT'S YOUR MOTION.  YOU MAY

16   START.

17      MR. GUTHRIE:  WELL, WE'RE ARGUING THAT THE COURT

18   DOES HAVE JURISDICTION TO DETERMINE WHETHER IT HAS

19   JURISDICTION TO HEAR WHETHER THE UTAH STATUTE IS A

20   STRIKE IF THE ELEMENTS ARE COMMENSURATE TO CALIFORNIA

21   LAW.

22             BASICALLY WHAT MR. SHUFELT'S ARGUMENT IS IS

23   THAT HE PLEAD GUILTY TO DRIVING UNDER THE INFLUENCE,

24   ACKNOWLEDGING THAT THERE WAS A HOMICIDE, AND THAT

25   THERE'S SIMPLE NEGLIGENCE.

26             AND WHAT HE POINTS OUT IS THAT, ONE, THERE'S

27   NO COMMENSURATE CALIFORNIA LAW THAT IS APPLICABLE THAT

28   WOULD MAKE IT A STRIKE.

1          HE POINTS OUT THAT THE CALIFORNIA LAWS IN

2    THIS AREA REQUIRE HOMICIDE, THEY REQUIRE SOMEONE

3    DRIVING ON THE ROAD UNDER THE INFLUENCE OF ALCOHOL,

4    AND THEY ALSO REQUIRE AN ADDITIONAL ELEMENT OR ACT,

5    SOMETHING, THAT'S EITHER A MISDEMEANOR OR A LAWFUL ACT

6    IN AN UNLAWFUL MANNER, WHICH IS IN ITSELF IS SOME KIND

7    OF UNLAWFUL ACT BY THE PERSON DRIVING THE VEHICLE.

8          THERE'S THE RECORD OF HIS CONVICTION WHICH

9    INCORPORATES ALL OF THE DOCUMENTS THAT WERE SUBMITTED

10   WITH HIS MOTION, HIS CHANGE OF PLEA, A WRITTEN

11   TRANSCRIPT OF HIS CHANGE OF PLEA WITH THE COURT, THE

12   COMPLAINT, THE UTAH COMPLAINT.

13         IF THE COURT LOOKS AT ALL OF THOSE DOCUMENTS,

14   THERE SIMPLY IS NO ADDITIONAL ACT BEYOND WHAT HE PLEAD

15   GUILTY TO.  AND IF HE WERE -- IF ANY OF THE CALIFORNIA

16   LAWS WERE APPLIED TO THAT, THE PLEA THAT HE MADE IN

17   UTAH COULD NOT HAVE BEEN TAKEN IN THE CALIFORNIA

18   COURT, BECAUSE THE CALIFORNIA COURT WOULD HAVE

19   REQUESTED ADDITIONAL ACTS BE MADE ON THE RECORD OTHER

20   THAN JUST DRIVING THE CAR UNDER THE INFLUENCE.

21         THE DISTRICT ATTORNEY --

22         THE COURT:  WHAT ABOUT A SIMPLE NEGLIGENCE?  WHAT

23   ABOUT THE SIMPLE NEGLIGENCE?

24         MR. GUTHRIE:  THE SIMPLE NEGLIGENCE IS -- WE ARGUE

25   THAT IT'S BUILT INTO THE DRIVING UNDER THE INFLUENCE.

26   IT'S --

27         THE COURT:  PART AND PARCEL OF THAT, AND IT'S NOT

28   A SEPARATE ACT?

1        MR. GUTHRIE:  YES.

2        THE COURT:  YOUR POSITION IS THAT IN UTAH, THE ACT

3    OF DRIVING UNDER THE INFLUENCE CAUSING THE DEATH IS

4    SUFFICIENT IN THAT IT DOESN'T REQUIRE ANY SIMPLE

5    NEGLIGENCE, IT DOESN'T REQUIRE ANYTHING IN ADDITION TO

6    THAT?

7            NO -- I MEAN, HE COULD HAVE BEEN DRIVING

8    LAWFULLY AND JUST CAUSED THE DEATH.  IT DOESN'T

9    REQUIRE THAT SECOND ELEMENT OF NEGLIGENCE, OR A LAWFUL

10   ACT NEGLIGENTLY.

11       MR. GUTHRIE:  DRIVING UNDER THE INFLUENCE IN AND

12   OF ITSELF IS CONSIDERED -- AT LEAST THE WAY I READ IT,

13   IS CONSIDERED NEGLIGENT, BUT THAT'S IT.

14           THERE'S NO SEPARATE VIOLATION OF THE LAW LIKE

15   RUNNING A RED LIGHT, OR UNLAWFUL -- OR A LAWFUL ACT IN

16   AN UNLAWFUL MANNER.  YOU HAVE A GREEN LIGHT, BUT

17   THERE'S SOMEONE IN THE INTERSECTION, YOU PUSH IT

18   THROUGH AND YOU WIPE THEM OUT.

19           THERE'S NO ADDITIONAL ELEMENT.

20           NOW, THE UTAH LAW DOES HAVE A CRIMINAL

21   NEGLIGENCE SECTION THAT, IN FACT, HE WAS ORIGINALLY

22   CHARGED WITH THAT, AND THE CRIMINAL NEGLIGENCE PORTION

23   WAS TAKEN OFF.

24       THE COURT:  DO YOU BELIEVE THAT THEIR CRIMINAL

25   NEGLIGENCE IS EQUIVALENT TO OUR GROSS NEGLIGENCE?

26       MR. GUTHRIE:  IT APPEARS TO BE.

27       THE COURT:  WHAT IS YOUR POSITION ON THE USE OF

28   THE PROBABLE CAUSE STATEMENT?

1     MR. GUTHRIE:  THE PROBABLE CAUSE STATEMENT IS

2   INADMISSIBLE HEARSAY.  IT'S ANALOGOUS TO A PROPOSITION

3   115 PRELIMINARY HEARING, WHICH CAN'T BE USED TO PROVE

4   THE ELEMENTS OF A PRIOR IN CALIFORNIA.

5        THE CASES THAT I'VE READ, AND PROVING UP

6   PRIORS, INDICATES THAT HEARSAY CANNOT BE USED.  AND,

7   SO, NONE OF THE -- IN THIS PARTICULAR CASE, IT WAS

8   FILLED UP BY AN OFFICER WHO HAD TALKED TO OTHER

9   OFFICERS AND WITNESSES.

10        IT'S OBVIOUSLY HEARSAY.  IT MIGHT BE TWO OR

11   THREE LEVELS OF HEARSAY.

12        SO, OUR POSITION IS THAT IT CAN'T BE USED TO

13   GET THAT EXTRA ACT THAT WE FEEL IS NECESSARY.

14     THE COURT:  PEOPLE?

15     MR. HELLSTROM:  THANK YOU, YOUR HONOR.

16        FIRST, WITH RESPECT TO THE JURISDICTION

17   ISSUE, AS I UNDERSTAND JURISDICTION, GENERALLY

18   SPEAKING THERE ARE ONLY TWO AREAS THAT ARE RELEVANT TO

19   JURISDICTION.

20        ONE IS DO YOU HAVE TERRITORIAL JURISDICTION,

21   OR DO YOU HAVE SUBJECT MATTER JURISDICTION.

22        TERRITORIAL IS NOT AN ISSUE.

23        AS TO SUBJECT MATTER, WELL, THIS IS SUBJECT

24   MATTER THAT CALIFORNIA STATE COURTS DEAL WITH EVERY

25   SINGLE DAY, WHICH IS DETERMINING THE VALIDITY OF A

26   FOREIGN PRIOR AS THEY RELATE TO PEOPLE ACCUSED OF

27   CRIMES WITHIN THE COUNTY.

28        SO, I BELIEVE THAT THE COURT HAS JURISDICTION

1    AS TO BOTH PARTS OF THE JURISDICTIONAL QUESTION.

2         THAT'S NOT REALLY WHY WE'RE HERE.  THE

3    QUESTION IS IS THE UTAH CONDUCT, DOES IT FIT WITHIN

4    192(C)(3).

5         I USE THE WORD "CONDUCT," BECAUSE IT'S

6    CONDUCT THAT WE'RE TALKING ABOUT HERE, NOT COMMON

7    ELEMENTS.  COMMON ELEMENTS IS THE TEST YOU GO TO IF

8    YOU HAVE INSUFFICIENT CONDUCT TO PROVE THE ELEMENTS.

9         I SUGGEST TO THE COURT THAT WE HAVE

10    SUFFICIENT CONDUCT TO PROVE THE ELEMENTS, AND THAT'S

11    WHAT I WAS DISCUSSING IN MY MOVING PAPERS AT PAGE TWO.

12         I'M IN AGREEMENT WITH COUNSEL TO THE DEGREE

13    THAT COUNSEL HAS SUPPLIED IN HIS MOVING PAPERS

14    APPROPRIATE ADMISSIBLE MATERIALS THAT THE COURT MAY

15    CONSIDER IN MAKING ITS DECISION.

16         SPECIFICALLY, I REFER TO THE STATEMENT OF

17    DEFENSE, CERTIFICATE OF COUNSEL AND ORDER.

18         THAT IS SQUARELY WITHIN THE RECORD OF

19    CONVICTION.  THE COURT MAY CONSIDER ALL MATTERS

20    CONTAINED THERE IN.

21         THE IMPORTANT MATERIAL IS FOUND ON PAGE TWO.

22    THE COURT:  ONE MOMENT.  I'VE GOT TO GET TO WHERE

23    YOU ARE.

24         AND YOU'RE TALKING ABOUT GOING TO TWO,

25    MEANING PAGE TWO OF THE CERTIFICATE OF COUNSEL?

26    MR. HELLSTROM:  CORRECT.  BY HAPPENSTANCE.  IT

27    HAPPENS TO BE IN BOTH OF MY MOVING PAPERS, AS WELL AS

28    I QUOTE THAT MATERIAL.

1          THE COURT:  OKAY.  GO AHEAD.

2          MR. HELLSTROM:  WHAT WE HAVE THERE IS A LAYING OUT

3    OF THE CONDUCT THAT THE DEFENDANT ADMITTED TO IN UTAH,

4    DRIVING A CAR.

5              HE HAS A BLOOD ALCOHOL CONTENT OF.08 OR

6    GREATER.

7              AND, IN ADDITION, HE OPERATED THE VEHICLE IN

8    A NEGLIGENT MANNER.

9              THEN, FINALLY, THAT IN DOING SO, HE CAUSED

10   THE DEATH OF MR. FRANK HUDDLESON.

11         THE COURT:  YOUR MOTION IS THAT BY USING PHRASE,

12   "OPERATED A VEHICLE IN SUCH A FASHION THAT IT CAUSED

13   THE DEATH," THE "IN SUCH A FASHION," THAT THAT IS

14   EQUIVALENT TO NEGLIGENCE?

15         MR. HELLSTROM:  I'M READING EXACTLY FROM THE FIRST

16   PARAGRAPH, BUT NOT QUITE WORD FOR WORD.

17         THE COURT:  ONE MOMENT.  I NEED TO GET WITH YOU.

18         MR. GUTHRIE:  YOUR PAGE AGAIN?

19         MR. HELLSTROM:  YES.  IT'S PAGE TWO OF THE

20   STATEMENT OF DEFENDANT, CERTIFICATE OF COUNSEL AND

21   ORDER.

22              IT SAYS AT THE TOP, "THE ELEMENTS OF THE

23   CRIMINAL CHARGE ARE AS FOLLOWS."

24              IT LAYS OUT THE ELEMENTS OF THE CRIME THAT

25   MR. SHUFELT PLEAD GUILTY TO.  HE'S ADMITTING TO

26   COMMITTING THAT CONDUCT.

27              I'LL READ IT INTO THE RECORD.

28         THE COURT:  I'VE GOT IT, I'VE GOT IT.

1              PLEASE DO READ IT INTO THE RECORD.  THAT'S

2     FINE.

3         MR. HELLSTROM:  "ONE, ON OR ABOUT AUGUST 19, 1994,

4     THE DEFENDANT WAS IN ACTUAL PHYSICAL CONTROL OF AN

5     OPERABLE MOTOR VEHICLE.

6              "TWO, AT THAT TIME THE DEFENDANT HAD A BLOOD

7     ALCOHOL CONTENT OF.08 PERCENT OR GREATER BY WEIGHT.

8              "THREE, THAT THE DEFENDANT OPERATED THE

9     VEHICLE IN A NEGLIGENT MANNER.

10             "FOUR, THAT IN SO DOING, THE DEFENDANT

11     CAUSED THE DEATH OF FRANK HUDDLESON."

12             THEN IT SAYS:

13             "THREE, ALL ACTS OCCURRED IN SALT LAKE

14     COUNTY, STATE OF UTAH."

15             THE "THREE" OBVIOUSLY BEING A TYPOGRAPHICAL

16     ERROR.

17             THE COURT NEEDS TO CONSIDER THAT FACTUAL

18     INFORMATION, BECAUSE IT IS AN ADMISSION TO CERTAIN

19     CONDUCT THAT WE'RE TALKING ABOUT HERE.  THAT'S WHAT

20     THAT SURMISES.

21             THE REST OF THIS DOCUMENT GOES ON:

22             "WHEREIN THE DEFENDANT ADMITS THAT THIS IS

23     THE CONDUCT UPON WHICH HE WAS OR HE PLEAD GUILTY."

24             THAT IS A LARGE PORTION OF THE PEOPLE'S

25     EVIDENCE.

26         THE COURT:  OKAY.  HANG ON.  I'VE GOT TO ASK THESE

27     QUESTIONS AS YOU GO THROUGH IT.

28         MR. HELLSTROM:  UNDERSTOOD.

1          THE COURT:  THERE WAS A MODIFICATION IN THE

2     CHARGED OFFENSE.

3              IS IT YOUR POSITION THAT THIS DOCUMENT IS AS

4     OF THE TIME, AFTER THE MODIFICATIONS, THE CHARGED

5     OFFENSE, WHERE IT'S SPECIFICALLY THE THIRD DEGREE AS

6     OPPOSED TO THE SECOND DEGREE?

7          MR. HELLSTROM:  ABSOLUTELY.  AND PERHAPS I'VE

8     JUMPED THE GUN IN ANY EXPLANATION TO THE COURT.  FOR

9     THAT, I APOLOGIZE.

10         THE COURT:  NO.  ACTUALLY, I'M TRYING TO COVER ALL

11    THE BASES.  BUT IF YOU COULD GO BACK, I WOULD

12    APPRECIATE IT.

13         MR. HELLSTROM:  ABSOLUTELY.

14             HE WAS ORIGINALLY CHARGED WITH A GROSS

15    NEGLIGENCE MANSLAUGHTER.  THE UTAH SECOND DEGREE

16    FELONY STATUTE.

17             AS PART OF THE PLEA BARGAINING PROCESS, HE

18    AGREED TO PLEAD GUILTY TO THE SIMPLE NEGLIGENCE

19    VERSION OF THE SAME STATUTE.

20             WE HAVE THE ANALOGOUS STATUTE HERE IN THE

21    STATE OF CALIFORNIA.  ONE IS THE 191.5 STATUTE, THE

22    OTHER ONE IS THE 192(C)(3) STATUTE.

23             I'M NOT IN ANY WAY SUGGESTING THAT

24    MR. SHUFELT PLEAD GUILTY TO THE GROSS NEGLIGENCE.

25         THE COURT:  SO, WE'RE NOT EVEN LOOKING AT THE 191

26    STATUTE?

27         MR. HELLSTROM:  WE'RE NOT LOOKING AT IT --

28         THE COURT:  OKAY.

1          MR. HELLSTROM:  -- THAT'S CORRECT.

2          THE COURT:  GO AHEAD.

3          MR. HELLSTROM:  IT'S THE CONDUCT AND WHETHER OR

4     NOT THIS CONDUCT AS DESCRIBED IN THE VARIOUS

5     ADMISSIBLE DOCUMENTS CONSTITUTES A VIOLATION OF

6     192(C)(3).

7               SO, THESE ELEMENTS SHOW THAT HE WAS DRIVING

8     THE CAR.  HE HAD.08 ALCOHOL IN HIS SYSTEM.

9               IN ADDITION, HE DROVE THE VEHICLE

10    NEGLIGENTLY, AND THAT NEGLIGENCE RESULTED IN THE DEATH

11    OF ANOTHER.

12              THAT'S WHAT PAGE TWO INDICATES.

13              I MEAN, IT'S CONSTRUCTION ON HOW YOU READ IT.

14    THE REASON WHY IT'S ENUMERATED ONE, TWO, THREE, FOUR

15    IS SO IT'S PUT TOGETHER AS ONLY ONE, TWO, THREE.  I

16    THINK THAT IS ABSOLUTELY A REASONABLE INTERPRETATION.

17    THE COURT CAN CONCLUDE THAT VERY REASONABLY.

18         THE COURT:  OKAY.

19         MR. HELLSTROM:  I SECONDLY -- LET'S SEE.  ONE

20    MOMENT.  LET ME GET THE CORRECT PAGE.

21              PAGE FIVE IN THE CHANGE OF PLEA TRANSCRIPT.

22              THIS IS THE COURT SPEAKING:  "THE ALLEGATIONS

23    OF THE STATE THAT YOU'LL BE PLEADING GUILTY TO, THAT

24    WOULD BE A THIRD DEGREE FELONY, AND WHILE INTOXICATED

25    OPERATED A VEHICLE IN SUCH A FASHION THAT YOU CAUSED

26    THE DEATH OF FRANCE HUDDLESON."

27              THAT'S THE SUM AND SUBSTANCE OF THE

28    ALLEGATION.

1           WELL, THAT SUGGESTS THAT THE CONDUCT THAT

2    HE'S ADMITTING IS NOT JUST BEING DRUNK, AND THROUGH NO

3    FAULT OF A MIRACLE OF HAPPENSTANCE, OF GOD,

4    MR. HUDDLESON IS KILLED.

5           WHAT IT SUGGESTS -- I THINK THE ONLY

6    REASONABLE INTERPRETATION IS TO THE CONDUCT HE PLEAD

7    TO IS HE DROVE WHILE INTOXICATED.  IN ADDITION, HE

8    COMMITTED A NEGLIGENT ACT THAT LEAD TO THE DEATH OF

9    MR. HUDDLESON.

10           UNDER THOSE CIRCUMSTANCES, THAT SQUARELY FITS

11    WITHIN 192(C)(3).

12           THE LEAST COMMON ELEMENT TEST NEVER COMES

13    INTO PLAY BECAUSE THE CONDUCT THAT HE'S ADMITTED TO

14    MAY OR MAY NOT BE BROADER THAN THE ELEMENTS REQUIRED

15    BY THE UTAH STATUTE.

16           WE KNOW WHAT HE PLEAD TO, WE KNOW WHAT HE

17    ADMITTED TO DOING, BECAUSE WE HAVE IT IN BLACK AND

18    WHITE.  AND, SO, THAT CONDUCT IS WHAT CAUSES HIM TO BE

19    HELD LIABLE.

20           I CAN ADDRESS THE COURT'S CONCERNS, SHOULD

21    THE COURT WISH ME TO, WITH RESPECT TO HOW 192(C)(3)

22    WORKS AS TO THE LAWFUL ACT PERFORMED UNLAWFULLY, IF

23    THE COURT WISHES TO HEAR ARGUMENT ON THAT.

24           THE COURT:  HANG ON.  I DO HAVE A QUESTION FOR

25    YOU.

26           IN 192(C)(3), WE LIMIT THE 23140 23152,

27    153 --

28           MR. HELLSTROM:  152, IT'S DRIVING DRUNK.

1        THE COURT:  -- COMPARISON.

2        MR. HELLSTROM:  DRIVING WITH .08 PERCENT ALCOHOL OR

3    GREATER.

4        THE COURT:  OKAY.  AND DO YOU BELIEVE THAT

5    192(C)(3) CONTAINS AN ELEMENT THAT THERE IS A DUTY

6    THAT WAS NEGLECTED?

7        MR. HELLSTROM:  YES.

8        THE COURT:  OKAY.  WHEN YOU FORM A --

9        MR. HELLSTROM:  WHEN YOU PERFORM A LAWFUL ACT

10   UNLAWFULLY, THE CASE LAW SAYS WHAT THAT MEANS.  SO,

11   YOU HAVE TO DRIVE DRUNK -- AND "DRUNK," I USE THAT

12   PHRASE TO DESCRIBE .08 OR MORE -- OR IN AN UNSAFE

13   FASHION PURSUANT TO OUR STATUTE, THE DEFINITION OF

14   THAT.

15       THE COURT:  AND DO YOU BELIEVE THAT THE CONDUCT

16   THAT WAS ADMITTED BY THE DEFENDANT -- SKIP THE

17   STATUTE AT THIS POINT -- BUT CONDUCT THAT WAS ADMITTED

18   BY THE DEFENDANT INCLUDES THAT DUTY, THAT HE HAD A

19   DUTY?

20       MR. HELLSTROM:  ABSOLUTELY.  THAT'S THE NEGLIGENT

21   DRIVING THAT HE ADMITTED TO.

22       THE COURT:  SO, BY USE OF THE PHRASE "NEGLIGENT,"

23   IT'S YOUR POSITION THAT THAT ESTABLISHES THE DUTY AND

24   THE FAILURE TO PERFORM ACCORDING TO HIS DUTY?

25       MR. HELLSTROM:  THAT'S CORRECT.

26       THE COURT:  OKAY.  GO AHEAD.

27       MR. HELLSTROM:  THAT'S CORRECT.  THE COURT HAS

28   LARGELY FINISHED MY ARGUMENT VIA QUESTIONS FOR ME.

```
 1              THE ONLY THING REALLY THAT REMAINS, TO SUM IT

 2    UP, THE CALIFORNIA STATUTE, ONE MUST BE INTOXICATED,

 3    OR .08 OR MORE, ONE MUST BE THE DRIVER, ONE MUST

 4    PERFORM A NEGLIGENT ACT.  IN THIS CASE IT'S DRIVING

 5    THE VEHICLE NEGLIGENTLY.

 6              THEN THAT'S WHAT THE LAWFUL ACT IN AN

 7    UNLAWFUL MANNER MEANS.  THAT'S WHAT THE CASE THAT I'VE

 8    CITED IN MY MOVING PAPERS REFERS TO, THE THOMPSON

 9    CASE.

10              THE LAST TIME WE WERE HERE COUNSEL QUITE

11    CORRECTLY POINTED OUT THAT THE THOMPSON CASE IS AROUND

12    A 191.5.

13              THOSE TWO STATUTES ARE IDENTICAL IN EVERY

14    FASHION, SAVE ONE OF THE GROSS NEGLIGENCE.  ONE

15    INVOLVES NORMAL CIVIL NEGLIGENCE.

16              192(C)(3), NORMAL CIVIL NEGLIGENCE.

17              THE ONLY QUESTION REALLY FOR THE COURT TO

18    DECIDE, AS I CAN SEE IT, IS WHETHER THE CONDUCT THAT

19    THE DEFENDANT ADMITTED TO IN THE STATE OF UTAH -- HE

20    ADMITTED TO BOTH BEING DRUNK, AND PERFORMING A

21    NEGLIGENT DRIVING.

22              AND I BELIEVE THAT HE DID -- I BELIEVE THAT

23    THAT IS WHAT THE REASONABLE INTERROGATION OF THE

24    ADMISSIONS THAT I HAVE STATED TO THE COURT ARE.

25              THAT IS WHY HE'S GUILTY OF THE EQUIVALENT OF

26    192(C)(3) IN THE STATE OF CALIFORNIA.

27              COUNSEL RAISED ISSUES AS TO WHETHER OR NOT A

28    192(C)(3) IS A STRIKE, EVEN IF THAT WERE TRUE, WHICH
```

```
1      HYPOTHETICALLY, LET'S SEE IF THAT'S TRUE.

2              WELL, THE 1192.8 STATUTE EXPRESSLY LISTS

3      192(C)(3) AS A STRIKE FELONY.

4              SO, THAT REALLY IS A NON-ISSUE IN MY MIND.

5              UNLESS THE COURT HAS ADDITIONAL QUESTIONS FOR

6      ME ON THAT ISSUE --

7          THE COURT:  MR. GUTHRIE, I WANT YOUR RESPONSE, BUT

8      I'D LIKE TO HAVE YOU DEAL WITH THAT LAST POINT THAT

9      MR. HELLSTROM MADE, AS WELL AS WHETHER YOU HAVE ANY

10     CASE LAW THAT WOULD INDICATE THAT THE COURT MUST GO TO

11     THE STATUTE AND NOT THE CONDUCT.

12         MR. GUTHRIE:  OKAY.  WELL --

13         THE COURT:  IF YOU NEED ME TO CLARIFY, I'LL BE

14     GLAD TO.

15         MR. GUTHRIE:  I THINK SO.  THE 1192 -- I JUST

16     WOULD LIKE TO SAY THAT THE COURT BROUGHT IT OUT

17     EARLIER.  1192.8 CODIFIED WHETHER DRIVING UNDER THE

18     INFLUENCE WITH SERIOUS BODILY INJURY, A HOMICIDE, WAS

19     A SERIOUS FELONY.

20             THIS DOESN'T COME INTO EFFECT UNTIL AT LEAST,

21     BY MY READING, OCTOBER 1999.  AND MR. SHUFELT PLEAD IN

22     THIS CASE -- IT WAS A PAGE SEVEN, EXCUSE ME -- IN

23     1995.

24             EXCUSE ME.

25             AND THEN THE OTHER POINT THE COURT WANTED,

26     WAS DO I HAVE A CASE THAT SAYS THAT THE COURT HAS TO

27     GO TO THE STATUTE AS OPPOSED TO THE RECORD?

28         THE COURT:  THE CONDUCT.
```

```
 1          MR. GUTHRIE:  AS TO THE CONDUCT?  WELL, NO.  I

 2    THINK THE CASE LAW SAYS THAT THE COURT CAN GO TO THE

 3    STATUTE AND THE CONDUCT AS REFLECTED IN THE COURT'S

 4    RECORD.

 5          BUT IN RESPONSE TO THE PROSECUTION'S

 6    ARGUMENT, THE PROSECUTION WAS ARGUING THAT DRIVING THE

 7    VEHICLE IN A NEGLIGENT MANNER QUALIFIES AS THE

 8    ADDITIONAL ACT REQUIRED BY CALIFORNIA LAW.

 9          AND, FIRST, WE'RE SAYING THAT THAT WAS

10    CONCOMITANT WITH DRIVING UNDER THE INFLUENCE.

11          IF YOU DRIVE UNDER THE INFLUENCE, YOU'RE

12    NEGLIGENT FOR DOING THAT.

13          THAT DOESN'T REALLY QUALIFY AS AN ACT THAT

14    WOULD NECESSARILY BE TAKEN IN A CALIFORNIA COURT.

15          IF MR. SHUFELT CAN COME INTO A CALIFORNIA

16    COURT, THE CALIFORNIA COURT WOULD HAVE SAID OKAY,

17    LOOK, I PLEAD GUILTY TO -- YOU'VE ADMITTED TO DRIVING

18    UNDER THE INFLUENCE, YOU ADMITTED THAT THERE WAS A

19    HOMICIDE, AND I WANT -- WHAT I WANT TO DO NOW IS JUST

20    EXACTLY WHAT ACT DID YOU -- WHAT ADDITIONAL ACT DID

21    YOU ACT OUT THAT EITHER BREAKS A CALIFORNIA LAW, OR,

22    IN EFFECT, IS A LAWFUL ACT DONE IN AN UNLAWFUL MANNER.

23          EVEN IF NO LAW WAS BROKEN, THAT UNLAWFUL

24    ACT -- THAT LAWFUL ACT IN AN UNLAWFUL MANNER WOULD

25    HAVE HAD TO HAVE BEEN SPELLED OUT.  THE COURT WOULD

26    HAVE REQUESTED THAT.

27          THE COURT WOULD NOT TAKE, AT LEAST ON THE

28    FACE OF IT, A BLAND STATEMENT THAT HE DROVE THE
```

1    VEHICLE IN A NEGLIGENT MANNER.  THE COURT WOULD HAVE

2    SAID, EVERYBODY WHO DRIVES UNDER THE INFLUENCE OF

3    ALCOHOL IS NEGLIGENT FOR JUST GETTING IN THE CAR.

4        THE COURT:  BUT THERE'S A DIFFERENCE BETWEEN

5    DRIVING NEGLIGENTLY, AND BEING NEGLIGENT BY GETTING

6    INTO THE CAR.  AND I BELIEVE WHAT MR. HELLSTROM IS

7    POINTING OUT IS THE LANGUAGE THAT HE OPERATED THE

8    VEHICLE IN A NEGLIGENT MANNER.  OPERATING AS OPPOSED

9    TO BEING NEGLIGENT BY GETTING BEHIND THE WHEEL UNDER

10   THE INFLUENCE.

11        AND THAT STATEMENT DISTINGUISHES BETWEEN IT.

12   IT MAKES IT MORE THAN JUST DRIVING UNDER THE

13   INFLUENCE, BECAUSE IT'S A SEPARATE ENUMERATED ITEM.

14       MR. GUTHRIE:  DOES THE COURT KNOW WHAT HE DID?

15       THE COURT:  DO I HAVE TO?  DO I HAVE TO KNOW

16   THAT?

17       MR. GUTHRIE:  I THINK THAT YES, TO TAKE -- OF

18   COURSE, THE COURT WOULD WANT TO KNOW THAT BECAUSE IT'S

19   REALLY A BLUR AS TO WHETHER THE -- HE MIGHT

20   HAVE -- WELL, ARGUABLY, HE MIGHT HAVE BEEN NEGLIGENT

21   HERE AND NEGLIGENT THERE DRIVING THE CAR, BUT THAT'S

22   JUST SIMPLY NOT ON THE RECORD.

23        THE COURT WOULD HAVE TO KNOW EXACTLY WHAT DID

24   HE DO TO CAUSE THAT INJURY.

25        I CAN IMAGINE THE CALIFORNIA LEGISLATURE,

26   WHEN THEY CAME UP WITH THIS LAW, THEY'RE SITTING

27   AROUND AND THEY'RE SAYING, WELL, YOU KNOW, IF

28   SOMEBODY'S DRIVING AND DRINKING, IF THEY'RE UNDER THE

1    INFLUENCE, THAT SHOULD BE A CRIME.

2         YOU KNOW, WHAT IF THEY HURT SOMEBODY?  WHAT

3    IF THEY HAVE THE GREEN LIGHT, AND THEY DRIVE THROUGH,

4    AND HERE COMES SOMEBODY AND BUSTS THE RED LIGHT?

5         THE COURT:  WE ALREADY HAVE THAT STATUTE.  WE HAVE

6    THE FELONY DRUNK DRIVING STATUTE THAT COVERS THAT.

7    SO, WHY WOULD WE NEED THE 192 PAREN C, PAREN 3, IF

8    THAT OTHER STATUTE COVERS IT?

9         AND I'M PLAYING DEVIL'S ADVOCATE SO WE CAN

10   TALK ABOUT THESE ISSUES.

11        MR. GUTHRIE:  WELL, I THINK 1901.5 IS --

12        THE COURT:  1901.5 IS OUT.  I'M NOT TALKING ABOUT

13   THAT.  THAT IS THE GROSS NEGLIGENCE STATUTE.  BUT I'M

14   TALKING ABOUT WE HAVE 23152, 153, WHICH IS THE FELONY

15   DRUNK DRIVING.  AND THIS SECTION SEEMS TO BE -- AND I

16   SOMEWHAT DISAGREE WITH MR. HELLSTROM, AT LEAST

17   INITIALLY, THAT THE 23153 FELONY DRUNK DRIVING OFFENSE

18   WITH NEGLIGENCE --

19        MR. HELLSTROM:  YOUR HONOR, I NEED TO BE HEARD ON

20   THAT MATTER.

21        THE COURT:  I'LL COME BACK TO YOU THEN.  I

22   JUST -- TELL YOU WHAT, WHILE MR. GUTHRIE'S LOOKING,

23   MAYBE HE CAN LOOK AND LISTEN AT THE SAME TIME.

24        GO AHEAD AND RESPOND TO THAT LIMITED ISSUE,

25   MR. HELLSTROM.  I THOUGHT I HAD ALREADY GONE THROUGH

26   IT WITH YOU.

27        MR. HELLSTROM:  YOU HAD, YOUR HONOR.  MR. GUTHRIE

28   BROUGHT OUT SOME ADDITIONAL POINTS.

1    WITH RESPECT TO IT BEING A 23153, WHEN WE

2    LOOK AT CALJIC, WITH GREAT RESPECT TO THE COURT,

3    THAT'S NOT ACCURATE.

4    8.93 INDICATED IF THE DRIVER OF A VEHICLE

5    VIOLATED VEHICLE CODE SECTION, 23140, 23152, OR 23153.

6    THE COURT COULD NOT MAKE A FINDING OF A

7    192(C)(3) IF THE COURT MADE A FINDING THAT THIS WAS A

8    23153 SITUATION, BECAUSE THAT REQUIRES A SPECIFIC

9    PROVING OF AN ADDITIONAL DRIVING VIOLATION.

10    THE COURT:  OKAY.

11    MR. HELLSTROM:  THIS IS A STRAIGHT DUI SITUATION

12    WHERE YOU DRIVE NEGLIGENTLY AND YOU KILL SOMEBODY

13    ELSE.

14    THE COURT:  I STAND CORRECTED.

15    MR. HELLSTROM:  YES.  SO, THE CALJIC -- I'M SORRY,

16    BUT I JUST WANTED TO BE ACCURATE.

17    THE CALJIC INSTRUCTION IS OF SOME ASSISTANCE

18    IN DECIDING MR. SHUFELT'S ISSUE, BECAUSE IT LAYS OUT,

19    AS I'VE DISCUSSED IN MY MOVING PAPERS, IF YOU MOVE

20    UNDER THE FIRST PRONG, THE UNLAWFUL ACT OF SPEEDING,

21    MR. GUTHRIE IS QUITE RIGHT, YOU HAVE TO PROVE

22    SPEEDING.  THAT'S THE CASES THAT MR. GUTHRIE CITES TO

23    YOU.

24    BUT NOT UNDER THE SECOND PRONG, AND THAT'S

25    WHAT THE THOMPSON COURT TALKS ABOUT, AND THAT'S WHY

26    THE THOMPSON CASE IS CRITICAL TO RESOLVING THIS ISSUE,

27    BECAUSE THOMPSON TALKS ABOUT LAWFUL ACTS PERFORMED

28    UNLAWFULLY.

```
 1                IN THE CALJIC, JUST AS A PRACTICAL MATTER,

 2   THERE'S NO SPACE TO PUT IN HOW DID THAT LAWFUL

 3   ACT -- HOW WAS THAT LAWFUL, WHAT WAS THAT LAWFUL ACT,

 4   AND WHAT WAS THE LAWFUL ACT PERFORMED UNLAWFULLY.

 5                THERE'S NO SPACE FOR THAT, AND THERE'S A

 6   REASON FOR THAT.  THOMPSON ADDRESSES THAT.  AND SO

 7   THAT'S WHY I EMPHASIZE THOMPSON SO MUCH.

 8                THERE IS NO NEED TO SPECIFY.

 9                THE COURT IS ABSOLUTELY CORRECT IN ITS

10   COMMENTARY TO MR. GUTHRIE.

11                DO YOU NEED TO KNOW THE PRECISE ACT?  THE

12   ANSWER NO.

13                DO YOU HAVE TO BE ABLE TO DRAW THE CONCLUSION

14   THAT THE DEFENDANT DROVE NEGLIGENTLY?  ANSWER:  YES.

15                THAT IS WHY THOMPSON STATES, AT PAGE 53, THE

16   JURY MAY STILL CONVICT THE DEFENDANT OF GROSS

17   VEHICULAR MANSLAUGHTER IF IT FINDS THAT THE DEFENDANT

18   DROVE IN A GROSSLY NEGLIGENT MANNER, AND THAT THIS

19   CONDUCT WAS THE APPROXIMATE CAUSE OF THE DEATH.

20        THE COURT:  HOW DO YOU FEEL ABOUT THE PHRASE,

21   "WHICH MIGHT CAUSE DEATH"?

22        MR. HELLSTROM:  WELL --

23        THE COURT:  AN ACT ORDINARILY LAWFUL WHICH MIGHT

24   CAUSE DEATH?

25        MR. HELLSTROM:  THOMPSON TALKS ABOUT THAT VERY

26   QUESTION, BUT THAT'S ONE ISSUE THAT THEY GIVE

27   BASICALLY A LAW REVIEW ARTICLE READ ON, AND THEY SPEAK

28   ABOUT THAT.
```

```
 1              THEY CITE A LONG STRING OF CASES THAT

 2    CONCLUDES, I AM QUOTING ON PAGE 53, "COMMITTING A

 3    LAWFUL ACT IN AN UNLAWFUL MANNER SIMPLY MEANS TO

 4    COMMIT A LAWFUL ACT WITH NEGLIGENCE.  THAT IS, WITHOUT

 5    REASONABLE CAUTION AND CARE."

 6              THE LAWFUL ACT THEY'RE TALKING ABOUT I'VE

 7    JUST QUOTED TO THE COURT, WHICH IS DRIVING.

 8              THEY QUOTE CASES THAT TALK ABOUT THE MERE ACT

 9    OF DRIVING NEGLIGENTLY CONSTITUTES AN UNLAWFUL ACT.

10              SO, THEY STRUGGLE WITH THIS ISSUE.  THEY

11    RESOLVE THIS ISSUE TO GIVE THE WHOLE CASE LAW BEHIND

12    THIS ISSUE.  AND, ULTIMATELY THEY CONCLUDE THAT WHEN

13    YOU DRIVE NEGLIGENTLY, YOU ARE VIOLATING ELEMENT TWO

14    OF 8.93.

15              AND, SO, THAT'S -- I MEAN, THAT'S EXACTLY

16    WHAT THOMPSON SAYS.

17         THE COURT:  OKAY.  MR. GUTHRIE?

18         MR. GUTHRIE:  I DISAGREE.

19         THE COURT:  GO AHEAD.

20         MR. GUTHRIE:  IF YOU LOOK AT SECTION FIVE OF THE

21    THOMPSON CASE WHERE IT SAYS, "INSTRUCTION, DUPLICATION

22    OF ELEMENTS," AND I APOLOGIZE, I DON'T HAVE THE

23    CORRECT --

24         THE COURT:  GIVE ME THE PAGE NUMBER.

25              SECTION FIVE, HEADNOTE FIVE?

26         MR. GUTHRIE:  I THINK IT'S 64.

27         THE COURT:  THANK YOU.

28         MR. GUTHRIE:  BASICALLY WHAT THE APPELLANT DID IN
```

1   THAT CASE, AS I READ IT, HE WAS CHARGED WITH 191.5,

2   GROSS VEHICULAR MANSLAUGHTER, THEN ALSO CHARGED WITH

3   23153.

4        THE ARGUMENT ON APPEAL WAS THAT THEY WERE

5   USING THE SAME -- THEY WERE USING A BAD TURN LANE.

6        THE COURT:  A WHAT?  A WRONG TURN LANE?

7        MR. GUTHRIE:  A WRONG LANE.  FOR THE UNLAWFUL ACT

8   ELEMENT, THEY WERE USING A FAILURE TO USE A SIGNAL

9   VIOLATION.

10       THE COURT:  OKAY.

11       MR. GUTHRIE:  23153.  FOR BOTH OF THE GROSS

12  VEHICULAR MANSLAUGHTER AND THE 23153.

13       IN OTHER WORDS, THE APPELLANT WAS SAYING,

14  WELL, LOOK, YOU CAN'T USE THAT, NOT SIGNALING RIGHT,

15  FOR THE EXTRA ELEMENT IN THE 191.5, GROSS VEHICULAR

16  MANSLAUGHTER, THEN TURN AROUND AND DUAL USE IT IN THE

17  23153, BECAUSE THAT'S DUAL USE.

18       WHAT THE COURT SAID WAS, YOU'RE WRONG, YOU GO

19  USE THAT FOR BOTH, IT'S NOT A DUAL USE.

20       THE POINT IS THAT THE COURT DIDN'T DO AWAY

21  WITH THAT.  THE COURT SAID THAT -- DIDN'T SAY THAT YOU

22  DIDN'T HAVE TO PROVE THAT IN A GROSS VEHICULAR

23  MANSLAUGHTER.  IT SAYS THAT THERE WAS AN EXTRA

24  ELEMENT, YOU DO.

25       SO, WHAT MR. SHUFELT'S CASE HAS IS SIMPLE

26  NEGLIGENCE.

27       THIS THOMPSON CASE DEALS WITH GROSS VEHICULAR

28  MANSLAUGHTER, AND THE 23153, CAUSING INJURY.  THAT

1    CHARGE ALSO HAS AN EXTRA ELEMENT IN IT.  AND THAT

2    ELEMENT EITHER BY TRAFFIC VIOLATION, OR SOME KIND OF

3    TRAFFIC VIOLATION, IT'S NOT EXPRESSED IN THE UTAH

4    CHANGE OF PLEA, NOR WAS ANY OTHER TYPE OF ACT IN

5    ADDITION TO DRIVING UNDER THE INFLUENCE.

6         AND THE DRIVING UNDER THE INFLUENCE PRIMA

7    FACIA CAUSING A HOMICIDE, THAT'S APPARENT.  THAT'S

8    APPARENTLY WHAT HE PLEAD GUILTY TO IN UTAH.

9         BUT, THAT IN ITSELF COULD NOT BE TAKEN AS A

10   PLEA IN CALIFORNIA, BECAUSE IN CALIFORNIA WE NEED SOME

11   KIND OF EXTRA ACT, AND THAT'S WHAT IT COMES DOWN TO.

12        WHAT THE PROSECUTION IS ASKING THE COURT TO

13   DO IS FILL IN THE BLANK AS TO WHAT "NEGLIGENT MANNER"

14   MEANS, AND THAT COULD BE JUST DRIVING THE CAR WHILE

15   ONE HAD A.08 PERCENT BLOOD ALCOHOL CONTENT, BUT THAT'S

16   IT.

17        THE COURT --

18      THE COURT:  THAT'S TOO VAGUE.

19      MR. GUTHRIE:  I THINK IT'S A.08, YOUR HONOR.

20      THE COURT:  NO, IT'S TOO VAGUE.

21      MR. GUTHRIE:  YES.  THANK YOU.  IT REALLY IS TOO

22   VAGUE, AND BASICALLY WHAT THE COURT IS ASKED TO DO IS

23   FILL IT IN.

24        IT'S TIGHT, AND IT'S CLOSE, BUT STILL THE

25   COURT'S LOOKING AT THIS, AND, STILL, WHAT DID HE DO

26   OTHER THAN DRIVING UNDER THE INFLUENCE?

27        AND THAT IS -- I THINK THAT'S THE ARGUMENT

28   THAT THE PROSECUTION CANNOT FILL IN, BECAUSE IT REALLY

1    DOESN'T SAY.

2        THE COURT:  I WANT TO SPEND SOME MORE TIME ON

3    THIS.  I DON'T THINK THERE'S A CASE EXACTLY ON POINT.

4            I DO THINK IT'S ONE OF THOSE INSTANCES IF

5    THERE IS A FELONY CONVICTION, NO MATTER WHAT I DO,

6    IT'S GOING CAUSE SOMEBODY TO GET A READING FROM A

7    HIGHER COURT ON IT.

8            SO, I WANT TO TAKE A CLOSER LOOK AT IT.  I

9    WILL SAY THAT I DO NOT BELIEVE THAT I CAN USE THE

10   PROBABLE CAUSE STATEMENT.  I THINK THAT'S HEARSAY.  I

11   DO NOT THINK IT'S USABLE FOR PURPOSES OF DETERMINING

12   THE CONDUCT.

13           SO, I THINK I AM LEFT TO THE PARAMETERS OF

14   THE CHANGE OF PLEA STATEMENT, WHICH IS PHRASED

15   DIFFERENTLY IN UTAH.

16           OTHER THAN THAT, I WANT TO SPEND A LITTLE BIT

17   MORE TIME ON IT BECAUSE I THINK IT'S A CLOSE CALL.

18           I DON'T NEED -- FRANKLY, I DON'T NEED TO RULE

19   ON IT TO KNOW WHERE WE'RE GOING FROM HERE, BECAUSE WE

20   STILL NEED TO -- BECAUSE WE'RE GOING TO HAVE TO KEEP

21   GOING WITH THIS JURY, IF THERE IS A CONVICTION.

22           YOU KNOW, HEAVEN KNOWS WHAT THEY'RE GOING TO

23   DO.  IF THERE IS, WE NEED TO BE ABLE TO KEEP GOING.

24           I NEED TO KNOW IF WE'RE GOING TO DO A JURY

25   TRIAL -- A COURT TRIAL OR WE'RE GOING TO GO TO JURY

26   TRIAL ON THE PRIOR.

27           WHETHER HE CAN EXERCISE IT OR NOT, I REALIZE

28   THAT'S A WHOLE OTHER ISSUE.  AND I HAVE YET TO BE ABLE

1     TO GLEAN EXACTLY WHAT THE APPELLATE COURT MEANS WHEN

2     THEY SAY THERE'S A TRIAL.  I'M NOT SURE ON WHAT.

3            EVERYBODY LAUGHS, BECAUSE THEY ALL KNOW WHAT

4     THAT MEANS.

5            I TEND TO DO IT LIKE I DID IT BEFORE THEY

6     MADE THE MOST RECENT DECISIONS, BECAUSE, OTHERWISE, IT

7     MAKES NO SENSE TO THE JURY, AND, THAT IS, IT LETS THEM

8     DETERMINE IF THE PERSON WHO WAS CHARGED, CONVICTED, IS

9     MR. SHUFELT.

10            IN OTHER WORDS, IT TENDS TO BE MORE

11     IDENTIFICATION, NOT WHETHER IT FITS THE STATUTE.

12     WHETHER IT FITS THE STATUTE IS A LEGAL DETERMINATION

13     WHICH I MUST DO.

14            AND IF I DETERMINE THAT IT DOESN'T FIT, IT

15     DOESN'T MATTER IF THEY FIND IT'S MR. SHUFELT.

16            HAVING SAID THAT, MR. GUTHRIE, YOUR CLIENT'S

17     DESIRE AT THIS POINT IS TO?

18        MR. GUTHRIE:  HAVE A TRIAL ON THE ISSUE; HOWEVER,

19     IT'S STILL BEING CONSIDERED.

20        THE COURT:  NO.  IS IT A JURY TRIAL OR A --

21        MR. GUTHRIE:  I'M SORRY.  A JURY TRIAL, YOUR

22     HONOR.

23        THE COURT:  OKAY.  I AM JUST GOING THAT ROUTE.

24            I'M SAYING THAT SO EVERYONE IS PREPARED.

25     OKAY?

26            THAT MEANS, MR. HELLSTROM, START LINING UP

27     YOUR WITNESSES IN CASE WE GET A VERDICT IN THE NEXT

28     COUPLE DAYS, AND IN CASE IT'S GUILTY VERDICTS ON ONE

1    OR MORE OF THE FELONIES.

2         IN THE MEANTIME, I WILL BE DOING SOME

3    ADDITIONAL RESEARCH, ALTHOUGH, I THINK ACTUALLY I HAVE

4    ALL THE RESEARCH.  I'M GOING TO BE ANALYZING IT AND

5    TRYING TO MAKE A DECISION.

6         IF I COME TO A DECISION -- YOU KNOW, THIS IS

7    A CLOSE ENOUGH CALL THAT I MAY ACTUALLY JUST LET THE

8    JURY DO THEIR THING, AND THEN DO MY THING IN THE

9    REVERSE ORDER.

10        MR. HELLSTROM:  YOUR HONOR, I WILL ONLY BE

11   REQUESTING THE COURT TO TAKE JUDICIAL NOTICE OF THESE

12   DOCUMENTS, AND INSTRUCTING THE JURY THAT THEIR ONLY

13   ISSUE IS IDENTIFICATION.

14        THE COURT:  YES.

15        MR. HELLSTROM:  BECAUSE ALL THOSE OTHER ISSUES ARE

16   MATTERS OF THE LAW.

17        SECONDLY, I'D BE HAPPY TO SUPPLY THE COURT

18   WITH CASE LAW REGARDING THE 1025 MATTERS.  WE HAVE AN

19   EXPRESS STATUTE ON IDENTITY THAT ADDRESSES THAT ISSUE

20   EXCLUSIVELY.

21        THE COURT:  SO, DO WE TRY THEN --

22        MR. HELLSTROM:  MY FEELING IS THAT WHAT WE DO IS

23   STAND UP, AND -- THIS IS RIDICULOUS -- SAY, WE NEED

24   YOUR SIGNATURE ON THIS FORM.  THE COURT WILL BE

25   INSTRUCTING YOU THAT MR. SHUFELT IS THE PERSON IN THE

26   CHARGED DOCUMENT.  THE COURT WILL BE INSTRUCTING YOU

27   THAT THESE DOCUMENTS ARE AUTHENTIC, THAT THEY

28   CONSTITUTE PRIORS.  AND YOUR FUNCTION IS BASICALLY TO

1    SIGN THE FORM.  BECAUSE THAT'S ULTIMATELY WHAT

2    HAPPENS.  WE CAN ONLY WORK WITH THE WORDING ON THAT,

3    WHICH WAS INARTFULLY DESCRIBED BY ME.  BUT, I MEAN,

4    THAT'S THE STATE OF THE LAW IN CALIFORNIA.

5        THE COURT:  I UNDERSTAND THAT, AND BECAUSE IT IS

6    SO -- I CAN'T EVEN PICK OUT THE RIGHT WORD FOR IT.

7            I STILL TEND -- I'VE DONE A FEW OF THESE

8    SINCE WE CHANGED.  I JUST DO IT THE OLD WAY, AND LET

9    THE COURT OF APPEAL, IF THERE IS A TRUE FINDING ON THE

10   PRIOR, DEAL WITH IT.  BECAUSE IF I'M WRONG, I MEAN, IT

11   CAN ONLY WORK TO THE DEFENDANT'S ADVANTAGE.

12           I UNDERSTAND WHY THE PEOPLE DON'T LIKE IT,

13   BUT IT CAN ONLY WORK TO THE DEFENDANT'S ADVANTAGE IF I

14   DO IT THE OLD WAY.  AND IT COVERS THE BASES, BECAUSE I

15   STILL DON'T SEE THE LOGIC; I CAN'T SEE WHAT WE'RE

16   SUPPOSED TO TRY.

17           I HAVE YET TO HAVE ANYONE BE ABLE TO EXPLAIN

18   IT TO ME, AT LEAST IN ENGLISH.

19       MR. HELLSTROM:  I AGREE.  I HAVE NEVER MET A

20   PERSON WHO COULD EXPLAIN THE LOGIC.  I THINK IT IS AN

21   ABERRATION IN THE LAW.

22           BUT, THE TRUTH THE MATTER IS, REALLY THERE IS

23   NOTHING FOR THE JURY TO CONSIDER UNDER THE CURRENT

24   STATUS OF THE LAW.

25       THE COURT:  BETTER TO GIVE THEM MORE THAN NOT

26   ENOUGH TO DECIDE IS MY PHILOSOPHY, BECAUSE SOMEWHERE

27   ALONG THE LINE I'M HOPING SOMEONE WILL STRAIGHTEN THIS

28   THING OUT, BECAUSE EITHER THE JUDGE MAKES THE

```
1    DECISION, OR ELSE THE JURY MAKES THE DECISION ON EACH

2    OF THESE ELEMENTS.

3           FOR ME TO SIT HERE AND SAY ELEMENT A, B, C, D

4    HAS ALL BEEN PROVEN, THAT'S ALL YOU NEED, GO DECIDE

5    IT, IS LUDICROUS.

6      MR. HELLSTROM:  UNDERSTOOD.

7      THE COURT:  THAT'S NOT MEANT TO BE AN INSULT TO

8    ANY OF THE APPELLATE JUSTICES, IT'S WHERE WE ALL ARE

9    AT THIS POINT.

10           YOU NEED TO BE READY IS THE BOTTOM LINE, BOTH

11   OF YOU.

12     MR. HELLSTROM:  IT'S A ONE WITNESS MATTER.

13     THE COURT:  PARTICULARLY THE PEOPLE.

14           AND I'M JUST GOING TO -- IF WE GET A VERDICT,

15   IF THERE IS GUILTY VERDICT, WE'RE JUST GOING RIGHT

16   INTO IT.  I NEED BOTH OF YOU PREPARED TO GO.

17           SO, WE'LL BE IN RECESS UNTIL WE HEAR

18   SOMETHING FROM THE JURY, OR IF WE HAVE A QUESTION,

19   I'LL BE CONTACTING COUNSEL.

20     MR. HELLSTROM:  THANK YOU, YOUR HONOR.

21     THE COURT:  THANK YOU.

22           (END OF PROCEEDINGS THIS DATE.)

23                    *****

24

25

26

27

28
```

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit: Trial Courts Ruling on "Strike" allegation

Case No.    RT. 3086 - 3091,
People v.

Number of pages to this Exhibit _____6_____ pages.    (35-40)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

1      SAN DIEGO, CALIFORNIA, AUGUST 22, 2002, 9:21 A.M.,

2  MORNING SESSION

3                    --oOo--

4                  PROCEEDINGS

5      THE COURT:  GOOD MORNING.

6      MR. HELLSTROM:  GOOD MORNING, YOUR HONOR.

7      MR. GUTHRIE:  GOOD MORNING, YOUR HONOR.

8      THE COURT:  THIS IS THE MATTER OF THE PEOPLE OF

9  THE STATE OF CALIFORNIA VERSUS GEORGE SHUFELT.

10        WOULD YOU LIKE TO STATE YOUR APPEARANCES,

11  PLEASE?

12      MR. HELLSTROM:  YES.  PER HELLSTROM FOR THE

13  PEOPLE.

14      MR. SHUFELT:  GEORGE SHUFELT, IN PRO PER, YOUR

15  HONOR.

16      MR. GUTHRIE:  CHARLES GUTHRIE, ADVISING ATTORNEY.

17      THE COURT:  OKAY.  PRELIMINARILY, MR. GUTHRIE, YOU

18  FILED A DOCUMENT, A STATEMENT IN MITIGATION.

19      MR. GUTHRIE:  YES, YOUR HONOR.

20      THE COURT:  DID YOU DO THAT AS ADVISORY COUNSEL,

21  THEN?

22      MR. GUTHRIE:  I DID THIS THINKING I WAS GOING TO

23  BE REQUESTED TO BE MR. SHUFELT'S ATTORNEY OF RECORD

24  TODAY.  HOWEVER, THAT HAS BEEN SUBSEQUENTLY -- I'M NOT

25  THINKING THAT WAY ANYMORE, AFTER TALKING TO

26  MR. SHUFELT, AND THAT PLAN IS OFF.

27        SO, I GUESS I'LL FILE THAT AS A FRIEND OF THE

28  COURT AT THIS POINT.  I'LL CHANGE THAT AROUND.

1      THE COURT:  OKAY.

2      MR. GUTHRIE:  BUT INITIALLY I WAS OF THE

3   UNDERSTANDING I WOULD BE ARGUING FOR MR. SHUFELT

4   TODAY.

5      THE COURT:  THAT'S FINE.  AND, MR. SHUFELT, IS IT

6   YOUR DESIRE THEN THAT I ACCEPT THIS DOCUMENT AS A

7   FRIEND OF THE COURT?

8      MR. SHUFELT:  YES, IT IS.

9      THE COURT:  OR WOULD YOU ASK THAT IT BE WITHDRAWN?

10      MR. SHUFELT:  I ASK IT BE ACCEPTED AS A FRIEND OF

11   THE COURT.

12      THE COURT:  AND I'LL DO THAT.

13         OKAY.  FIRST OF ALL, I NEED TO RULE ON THE

14   STRIKE PRIOR.

15         JUST SO THE RECORD IS CLEAR, THE CODE SECTION

16   THAT I AM LOOKING AT AS FAR AS THE UTAH CONVICTION

17   BEING EQUIVALENT TO A CALIFORNIA SECTION, IS ONLY

18   PENAL CODE SECTION 192, SUBDIVISION THREE.

19         WE HAD DISCUSSIONS THROUGHOUT ABOUT OTHER

20   CODE SECTIONS, INCLUDING 191.5, AND POTENTIALLY EVEN

21   SOME OTHER SECTIONS.

22         THE ONLY ONE I THINK THAT IS APPLICABLE IS

23   PENAL CODE SECTION 192 (C) (3).

24         OKAY.  NOW, I WENT THROUGH AND LOOKED AT THE

25   CONDUCT, AND THE ELEMENTS IN CALIFORNIA.

26         I AM NOT USING, FOR PURPOSE OF MY DECISION,

27   THE PROBABLE CAUSE STATEMENT.  I AM USING ONLY THE

28   CONDUCT THAT WAS BROUGHT OUT IN THE CHANGE OF PLEA

1    FORM, AND THE ACTUAL CHANGE OF PLEA STATEMENTS BY THE

2    DEFENDANT.

3            IN DOING SO, IT IS MY OPINION, AND MY RULING,

4    THAT THOSE ELEMENTS ARE -- THAT ADMITTED CONDUCT IS

5    THE SAME AS THE ELEMENT IN PENAL CODE SECTION 192

6    PAREN C PAREN 3.

7            OKAY.  SO, THE MOTION TO STRIKE THE STRIKE AS

8    BEING INVALID IS DENIED.

9            THIS OBVIOUSLY DOES NOT NEGATE THE ABILITY TO

10   MAKE A MOTION TO STRIKE THE STRIKE FOR THE REASONS I

11   WOULD ANTICIPATE WOULD ALSO BE MADE.

12            OKAY.  ON THE ISSUE OF SENTENCING,

13   MR. SHUFELT, DO YOU WAIVE ARRAIGNMENT FOR PURPOSE OF

14   SENTENCING?

15    MR. SHUFELT:  YES, I DO, YOUR HONOR.

16    THE COURT:  OKAY.  IS THERE ANY LEGAL CAUSE WHY

17   JUDGMENT SHOULD NOT NOW BE PRONOUNCED?

18    MR. SHUFELT:  NO, THERE IS NOT.  THERE'S A COUPLE

19   OF THINGS I'D LIKE TO ADDRESS TO THE COURT BEFORE YOU

20   PRONOUNCE JUDGMENT.

21    THE COURT:  OKAY.  IS IT A LEGAL CAUSE?  IS IT

22   LIKE A MOTION?

23    MR. SHUFELT:  IT'S A MOTION.

24    THE COURT:  OKAY.  GO AHEAD THEN.

25    MR. SHUFELT:  IN REGARDS TO THE STRIKE ALLEGATION,

26   I JUST WOULD LIKE TO MAKE A MOTION THAT THE SINCE THE

27   COURT'S RULING IS THAT THE EQUIVALENT PENAL CODE FOR

28   THE UTAH ACCIDENT WOULD BE CALIFORNIA -- WOULD BE THE

1    192 SUB C, 3, I WOULD JUST LIKE TO ARGUE THAT THAT IS

2    OUTSIDE OF THE CRITERIA MENTIONED IN 667, PENAL CODE

3    STRIKE ALLEGATION, WHICH STATES -- 667, FOR STATING A

4    SERIOUS FELONY WITHIN THE MEANING OF THIS SUBDIVISION

5    OF SECTION 1192.7.  IN THE SECTION 1192, 11927 (SIC),

6    WHICH IT LISTS THE SERIOUS FELONY ALLEGATIONS.  I'M

7    SORRY IT IS 1192.7.

8         AND THE SUBDIVISION, PENAL CODE 192

9    SUBDIVISION (C)(3), DOES NOT APPEAR IN THE ACTUAL

10   LISTING OF THE 1192.7.

11        AND, SO, I WOULD SAY THAT SINCE IT'S CLEAR

12   THAT IN THE STATUTE OF 667 THAT ALL SERIOUS FELONIES

13   MUST APPEAR WITHIN 1192.7, THAT IT'S NOT A SERIOUS

14   FELONY BECAUSE IT'S NOT LISTED.

15   THE COURT:  PEOPLE'S POSITION ON THAT ISSUE?

16   MR. HELLSTROM:  WE REVIEWED THIS ONCE BEFORE, YOUR

17   HONOR.  I BELIEVE IT'S 1192.8.  I'LL TAKE A LOOK AT

18   IT.  I BROUGHT MY CODE SECTION WITH ME.

19   THE COURT:  I'LL TRY TO GET MY NOTES.

20   MR. HELLSTROM:  1192.8 SPECIFICALLY LISTS AND

21   INCLUDES 192(C)(3) AS A SERIOUS FELONY.

22        AND SPECIFICALLY IT REFERS TO 1192.7.  IT IS

23   EXPRESSLY INCLUDED.  192(C)(3) IS A SERIOUS FELONY.

24   IT IS A STRIKE OFFENSE IN THE STATE OF CALIFORNIA

25   PURSUANT TO 1192.8.

26   THE COURT:  RESPONSE?

27   MR. GUTHRIE:  MY RESPONSE WOULD BE THAT IT APPEARS

28   OUTSIDE THE STATUTE REFERRED TO IN 667, WHICH REFERS

```
1        TO ALL SERIOUS FELONIES BEING LISTED IN 1192.7.

2             IF THE LEGISLATURE COULD HAVE AMENDED THE

3   PROPER STATUTE, WHICH THEY COULD HAVE INCORPORATED

4   THIS INSIDE 1192.7, BUT IT DOES NOT APPEAR THERE.  SO,

5   IT WOULD BE MY POSITION THAT IT APPEARS OUTSIDE OF THE

6   STATUTE AND, THEREFORE, DOESN'T QUALIFY.

7        THE COURT:  THE MOTION IS DENIED.

8             MR. SHUFELT, YOU SAID YOU HAD SEVERAL.  WOULD

9   YOU LIKE --

10       MR. SHUFELT:  YEAH.  THE OTHER ONE WOULD BE THAT

11  THE -- THAT ON THE COMPLAINT IT LISTS THE UTAH STRIKE

12  ALLEGATION AS -- THE CASE NUMBERS ARE NOT EXACTLY WHAT

13  APPEARS ON THE PRINTOUT OF WHAT THE CONVICTION WAS

14  PLACED UNDER.

15            THERE'S A CHANGE OF PLEA REFERRING TO A CASE

16  NUMBER 951900091, AND THE STATEMENT OF DEFENDANT,

17  CERTIFICATE OF COUNSEL AND ORDER, APPEARS UNDER ACTION

18  NUMBER 941013828 AT BEST, WHICH IS ALSO WHAT APPEARS

19  ON THE COMPLAINT.

20            AND BECAUSE THERE'S A DISCREPANCY IN THE CASE

21  NUMBERS, I WOULD ARGUE THAT THE CHANGE OF PLEA

22  TRANSCRIPT WOULD NOT BE PERMISSIBLE AS EVIDENCE IN

23  THIS STRIKE ALLEGATION.

24       THE COURT:  AS FAR AS THAT'S CONCERNED, WE'VE

25  ALREADY HAD THE MOTION AS TO THE VALIDITY OF THE

26  STRIKE ALLEGATION, AND I'VE RULED.  SO, I BELIEVE THIS

27  IS UNTIMELY.

28            NEXT ISSUE?
```

```
 1        MR. SHUFELT:  THIS IS A NEW GROUNDS FOR A MOTION,
 2   SO --
 3        THE COURT:  I'VE ALREADY HAD THE MOTION AND RULED.
 4   YOU NEED TO BRING FORTH ALL OF THOSE TYPES OF ISSUES
 5   AT THAT TIME.
 6            IN ANY EVENT, IT WOULDN'T CARRY ANY WEIGHT.
 7        MR. SHUFELT:  AND THEN I WAS JUST GOING TO ADD IF
 8   THE COURT IMPOSES THE FIVE-YEAR ENHANCEMENT --
 9        THE COURT:  THAT'S A SENTENCING ISSUE.  I'M NOT
10   THERE YET.  THIS IS LEGAL CAUSE WHY JUDGMENT SHOULD
11   NOT NOW BE PRONOUNCED.
12        MR. SHUFELT:  I WOULD IMAGINE THE PROBATION REPORT
13   WOULD FALL UNDER THAT CATEGORY AS WELL.
14        THE COURT:  WE'LL DEAL WITH THAT.
15        MR. SHUFELT:  I HAVE JUST A QUESTION ABOUT THE
16   SETTING OF THIS HEARING.
17        THE COURT:  GO AHEAD.
18        MR. SHUFELT:  I WAS UNDER THE IMPRESSION THAT IT
19   WAS CLEAR ON THE RECORD THAT WE WERE GOING TO DO THIS
20   ON THE 21ST.  I HAD PEOPLE THAT WERE SUPPOSED TO BE
21   HERE YESTERDAY THAT CAME, AND, SO, I WOULD LIKE TO
22   ADDRESS AN ISSUE TO THE COURT.
23            WE SCHEDULED THIS FOR AUGUST THE 21ST IN THE
24   MORNING, AND HERE WE ARE ON THE 22ND.
25        THE COURT:  THIS IS NEWS TO ME.
26            I'LL HAVE TO HAVE THE COURT REPORTER READ
27   BACK THE ORDER.
28        MR. SHUFELT:  JUST, FOR THE RECORD, MAY I OBJECT
```

# EXHIBIT COVER PAGE

**E**

EXHIBT

Description of this Exhibit: Opening Brief, on Direct Appeal

Case No.
People v.    Case No. DD40805

Number of pages to this Exhibit ___33___ pages.    (41-73)

## JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☒ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

In the
## COURT OF APPEAL OF THE STATE OF CALIFORNIA
### FOURTH APPELLATE DISTRICT, DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | NO. D040805 |
| ) | |
| Plaintiff and Respondent, ) | (Super. Ct. No. SCD163510) |
| ) | |
| v. ) | |
| ) | |
| GEORGE W. SHUFELT, ) | |
| ) | |
| Defendant and Appellant. ) | |

Appeal From The Superior Court Of San Diego County
Judge Melinda J. Lasater, Presiding

# APPELLANT'S OPENING BRIEF

LEWIS A. WENZELL
Attorney At Law
State Bar No. 54786
5070 Narragansett Ave., #303
San Diego, CA 92107
(619)224-9422

Attorney For Appellant
GEORGE W. SHUFELT

By appointment of the Court of Appeal
under the Appellate Defenders, Inc,
independent case system

In the
## COURT OF APPEAL OF THE STATE OF CALIFORNIA
### FOURTH APPELLATE DISTRICT, DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )    NO. D040805
)
     Plaintiff and Respondent,     )     (Super. Ct. No. SCD163510)
)
v.     )
)
GEORGE W. SHUFELT,     )
)
     Defendant and Appellant.     )
_____)

Appeal From The Superior Court Of San Diego County
Judge Melinda J. Lasater, Presiding

# APPELLANT'S OPENING BRIEF

LEWIS A. WENZELL
Attorney At Law
State Bar No. 54786
5070 Narragansett Ave., #303
San Diego, CA 92107
(619)224-9422

Attorney For Appellant
GEORGE W. SHUFELT

By appointment of the Court of Appeal
under the Appellate Defenders, Inc,
independent case system

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF APPEALABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      1.    Appellant's Utah conviction was not a "serious
felony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      2.    The court prejudicially erred in removing from
the jury the question of the nature of Appellant's prior
conviction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

PROOF OF SERVICE

E-052 43

# TABLE OF AUTHORITIES

**Cases:**

*Apprendi v. New Jersey* (2000) 530 U.S. 466 . . . . . . . . . . . . . . . . 24, 25, 26, 27

*Draeger v. Reed* (1999) 69 Cal.App.4th 1511 . . . . . . . . . . . . . . . . . . . . . . . . 22

*Malcolm v. Superior Court* (1981) 29 Cal.3d 518 . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Allen* (1999) 21 Cal.4th 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*People v. Bennett* (1991) 54 Cal.3d 1032 . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Best* (1997) 56 Cal.App.4th 41 . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*People v. Carr* (1998) 66 Cal.App.4th 109 . . . . . . . . . . . . . . . . . . . . . . . . . 3

*People v. Epps* (2001) 25 Cal.4th 19 . . . . . . . . . . . . . . . . . . . . . . 24, 25, 27

*People v. Falsetta* (1999) 21 Cal.4th 903 . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v. Haney* (1994) 26 Cal.App.4th 472 . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*People v. Houck* (1998) 66 Cal.App.4th 350 . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Kelii* (1999) 21 Cal.4th 452 . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*People v. Minor* (1994) 28 Cal.App.4th 431 . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Myers* (1993) 5 Cal.4th 1193 . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*People v. Otto* (2001) 26 Cal.4th 200 . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Reed* (1996) 13 Cal.4th 217 . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Williams* (1990) 222 Cal.App.3d 911 . . . . . . . . . . . . . . . . . . . . . . 22

*Shupe v. Wasatch Elec. Co., Inc.* (Utah 1976) 546 P.2d 896 . . . . . . . . . . . . . . . 16

*State v. Durrant* (Utah 1977) 561 P.2d 1056 . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State v. Chavez* (Utah 1979) 605 P.2d 1226 . . . . . . . . . . . . . . . . . . . . . . 14, 16

*State v. Ruben* (Utah 1983) 663 P.2d 445 . . . . . . . . . . . . . . . . . . . . . . 15, 16

**California Statutes:**

Penal Code

§ 148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

§ 459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 460 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 496 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

§ 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 1170.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 1192.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

§ 1192.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 1237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Vehicle Code:**

§ 10851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Utah Statutes:**

§ 76-3-203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 76-3-402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 76-5-207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Other Authorities:**

California Jury Instructions Criminal (6th ed. 1976, July 2002 Pocket Pt.)   23, 25

E-058 46

# STATEMENT OF THE CASE

On December 5, 2001, an eleven count information was filed against

Defendant and Appellant, GEORGE W. SHUFELT ("Appellant") charging

him with offenses occurring on August 12, 2001. (CT 1-5.) Count 1 charged

the theft of William Wadsworth's vehicle in violation of Vehicle Code section

10851(a). Count 2 charged a related offense of receiving a stolen motor

vehicle in violation of section 496d. Counts 3 through 10 consisted of mated

pairs of burglary of an inhabited dwelling (§§ 459 and 460) and receiving

stolen property (§ 496(a)) charges relating to four attached garages. The

burglary and receiving charges respectively were: Counts 3 and 9 as to the

Goedhuys residence, Counts 4 and 8 as to the Rahilly residence, Counts 5 and

10 as to the Hammerling residence, and Counts 6 and 7 as to the McCarthy

residence. Count 11 charged misdemeanor resisting arrest in violation of

section 148(a)(1). The information alleged Appellant's automobile homicide

conviction in Utah in 1995 constituted both a serious felony (five-year) prior

(§§ 667(a)(1), 668, 1192.7(c)) and a strike prior (§§667(b)-(i), 668, 1170.12).

The details and rulings regarding this prior are the subject of the sole argument

in this brief.

After numerous and lengthy pretrial and in limine motions not pertinent

here,[2/] jury trial commenced on June 17, 2002. (RT 1429.) On June 27, 2002,

the jury returned verdicts finding Appellant guilty on all counts. (CT 704-714 ,

RT 2899-2900.) At a bifurcated trial, the jury found Appellant had suffered

the Utah automobile homicide conviction. (CT 669, 717; RT 2952.) The sole issue presented to the jury was whether Appellant had suffered the prior conviction. (RT 2940-2941.) The legal significance of that conviction is the subject of the argument below.

On August 22, 2002, Appellant was sentenced to a total of 19 years and 8 months. (CT 604-606; RT 3185-3188.) On one burglary charge (Count 3), Appellant received a sentence of eight years (the four-year midterm doubled because of the strike). Consecutive sentences of two years, eight months (1/3 the midterm doubled) were imposed on two other burglary charges (Counts 4 and 5). A two-year, eight-month sentence was imposed on the fourth burglary charge (Count 6) to run concurrently to the other sentences. A one-year, four-month consecutive sentence was imposed on the unlawful taking of a vehicle charge (Count 1). A five-year sentence was imposed for the serious felony prior. A time-served sentence was imposed on the misdemeanor charge. Sentences on all the remaining counts were properly stayed under section 654. (See *People v. Allen* (1999) 21 Cal.4th 846, 865-867; *People v. Carr* (1998) 66 Cal.App.4th 109, 114.)

A timely notice of appeal was filed on August 28, 2002. (CT 597.)

# ARGUMENT

### 1.    Appellant's Utah conviction was not a "serious felony."

The sentencing enhancement in subdivision (a)(1) of section 667 requires a consecutive five-year term to be imposed on "any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony ... ."  Subdivisions (d)(1) and (e)(1) of section 667 combine to require that the prison term for any felony conviction of a person who has previously been convicted of a serious (or violent) felony "shall be twice the term otherwise provided as punishment for the current felony conviction."

The question here is whether Appellant's prior Utah conviction constituted a "serious felony" for purposes of section 667.

In *People v. Myers* (1993) 5 Cal.4th 1193, the court construed section 667(a) and held "the trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all of the elements of the comparable California serious felony offense." (*Id.* at p. 1195.) Thus, under *Myers*, the prosecution can go behind the statutory elements of the crime to

11

prove that defendant's actual crime constituted a felony under California law.

In 1995, Appellant was convicted in Utah of automobile homicide (CT 390-414), a third degree felony, in violation of Utah Code section 76-5-207, subsection (1) ("section 76-5-207(1)") which provides:

> (1) (a) Criminal homicide is automobile homicide, a third degree felony, if the person operates a motor vehicle in a negligent manner causing the death of another and:
>
> (i) has sufficient alcohol in his body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08 grams or greater at the time of the test;
>
> (ii) is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle; or
>
> (iii) has a blood or breath alcohol concentration of .08 grams or greater at the time of operation.
>
> (b) For the purpose of this subsection, "negligent" means simple negligence, the failure to exercise that degree of care that reasonable and prudent persons exercise under like or similar circumstances.

(Utah Code Ann., § 76-5-207, subsec. (1).)  A person convicted of a third degree felony is punishable by imprisonment for up to five years. (Utah Code Ann., § 76-3-203, subsec. (2)(c).)  Appellant received a sentence of 90 days in

jail as a condition of probation on this charge.[3] (CT 414.)

The prosecution contended (e.g., CT 452-456) the conduct reflected in the record of Appellant's Utah conviction showed commission of an offense that would be the equivalent of a section 192(c)(3) -- vehicular homicide -- conviction which is a serious felony (§§ 1192.7(c)(8), 1192.8). Section 192(c)(3) provides:

> Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: ...
>
> (c) Vehicular-- ...
>
> (3) Driving a vehicle in violation of Section 23140, 23152, or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in violation of Section 23140, 23152, or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

Appellant, on the other hand, contended the conduct reflected in the record of the Utah conviction did not show a violation of section 192(c)(3). (E.g., CT 380-387.)  Appellant noted the Utah statute was different from the California statute because, unlike the California statute, the Utah statute did

---

3.    Utah has a wobbler provision as regards its third degree felonies somewhat similar to section 17. (Utah Code Ann., § 76-3-402, subsec. (2).) However, this section requires a defendant to formally move for reduction of his offense to a misdemeanor after successfully completing a probationary period.  No such relief was requested by Appellant.

not require an act of negligence in addition to driving under the influence.

(*Ibid.*) Section 192(c)(3) requires a separate act of negligent driving in

addition to the fact of driving while intoxicated. (*Ibid.*) Thus, the mere act of

driving a motor vehicle under the influence of alcohol does not satisfy the

requirement of an unlawful act of negligent operation of the vehicle. (*People*

*v. Bennett* (1991) 54 Cal.3d 1032, 1039; *People v. Minor* (1994) 28

Cal.App.4th 431, 437-438.) Appellant's contention regarding the differing

elements was correct. Moreover, and more importantly, this difference is

critical to assessing whether or not the record of Appellant's Utah conviction

showed conduct that would constitute a violation of section 192(c)(3).

Although Appellant can find no Utah cases directly on point, the

history of section 76-5-207(1) shows that in Utah the mere act of drunk

driving suffices to constitute the negligence required to violate the statute.

There need not be any separate act of negligent driving.

In *State v. Durrant* (Utah 1977) 561 P.2d 1056, the Utah Supreme

Court ruled that section 76-5-207(1) allowed the act of driving under the

influence to constitute the act of negligence specified under the statute. (*Id.* at

p. 1058.) [4] Two years later, in *State v. Chavez* (Utah 1979) 605 P.2d 1226,

_____

4.    The statute as considered in *Durrant* was worded slightly differently
but was operatively exactly the same as the statute under which Appellant was
convicted.  Section 76-5-207 at the time of *Durrant* provided: "Criminal
homicide constitutes automobile homicide if the actor, while under the

(continued...)

14

the Utah Supreme Court overruled *Durrant*.

> We are therefore of the opinion that our previous
> cases holding that automobile homicide requires
> only proof of simple negligence under Section 76-
> 5-207 are in error, and are overruled. And we hold
> that a conviction of automobile homicide requires
> an instruction on criminal negligence as that term
> is defined in Section 76-2-103(4), and a
> determination thereof by the jury.

(*Id.* at p. 1228.) In sum:

> Prior to the *Chavez* decision, the simple
> negligence standard could be satisfied by a mere
> showing that the defendant had driven a vehicle
> while intoxicated. After *Chavez*, with the advent
> of the criminal negligence standard, the elements
> of intoxication and negligence could no longer be
> considered one and the same; rather, they became
> separate substantive elements.

(*State v. Ruben* (Utah 1983) 663 P.2d 445, 447.)

The Utah Legislature responded to *Chavez* by amending section 76-5-

207 "to reinstate simple negligence as the requisite state of mind." (*State v.*

*Ruben, supra,* 663 P.2d at p. 447, fn.6.) The statute took its present form

where subsection (1) of section 76-5-207 (of which Appellant was convicted)

is the simple negligence automobile homicide provision while subsection (2)

creates a separate second degree felony offense equivalent to California's

---

4.    (...continued)
influence of intoxicating liquor, a controlled substance, or any drug, to a
degree which renders the actor incapable of safely driving a vehicle, causes the
death of another by operating a motor vehicle in a negligent manner."

15                                                                              E–060

gross negligence vehicular homicide provision (§ 192(c)(1)).

Like California, in Utah it is assumed that the legislature is aware of the courts' construction of state statutes. (*Shupe v. Wasatch Elec. Co., Inc.* (Utah 1976) 546 P.2d 896, 898.)  When a legislature amends a statute so as to emphasize and restate language that appeared in the statute prior to its reinterpretation by the supreme court, it must be assumed the legislature intended to have the statute be interpreted as it was prior to the court's reinterpretation. (See *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 528, [because the Legislature  "presumably was aware of" the statute's prior "judicial interpretation" when it amended the statute, its retention of "parallel language in the revised statute" requires that we "construe the present provision ... in conformity with the established judicial interpretation"].) When the Utah Legislature amended section 76-5-207(1) to restate and emphasize a simple negligence standard after the *Chavez* decision had interpreted the statute differently, it must be presumed the legislature intended for the statute to mean what the court's prior interpretations had said it meant. Under the decisions prior to *Chavez*, it was "appropriate to consider intoxication and negligence as a single element" (*State v. Ruben, supra,* 663 P.2d at p. 448) and this is the interpretation that governs as respects Appellant's Utah conviction.  Consequently, the elements of the two statutes -- section 192(c)(3) and section 76-5-207 -- are in fact different since the former

16

E–061

requires a separate act of negligence in addition to the drunk driving while the

latter does not. The conduct reflected in the record of conviction must be

assessed in light of this fact.

Indeed, without recognition that in Utah driving under the influence

and causing the death of another is all that is necessary to violate section 76-5-

207, the Utah trial court's explanation of the charge to Appellant makes no

sense. After the original charge against Appellant -- a violation of section 76-

5-207(2), criminal (gross) negligence automobile homicide -- was amended by

interlineation to charge only a violation of section 76-5-207(1) (CT 390), the

court advised:[5/]

---

5.     The information against Appellant read:

The undersigned Det. Frank Werner - Salt Lake City Police
Department, under oath states on information and belief that the
defendant, committed the crime of:
COUNT I
CRIMINAL HOMICIDE, AUTOMOBILE HOMICIDE, a
~~second~~ third Degree Felony, at 500 South State Street, in Salt
Lake County, State of Utah, on or about August 19, 1994, in
violation of Title 76, Chapter 5, Section 207(~~3~~1), Utah Code
Annotated 1953, as amended, in that the defendant, GEORGE
WILLIAM SHUFELT, a party to the offense, did operate a
motor vehicle while having a blood alcohol content of .08 grams
or greater by weight, or while under the influence of alcohol or
any drug, or the combined influence of alcohol and any drug, to
a degree which rendered the actor incapable of safely operating
the vehicle, and caused the death of Frank N. Hudleson by
operating the vehicle in a ~~criminally~~ negligent manner.

(CT 390. Deletions shown by strike-through, additions by underline.)

(continued...)

E-062

> The Court: What it all boils down to is the
> allegation of the state that you will be pleading
> guilty to what would be a third degree felony, and
> that while intoxicated, operated a vehicle in such a
> fashion as that you caused the death of a Frank
> Huddleson. That's the sum and substance of the
> allegation now that it is amended. Do you
> understand that?
>
> The Defendant: Yes, Your Honor.

(CT 405.) This admonition clearly indicates that all that is necessary is drunk

driving coupled with a death while so driving. Nothing in it suggests there

must be some additional act of negligence as is required by section 192(c)(3).

The change of plea form, upon which the prosecution relied, does not

support a different conclusion. It reads:

> The elements of the crime of which I am charged
> are as follows: (1) On or about August 19, 1994.
> the defendant was in actual physical control of an
> operable motor vehicle: (2) At that time the
> defendant had a blood alcohol content of .08% or
> greater by weight; (3) That the defendant operated
> the vehicle in a negligent manner; (4) That in
> doing so the defendant caused the death of Frank
> N. Hudleson; (3) All acts occurred in Salt Lake
> County. State of Utah.

(CT 393.) Although the element of negligence is mentioned separately in this

form, it does not state that the act of negligence must be separate from the

negligence which arises from the simple fact of in driving a vehicle while

---

5.      (...continued)

18

under the influence of alcohol.

The change of plea form also says:

> My conduct, and the conduct of other persons for
> which I am criminally liable, that constitutes the
> elements of the crime charges are as follows: On
> August 19, 1994, the defendant was involved in an
> automobile accident in Salt Lake City, Utah, that
> resulted in the death of the driver of an automobile
> struck by the defendant's vehicle. The defendant's
> blood alcohol content was greater than .08% b
> weight.

(CT 393.) Once again, however, this statement does not indicate that it was an

act of negligence separate and apart from the drunk driving which was the

cause of the accident.

One other portion of the record of conviction is relevant regarding

Appellant's conduct in committing the section 76-5-207(1) offense. Toward

the end of the plea proceedings, the court said:

> The Court: Now in this particular circumstance,
> Mr. Shufelt, the elements, or the basis for the
> state's allegations are as follows, and listen
> carefully to these, because by pleading guilty you
> are telling me the following things are true. First,
> that this incident occurred at 500 South State
> Street, here in Salt Lake County; secondly, that it
> occurred on or about August 19th of 1994, that
> you were the person that committed the offense,
> and that you at that time operated a motor vehicle
> while you had a blood alcohol content of .08
> grams or greater, and that you were, in fact, under
> the influence of alcohol, and *that* rendered you
> incapable of safely operating your vehicle. And in
> operating the vehicle, under those circumstances,

19

E–064

> you caused the death of Frank Huddleson, in that
> you operated your vehicle in a negligent manner.
> That means a less than safe manner.

(CT 407.) This passage is equivocal at best. The single underlined portion

clearly indicates it is the fact of drunk driving which rendered Appellant

incapable of safely operating his vehicle, i.e., negligent. It is arguable,

however, the double underlined portion suggests there was some act of

additional negligence that caused the death. On the other hand, the tying of

"negligent manner" to not operating the vehicle in a "safe manner" in the

double underlined portion can be understood as simply reiterating the earlier

(single underlined) statement that drunk driving in itself suffices to show

negligence. Thus, this particular admonition does not prove that Appellant's

Utah conviction was based upon some separate act of negligence as is required

in order for the Utah conviction to be the equivalent of a section 192(c)(3)

conviction.

The only thing in the Utah court files that would aid the prosecution are

recitations in a "probable cause statement" which was attached to the

information.[6] (CT 416.) However, the court below specifically stated it was

_____

6.     The statement reads (CT 416):

Affiant, Detective with Salt Lake City Police Department bases
his information on report no. 94-118755 and conversations with
other officers and witnesses which indicate that at above time
and place :

(continued...)

20

E–065

not relying on this probable cause statement. (RT 3087.) This was correct.

The statements as to how the accident occurred were total hearsay being based

on the affiant's conversations with other people and his inspection of a police

report. Such hearsay is inadmissible to prove up a prior conviction. For

example, in *People v. Best* (1997) 56 Cal.App.4th 41, the prosecutor attempted

to prove a prior assault conviction was a serious felony by showing the

defendant personally used a dangerous or deadly weapon. The prosecutor

introduced the investigating police officer's hearsay preliminary examination

(conducted pursuant to Proposition 115) testimony the victim said the

defendant had swung a bat at her. (*Id.* at p. 45.) The Court of Appeal reversed

the serious felony finding because there was no hearsay exception for this

"additional layer of hearsay," and without the officer's inadmissible testimony

---

6.      (...continued)
        1. Defendant was driving his truck east-bound on 500 South
        which goes one-way westbound.

        2. At the intersection with State Street, Defendant entered the
        intersection while traffic light was green for north and south
        bound traffic.

        3. Defendant struck the victim's car on the driver's side door and
        the driver died as a result of the injuries he sustained.

        4. Defendant's signs of impairment include strong odor of
        alcohol, incoherent speech, and defendant's admissions that he
        had been driving.

        5. Defendant consented to his blood being drawn and it is
        pending analysis.

E-066

the serious felony allegation was not proven. (*Id.* at pp. 45-47. See also *People v. Reed* (1996) 13 Cal.4th 217, 230 [statements in probation report from people other than the defendant were inadmissible hearsay for proof of a prior conviction]; *People v. Williams* (1990) 222 Cal.App.3d 911, 917 [same]. Cf. *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1523 [police report is not part of the record of conviction and cannot be considered to prove up out-of-state prior drunk driving conviction in driver's license suspension hearing].)[7/]

In light of the foregoing, this court should rule that, as a matter of law, Appellant's Utah conviction did not qualify as a strike and did not authorize imposition of the five-year enhancement or the doubling of Appellant's prison terms. But even if this court does not so rule, the use of the conviction for doubling Appellant's sentences and imposing the additional five years was still in error because the evidence was insufficient to show the prior conviction involved conduct making it the equivalent of the serious felony of section 192(c)(3).

> To establish a prior conviction
> enhancement allegation, the prosecutor must prove
> beyond a reasonable doubt all elements of the
> enhancement, i.e., the defendant was convicted,
> the conviction was of an offense within the

---

7.     Appellant did not adopt the probable cause statement as the basis for his guilty plea. (Cf. *People v. Otto* (2001) 26 Cal.4th 200, 211 [in sexually violent predator proceeding police report properly used to show basis for plea where defendant had stated when entering the plea that the factual basis for it was contained in the police reports].)

22

E–067

> definition of the particular statute invoked, and
> any other element required by the statute alleged
> (e.g., proof defendant served a term in state prison
> if that is an element of the enhancement).

(*People v. Haney* (1994) 26 Cal.App.4th 472, 475.)  Thus, where, as here, the prosecution is going beyond the least adjudicated elements of an offense and relying on proof that a defendant's conduct during commission of a prior offense satisfies the elements of a particular California statute, the prosecution bears the burden of proving the conduct beyond a reasonable doubt. (*People v. Houck* (1998) 66 Cal.App.4th 350, 354, 358.)  Here given the totality of the record of conviction and the nature of a section 76-5-207(1) offense as outlined above, there was no proof beyond a reasonable doubt that Appellant's conduct underlying the Utah conviction satisfied the elements of section 192(c)(3).

## 2.  The court prejudicially erred in removing from the jury the question of the nature of Appellant's prior conviction.

As respects proof of Appellant's prior Utah conviction, the trial court instructed the jury simply that it had to find whether or not Appellant had actually suffered the Utah conviction. (RT 2940-2941.)  This was in accord with the 2000 Revision of CALJIC 17.26. (California Jury Instructions - Criminal (July 2002 Pocket Part), 17.26, pp. 210-211.)  This 2000 revision was based upon *People v. Kelii* (1999) 21 Cal.4th 452.

23

E-068

In *Kelii*, the court held the question whether a prior conviction is a serious felony for purposes of the three strikes law was for the court, not the jury. (*Id.* at p. 457.) The statutory right to a jury trial is restricted "to hav[ing] a jury decide whether the defendant 'has suffered' ... the prior conviction." (*Ibid.*) Then along came *Apprendi v. New Jersey* (2000) 530 U.S. 466, which held that, under the Fourteenth Amendment to the United States Constitution: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

After *Apprendi* came *People v. Epps* (2001) 25 Cal.4th 19. *Epps* ruled that despite statutory amendments to section 1025 governing trial of prior conviction allegations the question as to the authenticity, accuracy, or sufficiency of convictions records -- i.e., the question whether the alleged prior conviction ever occurred -- is for jury determination. (*Id.* at p 26, 27.) However, in the concluding portion of the *Epps* opinion, the court said:

> The Los Angeles County Public Defender as an amicus curiae argues we should reconsider our holding in *Kelii* in light of the high court's decision in *Apprendi, supra,* 530 U.S. 466, 120 S.Ct. 2348, and thereby confer a more significant role on the jury. Specifically, amicus curiae argues *Apprendi* gives defendants a right to have a jury decide whether a prior conviction is a serious felony for purposes of the three strikes law. *Apprendi,* however, reaffirms that defendants have no right to a jury trial of "the fact of a prior conviction" (*id.*

24

at p. 490, 120 S.Ct. at p. 2362), and here, at least, only the bare fact of the prior conviction was at issue, because the prior conviction (kidnaping) was a serious felony by definition under section 1192.7, subdivision (c)(20). *We do not now decide how Apprendi would apply were we faced with a situation like that at issue in Kelii, where some fact needed to be proved regarding the circumstances of the prior conviction -- such as whether a prior burglary was residential -- in order to establish that the conviction is a serious felony.*

(*People v. Epps, supra*, 25 Cal.4th at p. 28; emphasis added.)

This case requires an answer to the question left open in *Epps*.

Appellant proposed an instruction that would have, albeit inartfully,

required the jury to determine whether Appellant's Utah conduct fit the

definition of a section 192(c)(3) offense.[8/] (CT 487.) In argument to the court,

defense counsel cited the above quoted language of *Epps* with regard to

*Apprendi*. (RT 2912.) The prosecution argued the determination of whether or

not the prior conviction constituted a serious felony is "uniquely a judicial

task." (RT 2913.) The court had earlier determined the sole question for jury

---

8.    The instruction was based on the CALJIC 17.26 instruction contained in the bound volume of CALJIC instructions. (California Jury Instructions -- Criminal (6th ed. 1996), No. 17.26, Vol. 2, pp. 622-623.) The question does not arise in this case as to whether or not the trial court should have corrected anything in this instruction that was incorrect. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 924 [trial court had responsibility to correct proposed instruction that contained "useful nuggets" of law].) The court had earlier ruled definitively that the jury was not permitted to determine whether or not Appellant's prior conviction contained elements necessary to constitute a serious felony under California law. (RT 2896-2897.)

E-070

determination was whether or not the conviction had occurred (RT 2896-2897) and the court refused to revisit that ruling and denied Appellant's requested instruction (RT 2913).

Here, as outlined in the argument above, the fact of whether or not Appellant had engaged in a negligent act in addition to his act of drunk driving in Utah was at issue because, without commission of an additional act of negligence, Appellant's Utah conviction would not be the equivalent of the relevant California serious felony (section 192(c)(3)).

As noted above, *Apprendi v. United States, supra,* 530 U.S. 466, held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) This "fact of a prior conviction" does not apply here. The prior conviction exception stems from the view that "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find [some other] fact under a lesser standard of proof ." (*Apprendi v. United States, supra,* 530 U.S. at p. 496.)  In this case, by contrast, more than the mere fact of the prior conviction had to be shown. Specifically, merely proving the fact of the prior conviction was not enough to

26

bring Appellant within the purview of section 667.  Rather, the trial court had

to find an extra fact -- that Appellant committed an act of negligence separate

and distinct from the negligence involved in drunk driving -- and that was a

fact for which Appellant was never charged.

Under these circumstances, under *Apprendi* and *Epps*, the

determination of whether Appellant committed an act of negligence in

addition to driving drunk was for the jury.

## CONCLUSION

For the foregoing reasons, the finding that Appellant's Utah conviction

constituted a serious felony was in error.  On the basis of this error, this court

can vacate Appellant's sentence and remand for resentencing without

consideration of the Utah conviction.  Alternatively, the verdict finding

Appellant suffered the Utah conviction should be set aside and the case

remanded for a new trial on the prior conviction issue.


Dated:  March 20 , 2003                    Respectfully submitted,


                                           Lewis A. Wenzell

                                           Attorney For Appellant
                                           GEORGE W. SHUFELT

                                           By appointment of the Court of Appeal
                                           under the Appellate Defenders, Inc,
                                           independent case system

E-072

## PROOF OF SERVICE
### *PEOPLE* v. *GEORGE W. SHUFELT* -- No. D040805

I, the undersigned, declare under the penalty of perjury, that I am a citizen of the United States, that my office address is as indicated below, that I am over the age of eighteen years, and that I am not a party to the within entitled action.

I further declare that on the date set forth below the foregoing APPELLANT'S OPENING BRIEF was served on each of those whose name and address appears below by placing a true copy thereof in a sealed envelope addressed as indicated below and by mailing the said envelope by affixing first class postage thereon and then depositing the said envelope in the United StatesMail at San Diego, California, which is within the county in which I am employed:

ATTORNEY GENERAL'S OFFICE
STATE OF CALIFORNIA
P.O. BOX 85266
SAN DIEGO, CA 92186-5266

PATRICK DUNAH
APPELLATE DEFENDERS INC.
555 W. BEECH STREET, #300
SAN DIEGO, CA 92101

SUPERIOR COURT OF SAN DIEGO
COUNTY (Attention: J. LASATER)
P.O. BOX 122724
SAN DIEGO, CA 92112-2724

GEORGE W. SHUFELT
# T65128
P.O. BOX 2199
BLYTHE, CA 92226

DISTRICT ATTORNEY'S OFFICE
SAN DIEGO COUNTY
P.O. BOX 121011
SAN DIEGO, CA 92112-1011

CHARLES N. GUTHRIE
ATTORNEY AT LAW
444 WEST "C" ST., #140
SAN DIEGO, CA 92101

Dated: March 20, 2003

LEWIS A. WENZELL
5070 Narragansett Ave., #303
San Diego, CA 92107
619/224-9422

E-073

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: *Respondents Brief, Direct Appeal*

Case No.
People v.

Number of pages to this Exhibit ___10___ pages.   (74~83)

## JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION ONE

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

v.

**GEORGE W. SHUFELT,**

Defendant and Appellant.

D040805

San Diego County Superior Court No. SCD163510
The Honorable Melinda J. Lasater, Judge

**RESPONDENT'S BRIEF**

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

GIL P. GONZALEZ
Supervising Deputy Attorney General

GARRETT BEAUMONT
Senior Deputy Attorney General
State Bar No. 63863

110 West "A" Street, Suite 1100
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 645-2277
Fax: (619) 645-2191

Attorneys for Respondent

# TABLE OF CONTENTS

| | Page |
|---|---|
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 4 |
| I. APPELLANT'S UTAH CONVICTION WAS A SERIOUS FELONY AND STRIKE | 4 |
| II. APPELLANT WAS NOT ENTITLED TO A JURY DETERMINATION OF WHETHER OR NOT HIS PRIOR FELONY CONVICTION CONSTITUTED A SERIOUS FELONY AND A STRIKE | 9 |
| CONCLUSION | 11 |

E–075

**TABLE OF AUTHORITIES** (continued)

Page

**Statutes**

Penal Code
      § 190.2, subd. (c)(3)           4
      § 192, subd. (c)(3)             6
      § 667, subd. (a)(1)             4
      § 667, subd. (d)(1)            4
      § 667, subd. (e)(1)            4

Utah Code
      § 76-5-207, subd. (1)        4, 5


**Other Authorities**

CALJIC No.
      8.93               5

E–076

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION ONE

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

v.

**GEORGE W. SHUFELT,**

Defendant and Appellant.

D040805

## STATEMENT OF THE CASE

An information filed in San Diego County Superior Court charged appellant with unlawfully taking and driving a vehicle[1] (count 1), buying, receiving, concealing, selling or withholding a stolen vehicle[2] (count 2), residential burglary[3] (counts 3-5), receiving stolen property[4] (counts 7-10) and resisting an officer[5] (count 11). The information specially alleged a prior serious felony conviction[6] and strike.[7] (CT 1-5.)

---

1. Veh. Code, § 10851, subd. (a).

2. Pen. Code, § 496d.

3. Pen. Code, §§ 459 and 460.

4. Pen. Code, § 496, subd. (a).

5. Pen. Code, § 148, subd. (a)(1).

6. Pen. Code, § 667, subd. (a)(1).

7. Pen. Code, § 667, subds. (b) through (i).

1

Later that afternoon, appellant fled from a San Diego police officer who asked him for identification. (RT 2186-2187, 2287.) Another officer joined the chase as appellant jumped a fence and ran into a nearby garage (RT 2188-2189), refusing the officer's command to stop (RT 2189). The officer injured his lower back after appellant charged him and pushed him against a washing machine in the garage. (RT 2189, 2191-2192.) After trading blows with the officer, appellant was subdued with a carotid restraint (RT 2190). Although appellant was handcuffed as other officers arrived on the scene (RT 2191), appellant maneuvered the handcuffs in front of his body and tried to run. (RT 2192.) Even after he was placed in maximum restraint (RT 2193), appellant escaped from the patrol car and hid inside a storage area in the sally port once the patrol car arrived at SDPD headquarters. (RT 2321-2322.) The police needed a police dog to roust him out. (RT 2323.) (Count 11.)

Appellant had a 1995 Utah felony conviction for "automobile homicide." (CT 389-414.)

which he was charged and to which he was pleading guilty included operating his vehicle in a negligent manner. (CT 393, 407-408.) Appellant's Utah guilty plea admissions fulfilled California's vehicular manslaughter requirement that the intoxicated driver drive negligently, since no specific traffic violation need be pled or proved to establish the California offense.[12] Appellant's prior Utah conviction was therefore a serious felony and a strike in California.

In any event, and notwithstanding appellant's contention to the contrary (AOB 13-23) Utah's third degree felony of automobile homicide statutorily required that the defendant drive his vehicle in a negligent manner. (CT 455-456 [People's response to defendant's motion to invalidate alleged strike prior].) The Utah statute provides, in pertinent part, that:

(1)(a) Criminal homicide is automobile homicide, a third degree felony, *if the person operates a motor vehicle in a negligent manner* causing the death of another *and:*

(i) has sufficient alcohol in his body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08 grams or greater at the time of the test;

(ii) is under the influence of alcohol, any drug to a degree that renders the person incapable of safely operating a vehicle; or

(iii) has a blood or breath alcohol concentration of .08 grams or greater at the time of operation.

(b) For the purpose of this subsection, 'negligent' means simple negligence, the failure to exercise that degree of care that reasonable and prudent persons exercise under like or similar circumstances.[13] (Emphasis added.)

---

12. See *People v. Thompson* (2000) 79 Cal.App.4th 40, 53; CALJIC No. 8.93; People's response to defendant's motion to invalidate alleged strike prior. (CT 444-454.)

13. Utah Code, § 76-5-207, subd. (1), quoted at AOB 12.

E–079

affirmative evidence of excuse or justification and that the absence of such an affirmative showing renders the concepts irrelevant.[17]

Therefore, California courts, like those in Utah, presume that those who kill by driving while under the influence have done so by driving in a negligent manner, absent affirmative proof to the contrary.

Appellant's alternative claim that insufficient evidence supports the serious felony and strike enhancements (AOB 22-23) is meritless in light of appellant's Utah guilty plea acknowledgment that he operated a motor vehicle while he had a blood alcohol content of .08 grams or greater; that he was under the influence; that being under the influence rendered him incapable of safely operating his vehicle; that operating his vehicle under those circumstances caused the death of the victim in that he operated his vehicle in a negligent manner, and; that "negligent manner" meant a less than safe manner. (CT 407-408.)

Furthermore, a probable cause statement (CT 416) in the Utah guilty plea exhibit (CT 388-428) added additional evidentiary support to the finding that appellant's Utah conviction met the required elements of California's vehicular manslaughter statute. The probable cause statement explained that appellant killed the victim by crashing into the driver's side door of the victim's car in the middle of an intersection, when the traffic light was green for the victim's car. (CT 416.)

Although the trial court expressly declined to consider the probable cause statement (AOB 20-21; RT 3087), and notwithstanding appellant's contention to the contrary (AOB 20-22), the record of the plea establishes that the trial court could properly consider the probable cause statement because

---

17. *People v. Thompson, supra*, 79 Cal.App.4th, at pp. 50-51.)

7

## II.

## APPELLANT WAS NOT ENTITLED TO A JURY DETERMINATION OF WHETHER OR NOT HIS PRIOR FELONY CONVICTION CONSTITUTED A SERIOUS FELONY AND A STRIKE

Appellant argues that by denying his request for a jury instruction on the subject (RT 2910-2913), the trial court erroneously deprived appellant of a jury determination of whether or not his Utah conviction constituted a serious felony and strike in California. (AOB 23-27.)

Appellant's argument is meritless.   He had no right to a jury determination of the question of whether or not his prior conviction qualified as a serious felony or strike.[20]  Whether his Utah guilty plea met the statutory elements of California's vehicular manslaughter statute was a legal question for the trial court rather than the jury because it involved a legal interpretation of both statutes, a comparison of those statutes and cases interpreting those statutes, and a legal interpretation of the elements admitted by the plea.  There were no facts to be resolved by a jury since the plea had already occurred.

Assuming arguendo that the trial court erroneously denied appellant's requested jury instruction, the error was harmless and not reversible because it is not reasonably probable that, had the instruction been given, a different finding would have been made by the jury.[21]  There was no constitutional error

---

20. *People v. Kelii* (1999) 21 Cal.4th 452, 457; *People v. Garcia* (2003) 107 Cal.App.4th 1129, 1165; *People v. Williams* (2002) 99 Cal.App.4th 696, 700-701.

21. *People v. Epps* (2001) 25 Cal.4th 19, 28-30.

E-081

# CONCLUSION

Accordingly, respondent respectfully requests that the judgment be affirmed.

Dated:  June 13, 2003

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

GIL P. GONZALEZ
Supervising Deputy Attorney General

GARRETT BEAUMONT
Senior Deputy Attorney General

Attorneys for Respondent

GB:ada
SD2002DA1335

11

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **PEOPLE v. GEORGE W. SHUFELT**                    No.: **D040805**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On June 16, 2003, I served the attached **RESPONDENT'S BRIEF** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed as follows:

LEWIS A WENZELL
ATTORNEY AT LAW
5070 NARRAGANSETT AVE - #303
SAN DIEGO CA 92107

BONNIE M DUMANIS
DISTRICT ATTORNEY
HALL OF JUSTICE
330 WEST BROADWAY - STE 1300
SAN DIEGO CA 92101-3826

CLERK FOR DELIVERY TO:
HON MELINDA J LASATER
220 WEST BROADWAY
SAN DIEGO CA 92101

APPELLATE DEFENDERS INC
555 WEST BEECH ST - STE 300
SAN DIEGO CA 92101

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 16, 2003, at San Diego, California.

_____
ANNETTE AGUILAR
Declarant

_____
Signature

E-083

# EXHIBIT COVER PAGE $\boxed{G}$

EXHIBT

Description of this Exhibit: Reply Brief, Direct Appeal

Case No.
People v.

Number of pages to this Exhibit ___15___ pages. $(84-99)$

## JURISDICTION:  (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

In the

## COURT OF APPEAL OF THE STATE OF CALIFORNIA
### FOURTH APPELLATE DISTRICT, DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, )<br><br>  Plaintiff and Respondent, )<br><br>v. )<br><br>GEORGE W. SHUFELT, )<br><br>  Defendant and Appellant. ) | NO. D040805<br><br>(Super. Ct. No. SCD163510) |

Appeal From The Superior Court Of San Diego County
Judge Melinda J. Lasater, Presiding

# APPELLANT'S REPLY BRIEF

LEWIS A. WENZELL
Attorney At Law
State Bar No. 54786
5070 Narragansett Ave., #303
San Diego, CA 92107
(619)224-9422

Attorney For Appellant
GEORGE W. SHUFELT

By appointment of the Court of Appeal
under the Appellate Defenders, Inc,
independent case system

E–084

**In the**
**COURT OF APPEAL OF THE STATE OF CALIFORNIA**
**FOURTH APPELLATE DISTRICT, DIVISION ONE**

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | NO. D040805 |
| ) | |
|    Plaintiff and Respondent, ) | (Super. Ct. No. SCD163510) |
| ) | |
| v. ) | |
| ) | |
| GEORGE W. SHUFELT, ) | |
| ) | |
|    Defendant and Appellant. ) | |

Appeal From The Superior Court Of San Diego County
Judge Melinda J. Lasater, Presiding

# APPELLANT'S REPLY BRIEF

LEWIS A. WENZELL
Attorney At Law
State Bar No. 54786
5070 Narragansett Ave., #303
San Diego, CA 92107
(619)224-9422

Attorney For Appellant
GEORGE W. SHUFELT

By appointment of the Court of Appeal
under the Appellate Defenders, Inc,
independent case system

E-085

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      1.    Respondent's argument a California case
supports the view the California vehicular
manslaughter statute does not require proof of a
separate negligent act is meritless. . . . . . . . . . . . . . . . . . . . . . . . . 1

      2.    Respondent's claims as to the rulings of the
Utah Supreme Court are mistaken. . . . . . . . . . . . . . . . . . . . . . . . 3

      3.    The trial court's ruling makes no finding that
Appellant's Utah admissions showed Appellant
committed an act of negligence in addition to driving
while intoxicated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      4.    Appellant's Utah plea did not adopt the facts
in the probable cause statement and specifically
excluded any admission of an act of negligence
separate from the drunk driving. . . . . . . . . . . . . . . . . . . . . . . . . 6

      5.    Appellant was entitled to have the jury
determine whether or not his Utah conviction
included proof of the fact of commission of a
separate act of negligence and the error was not
harmless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

E–086

i

# TABLE OF AUTHORITIES

**Cases:**

*Apprendi v. New Jersey* (2000) 530 U.S. 466 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Enright* (1982) 132 Cal.App.3d 631 . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Epps* (2001) 25 Cal.4th 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Thompson* (2000) 79 Cal.App.4th 40 . . . . . . . . . . . . . . . . . . . . . . . . . 2

*People v. Tigner* (1982) 133 Cal.App.3d 430 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State v. Durrant* (Utah 1977) 561 P.2d 1056 . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*State v. Risk* (Utah 1974) 520 P.2d 215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*State v. Ruben* (Utah 1983) 663 P.2d 445 . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

*Willett v. Barnes* (Utah 1992) 842 P.2d 860 . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

**Statutes:**

California Penal Code

        § 192, subd. (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Utah Code Annotated

        § 76-5-207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Other Authorities:**

California Jury Instructions Criminal (7th ed. 2003) . . . . . . . . . . . . . . . . . . . . 2-3

Witkin & Epstein, California Criminal Law (3d ed. 2000) . . . . . . . . . . . . . . . . . 3

E–087

In the

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION ONE

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | | NO.  D040805 |
| ) | | |
| Plaintiff and Respondent, ) | | (Super. Ct. No. SCD163510) |
| ) | | |
| v. ) | | |
| ) | | |
| GEORGE W. SHUFELT, ) | | |
| ) | | |
| Defendant and Appellant. ) | | |

Appeal From The Superior Court Of San Diego County

Judge Melinda J. Lasater, Presiding

## APPELLANT'S REPLY BRIEF

### ARGUMENT

**1.     Respondent's argument a California case supports the view the California vehicular manslaughter statute does not require proof of a separate negligent act is meritless.**

Appellant has argued that Utah's automobile homicide statute (Utah Code Ann., § 76-5-207, subs. (1)) ("section 76-5-207(a)") does not have the same elements as California's vehicular manslaughter statute (Pen. Code, § 192, subd. (c)(3) ("section 192(c)(3)"). (AOB 12-19.)  This so because the latter requires commission of an act of negligence while driving in addition to

1

driving while under the influence (AOB 14) while the former requires no such additional act because the negligence element "c[an] be satisfied by a mere showing that the defendant ha[s] driven a vehicle while intoxicated." (*State v. Ruben* (Utah 1983) 663 P.2d 445, 447.) Respondent disagrees.

Citing *People v. Thompson* (2000) 79 Cal.App.4th 40 ("*Thompson*"), Respondent claims the Utah and California statutes are the same because "California courts, like those in Utah, presume that those who kill by driving while under the influence have done so by driving in a negligent manner, absent affirmative proof to the contrary." This is simply not true. In no way does *Thompson* or any other California say what Respondent is claiming.

The language in *Thompson* to which Respondent refers (*id.* at pp. 50-51) came during the court's ***rejection*** of a defense argument that the trial court's instruction was erroneous because it failed to define an unlawful killing as one without excuse or justification. (*Ibid.*) The court noted no such instruction was necessary because (as is the case in most vehicular manslaughter cases) "there was no evidence of excuse or justification [and] defendant did not rely on either defense." (*Id.* at p. 51.) The ruling has nothing to do with whether or not a separate act of negligence is required for a California vehicular manslaughter conviction.

Contrary to Respondent's assertion, the California cases (see AOB 14), the standard jury instructions (California Jury Instructions Criminal (7th ed.

E-089

2003), No. 8.93), and a leading treatise (1 Witkin & Epstein, California

Criminal Law (3d ed. 2000) Crimes - Person, § 238) all require the

commission of a separate act of negligence in addition to driving while

intoxicated for there to be a vehicular manslaughter (section 192(c)(3))

conviction and there are no presumptions which relieve the prosecution from

proving this element.[1] (See AOB 14.)

### 2. Respondent's claims as to the rulings of the Utah Supreme Court are mistaken.

Citing *State v. Durrant* (Utah 1977) 561 P.2d 1056 ("*Durrant*"), at page

1058, Respondent claims the Utah and California statutes are the same because

the Utah statute also requires commission of an act of negligence in addition to

the act of driving under the influence. (RB 6.)  What Respondent fails to tell

the court is that the first quote it takes from *Durrant* (RB 6, second sentence)

was actually a quote by the *Durrant* court of a sentence in *State v. Risk* (Utah

1974) 520 P.2d 215, at page 216.  The quote from *Risk* came during the *Risk*

court's ruling that an instruction on automobile homicide was unnecessary

where the defendant was charged with negligent homicide. (*Id.* at p. 215-216.)

Thus, in context, it is clear the *Risk* quote, repeated in *Durrant*, does not

---

1.    Respondent's assertion "no specific traffic violation need be pled or
proved to establish the California offense" (RT 5) is a red herring.  Section
192(c)(3) requires "the commission of an unlawful act, not amounting to a
felony, but without gross negligence; *or* driving a vehicle in violation of
section 23140, 23152, or 23153 of the Vehicle Code ... ." (Emphasis added.)

3

constitute a holding that Utah law requires an act of negligence in addition to driving drunk in order for a defendant to be convicted of automobile homicide.

Respondent's second quotation from *Durrant* (RB 6, text accompanying fn. 15) is equally out of context. The issue in *Durrant* was whether a conviction for automobile homicide in Utah requires a showing of "criminal negligence" (the equivalent of gross negligence in California). (*Durrant, supra*, 561 P.2d 1058.) The court quotes the general rule:

> "When a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life." [Citations.]

(*Ibid.*) This negligence rule aptly describes the situation where "a person drives his own automobile while incapable of doing so because of being under the influence of intoxicating liquor." (*Ibid.*) Consequently, no showing of criminal (additional) negligence was required for a conviction of automobile homicide. (*Ibid.*)

Finally, the Utah Supreme Court is obviously a better source for articulating its holdings than is Respondent. That court has specifically said:

> Prior to the *Chavez* decision [overruling *Durrant*],

4

> the simple negligence standard could be satisfied
> by a mere showing that the defendant had driven a
> vehicle while intoxicated. After *Chavez*, with the
> advent of the criminal negligence standard, the
> elements of intoxication and negligence could no
> longer be considered one and the same; rather,
> they became separate substantive elements.

(*State v. Ruben, supra*, 663 P.2d at p. 447.)

In sum, the elements of the offense of vehicular manslaughter in

California (section 192(c)(3)) are different from the elements of automobile

homicide in Utah (section 76-5-207(1)). The former requires proof of

commission of an act of negligence in addition to the act of driving while

intoxicated while the latter does not.

### 3. The trial court's ruling makes no finding that Appellant's Utah admissions showed Appellant committed an act of negligence in addition to driving while intoxicated.

Citing pages 3087-3088 of the reporter's transcript, Respondent asserts

that, even if the elements of the two statutes do not match, the trial court

properly found Appellant's admissions during his Utah guilty plea satisfied the

elements of the California statute. (RT 4-5.) However, there is nothing in the

trial court's conclusory ruling that delineates any act of negligence engaged in

by Appellant in Utah other than driving while intoxicated.[2] Moreover, as

---

2.    The court's ruling was: "I am not using, for purpose of my decision, the
                                                              (continued...)

amplified upon in the next argument (see also AOB 17-20), no statements

made by Appellant in his Utah guilty plea constituted an admission of the

commission of an act of negligence in addition to drunk driving.

> **4.    Appellant's Utah plea did not adopt the facts in the probable cause statement and specifically excluded any admission of an act of negligence separate from the drunk driving.**

As Respondent concedes, the trial court declined to consider the

probable cause statement in the record as evidence of the nature Appellant's

Utah prior conviction because it was hearsay. (RB 7. See AOB 21-23.)

Respondent does not argue that the trial court improperly rejected

consideration of the probable cause statement on hearsay grounds. Instead,

Respondent now says this statement can be considered in determining the

nature of the prior because it is part of the second page of the information to

which Appellant pled guilty, a contention not made by the prosecution in the

trial court. (RB 8. See CT 390, 416.) This is so, Respondent now claims

because Appellant said he had received a copy of the information, had read it,

and understood the nature and elements of the offense to which he was

pleading guilty and thereby adopted the probable cause statement. (RB 8.)

---

2.    (...continued)
probable cause statement.  I am using only the conduct that was brought out in
the change of plea form and the actual change of plea statements by the
defendant. ¶ In doing so, it is my opinion, and my ruling that those elements
are -- that admitted conduct is the same as the element in Penal Code section
192, peren C, peren 3." (RT 3087-3088.)

E-093

Respondent is mistaken.

Appellant's statement that he had read the amended information and understood the nature and elements of the offense does not constitute an admission the alleged facts in the probable cause statement were true.  Indeed, one searches this record in vain for the slightest hint that Appellant's plea to the prior incorporated the probable cause statement.  Indeed, the very amendment of the information to charge a lesser offense cancelled any reliance on the probable cause statement's allegation there was some negligence in Appellant's Utah driving other than being intoxicated. The factual basis for the plea in the statement of Appellant (equivalent to a California change of plea form) makes this perfectly clear:

> My conduct, and the conduct of other persons for which I am criminally liable, that constitutes the elements of the crime charges are as follows:  On August 19, 1994, the defendant was involved in an automobile accident in Salt Lake City, Utah, that resulted in the death of the driver of an automobile struck by the defendant's vehicle.  The defendant's blood alcohol content was greater than .08% by weight.

(CT 393; underlining in original.)  There is no mention of negligence in this factual basis whatsoever.

Respondent cites no Utah case, and Appellant has found none, suggesting a guilty plea to an information in Utah constitutes an admission to the facts set forth in the probable cause statement. (Cf. *Willett v. Barnes* (Utah

7

1992) 842 P.2d 860, 862 ["parroting the statutory elements of the crime charged against him" does not constitute the factual basis for a plea].) Respondent cites no California case, and Appellant has found none (either reported or unreported), that says police reports or like statements can be considered as the factual basis for a plea absent a stipulation or agreement such sources can be so considered. (Cf. *People v. Enright* (1982) 132 Cal.App.3d 631, 634-635 [factual basis can be met by a stipulation of the parties that the police reports could be considered as the factual basis for the plea]; *People v. Tigner* (1982) 133 Cal.App.3d 430, 433, 435 ["a court could satisfy the factual basis inquiry by statements and admissions made by the defendant, his counsel, and the prosecutor" but not by mere recitation by the trial court that "'[t]here's a factual basis for the plea' without any further inquiry of appellant, his counsel, or the district attorney"].)

In short, Respondent's argument Appellant's guilty plea constituted an implied adoptive admission of the truth of facts in the probable cause statement is no more than an attempt to make something out of nothing. The argument is properly disregarded.

E-095

> **5.** **Appellant was entitled to have the jury determine whether or not his Utah conviction included proof of the fact of commission of a separate act of negligence and the error was not harmless.**

Citing no cases, Respondent argues Appellant was not entitled to a jury determination as to whether or not his prior conviction constituted a serious felony, i.e., a strike. (RB 9-10.) However, Respondent paints with too broad a brush.

What Appellant has argued is that he was entitled to a jury determination as to whether or not one of the facts established by his prior conviction was the commission of an act of negligence in addition to simply driving while intoxicated. (AOB 25-27.) Proof of this fact was necessary in order for Appellant's Utah conviction to constitute a strike, i.e., to constitute a violation of section 192(c)(3). Whether a jury must decide such facts has specifically been left open by the California Supreme Court in discussing *Apprendi v. New Jersey* (2000) 530 U.S. 466 in *People v. Epps* (2001) 25 Cal.4th 19:

> We do not now decide how *Apprendi* would apply were we faced with a situation like that at issue in Kelii, where some fact needed to be proved regarding the circumstances of the prior conviction -- such as whether a prior burglary was residential -- in order to establish that the conviction is a serious felony.

(*Id.* at p. 28.) For the reasons set forth in his opening brief (which are not

commented upon by Respondent), Appellant submits he was entitled to a jury

determination as to whether his Utah conviction required proof of the

commission of an act of negligent driving in addition to simply driving while

intoxicated. (See AOB 26-27.)

Respondent claims any error in this regard was harmless. Incorrect

again. The only potential evidence that could have shown negligence (in

addition to driving drunk) was contained in the probable cause statement

which was unquestionably inadmissible hearsay. If the prosecution were

required to proof an additional act of negligence, they had no evidence to

prove it with. The failure of the trial court to instruct the jury that proof of this

(unprovable) fact was necessary can hardly be said to be harmless error under

any standard.

## CONCLUSION

For the foregoing reasons and those set forth in Appellant's opening

brief, Appellant respectfully submits his sentence should be vacated and the

matter remanded for resentencing without consideration of the Utah

conviction. Alternatively, the verdict finding Appellant suffered the Utah

conviction should be set aside and the case remanded for a new trial on the

prior conviction issue.

Dated:  July 7, 2003

Respectfully submitted,

*Lewis A. Wenzell*
Lewis A. Wenzell

Attorney For Appellant
GEORGE W. SHUFELT

By appointment of the Court of Appeal
under the Appellate Defenders, Inc,
independent case system

E–098

**PROOF OF SERVICE**
*PEOPLE* v. *GEORGE W. SHUFELT* -- No. D040805

    I, the undersigned, declare under the penalty of perjury, that I am a citizen of the United States, that my office address is as indicated below, that I am over the age of eighteen years, and that I am not a party to the within entitled action.

    I further so declare that on the date set forth below the foregoing APPELLANT'S REPLY BRIEF was served on each of those whose name and address appears below by placing a true copy thereof in a sealed envelope addressed as indicated below and by mailing the said envelope by affixing first class postage thereon and then depositing the said envelope in the United StatesMail at San Diego, California, which is within the county in which I am employed:

ATTORNEY GENERAL'S OFFICE
STATE OF CALIFORNIA
P.O. BOX 85266
SAN DIEGO, CA 92186-5266

PATRICK DUNAH
APPELLATE DEFENDERS INC.
555 W. BEECH STREET, #300
SAN DIEGO, CA 92101

SUPERIOR COURT OF SAN DIEGO
COUNTY (Attention: J. LASATER)
P.O. BOX 122724
SAN DIEGO, CA 92112-2724

GEORGE W. SHUFELT
# T65128
P.O. BOX 2199
BLYTHE, CA 92226

DISTRICT ATTORNEY'S OFFICE
SAN DIEGO COUNTY
P.O. BOX 121011
SAN DIEGO, CA 92112-1011

CHARLES N. GUTHRIE
ATTORNEY AT LAW
444 WEST "C" ST., #140
SAN DIEGO, CA 92101

Dated: July 7, 2003

LEWIS A. WENZELL
5070 Narragansett Ave., #303
San Diego, CA 92107
619/224-9422

12

# EXHIBIT COVER PAGE 

**EXHIBT**

Description of this Exhibit: Opinion, Denying Direct Appeal

Case No.     Dated: Nov, 13, 2003,  D040805
People v.

Number of pages to this Exhibit _____**6**_____ pages.  (100-105)

## JURISDICTION:  (Check only one)

☐  Municipal Court
☐  Superior Court
☐  Appellate Court
☐  State Supreme Court
☐  United States District Court
☐  State Circuit Court
☐  United State Supreme Court
☐  Grand Jury

ISP



BC

INMATE COPY

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

F I L E D
Stephen M. Kelly, Clerk
NOV 13 2003
Court of Appeal Fourth District

THE PEOPLE,

    Plaintiff and Respondent,

    v.

GEORGE W. SHUFELT,

    Defendant and Appellant.

D040805

T65128

(Super. Ct. No. SCD163510)

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge. Affirmed.

A jury convicted George W. Shufelt of taking or knowingly driving a stolen vehicle (Veh. Code, § 10851, subd. (a)), receiving a stolen vehicle (Pen. Code, § 496d),[1] four counts of residential burglary (§§ 459/460), four counts of receiving stolen property (§ 496, subd. (a)), and resisting an officer (§ 148, subd. (a)(1)). In a bifurcated hearing,

---

1    All further statutory references are to the Penal Code unless otherwise specified.

the jury found he had a 1995 Utah conviction of automobile homicide that the court found was a prior serious felony conviction (§ 667, subd. (a)(1)) and a strike prior (§§ 667, subds. (b)-(i), 1170.12).  The court denied a motion to dismiss the strike prior and sentenced Shufelt to prison for 19 years eight months: double the four-year middle term on one count of residential burglary with a strike prior, enhanced five years for the prior serious felony conviction, with two consecutive terms of two years eight months each for residential burglaries with a strike prior (double one-third the middle term), and one year four months for taking or knowingly driving a stolen vehicle.  The court imposed a concurrent term on the fourth residential burglary conviction and stayed sentence on the receiving stolen property convictions.  (§ 654.)  A time served sentence was imposed on the charged misdemeanor.  Shufelt contends the trial court erred in finding his prior Utah conviction is a serious felony and a strike prior.[2]

## DISCUSSION

Section 667, subdivision (a)(1) provides:

> "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately.  The terms of the present offense and each enhancement shall run consecutively."

---

[2]     Because the only issue Shufelt raises on appeal is whether his prior Utah conviction is a serious felony and strike prior, we need not discuss the facts underlying his convictions.

E–101

The question Shufelt raises is whether the Utah Criminal Code section 76-5-207, subsection (1)(a) contains all of the elements of section 192, subdivision (c)(3).

Utah Criminal Code section 76-5-207, subsection (1) provides in part:

> "(a) Criminal homicide is automobile homicide, a third degree felony, if the actor operates a motor vehicle while having a blood alcohol content of .08% or greater by weight, or while under the influence of alcohol, any drug, or the combined influence of alcohol and any drug, to a degree that renders the actor incapable of safely operating the vehicle, and causes the death of another by operating the vehicle in a negligent manner.
>
> "(b) For the purpose of this subsection, 'negligent' means simple negligence, the failure to exercise that degree of care that reasonable and prudent persons exercise under like or similar circumstances." (Utah Code Ann. § 76-5-207 (1994) <www.lexis.com/research/retrieve> (as of Oct. 22, 2003).)

Section 192, subdivision (c)(3) provides:

> "Driving a vehicle in violation of Section 23140, 23152, or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in violation of Section 23140, 23152, or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

Both statutes require that the defendant committed homicide while driving under the influence of alcohol. The Utah statute requires proof that the driver drove negligently while the California statute requires proof that the defendant committed an unlawful act. Driving negligently is a sufficient unlawful act. (*In re Dennis B.* (1976) 18 Cal.3d 687, 697.) Shufelt argues his guilty plea to Utah Criminal Code section 76-5-207, subsection (1) does not contain all the elements of section 192, subdivision (c), because the Utah Supreme Court has interpreted the Utah Criminal Code section 76-5-207, subsection (1)

3

E–102

to allow conviction on evidence of intoxication alone. He is mistaken. In *State v. Ruben* (1983) 663 P.2d 445, 448-449, the Utah Supreme Court said:

> "While it is no longer appropriate to consider intoxication and negligence as a single element, it is appropriate to consider the degree and effects of intoxication as a 'factor' in determining whether a defendant's conduct was criminally negligent. To establish criminal negligence, it is necessary to show conduct which is 'a gross deviation from the standard of care that an ordinary person would exercise in *all* the circumstances as viewed from the actor's standpoint.' [Citation.] It is therefore a subjective element requiring consideration of all relevant circumstances surrounding the incident."

Thus, in Utah, as in California, a defendant is guilty of vehicular manslaughter if he kills another human being while driving negligently and under the influence of alcohol. Here, when the Utah trial court accepted Shufelt's guilty plea, the court advised him:

> "[THE COURT]: Now in this particular circumstance, Mr. Shufelt, the elements, or the basis for the State's allegations are as follows, and listen carefully to these, because by pleading guilty you are telling me the following things are true.
>
> "First, that this incident occurred at 500 South State Street, here in Salt Lake County; secondly, that it occurred on or about August 19th of 1994, that you were the person that committed the offense, and that you at that time operated a motor vehicle while you had a blood alcohol content of .08 grams or greater, and that you were, in fact, under the influence of alcohol, and that rendered you incapable of safely operating your vehicle. And in operating the vehicle, under those circumstances, you caused the death of Frank M. Huddleson, in that you operated your vehicle in a negligent manner. That means a less than safe manner."

E-103

4

Shufelt thereafter admitted the truth of the court's statement. In doing so, he admitted violating a Utah statute that included all the elements of a California serious felony.[3]

## II

Relying primarily on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), Shufelt contends the trial court erred in denying him a jury trial on the issue of whether his Utah conviction was a serious felony. In *People v. Kelii* (1999) 21 Cal.4th 452, 455-457, the California Supreme Court held that a determination whether a prior conviction is a prior serious felony conviction is primarily a legal question for the trial court, not a jury. Shufelt argues this principle was changed when the United States Supreme Court in *Apprendi*, held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory minimum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490.) In *Apprendi*, the question the United States Supreme Court held to be a jury question was whether the defendant's crime was a hate crime. (*Id.* at p. 470.) Unlike the factual determination whether a crime was committed because of the victim's race, whether a conviction of a foreign statute is a serious felony under California law involves primarily

---

3    In their brief, the People point out that although the trial court declined to consider a probable cause statement that was part of the information underlying Shufelt's guilty plea to the Utah crime, it provided additional evidence that the Utah conviction would be vehicular manslaughter in California. In the probable cause statement, the People alleged that while driving his truck the wrong direction on a one-way street, Shufelt entered an intersection against a traffic light that was green for the victim, whom he broadsided and killed. The probable cause statement contains all the facts to show negligent conduct.

a legal analysis to be resolved by the court.  (See *People v. Kelii, supra,* 21 Cal.4th at pp. 455-457.)  Here, the trial court did not err in determining that Shufelt's Utah conviction was a conviction of a prior serious felony and a strike prior.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

2009 JAN 23 PM 2: 35

6

E–105

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: State v. Risk, 520 P.2d 215 (1974)

Case No.
People v.

Number of pages to this Exhibit ___4___ pages. (106 – 109)

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

Cite as: 520 P.2d 215)

Supreme Court of Utah.

STATE of Utah, Plaintiff and Respondent,

v.

John Robert RISK, Defendant and Appellant.

**No. 13430.**

March 14, 1974.

Defendant was convicted in the First District Court, Cache County, VeNoy Christoffersen, J., of automobile homicide and he appealed. The Supreme Court, Ellett, J., held that negligent homicide requires more than carelessness or simple negligence and is not a lesser included offense of automobile homicide; but that statute creating presumption of intoxication of person whose blood is .08% or more by weight of alcohol for purposes of drunk driving statute was inapplicable to statute relating to automobile homicide.

Reversed.
Crockett, J., dissented and filed an opinion.

[1] Automobiles ☞342.1
48Ak342.1 Most Cited Cases
(Formerly 48Ak342)

Offense of automobile homicide may be made out by simple negligence in a person's driving while under the influence of intoxicating liquor if, as a result thereof, he causes the death of another person. Laws 1957, c. 165.

[2] Indictment and Information ☞191(4)
210k191(4) Most Cited Cases

Negligent homicide requires more than carelessness or simple negligence and negligent homicide is not a lesser included offense of automobile homicide. Laws 1957, c. 165.

[3] Automobiles ☞353
48Ak353 Most Cited Cases

Statute creating presumption of intoxication if person's blood is found to contain more than .08% by weight of alcohol was not applicable to trial of defendant for causing, while under the influence of intoxicating liquor, the death of another by operating an automobile in a negligent or careless manner. U.C.A.1953, 41-6-44.
*215 Lyle W. Hillyard, Logan, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant seeks a reversal of his conviction of automobile homicide, a felony, upon two assignments of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

520 P.2d 215.
520 P.2d 215
(Cite as: 520 P.2d 215)

FOR EDUCATIONAL USE ONLY

Page 2

reversible error, viz.:

1. That the trial court erred in refusing to instruct the jury as to the lesser included offense of negligent homicide.

2. That the trial court erred in instructing the jury as to the 0.08 alcohol-blood presumption of Utah Code Annotated, Sec. 41--6--44, in that said presumption applies only to the offense of driving under the influence of intoxicating liquor and not to the charged offense of automobile homicide.

There is no merit to the first assignment, since the elements of negligent homicide differ from those required in automobile homicide.

[1] The statute relating to automobile homicide at the time of this offense is to be found in Laws of Utah 1957, Chapter 165, and reads as follows:

Any person, while under the influence of intoxicating liquor or narcotic drugs, *216 or who is under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle, who causes the death of another by operating or driving any automobile, motorcycle or other vehicle in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety, shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the state penitentiary for a period of not less than one year nor more than ten years. A death under this section, is one which occurs as a proximate result of the accident within a year and a day, after the day of the accident. (Emphasis added.)

It thus appears that the offense of automobile homicide may be made out by simple negligence in a person's driving while under the influence of intoxicating liquor if as a result thereof he causes the death of another person.

[2] Negligent homicide requires more than carelessness or simple negligence. Automobile homicide does not require that degree of negligence which this court held to be requisite to constitute negligent homicide as stated in the case of State v. Lingman,[FN1] to wit:

FN1. 97 Utah 180, 198, 91 P.2d 457 (1939).

. . . We think the 'unlawful act', that is, the infraction, must be done in such a manner as to more than constitute a mere thoughtless omission or slight deviation from the norm of prudent conduct. It must be reckless or in marked disregard for the safety of others. . . .

[3] The second assignment presents a problem which was before this court in the case of State v. Romero.[FN2] However, this court did not feel that it was necessary to decide the matter in that case. Now we must decide if the presumption provision of that part of the Code relating to drunk driving also applies to a case of automobile homicide.

FN2. 12 Utah 2d 210, 364 P.2d 828 (1961).

The instruction in question was given because of Sec. 41--6--44, U.C.A.1953, which provides so far as material as follows:

It is unlawful and punishable as provided in subsection (d) of this section for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

* * *

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

520 P.2d 215.
520 P.2d 215
(Cite as: 520 P.2d 215)

FOR EDUCATIONAL USE ONLY                                    Page 3

If there was at the time 0.08 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor;

* * *

The provisions of the statute making drunk driving a misdemeanor are listed under the Motor Vehicle Code, while those making automobile homicide a felony are listed in the Criminal Code. If the legislators had intended to have a presumption in the felony crime, they should have said so. By failing to refer to the presumption, it would seem that they intended for the prosecution in automobile homicide cases to prove to the satisfaction of the jurors and beyond a reasonable doubt that a defendant was under the influence of intoxicating liquor and this proof to be made without any reference to the statutory presumption set out in the Motor Vehicle Code. This idea is buttressed by the other provision of the law on automobile homicide which relates to being under the influence of drugs where no presumption is involved. See annotation and cases cited in 16 A.L.R.3d at page 756.

We hold that the giving of the instruction regarding the presumption was error and may have prejudiced the jury in rendering a verdict of guilty.

The judgment is reversed and a new trial ordered.

*217 CALLISTER, C.J., and HENRIOD and TUCKETT, JJ., concur.

CROCKETT, Justice (dissenting):

I do not believe that it was prejudicial error to instruct the jury as to the provision of Sec. 41--6--44 concerning the presumption, so long as they were given to understand that this was simply a statement of the provision of that statute, but that it was nevertheless their prerogative and responsibility to determine whether they believed that on the whole evidence the State had met its burden of proving every element of the offense beyond a reasonable doubt. [FN1]

FN1. As to instruction on presumptions cf. State v. Potello, 40 Utah 56, 199 P. 1023; State v. Allred, 16 Utah 2d 41, 395 P.2d 535; and State v. Smelser, 23 Utah 2d 347, 463 P.2d 562.

I do not think it is of controlling importance that the section referred to is in the motor vehicle code rather than the criminal code. It would be quite impractical to expect that all of the law should be stated in any one section of the statutes. But each statute is nevertheless part of the total law of the State; and the law should be looked at and applied in its totality.

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

AUTHORIZED FOR EDUCATIONAL USE ONLY

Date of Printing: SEP 03,2004

**KEYCITE**

C State v. Risk, 520 P.2d 215 (Utah, Mar 14, 1974) (NO. 13430)
Citing References
Positive Cases (U.S.A.)
★★★ Discussed
1 State v. Durrant, 561 P.2d 1056, 1058+ (Utah Mar 14, 1977) (NO. 14478) "" HN: 1,2,3 (P.2d)

★★ Cited
2 State v. Cazier, 521 P.2d 554, 555+ (Utah Apr 11, 1974) (NO. 13398) HN: 1,3 (P.2d)
3 People v. Davis, 528 P.2d 251, 253, 187 Colo. 16, 18 (Colo. Nov 18, 1974) (NO. 25811) HN: 3 (P.2d)

★ Mentioned
4 State v. Wade, 572 P.2d 398, 400 (Utah Dec 05, 1977) (NO. 14840)

Secondary Sources (U.S.A.)
5 Construction and application of statutes creating presumption or other inference of intoxication from specified percentages of alcohol present in system, 16 A.L.R.3d 748, §7b (1967) HN: 1,3 (P.2d)

© Copyright 2004 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

# EXHIBIT COVER PAGE **J**

EXHIBT

Description of this Exhibit: State v. Durrant (1977) 561 P.2d 1056

Case No.
People v.

Number of pages to this Exhibit _____ **6** _____ pages. (110-115)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

Case 2:07-cv-00348-TS-DN Document 2-2 Filed 06/04/2008 Page 42 of 89

**1056** Utah      **561 PACIFIC REPORTER, 2d SERIES**

If the legislation requires future appropriations to defray the obligations of the Agency it would be invalid as lending the state's credit, but where, as here, it merely allows future appropriations without requiring such, it creates no binding obligation upon the state and therefore does not result in a debt of the state or the lending of the state's credit.

Other assignments of unconstitutionality of the Act have been considered, but we find them to be without merit. We hold the Act in question to be constitutional and therefore affirm the judgment of the trial court.

No costs are awarded.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.



**The STATE of Utah, Plaintiff and Respondent,**

v.

**Bert James DURRANT, Defendant and Appellant.**

No. 14478.

Supreme Court of Utah.

March 14, 1977.

Defendant was convicted in the Fourth District Court, Utah County, Allen B. Sorensen, J., of automobile homicide and he appealed. The Supreme Court, Ellett, C. J., held that once the question of driving under the influence of liquor is established, crime of automobile homicide is made out by the death of another person by reason of the operation of the automobile in a negligent manner.

Affirmed.

Maughan, J., dissented and filed an opinion in which Wilkins, J., concurred.

**1. Criminal Law ⬤388**

Where extraction of blood from defendant was done at the direction and under the supervision of the treating physician, fact that the sample was actually drawn by the medical technologist did not preclude admission of the result of the blood alcohol test into evidence in defendant's trial for automobile homicide. U.C.A. 1953, 76–5–201.

**2. Automobiles ⬤342**

Driving of an automobile upon the highways by one who is so inebriated that he cannot safely operate it is an act which is reckless and in marked disregard of the safety of others for purposes of automobile homicide statute. U.C.A.1953, 76–5–201.

**3. Automobiles ⬤342**

Once the question of driving under the influence of liquor is established, crime of automobile homicide is made out by the death of another person by reason of operating the automobile in a negligent manner; mere negligent operation of the automobile by a person so drunk as to render him incapable of driving safely is all that is required. U.C.A.1953, 76–5–201.

---

Kathryn Collard, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Noall Wootton, Utah County Atty., Provo, for plaintiff and respondent.

ELLETT, Chief Justice:

The defendant, while operating a motor vehicle during the nighttime upon the highway, collided with a backhoe parked on the opposite side of the highway where a trench was being dug. As a result of the collision one passenger was killed and injury occasioned to others including the defendant.

The defendant was taken to a hospital and was attended by a doctor who directed a medical technologist (an employee of the hospital) to draw a sample of blood for

[right column, partially cut off]
cross-mat...
sion mig...
was dire...
another ...
making a ...
content o...

The def...
the crime ...
He appea...
asserts it ...
the blood ...
the court ...
garding th...
in the driv...
to make ou...
which he w...

[1] As ...
the defend...
*Gibb v. Dor...*
since it wa...
three to tw...
who favore...
the court. ...
the reason t...
was done a ...
supervision ...
therefore no...

The next ...
sion as to t...
defendant d...
He does not ...
negligence ii...
the highway ...
the opposite ...
that the driv...
criminal negl...
victed.

The trial ...
follows:

   Instr...
Under th...
while under ...
liquor to a ...
incapable of ...
causes the d...
or driving a...
manner on ...
shall be dee...

1. 533 P.2d 296...

*541 P.2d—23*

388

...n of blood from de-
...the direction and un-
of the treating physi-
...sample was actually
...l technologist did not
of the result of the
...o evidence in defend-
...bile homicide. U.C.A.

2

automobile upon the
...is so inebriated that
...ate it is an act which
...rked disregard of the
...urposes of automobile
...C.A.1953, 76–5–201.

...2

...of driving under the
...established, crime of
...is made out by the
...on by reason of oper-
...in a negligent man-
...peration of the auto-
...drunk as to render
...g safely is all that is
...76–5–201.

---

...t Lake City, for de-

...Atty. Gen., Earl F.
...n., Salt Lake City,
...ounty Atty., Provo,
...ndent.

...ice:

...operating a motor
...time upon the high-
...khoe parked on the
...way where a trench
...sult of the collision
...d and injury occa-
...ing the defendant.

...aken to a hospital
...loctor who directed
...n employee of the
...mple of blood for

cross-matching, in the event that a transfu-
sion might be required. The technologist
was directed by a police officer to take
another blood sample for the purpose of
making a blood-alcohol test. The alcoholic
content of the blood was .13% by weight.

The defendant was tried and convicted of
the crime of automobile homicide, a felony.
He appeals claiming two errors: First, he
asserts it was error to admit the result of
the blood test into evidence; and Second,
the court erred in instructing the jury re-
garding the amount of negligence required
in the driving of his motor vehicle in order
to make out the elements of the crime with
which he was charged.

[1] As to his first assignment of error
the defendant relies solely upon the case of
*Gibb v. Dorius*.[1] That case is of small value
since it was decided by a divided court,
three to two, and two of the three members
who favored the decision are no longer with
the court. It is also not controlling here for
the reason that the extraction of the blood
was done at the direction and under the
supervision of defendant's doctor. There is
therefore no merit to that claim of error.

The next assignment requires a discus-
sion as to the negligence with which the
defendant drove and operated his vehicle.
He does not contend that he was free from
negligence in driving across the center of
the highway and crashing into a backhoe on
the opposite side of the road. He maintains
that the driving must be in the nature of
criminal negligence before he can be con-
victed.

The trial court instructed the jury as
follows:

Instruction No. 6 provided:

Under the law of this State any person,
while under the influence of intoxicating
liquor to a degree which renders him
incapable of safely driving a vehicle, who
causes the death of another by operating
or driving any automobile in a negligent
manner on a public highway or street
shall be deemed guilty of a felony.

1. 533 P.2d 299 (Utah 1975).

561 P.2d—23

Instruction No. 8 provided:

Negligence is the failure to use ordi-
nary and reasonable care in the manage-
ment of one's property or person. It is
the failure to do what an ordinary and
reasonable person would have done under
the circumstances, or the doing of what
such person would not have done. The
fault may lie in acting or in omitting to
act.

The propriety or lack thereof of the
above instruction depends upon the inter-
pretation to be given to the following sec-
tions of our statute:

Section 76–5–201, as enacted L.1973, ch.
196, provides:

(1) A person commits criminal homi-
cide if he intentionally, knowingly, reck-
lessly, or with criminal negligence unlaw-
fully causes the death of another.

(2) Criminal homicide is murder in the
first and second degree, manslaughter, or
negligent homicide, or automobile homi-
cide.

The relevant provisions of Section 76–5–
207, under which defendant was convicted,
specify:

(1) Criminal homicide constitutes auto-
mobile homicide if the actor, while under
the influence of intoxicating liquor, a
controlled substance, or any drug, to a
degree which renders the actor incapable
of safely driving a vehicle, causes the
death of another by operating a motor
vehicle in a *negligent* manner. [Empha-
sis added.]

It is to be noticed that the statute only
requires that the vehicle be driven in a
*negligent* manner. How does that square
with Section 76–5–201(1) above where the
actor acts with criminal negligence?

Criminal negligence is defined in Ballen-
tine's Law Dictionary as: "The neglect of a
legal duty imposed either by statute or by
the common law. . . ." Our court
defined the term in *State v. Lingman*[2] as

2. *State v. Lingman*, 97 Utah 180, 91 P.2d 457
(1939).

E–111

Case 2:05-cv-00505 Document 22 Filed 09/07/2006 Page 14 of 32

follows: "It must be reckless or in marked disregard for the safety of others. When it does that, it passes the stage of mere malum prohibitum and approaches the unsocial aspects of malum in se."

If a person entrusts the operation of his automobile upon the public highways to a six-year old child, he would certainly be guilty of something "more than a mere thoughtless omission or slight deviation from the norm of prudent conduct." (*State v. Lingman*, above). The same would be true if he entrusted the operation of his car on the public highway to a person who is "under the influence of intoxicating liquor, . . . to a degree which renders the actor incapable of safely driving a vehicle, . . . ." Likewise, it is also applicable if a person drives his own automobile while incapable of doing so because of being under the influence of intoxicating liquor.[3]

The following statement is found in each of the cases cited in footnote 4 below:

"When a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life."[4]

[2] The driving of an automobile upon the highways of this state by one who is so inebriated that he cannot safely operate it is an act which is reckless and in marked disregard of the safety of others.

In the case of *State v. Risk*[5] this court held:

It thus appears that the offense of automobile homicide may be made out by simple negligence in a person's driving

while under the influence of intoxicating liquor if as a result thereof he causes the death of another person.

Negligent homicide requires more than carelessness or simple negligence. Automobile homicide does not require that degree of negligence which this Court held to be requisite to constitute negligent homicide as stated in the case of *State v. Lingman*.

Since the element of criminal negligence is present in this case, the question of the propriety of the instruction given by the trial judge to the jury can be looked at in its proper light.

[3] Once the question of driving under the influence of liquor is established, the crime of automobile homicide is made out by the death of another person by reason of operating the car in a *negligent manner*.[6] It is to be observed that the mere negligent operation of the automobile by a person so drunk as to render him incapable of driving safely is all that is required.

The court correctly instructed the jury and the defendant was properly convicted. The judgment is affirmed.

CROCKETT, J., and ERNEST F. BALDWIN, Jr., District Judge, concur.

HALL, J., does not participate herein.

MAUGHAN, Justice (dissenting).

The main opinion resorts to a law dictionary for a definition, which is given in the statute. I submit the statute has superior authority. For this reason, and for those following, I dissent.

One of the rules of appellate review is to bring harmony to statutes, if we can. Today, in my view, we fasten into a whole chapter of the criminal code a note of disharmony; which requires one to look else-

3.  76–5–207, U.C.A. 1953 (1975 Pocket Supplement).

4.  *State v. Lewis*, 91 P.2d 820, 824 (Nev.1939); *People v. Marconi*, 118 Cal.App. 683, 5 P.2d 974, 976 (1931); *People v. Crossan*, 87 Cal.App.

5.  261 P. 531, 533 (1927); *People v. Wilson*, 193 Cal. 512, 226 P. 5 (1924).

5.  520 P.2d 215 (Utah 1974).

6.  76–5–207, U.C.A.1953 (1975 Pocket Supp.)

of intoxicating

of he causes the

uires more than
gligence. Auto-
ot require that
nich this Court
constitute negli-
in the case of

ninal negligence
question of the
n given by the
be looked at in

of driving under
established, the
ide is made out
son by reason of
gligent manner.[4]
a mere negligent
e by a person so
apable of driving
ed.

structed the jury
operly convicted.

NEST F. BALD-
concur.

articipate herein.

ssenting).

to a law diction-
h is given in the
tute has superior
on, and for those

ellate review is to
s, if we can. To-
ten into a whole
de a note of dish-
one to look else-

*eople v. Wilson.* 193

).

975 Pocket Supp.).

---

where for the law which the statute purports to define in its own provisions.

We should be concerned, not only with the impact our decisions have on the participating litigants; we must be concerned with the impact our decisions have on the affairs of those not parties. No uniform body of law can be developed without such a view. We should reverse, and remand for further prosecution, if appropriate.

Defendant, while operating a motor vehicle during the nighttime, collided with a backhoe parked in the opposing lane of traffic in American Fork, Utah. One passenger was killed in the mishap and defendant and two other passengers were injured.

Defendant was taken to American Fork Hospital for treatment. The doctor, who was rendering treatment to defendant, directed a medical technologist (employed by the hospital) to draw a sample of blood for purposes of cross-matching, in the event defendant needed a transfusion. The technologist was directed by the police officer to take another sample for the purpose of making a blood-alcohol test. Defendant sustained a fractured leg in the accident, and he was located in the x-ray room at the time the technologist drew the blood samples. Neither the doctor nor the nurse, attending defendant, were physically present in the x-ray room at the moment the blood was withdrawn.

Based on these facts defendant filed a motion to suppress the result of the blood-alcohol test. Upon an evidentiary hearing, the trial court denied the motion. On appeal defendant contends the trial court erred on the ground the seizure of his blood was not accomplished by one authorized to extract blood, as provided in Sec. 41–6–44.-10. Defendant relies solely on *Gibb v. Dorius*[1] to sustain his argument. Defendant contends Gibb requires a medical technician be *immediately* directed and supervised by a physician, nurse, or practical nurse, at the *moment* the technician extracts the blood;

1. Utah, 533 P.2d 299 (1975).

---

and the presence of a registered nurse and physician in the next room is insufficient.

In the *Gibb* case we ruled the words "duly authorized laboratory technician" in Sec. 41–6–44.10(f) must be interpreted in reference to Utah Medical Practice Act, Chapt. 12, Title 58. Such an individual must act under the direction and supervision of a licensed physician, and administer the test according to standard medical practice.

Here, a responsible, licensed physician was attending defendant, and directed personnel of the hospital to perform certain acts, in connection with the treatment. Under such circumstances, defendant's blood test was administered by a "duly authorized laboratory technician."

Defendant further contends the trial court erred by instructing the jury the negligence necessary for commission of automobile homicide consisted of ordinary or simple negligence. Instruction No. 8, provided:

Negligence is the failure to use ordinary and reasonable care in the management of one's property or person. It is the failure to do what an ordinary and reasonable person would have done under the circumstances, or the doing of what such person would not have done. The fault may lie in acting or in omitting to act.

Instruction No. 6, provided:

Under the law of this State any person, while under the influence of intoxicating liquor to a degree which renders him incapable of safely driving a vehicle, who causes the death of another by operating or driving any automobile in a negligent manner on a public highway or street shall be deemed guilty of a felony.

Ordinary or simple negligence was all that was necessary to convict one of automobile homicide under prior Utah law as set forth in Sec. 76–30–7.4, as enacted 1957.[2] However, this statute was repealed

2. *State v. Johnson,* 12 Utah 2d 220, 364 P.2d 1019 (1961) wherein this court stated ". . . . a death caused by simple negligence committed

Case 2:04-cv-00329-CW   Document 32-2   Filed 06/02/2008   Page 120 of 341

when the new Utah Criminal Code was enacted in 1973. Defendant was convicted under Part 2, Criminal Homicide, Chapt. 5, Offenses Against the Person.

Section 76–5–201, as enacted L.1973, ch. 196, provides:

(1) A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another.

(2) Criminal homicide is murder in the first and second degree, manslaughter, or negligent homicide, or automobile homicide.

The relevant provisions of Section 76–5–207, under which defendant was convicted, specify:

(1) Criminal homicide constitutes automobile homicide if the actor, while under the influence of intoxicating liquor, a controlled substance, or any drug, to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle in a negligent manner.

Under the new statutory scheme automobile homicide is designated one type of criminal homicide. The legislature has confined criminal homicide to those instances where a person "intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another."

Section 76–2–101 provides:

No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly or with criminal negligence with respect to each element of the offense as the definition of the offenses requires; or

(2) His acts constitute an offense involving strict liability.

Section 76–2–103, provides:

A person engages in conduct:

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

Defendant contends the instruction concerning his negligence should have described the conduct required by Sec. 76–2–103(4). This for the reason the term "negligent manner" set forth in 76–5–207(1) means criminal negligence, as required to constitute criminal homicide in Sec. 76–5–201(1).

Defendant's argument is correct. The automobile homicide provision was modeled after Sec. 76–30–7.4, as enacted 1957. However, it was set forth in the new code under Part 2, Criminal Homicide of Chapter 5, wherein, the elements of criminal homicide were set forth without any provision for simple negligence as a basis for liability. The criminal homicide section was patterned after Article 210, A.L.I., Model Penal Code, Proposed Official Draft, May 4, 1972.

A highly relevant comment concerning the criminal homicide article merits review.

While we appreciate the practical value of such special provisions for vehicular homicides, we think they are unnecessary as the Code is drawn. The separation from manslaughter is accomplished by treating negligent homicide as a distinct offense of lower grade. If the evidence does not make out a case of negligence, as negligence is defined in Section 2.02,[3] we see no reason for creating liability for homicide, as distinguished from any traffic offense that is involved. If the evi-

dence s
the offe
proper
And if c
that is t
ble, a p
under S
fense sh
objects o
tion of o
spect to
pled ratio

Under th
caused by
manslaught
or negligent
degree. The
provisions of
made neglig
meanor and
a felony of t

Here lies th
homicide secti
the elements
chapters of th
and 76–5–201
only by inter
manner," of
consonance wi
76–2–103(4).

We are here
tration of prob
tered in the v
model code. Th
and the rational
the effect of a
drawn with the

WILKINS, J.,
pressed in the di
GHAN, J.



---

by a driver while under the influence of liquor, is an offense within the contemplation of the statute." Also see *State v. Risk*, Utah, 520 P.2d 215 (1974).

3. The conduct set forth in § 76–2–103(4) is similar to Article 2, § 2.02(2)(d), A.L.I., Model Penal Code.

4. A.L.I., M

dence suffices to establish such a case, the offense is in our view too serious for proper treatment as a misdemeanor. And if conviction of a misdemeanor is all that is believed to be desireable or possible, a prosecution for reckless conduct under Section 201.11 or for a traffic offense should be sufficient. One of the objects of the draft is to avoid proliferation of offenses or distinctions with respect to sentence unsupported by principled rationale.[4]

Under the Model Penal Code, death caused by an intoxicated driver may be manslaughter, a felony of the second degree or negligent homicide, a felony of the third degree. The legislature departed from the provisions of the Model Penal Code and made negligent homicide a Class A misdemeanor and included automobile homicide, a felony of the third degree.

Here lies the gravamen. The automobile homicide section stands in contradiction to the elements of control of the two pertinent chapters of the code, viz., 76–2–101, et seq., and 76–5–201. Reconciliation is possible only by interpreting the term "negligent manner", of 76–5–207(1), to render it in consonance with the conduct described in 76–2–103(4).

We are here presented with a clear illustration of problems which can be encountered in the wake of the adoption of a model code. The basic elements of control, and the rationale of the new code can alter the effect of a prior statute, which was not drawn with the code in mind.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.



---

The STATE of Utah, Plaintiff and Respondent,

v.

Kenneth L. ANDERSON, Defendant and Appellant.

No. 14650.

Supreme Court of Utah.

March 18, 1977.

Defendant was convicted in the Fourth District Court, Utah County, Allen B. Sorensen, J., of automobile homicide, and he appealed. The Supreme Court, Ellett, C. J., held that admission made by defendant to police officer prior to *Miranda* warning that he was driver of vehicle involved in collision where fatal injuries were sustained was admissible over claim that corpus delicti of crime could not be proven by admission of defendant alone where trier of fact could hardly have entertained any doubt under evidence as to who was driving vehicle; further, crime of automobile negligence is established where simple negligence in driving of vehicle causes death of another person and driver is so under the influence of liquor as to be unable to drive his vehicle in a reasonably safe and prudent manner.

Affirmed.

Maughan, J., dissented and filed opinion in which Wilkins, J., concurred.

1. Criminal Law ⬤⟲409(7)

Corpus delicti of a crime cannot be proved by admission of defendant alone.

2. Criminal Law ⬤⟲406(1)

Evidence that defendant made an admission to police officer before being given *Miranda* warning that he was driver of truck that collided with vehicle in which fatal injuries were sustained was admissible in prosecution for automobile homicide, notwithstanding claim that corpus delicti could not be proven by admission of defendant alone, where trier of fact could hardly have entertained any doubt as to who was driv-

---

4. A.L.I., Model Penal Code, Tentative Draft # 9, May 18, 1959, § 201.4, p. 55.

# EXHIBIT COVER PAGE K

EXHIBT

Description of this Exhibit: STate V. Chavez (1979) 605 P.2d 1226

Case No.
People v.

Number of pages to this Exhibit ___5___ pages. (116 - 120)

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

STATE of Utah, Plaintiff and
Respondent,

v.

Johnnie M. CHAVEZ, Defendant
and Appellant.

No. 16132.

Supreme Court of Utah.

Dec. 31, 1979.

Defendant was convicted in the Third
District Court, Salt Lake County, Ernest F.
Baldwin, Jr., J., of automobile homicide,
and he appealed. The Supreme Court, Wilkins, J., held that conviction of automobile
homicide requires instruction on criminal
negligence as the term is defined in statute
and a determination thereof by jury.

Remanded.

Crockett, C. J., dissented with opinion
in which Hall, J., concurred.

**Automobiles ⟐357**

A conviction of automobile homicide
requires instruction on criminal negligence
as defined in applicable statute. U.C.A.
1953, 76–2–103(4).

Bruce C. Lubeck of Salt Lake Legal Defenders Assoc., Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F.
Dorius, Asst. Atty. Gen., Salt Lake City, for
plaintiff and respondent.

1. All statutory references are to Utah Code
Ann., 1953, as amended. Section 76–5–207
provides:

(1) Criminal homicide constitutes automobile homicide if the actor, while under the
influence of intoxicating liquor, a controlled
substance, or any drug, to a degree which
renders the actor incapable of safely driving
a vehicle, causes the death of another by
operating a motor vehicle in a negligent manner.

WILKINS, Justice:

Defendant appeals from a jury verdict of
guilty of automobile homicide in violation
of Section 76–5–207,[1] and from the judgment entered thereon by the District Court
for Salt Lake County. Reversed and remanded for a new trial.

This case involves an automobile collision
which occurred at the intersection of State
Street and 3900 South Street in Salt Lake
City, at approximately 10:45 p. m. on the
evening of July 21, 1977. Witnesses who
were present at the scene testified that
defendant was driving at a high speed,
northbound on State Street, but in a 10-
foot-wide cement gutter, rather than on the
asphalt. The semaphore lights were red,
against defendant, but he passed several
cars which had stopped for those lights at
the intersection and collided with a car
driven by Mr. Skollingsberg, who was turning left from the southbound lanes of State
Street on the green arrow. Two-year-old
Eric Skollingsberg was killed in the collision.

Blood samples were drawn from defendant at 12:14 and again at 12:48 a. m. and
subjected to chemical analysis. The chemist who made these analyses testified that
defendant's blood contained .19 percent alcohol by weight, in both samples.

Defendant first contends that the Court
erred in instructing the jury that the State
must prove only simple negligence on the
part of defendant as an element of automobile homicide, and in refusing defendant's
requested instructions that criminal negligence as defined in Section 76–2–103(4)
must be proved. We have previously considered this question in the case of *State v.
Durrant*, Utah, 561 P.2d 1056 (1977), in

(2) The presumption established by section
41–6–44(b) of the Utah Motor Vehicle Act,
relating to blood alcohol percentages, shall
be applicable to this section and any chemical test administered on a defendant with his
consent or after his arrest under this section,
whether with or against his consent, shall be
admissible in accordance with the rules of
evidence.

• • • • • •

(4) Automobile homicide is a felony of the
third degree.

STATE v. CHAVEZ
Cite as, Utah, 605 P.2d 1226
Utah **1227**

*[left margin fragments]*

a jury verdict of
icide in violation
l from the judg-
he District Court
Reversed and re-

itomobile collision
ersection of State
reet in Salt Lake
):45 p. m. on the
Witnesses who
ne testified that
at a high speed,
eet, but in a 10-
ather than on the
lights were red,
le passed several
or those lights at
lided with a car
rg, who was turn-
nd lanes of State
w. Two-year-old
illed in the colli-

wn from defend-
t 12:48 a. m. and
llysis. The chem-
ses testified that
ed .19 percent al-
amples.

ds that the Court
ary that the State
negligence on the
lement of automo-
using defendant's
at criminal negli-
ction 76–2–103(4)
ve previously con-
he case of *State v.*
1 1056 (1977), in

stablished by section
Motor Vehicle Act,
l percentages, shall
tion and any chemi-
a defendant with his
st under this section,
his consent, shall be
e with the rules of

• • •
ide is a felony of the

which this Court ruled that the provisions of Section 76–5–207 require only simple negligence. That ruling was followed in *State v. Anderson,* Utah, 561 P.2d 1061 (1977), and *State v. Wade,* Utah, 572 P.2d 398 (1977). Defendant now urges us to overrule those decisions, as that interpretation produces conflict in the statutes.

Mr. Justice Maughan, in his dissent in *State v. Durrant,* supra, with which this author concurred, recognized that ordinary, or simple negligence was all that was necessary to convict one of automobile homicide under Section 76–30–7.4, the statute as enacted in 1957. But that statute was repealed in 1973, together with the entire Utah Penal Code, at which time the present Utah Criminal Code was enacted. Section 76–2–101 of the Criminal Code now extant, and applicable in this case, provides:

No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly or with criminal negligence with respect *to each element of the offense* as the definition of the offense requires . . . . [Emphasis added.]

Thus under the new code, negligence is an element of the crime of automobile homicide under Section 76–5–207(1), supra at footnote 1, and that negligence must therefore at least rise to the level of criminal negligence, or defendant is guilty of no offense at all. Criminal negligence is defined in Section 76–2–103:

A person engages in conduct:

• • • • •

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of

> 2. Section 76–2–103(3), defines reckless conduct:
>
> Recklessly, or maliciously, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of

such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

Instruction No. 18, given by the District Court to the jury in this case, defined negligence as:

Negligence is the failure to do what a reasonable and prudent person would have done under the circumstances or doing what such person under such circumstances would not have done. The fault may lie in acting or omitting to act. You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual nor the exceptionally skillful one, but a person of reasonable and ordinary prudence.

This is a definition of simple negligence, used generally in tort cases, and differs greatly from the quantum of negligence described in Section 76–2–103(4). The latter statute requires proof that defendant's conduct place another at risk; that the risk be substantial and unjustifiable; and that failure to perceive the risk constitute a gross deviation from the reasonable man standard. A higher level of culpability is required under Section 76–2–103(4) than that defined in Instruction 18.

In *State v. Wade,* supra, the majority of this Court (Justice Maughan and this author dissenting) was of the opinion that driving while intoxicated amounts to reckless conduct in disregard of the safety and rights of others, and therefore, such recklessness satisfies the requirements of Section 76–2–101. Reckless conduct is defined in Section 76–2–103(3) and requires proof of even higher culpability than criminal negligence.[2] And a homicide caused by reckless

such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The higher culpability in recklessness requires that defendant be aware of but consciously disregard a substantial and unjustifia-

Case 2:03-cv-00091-WHA-DAB    Document 2-2    Filed 08/28/2008    Page 51 of 83

conduct constitutes manslaughter, a second degree felony, under the provisions of Section 76–5–205. Thus the ruling in *Wade*, we respectfully submit, infused confusion into the quantum of culpability required to prove automobile homicide.

We are therefore of the opinion that our previous cases holding that automobile homicide requires only proof of simple negligence under Section 76–5–207 are in error, and are overruled. And we hold that a conviction of automobile homicide requires an instruction on criminal negligence as that term is defined in Section 76–2–103(4), and a determination thereof by the jury. As the Court's Instruction 18 defined simple negligence and not criminal negligence, defendant is entitled to a new trial.

Defendant further argues that the Court erred in denying his motion to dismiss the charges, or alternatively, to suppress the results of the blood tests. The thrust of his argument here is that the chemist, after he finished his analysis, "destroyed" the evidence by allowing the blood samples to remain at room temperature, and that his failure to refrigerate the samples rendered the blood worthless for the purpose of a second analysis on the part of defendant's expert.

The District Court denied defendant's motion to suppress this evidence on the ground that it was not destroyed [3] by the police or prosecution, nor was it intentionally or wilfully destroyed by anyone. Defendant was not denied access to these samples; he made no request for an independent analysis. His motion to suppress this evidence was not made until January 5, 1978—five months after the blood was drawn.

Section 41–6–44.10(f) provides that defendant may have his own physician administer a chemical test in addition to the test administered at the direction of a peace officer, and further, provides that the failure to obtain such additional test shall not affect the admissibility of the results of the State's test. As defendant neither asked his own physician to take a blood sample, nor requested the State to produce its samples for the purpose of an independent test, his argument is without merit, and upon a retrial of defendant, the results of those tests are admissible.

Defendant also asserts that the District Court erred in admitting the results of the blood analysis, in instructing the jury concerning the presumptions of intoxication as set forth in Section 41–6–44(b) 3, and in denying defendant's motion to dismiss, contending that there was little or no evidence that defendant was intoxicated at the time of the collision. These arguments are without merit and we do not discuss them.

Finally, defendant contends that he was not properly sentenced, but in view of our remand, that argument is moot.

MAUGHAN and STEWART, JJ., concur.

CROCKETT, Chief Justice (dissenting):

With due respect to the view set forth in the main opinion, I see this case in quite a different light and cannot agree to the reversal nor join in what seems to me as substantial weakening of the law whose purpose it is to prevent the killing of others in driving while intoxicated.

It will be noted from the instructions given, that the trial court took cognizance of the requirements of the applicable statutes and that the instructions conformed thereto. From those instructions, the jury could not fail to understand that they could not convict the defendant for merely being negligent, nor unless he drove in reckless disregard of the safety of others, or so under the influence of intoxicating liquor

---

ble risk to others; criminal negligence, however, requires only that defendant ought to be aware of such risk, but is not. See Section 76–2–103(4) supra.

3. The ampules containing these blood samples were introduced as evidence at the trial. They were proffered to defense counsel at the time of

the hearing on his motion to suppress, but at that time they were nine months old. The testimony of the chemist at the hearing on the motion to suppress was that no meaningful analysis could be made if the blood were kept unrefrigerated for "a period of time."

*of a peace*
*.at the fail-*
*.st shall not*
*.sults of the*
*.ither asked*
*.ood sample,*
*.ace its sam-*
*.endent test,*
*.and upon a*
*.ts of those*

*the District*
*.sults of the*
*.e jury con-*
*.oxication as*
*.) 3, and in*
*lismiss, con-*
*no evidence*
*.at the time*
*.ts are with-*
*scuss them.*
*:hat he was*
*view of our*

*JJ., concur.*

*(dissenting):*

*.set forth in*
*e in quite a*
*e to the re-*
*s to me as*
*.law whose*
*ng of others*

*instructions*
*: cognizance*
*licable stat-*
*: conformed*
*ns, the jury*
*.t they could*
*nerely. being*
*. in reckless*
*:hers, or so*
*ating liquor*

*opress, but at*
*:hs old. The*
*learing on the.*
*o meaningful*
*iod were kept*
*ne."*

that he could not drive safely, and thus was hazarding the safety of others, *plus the fact* that he drove in such an erratic manner as to constitute negligence, i. e., without due care for the safety of others, or otherwise stated, in a careless manner.

The pertinent part of Instruction No. 20 stated:

> Before you may find the defendant guilty of Negligent Homicide, the State must prove by evidence which .satisfies you beyond a reasonable doubt, each of the following elements:
>
> • • • • • •
>
> 2. That Johnny Michael Chavez *drove a vehicle in reckless disregard of the safety of others;*
> 3. That said driving proximately caused the death of Eric Skollingsberg.
>
> • • • • • •
>
> *If the evidence has failed to so establish one or more of said elements then you cannot find the defendant guilty* of Negligent Homicide.

The other significant instruction to be considered in conjunction with the foregoing is instruction No. 15, the part of which is pertinent to the issue involved in this case, included these elements:

> Before you can convict the defendant, Johnny Michael Chavez, of the crime of Automobile Homicide you must find from the evidence, beyond a reasonable doubt, all of the following elements of that crime:
>
> • • • • • •
>
> 2. That the defendant then and there drove the motor vehicle while *under the influence of intoxicating liquor, to a degree which rendered him incapable of safely driving a vehicle; and,*
> 3. That the defendant so operated or drove the motor vehicle *in a negligent manner;* and,
> . . . injured Eric Skollingsberg, proximately causing his death, by operating or driving such vehicle while in such intoxicated condition and in a negligent manner.

In considering the effect and applicability of the foregoing instructions, it is also important to have in mind that Section 76–2–101, relied upon by the main opinion, is a general statute relating to crimes generally, whereas Sec. 76–5–207(1) under which the defendant was convicted, is specific as to the crime for which the defendant was convicted.

It provides:

> (1) Criminal homicide constitutes automobile homicide if the actor, while under the influence *of intoxicating liquor,* a controlled substance, *or any drug,* to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle *in a negligent manner.*

The universally accepted rule is that a specific statute takes precedence over a general one.[1] Therefore, the definition of defendant's crime is found in the just-quoted statute.

Attention is called to the fact that this case is but a replay of the cases of *State v. Durrant* and *State v. Wade* referred to in the main opinion, which were 3–2 decisions. In order to avoid repetition and further exposition thereon, I quote from the reasoning and the holding of the *Wade* case as to applicability of the two statutes referred to.

> . . . If the two statutes are considered together and each given its intended effect, we see no such conflict. It will be noted that under Sec. 201 an act may be criminal homicide if done "intentionally, knowingly, recklessly or with criminal negligence" in the disjunctive, and therefore does not necessarily require criminal negligence. In the cases referred to we have expressed our opinion that *one who knowingly undertakes to drive a motor vehicle upon a public highway while he is intoxicated is acting recklessly and in disregard of the rights and safety of others;* [citing cases] and that when this reckless conduct is combined with any negligence which causes the

1. 82 C.J.S., Statutes, § 347.

death of another, that constitutes automobile homicide under the provisions of Sec. 207(1) above quoted. We reaffirm that position and reject the urgence on defendant's behalf that those cases should be overruled. [All emphasis herein is added.]

I reaffirm my conviction: that that is a correct statement of the law; that our prior cases should not be overruled; and that if there is to be any such dramatic change, it should be done by the legislature.

In addition to what has been said above, there is a further sound and persuasive reason why there should be no reversal of the jury verdict and judgment in this case. Under the facts set forth in the main opinion: that the defendant's blood showed .19 content of alcohol, (more than twice the .08 required by statute for prima facie intoxication),[2] there can be no question but that the defendant was so drunk that it was extremely dangerous for him to be driving on a public highway. This is plainly evident by the further facts that he wasn't even driving on the travelled portion of the street, but in the gutter, at high speed; that he passed several cars stopped at the intersection for a red light, continued on into that intersection and collided with Mr. Skollingsberg's car which resulted in the death of two-year old Eric Skollingsberg. Even if it should be assumed that there was some technical error in the instructions (with which assumption I do not agree), I cannot believe that there is any likelihood whatsoever that there would have been a different result. That being so, under the mandate of our statute, Sec. 77–42–1, and our well-established decisional law, there should be no reversal for mere technical error.[3]

I would affirm the conviction.

HALL, J., concurs in views expressed in the dissenting opinion of CROCKETT, C. J.

2. Sec. 41–6–44(b) 3, U.C.A. 1953.

---

Kathleen STANDIFORD, Plaintiff and Appellant,

v.

SALT LAKE CITY CORPORATION, Defendant and Respondent.

No. 16122.

Supreme Court of Utah.

Jan. 7, 1980.

Patron sued municipality for injuries sustained on the premises of a municipally owned public golf course. The Third District Court, Salt Lake County, G. Hal Taylor, J., dismissed and patron appealed. The Supreme Court, Stewart, J., held that the operation of a public golf course was not a "governmental function" within purview of the Utah Governmental Immunity Act.

Reversed and remanded.

Hall, J., filed a dissenting opinion.

Crockett, C. J., filed a dissenting opinion.

**1. Municipal Corporations** ⚖=724

Test for determining governmental immunity is whether activity under consideration is of such unique nature that it can only be performed by governmental agency or that it is essential to core of governmental activity. U.C.A.1953, 63–30–1 et seq.

**2. Municipal Corporations** ⚖=734

Municipality's operation of public golf course was not essential to governing and was not "governmental function" within purview of Utah Governmental Immunity Act. U.C.A.1953, 63–30–1 et seq.

See publication Words and Phrases for other judicial constructions and definitions.

E–120

3. See *State v. Scandrett*, 24 Utah 2d 202, 468 P.2d 639; and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

Case 1:13-cv-00234-DAK Document 28 Filed 07/02/2008 Page 13 of 90

At the time the information was filed in this case, this Court had recently overruled the precedent established in *State v. Durrant*,[2] *State v. Anderson*,[3] and *State v. Wade*[4] regarding the degree of negligence required for a conviction under U.C.A., 1953, § 76–5–207 (automobile homicide). We held in *State v. Chavez*:[5]

> We are therefore of the opinion that our previous cases holding that automobile homicide requires only proof of simple negligence under Section 76–5–207 are in error, and are overruled. And we hold that a conviction of automobile homicide requires an instruction on criminal negligence as that term is defined in Section 76–2–103(4), and a determination thereof by the jury.[6]

*Chavez* at 1228.

Prior to the *Chavez* decision, the simple negligence standard could be satisfied by a mere showing that the defendant had driven a vehicle while intoxicated. After *Chavez*, with the advent of the criminal negligence standard, the elements of intoxication and negligence could no longer be considered one and the same; rather, they became separate substantive elements.

Defendant contends that the trial court failed to adhere to the rule articulated in *Chavez* by instructing the jury on the relationship between intoxication and criminal negligence. Defendant refers specifically to instruction No. 17, which reads as follows:

> You are instructed that you may consider the degree of the defendant's intoxication or the amount of alcohol consumed by the defendant as factors in determining

whether the defendant was criminally negligent while operating a motor vehicle.

Defendant maintains that this instruction effectively removed the distinction drawn in *Chavez* between criminal and simple negligence, and thus broadened the scope of potential criminal liability to such an extent as to allow the jury to convict defendant upon a mere showing that he had operated a motor vehicle while intoxicated.

In furtherance of this position, defendant directs the Court's attention to the trial court's reliance upon *State v. Capps*[8] as a basis for instruction No. 17. In *Capps*, this Court reasoned that a person who drives while intoxicated to such a degree that his locomotion and speech are impaired is criminally negligent.[9] Defendant points out that the *Capps* reasoning was cited as authority in *State v. Anderson, supra,* which was explicitly overruled by *Chavez.* Although defendant does not draw a direct conclusion from this evidence, his apparent purpose in presenting it is to show that even though *Capps* itself was not explicitly overruled by *Chavez*, the effect of overruling the *Anderson* decision was to invalidate the *Capps* reasoning. Were this supposition accurate, the trial court's reliance upon *Capps* as a basis for instruction No. 17 would render the instruction erroneous.

Defendant further submits that the trial court's alleged error in granting instruction No. 17 was compounded by its refusal to give requested defense instructions which purportedly set forth the difference between criminal negligence and intoxication.[10]

---

1. Utah, 561 P.2d 1056 (1977).

3. Utah, 561 P.2d 1061 (1977).

4. Utah, 572 P.2d 398 (1977).

5. Utah, 605 P.2d 1226 (1979).

6. In 1981, after the occurrence of the alleged offense and the commencement of this action, although prior to the trial, the Legislature amended U.C.A., 1953, § 76–5–207 to reinstate simple negligence as the requisite state of mind. U.C.A., 1953, § 76–5–207 (Supp.1981). Inasmuch as *Chavez* was the law in this state at the time this action was initiated, it was

undisputedly recognized by the parties as controlling.

7. 561 P.2d at 1058. *See also supra* n. 3 & n. 4.

8. 111 Utah 189, 176 P.2d 873 (1947).

9. *Id.* 176 P.2d at 874.

10. Defendant requested the following instructions, which were refused by the trial court:
    A finding of criminal negligence cannot be based upon a finding that the defendant is under the influence of an intoxicating liquor

This Court issued a clear set of guidelines in *State v. Chavez* for the application of the criminal negligence standard in automobile homicide cases. These guidelines consisted of an instruction to the jury on criminal negligence "as that term is defined in Section 76–2–103(4), and a determination thereof by the jury," *supra*. The § 76–2–103(4) definition of criminal negligence is as follows:

A person engages in conduct:

• • • • •

(4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

The court's instructions No. 15 and No. 16 are as set forth below.[11] These instructions undisputedly comply with the aforementioned statutory and decisional requirements. Instruction No. 15 is nearly an exact reproduction of § 76–2–103(4), and No.

16 is simply an explanatory breakdown of the elements set forth in No. 15.

Contrary to defendant's conclusion, instruction No. 17, *supra*, did not vitiate the effect of instructions No. 15 and 16; rather, it served to complement them. Defendant's averment that instruction No. 17 broadened the scope of criminal liability, confused criminal and simple negligence and misled the jury as to the substantive elements of the crime, apparently rests upon the assumption that intoxication cannot be considered even as a factor in determining whether the defendant's acts were criminally negligent. This assumption does not find support in the *Chavez* decision nor in any other decision of this Court.

[1, 2] While it is no longer appropriate to consider intoxication and negligence as a single element, it is appropriate to consider the degree and effects of intoxication as a "factor" in determining whether a defendant's conduct was criminally negligent. To establish criminal negligence, it is necessary to show conduct which is "a gross deviation from the standard of care that an ordinary person would exercise in *all* the circumstances as viewed from the actor's standpoint." § 76–2–103(4), *supra* (emphasis added). It is therefore a subjective element requiring consideration of *all* relevant circumstances surrounding the incident.

---

and undertakes to drive a motor vehicle, even if the defendant commits a negligent act or violates a traffic rule or ordinance. [Defendant's requested instruction No. 4.]

You will note in these instructions that "driving while under the influence of alcohol to a degree which renders the actor incapable of safely driving a vehicle" is one element of the offense charged and that criminal negligence is another separate element. A finding that defendant was under the influence of alcohol at the time of the accident does not warrant a finding that he necessarily operated his vehicle in a criminally negligent manner. [Defendant's requested instruction No. 6.]

11. INSTRUCTION NO. 15

You are instructed that "criminal negligence" is defined as follows:

A person engages in conduct with criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct . . .

"When he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the defendant's standpoint."

INSTRUCTION NO. 16

In order to find that the defendant acted with criminal negligence, you must find from the evidence the following:

1. The defendant's conduct placed another at risk; and

2. The risk was substantial and unjustifiable; and,

3. The failure to perceive the risk constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the defendant's standpoint.

---

Thus, the trial court's deter[mination of] criminal negligence has not a [matter of] but several factors, and that [the] intoxication can be consider[ed as one of] those factors, is consistent wi[th the statu-] tional requirement of § 76–2[–103(4).]

We further hold that the [court's] reliance upon the *Capps* deci[sion] for instruction No. 17 was [proper.] *Capps* supports the consider[ation of intoxi-] cation as a factor in criminal [negligence as] clearly illustrated by the f[ollowing lan-] guage from that decision:

In this case there was a[mple proof] that appellant had imbibed [to a de-] gree that it was apparent [to all who saw] and heard him that his loco[motor and] power of speech were mar[kedly affected.] It is our opinion that a per[son driving] a car in such a cond[ition acts reck-] and evinces a marked dis[regard for the] safety of others and is the[refore guilty of] criminal negligence.[12]

Although *Capps* was cited [as having been] the overruled *Anderson* deci[sion, itself] overruled by *Chavez* beca[use it did not] reach the same conclusions [on the] same issues as did *Anderso[n*, supra, and] *Wade, supra.* In *Capps*, the [defendant was] convicted of involuntary ma[nslaughter in] automobile homicide, and t[he court deter-] mined, not that intoxicatio[n was prima fa-] cie evidence of criminal [negligence, but] rather that the drunkenness[ of a defend-] ant was to be considered a[s a factor.]

12. 176 P.2d at 874.

13. INSTRUCTION NO. 22

The law imposes upon [anyone] vehicle using a public hig[hway to] exercise ordinary care and re[asonable care to] avoid causing an accident [which] might result. This duty r[equires] vigilant at all times, keep[ing control of] traffic, traffic signals an[d to be] reasonably to be anticipate[d, have his] vehicle under such contro[l that he can] as quickly as might be [required in] situations that would be [met by an] ordinary, prudent driver [in] order to avoid a collision.

INSTRUCTION NO. 23

You are instructed t[hat when you] drive a vehicle at a sp[eed that is] reasonable and prudent u[nder the con-] and having regard to the [conditions]

E–124

Thus, the trial court's determination that criminal negligence has not a single factor, but several factors, and that the degree of intoxication can be considered as one of those factors, is consistent with the definitional requirement of § 76–2–103(4).

We further hold that the trial court's reliance upon the *Capps* decision as a basis for instruction No. 17 was proper. That *Capps* supports the consideration of intoxication as a factor in criminal negligence is clearly illustrated by the following language from that decision:

In this case there was ample evidence that appellant had imbibed to such a degree that it was apparent to all who saw and heard him that his locomotion and his power of speech were markedly affected. It is our opinion that a person who drives a car while in such a condition is reckless and evinces a marked disregard for the safety of others and is therefore guilty of criminal negligence.[12]

Although *Capps* was cited as authority in the overruled *Anderson* decision, it was not overruled by *Chavez* because it did not reach the same conclusions nor involve the same issues as did *Anderson, Durrant* and *Wade, supra.* In *Capps,* the defendant was convicted of involuntary manslaughter, not automobile homicide, and the Court determined, not that intoxication was prima facie evidence of criminal negligence, but rather that the drunkenness of the defendant was to be considered a factor since it

12. 176 P.2d at 874.

13. INSTRUCTION NO. 22
The law imposes upon the driver of any vehicle using a public highway the duty to exercise ordinary and reasonable care to avoid causing an accident from which injury might result. This duty requires him to be vigilant at all times, keeping a lookout for traffic, traffic signals and other conditions reasonably to be anticipated; and to keep the vehicle under such control that he can stop as quickly as might be required of him in situations that would be anticipated by an ordinary, prudent driver in like position in order to avoid a collision.
INSTRUCTION NO. 23
You are instructed that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential

indicated recklessness and a marked disregard for the safety of others as required for a finding of criminal negligence. It is therefore supportive of instruction No. 17.

In light of the foregoing, the trial court's denial of defendant's requested instructions (defendant's requested instructions No. 4 and No. 6) defining criminal negligence and differentiating between the elements of intoxication and criminal negligence was a proper exercise of its discretion.

Defendant further avers that the trial court erred in instructing the jury as to definitions applicable to civil cases. This averment is targeted at instructions No. 22 through 24.[13] Defendant contends that these instructions set forth concepts of simple negligence, rather than criminal negligence, and tend to confuse the jury as to the correct standard to be applied in their deliberations. Furthermore, he argues that these instructions express the objective standard employed in civil cases and do not focus on the appropriate subjective standard required to find criminal negligence (U.C.A., 1953, § 76–2–103(4)).

Inasmuch as the nature of this claim resembles closely that of defendant's first claim regarding instruction No. 17, we cite the following time-honored rule as dispositive of both:

As we have reiterated innumerable times one instruction should not be considered

hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection.
INSTRUCTION NO. 24
You are instructed that general human experience supports the inference that when one in possession of his faculties looks in the direction of an object clearly visible, he sees it. When there is evidence to the effect that one did look, but did not see that which was in plain sight, in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence, or the person was negligently inattentive.
The driver of a motor vehicle is charged with the duty of seeing those objects or persons which he would have seen had he been exercising reasonable care.

Case 2:18-cr-00061-JNP-CAB  Document 62-2  Filed 09/22/2020  Page 57 of 89

in isolation in order to predicate a claim of error upon it, but the instructions must be read and understood as a connected whole.[14]

[3, 4] Accordingly, instructions No. 22 through 24, as well as instruction No. 17, are not to be considered in isolation, but should be viewed together with all other instructions. So considered, instructions No. 22 through 24 do not introduce an objective civil standard of negligence; they merely set forth certain factors which contribute to the overall subjective determination of criminally negligent conduct.

Thus, when considered as a whole, the instructions given by the trial court adequately discharged its duty to instruct the jury on the elements of the crime of automobile homicide, as they are prescribed by the *Chavez* ruling.

The conviction and judgment are affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.



Gary D. PILCHER, Plaintiff and Appellant,

v.

STATE of Utah, DEPARTMENT OF SOCIAL SERVICES, Defendant and Respondent.

No. 18222.

Supreme Court of Utah.

April 26, 1983.

An administrative law judge determined that Department of Social Services was entitled to recover past-due child sup-

port payments from divorced husband under notice of child support debt based upon Texas child support order and Utah divorce decree. On judicial review, the District Court, Salt Lake County, Bryant H. Croft, J., affirmed administrative ruling, and divorced husband appealed. The Supreme Court, Stewart, J., held that: (1) administrative hearing held within 30 days after request for hearing was filed was timely; (2) Department's second "notice of support debt" was not barred by "two dismissal" rule; (3) administrative law judge properly allowed amendment of notice of support debt to include Utah divorce decree as second basis for assessment; (4) Texas court order provided lawful basis for proceeding before Department; (5) statute authorizing Department to issue notice of child support debt could properly go beyond enforcement requirements of federal grant in aid statute; and (6) statute authorizing Department's actions were remedial and procedural in nature and could properly be applied to action accrued or pending at time they were enacted.

Affirmed.

**1. Social Security and Public Welfare**
   **⊂⊃11**
   Child support debt hearing was statutorily required to be held within 30 days after request for hearing was filed, not after such request was dated, and thus, hearing held within 30 days of filing date was timely. U.C.A.1953, 78–45b–6.

**2. Administrative Law and Procedure**
   **⊂⊃311**
   As rules governing civil procedure in trial courts are not necessarily applicable to administrative proceedings, administrative proceedings are not subject to Rules of Civil Procedure unless governing statute or regulations so provide.

**3. Administrative Law and Procedure**
   **⊂⊃311**
   Administrative proceedings are usually conducted with greater flexibility and in-

14. *Taylor v. Johnson*, 18 Utah 2d 16, 414 P.2d 575, 577 (1966). *See also Black v. McKnight,*      Utah, 562 P.2d 621 (1977); *Whyte v. Christensen*, Utah, 550 P.2d 1289 (1976).

E–126

*207*

*0001*

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | CT No. SCD163510 |
| Plaintiff, | DA No. AAO614 |
| v. | |
| GEORGE WILLIAM SHUFELT, | |
| *dob 08/19/62, Booking No. 01154218D;* | |
| Defendant | INFORMATION |

**F I L E D**
STEPHEN THUNBERG
Clerk of the Superior Court

**DEC 0 5 2001**

By: Marcee Wheaton, Deputy

*12 - 10*

## CHARGE SUMMARY

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|---|---|---|---|---|---|
| 1 | VC10851(a) *1 1/3* | Felony | 16-2-3 *1 1/3* | | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 2 | PC496d *Stay* | Felony | 16-2-3 *Stay* | | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 3 | PC459 *8* | Felony | 2-4-6 *6* | PC460 PC667.5(c)(21) | *(11)* *3190* |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 4 | PC459 *2 2/3* | Felony | 2-4-6 *1 1/3* | PC460 | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 5 | PC459 *2 2/3* | Felony | 2-4-6 *1 1/3* | PC460 PC667.5(c)(21) | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 6 | PC459 *(2 2/3) CC* | Felony | 2-4-6 *1 1/3* | PC460 | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 7 | PC496(a) *Stay* | Felony | 16-2-3 *Stay* | | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 8 | PC496(a) *Stay* | Felony | 16-2-3 *Stay* | | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 9 | PC496(a) *Stay* | Felony | 16-2-3 *Stay* | | |
| | SHUFELT, GEORGE WILLIAM | | | | |
| 10 | PC496(a) *Stay* | Felony | 16-2-3 *Stay* | | |
| | SHUFELT, GEORGE WILLIAM | | | | |

*E-127*

0002

# CHARGE SUMMARY (cont'd)

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|-------|--------|-----------|----------------|--------------------|--------------------|
| 11 | PC148(a)(1) *Served* | Misdemeanor | 1 Yr *Served* | | |

SHUFELT, GEORGE WILLIAM

PC667(b) thru (i) and PC1170.12          "THREE STRIKES LAW"

The District Attorney of the County of San Diego, State of California, accuses the Defendant(s) of committing, in the County of San Diego, State of California, the following crime(s):

# CHARGES

## COUNT  1  - UNLAWFUL TAKE AND DRIVE A VEHICLE

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully drive and take a vehicle, the personal property of WILLIAM WADSWORTH, without the consent of and with intent either permanently or temporarily to deprive the owner of title to and possession of said vehicle, in violation of VEHICLE CODE SECTION 10851(a).

## COUNT  2  - BUY/RECEIVE/CONCEAL/SELL/WITHHOLD STOLEN VEHICLE

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully buy, receive, conceal, sell, withhold and aid in concealing, selling and withholding a motor vehicle, as defined in Section 415 of the Vehicle Code, which property had been stolen and obtained in any manner constituting theft or extortion, knowing such property to be stolen or so obtained, in violation of PENAL CODE SECTION 496d.

## COUNT  3  - BURGLARY, RESIDENTIAL

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully enter a building occupied by DIANA GOEDHUYS with the intent to commit theft, in violation of PENAL CODE SECTION 459.

And it is further alleged that said burglary was a burglary of an inhabited dwelling house, trailer coach, inhabited portion of a building, within the meaning of PENAL CODE SECTION 460.

And it is further alleged that another person , other than an accomplice, was present in the residence during the commission of burglary,  within the meaning of PENAL CODE SECTION 667.5(c)(21).

E-128

0003

# CHARGES (cont'd)

## COUNT 4 - BURGLARY, RESIDENTIAL

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully enter a building occupied by MICHAEL RAHILLY with the intent to commit theft, in violation of PENAL CODE SECTION 459.

And it is further alleged that said burglary was a burglary of an inhabited dwelling house, trailer coach, inhabited portion of a building, within the meaning of PENAL CODE SECTION 460.

## COUNT 5 - BURGLARY, RESIDENTIAL

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully enter a building occupied by PETER HAMMERLING with the intent to commit theft, in violation of PENAL CODE SECTION 459.

And it is further alleged that said burglary was a burglary of an inhabited dwelling house, trailer coach, inhabited portion of a building, within the meaning of PENAL CODE SECTION 460.

And it is further alleged that another person , other than an accomplice, was present in the residence during the commission of burglary, within the meaning of PENAL CODE SECTION 667.5(c)(21).

## COUNT 6 - BURGLARY, RESIDENTIAL

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully enter a building occupied by MCCARTHY with the intent to commit theft, in violation of PENAL CODE SECTION 459.

And it is further alleged that said burglary was a burglary of an inhabited dwelling house, trailer coach, inhabited portion of a building, within the meaning of PENAL CODE SECTION 460.

## COUNT 7 - RECEIVING STOLEN PROPERTY

*Michael Mc Carthy 02/14/02*

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully buy, receive, conceal, sell, and withhold property other than a vehicle, trailer, or vessel the property of ~~WILLIAM WADSWORTH~~ which had been stolen, knowing such property to be stolen in violation of PENAL CODE SECTION 496(a).

## COUNT 8 - RECEIVING STOLEN PROPERTY

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully buy, receive, conceal, sell, and withhold property other than a vehicle, trailer, or vessel the property of MICHAEL RAHILLY which had been stolen, knowing such property to be stolen in violation of PENAL CODE SECTION 496(a).

E-129

0004

## CHARGES (cont'd)

### COUNT 9 - RECEIVING STOLEN PROPERTY

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully buy, receive, conceal, sell, and withhold property other than a vehicle, trailer, or vessel the property of DIANA GOEDHUYS which had been stolen, knowing such property to be stolen in violation of PENAL CODE SECTION 496(a).

### COUNT 10 - RECEIVING STOLEN PROPERTY

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did unlawfully buy, receive, conceal, sell, and withhold property other than a vehicle, trailer, or vessel the property of PETER HAMMERLING which had been stolen, knowing such property to be stolen in violation of PENAL CODE SECTION 496(a).

### COUNT 11 - RESISTING AN OFFICER

On or about August 12, 2001, GEORGE WILLIAM SHUFELT did willfully and unlawfully resist, delay and obstruct a public officer, peace officer and emergency medical technician in the discharge of and the attempt to discharge a duty of his/her office and employment, in violation of PENAL CODE SECTION 148(a)(1).

---

## PRIORS

### *GEORGE WILLIAM SHUFELT:*

FIRST SERIOUS FELONY PRIOR

And it is further alleged that said defendant, GEORGE WILLIAM SHUFELT, was convicted of the following serious felony(ies), separately brought and tried, which under California law is punishable by imprisonment in state prison, within the meaning of PENAL CODE SECTIONS 667(a)(1), 668, AND 1192.7(c).

| Charge | Date of Conviction | Court Number | Court | County | State |
|---|---|---|---|---|---|
| Automobile Homicide | 03/17/1995 | 941013828FS | District Court | Salt Lake | UT |

E-130

0005

# PRIORS (cont'd)

*GEORGE WILLIAM SHUFELT:*

STRIKE PRIOR(S)

And it is further alleged pursuant to Penal Code sections 667(b) through (i), 1170.12, and 668 that the defendant, GEORGE WILLIAM SHUFELT, has suffered the following prior conviction(s) and juvenile adjudication(s), which are now serious or violent felonies under California law whether committed in California or elsewhere.

| Charge | Date of Conviction | Court Number | Court | County | State |
|--------|--------------------|--------------|-------|--------|-------|
| Automobile Homicide | 03/17/1995 | 941013828FS | District Court | Salt Lake | UT |

THIS INFORMATION, NUMBERED SCD163510, CONSISTS OF 11 COUNTS.

Paul J. Pfingst
District Attorney
County of San Diego
State of California
by:

_____  
Date 12/5/01

_____  
Deputy District Attorney

E-131

# EXHIBIT COVER PAGE N

EXHIBT

Description of this Exhibit: Utah, Charging Document, Information

Case No.
People v. Simple Negligent Standard, Case No. 941013828

Number of pages to this Exhibit ____(1)____ pages. (132)

## JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

DAVID E. YOCOM
Salt Lake County Attorney
RUTH J. MCCLOSKEY, Bar No. 2153
Deputy County Attorney
231 East 400 South, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 363-7900

---

IN THE THIRD CIRCUIT COURT, SALT LAKE DEPARTMENT

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| THE STATE OF UTAH,<br><br>          Plaintiff,<br><br>-vs-<br><br>GEORGE WILLIAM SHUFELT,<br>DOB 8/19/62<br>OTN 7316698<br><br>          Defendant. | )  Screened by:  R. MCCLOSKEY<br>)  Assigned to:  R. MCCLOSKEY<br>)  BAIL:  $25,000.00<br>)<br>)       I N F O R M A T I O N<br>)<br>)  Case No.<br>)<br>)<br>)   941013828  FS |

The undersigned Det. Frank Werner - Salt Lake City Police Department, under oath states on information and belief that the defendant, committed the crime of:

COUNT I
CRIMINAL HOMICIDE, AUTOMOBILE HOMICIDE, a ~~Second~~ *third* Degree Felony, at 500 South State Street, in Salt Lake County, State of Utah, on or about August 19, 1994, in violation of Title 76, Chapter 5, Section 207(1), Utah Code Annotated 1953, as amended, in that the defendant, GEORGE WILLIAM SHUFELT, a party to the offense, did operate a motor vehicle while having a blood alcohol content of .08 grams or greater by weight, or while under the influence of alcohol or any drug, or the combined influence of alcohol and any drug, to a degree which rendered the actor incapable of safely operating the vehicle, and caused the death of Frank N. Hudleson by operating the vehicle in a ~~criminally~~ negligent manner.

E-132

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: _Utah Judgment/Sentence, Dated May 26, 1995_

Case No.

People v.

Number of pages to this Exhibit ___(2)___ pages.  (133-134)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury



**JUDGEMENT**

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

THE STATE OF UTAH,

Plaintiff,

**JUDGMENT, SENTENCE (COMMITMENT)**

vs.

GEORGE WILLIAM SHUFELT

Defendant.

Case No. 951900091 FS
Count No. _____
Honorable DAVID E. ROTH _____
Clerk E. THOMPSON _____
Reporter EILEEN AMBROSE _____
Bailiff J. WEISS _____
Date MAY 26, 1995 _____

☐ The motion of _____ to enter a judgment of conviction for the next lower category of offense and impose sentence accordingly is ☐ granted ☐ denied. There being no legal or other reason why sentence should not be imposed, and defendant having been convicted by ☐ a jury; ☐ the court; ☒ plea of guilty; ☐ plea of no contest; of the offense of ___AUTOMOBILE HOMICIDE___, a felony of the _3_ degree, ☐ a class ___ misdemeanor, being now present in court and ready for sentence and represented by F. METOS, and the State being represented by K. MORGAN is now adjudged guilty of the above offense, is now sentenced to a term in the Utah State Prison:

☐ to a maximum mandatory term of _____ years and which may be for life;
☒ not to exceed five years;
☐ of not less than one year nor more than fifteen years;
☐ of not less than five years and which may be for life;
☐ not to exceed _____ years;
☐ and ordered to pay a fine in the amount of $_____;

*2200484*
*5-31-95-802am*

☒ and ordered to pay restitution in the amount of $_4860.50_ CRIME VICTIM REPARATION FUND
☐ such sentence is to run concurrently with _____
☐ such sentence is to run consecutively with _____
☐ upon motion of ☐ State, ☐ Defense, ☐ Court, Count(s) _____ are hereby dismissed.
☐ _____
☒ Defendant is granted a stay of the above (☒ prison) sentence and placed on probation in the custody of this Court and under the supervision of the Chief Agent, Utah State Department of Adult Parole for the period of _36 MONTHS_, pursuant to the attached conditions of probation.
☐ Defendant is remanded into the custody of the Sheriff of Salt Lake County ☐ for delivery to the Utah State Prison, Draper, Utah, or ☐ for delivery to the Salt Lake County Jail, where defendant shall be confined and imprisoned in accordance with this Judgment and Commitment.
☐ Commitment shall issue _____

DATED this _26_ day of _MAY_ 19_95_.

APPROVED AS TO FORM:
COPIES TO COUNSEL

_____
Defense Counsel

_____
Deputy County Attorney

_____
DISTRICT COURT JUDGE
DAVID E. ROTH

Page _1_ of _2_  E-133

(White—Court)  (Green—Judge)  (Yellow—Jail/Prison/AP&P)  (Pink—Defense)  (Goldenrod—State)

951900091 FS                     DAVID E. ROTH
                                 HANSON

Judgment/State v. _____ GEORGE WILLIAM _____ /CR _____ /Honorable _____

## CONDITIONS OF PROBATION

☒ Usual and ordinary conditions required by the Dept. of Adult Probation & Parole.
☒ Serve ___ 90 DAYS _____
   in the Salt Lake County Jail commencing ___ MAY 30, 1995 @ 9:00 A.M. ___
☐ Pay a fine in the amount of $_____ ☐ at a rate to be determined by the Department of Adult Probation and
   Parole; or ☐ at the rate of _____.
☒ Pay restitution in the amount of $ 4860 o50 in an amount to be determined by the Department of Adult
   Probation and Parole; ☐ at a rate of _____ ; or ☒ at a rate to be determined by
   the Department of Adult Probation and Parole.          ABUSE
☒ Enter, participate in, and complete any ___ SUBSTANCE ___ program, counseling, or treatment as
   directed by the Department of Adult Probation and Parole.
☐ Enter, participate in, and complete the _____ program at _____.
☐ Participate in and complete any ☐ educational; and/or ☐ vocational training ☐ as directed by the
   Department of Adult Probation and Parole; or ☐ with _____.
☐ Participate in and complete any _____ training ☐ as directed by the Department of Adult
   Probation and Parole; or ☐ with _____.
☒ Submit person, residence, and vehicle to search and seizure for the detection of drugs.
☒ Submit to drug testing.
☒ Not associate with anyone who illegally uses, sells, or otherwise distributes narcotics or drugs.
☒ Not frequent any place where drugs are used, sold, or otherwise distributed.
☒ Not use or possess non-prescribed controlled substances.
☒ Refrain from the use of alcoholic beverages.
☒ Submit to testing for alcohol use.
☒ Take antabuse ☒ as directed by the Department of Adult Probation and Parole.
☐ Obtain and maintain full-time employment.
☐ Maintain full-time employment.
☐ Obtain and maintain full-time employment or full-time schooling.
☐ Maintain full-time employment or obtain and maintain full-time schooling.
☐ Defendant is to have no contact nor associate with _____.
☐ Defendant's probation may be transferred to _____ under the Interstate Compact as approved
   by the Department of Adult Probation and Parole.
☐ Complete _____ hours of community service restitution as directed by the Department of Adult Probation
   and Parole.
☐ Complete _____ hours of community service restitution in lieu of _____ days in jail.
☒ Defendant is to commit no crimes.
☐ Defendant is ordered to appear before this Court on _____ for a review of this sentence.
☐ _____
☐ _____
☐ _____
☐ _____
☐ _____
☐ _____

DATED this ___ 26 ___ day of ___ MAY ___ 19 95

DISTRICT COURT JUDGE
DAVID E. ROTH

Page 2 of 2

STATE OF UTAH )
County of Salt Lake )
I, the undersigned Clerk of the District Court, State of
Utah, Salt Lake County, Salt Lake Department do hereby
certify that the annexed and foregoing is a true and full
copy of an original document on file in my office as such
clerk.
Witness my hand and seal of said Court this
day of _____ 20__
CLERK OF COURT
By _____ Deputy

E-134

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: *Statement by Defendant/Certificate*

Case No.
People v.                                *Utah plea agreement*

Number of pages to this Exhibit ____8____ pages.   (135-142)

JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

The elements of the crime of which I am charged are as follows: (1) On or about August 19, 1994, the defendant was in actual physical control of an operable motor vehicle; (2) At that time the defendant had a blood alcohol content of .08% or greater by weight; (3) That the defendant operated the vehicle in a negligent manner; (4) That in doing so the defendant caused the death of Frank N. Hudleson; (3) All acts occurred in Salt Lake County, State of Utah.

My conduct, and the conduct of other persons for which I am criminally liable, that constitutes the elements of the crime charges are as follows: On August 19, 1994, the defendant was involved in an automobile accident in Salt Lake City, Utah, that resulted in the death of the driver of an automobile struck by the defendant's vehicle. The defendant's blood alcohol content was greater than .08% by weight.

I am entering this plea voluntarily and with knowledge and understanding of the following facts:

1.    I know that I have the right to be represented by an attorney and that if I cannot afford one, an attorney will be appointed by the court at no cost to me. I recognize that a condition of my sentence may be to require me to pay an amount, as determined by the court, to recoup the cost of counsel if so appointment for me.

2.    I have not waived my right to counsel.

3.    My attorney is G. Fred Metos, and I have had an opportunity to discuss this statement, my rights and the consequences of my guilty plea with my attorney.

2

E-136

G. FRED METOS - 2250
Attorney for Defendant
10 West Broadway, Suite 650
Salt Lake City, Utah 84101
Telephone: (801) 364-6474

---

## IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR
## SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| THE STATE OF UTAH, | : |
| Plaintiff, | : **STATEMENT OF DEFENDANT** |
|  | **CERTIFICATE OF COUNSEL** |
|  | : **AND ORDER** |
| v. | : |
|  | **Case No.   941013828FS** |
| GEORGE WILLIAM SHUFELT, | : |
|  | Judge Timothy R. Hanson |
| Defendant. | : |

---

COMES NOW, George Shufelt, the defendant in this case and hereby acknowledges and certifies the following:

I have entered a plea of guilty to the following crime:

| CRIME & STATUTORY PROVISION | DEGREE | PUNISHMENT (min/max) and/or Min. Mandatory |
|---|---|---|
| Automobile Homicide a violation of Utah Code Ann. §76-5-207(1) (a) (1953 as amended) | Third Degree Felony | 0-5 years in prison and a $5,000 fine |

I have received a copy of the Information against me, I have read it, and I understand the nature and elements of the offense for which I am pleading guilty.

E-135

4.    I know that I have a right to a trial by jury.

5.    I know that I if I wish to have a trial I have the right to confront and cross-examine witness(es) against me or to have them cross-examined by my attorney. I also know that I have the right to compel my witness(es) by subpoena at state expense to testify in court upon my behalf.

6.    I know that I have a right to testify in my own behalf but I choose not to do so, I cannot be compelled to testify or give evidence against myself and no adverse inferences will be drawn against me if I do not testify.

7.    I know that if I wish to contest the charges against me I need only plead "not guilty" and the matter will be set for trial. At the trial the State of Utah will have the burden of proving each element of the charge beyond a reasonable doubt. If the trial is before a jury the verdict must be unanimous.

8.    I know the maximum sentence that may be imposed for each offense to which I plead guilty. I know that by pleading guilty to an offense that carries a minimum mandatory sentence that I will be subjecting myself to serving a minimum mandatory sentence for that offense. I know that the sentences may be consecutive and may be for a prison term, fine, or both. I know that in addition to a fine a eighty-five percent (85%) surcharge, required by Utah Code Annotated §63-63a-4, will be imposed. I also know that I may be ordered by the court to make restitution to any victim(s) of my crime(s).

3

E-137

10.    I know that imprisonment may be for consecutive periods, or the fine for additional amounts, if my plea is to more than one charge. I also know that if I am on probation, parole, or awaiting sentencing on another offense of which I have been convicted or to which I have plead guilty, my plea in the present action may result in consecutive sentences being imposed upon me.

11.    I know and understand that by pleading guilty I am waiving my statutory and constitutional rights set out in the preceding paragraphs. I also know that by entering such plea I am admitting and do so admit that I have committed the conduct alleged and I am guilty of the crime for which my plea is entered.

12.    My plea of guilty is the result of a plea bargain between myself and the prosecuting attorney. The promises, duties and provisions of this plea bargain, if any, are fully contained in the Plea Agreement attached to this affidavit.

13.    I know and understand that if I desire to withdraw my plea of guilty I must do so by filing a motion within thirty (30) days after entry of my plea.

14.    I know that any charge or sentencing concession or recommendation of probation or suspended sentence, including a reduction of the charges for sentencing made or sought by either defense counsel or the prosecuting attorney are not binding on the judge. I also know that any opinions they express to me as to what they believe the court may do are also not binding on the court.

4

E-138



15.    No threats, coercion, or unlawful influence of any kind have been made to induce me to plead guilty, and no promises except those contained herein and in the attached plea agreement, have been made to me.

16.    I have read this statement or I have had it read to me by my attorney, and I understand its provisions. I know that I am free to change or delete anything contained in this statement. I do not wish to make any changes because all of the statements are correct.

17.    I am satisfied with the advice and assistance of my attorney.

18.    I am _32_ years of age; I have attended school through the _second year of college grade_, and I can read and understand the English language or an interpreter has been provided to me. I was not under the influence of any drugs, medication or intoxicants which would impair my judgment when the decision was made to enter the plea. I am not presently under any influence of any drug, medication or intoxicants which impair my judgment.

19.    I believe myself to be of sound and discerning mind, mentally capable of understanding the proceedings and the consequences of my plea and free to any mental disease, defect or impairment that would prevent me from knowingly, intelligently and voluntarily entering my plea.

DATED this _17_ day of March, 1995,

_George Shufelt_
GEORGE WILLIAM SHUFELT
Defendant

5

E-139



## CERTIFICATE OF ATTORNEY

I certify that I am the attorney for <u>George William Shufelt</u>, the defendant above, and that I know he has read the statement or that I have read it to him and I have discussed it with him and believe that he fully understands the meaning of its contents and is mentally and physically competent.  To the best of my knowledge and belief after an appropriate investigation, the elements of the crime and the factual synopsis of the defendant's criminal conduct are correctly stated and these, along with the other representations and declarations made by the defendant in the foregoing affidavit, are accurate and true.

DATED this  _17_  day of March, 1995.

G. FRED METOS
Attorney for Defendant

## CERTIFICATE OF PROSECUTING ATTORNEY

I certify that I am the prosecuting attorney for the State of Utah in the case against <u>George William Shufelt</u>, defendant.  I have reviewed this statement of the defendant and find that the declaration, including the elements of the offense of the charge and the factual synopsis of the defendant's criminal conduct which constitutes the offense are true and correct.  No improper inducements, threats or coercion to encourage a plea have been offered defendant.  The plea negotiations are fully contained in the statement and in the attached plea agreement or as supplemented on record before

6

E-140

the court. There is reasonable cause to believe that the evidence would support the conviction of defendant for the offense for which the plea is entered and acceptance of the plea would serve the public interest.

DATED this _17_ day of March, 1995.

_____ for RJM

RUTH J. MCCLOSKEY
Assistant District Attorney

## ORDER

Based upon the facts set forth in the foregoing statement and the certification of the defendant and counsel, the court witnesses the signatures and finds the defendant's plea of guilty is freely and voluntarily made and it is so ordered that the defendant's plea of guilty to the charge set fort in the statement be accepted and entered.

DATED this _17_ day of March, 1995.

BY THE COURT:

_____

TIMOTHY R. HANSON
District Court Judge

7

E-141

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was mailed/hand delivered on this __17__ day of March, 1995, to:

Ruth J. McCloskey
Assistant District Attorney
231 East 400 South, Suite 300
Salt Lake City, UT 84111

STATE OF UTAH )
County of Salt Lake ) ss.
I, the undersigned, Clerk of the District Court, State of
Utah, Salt Lake County, Salt Lake Department do hereby
certify that the annexed and foregoing is a true and full
copy of an original document on file in my office as such
clerk.
Witness my hand and seal of said Court This ___
day of _____ 20__
By _____                    _____ Deputy

8

E-142

# EXHIBIT COVER PAGE 

**EXHIBT**

Description of this Exhibit: *Utah Change of plea hearing ;*

Case No.
People v.
*Reporter Transcripts,*

Number of pages to this Exhibit ____**12**____ pages. *(143 - 154)*

## JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

IN THE THIRD JUDICIAL DISTRICT COURT

IN AND FOR SALT LAKE COUNTY, STATE OF UTAH


\* \* \*

# COPY

STATE OF UTAH,            )

                PLAINTIFF,   )  CASE NO. CR-951900091

                VS.        )  TRANSCRIPT OF:

GEORGE WILLIAM SHUFELT,   )  <u>CHANGE OF PLEA HEARING</u>

                DEFENDANT.  )


BEFORE THE HONORABLE TIMOTHY R. HANSON


METROPOLITAN HALL OF JUSTICE
240 EAST 400 SOUTH
SALT LAKE CITY, UTAH 84111


MARCH 17, 1995


REPORTED BY:  EILEEN M. AMBROSE, CSR

2

APPEARANCES

FOR THE PLAINTIFF:

>       ANN BOYDEN
>       DEPUTY DISTRICT ATTORNEY
>       231 EAST 400 SOUTH
>       SUITE #300
>       SALT LAKE CITY, UTAH  84111


FOR THE DEFENDANT:

>       FRED G. METOS
>       ATTORNEY AT LAW
>       10 WEST BROADWAY
>       SUITE #650
>       SALT LAKE CITY, UTAH  84101

* * *

E-144

OCT-29-01 MON 10:46 AM    THIRD DISTRICT COURT    FAX NO. 801 238 7542    P. 05

3

P R O C E E D I N G S

1

2          THE COURT:  STATE OF UTAH VERSUS GEORGE WILLIAM

3   SHUFELT.  IT'S CASE NO. 951900091.

4          YOU ARE MR. SHUFELT?

5          THE DEFENDANT:  YES, SIR.

6          THE COURT:  I SHOW THIS ON FOR DISPOSITION TODAY.  IS

7   THAT CORRECT, MR. METOS?

8          MR. METOS:  YES, IT IS, YOUR HONOR.  WE HAVE A

9   DISPOSITION.

10         THE COURT:  WHAT WILL BE HAPPENING?

11         MR. METOS:  WHAT WE ANTICIPATE, YOUR HONOR, IS THAT

12  THE STATE WOULD MOVE TO AMEND THE CHARGE OF AUTOMOBILE

13  HOMICIDE, A SECOND DEGREE FELONY, TO AUTOMOBILE HOMICIDE, A

14  THIRD DEGREE FELONY.  THAT COULD BE DONE BY INTERLINEATION,

15  CHANGING 2ND TO 3RD IN THE FIRST LINE AND STRIKING, IN THE LAST

16  FULL LINE OF THE INFORMATION THE WORD CRIMINALLY, BEFORE

17  NEGLIGENT, SO THAT IT READS, OPERATING A VEHICLE IN A NEGLIGENT

18  MANNER.

19         MS. BOYDEN:  THAT IS THE STATE'S MOTION, YOUR HONOR.

20  I'VE SPOKEN WITH MS. MC CLOSKEY, WHO IS THE ASSIGNED PROSECUTOR

21  ON THIS CASE.  AFTER REVIEWING THE EVIDENCE AND SPEAKING WITH

22  WITNESSES SHE FEELS LIKE THE EVIDENCE SUPPORTS THE SIMPLE

23  NEGLIGENCE RATHER THAN THE CRIMINAL NEGLIGENCE AND THAT IS THE

24  BASIS OF THE REDUCTION.

25         MR. METOS:  THERE'S ONE OTHER AMENDMENT THAT NEEDS TO

E-145

4

1    BE MADE TO THE INFORMATION, YOUR HONOR.  AND THAT WOULD BE THAT

2    IT IS A VIOLATION OF 76-5-207(1), RATHER THAN (2).

3           MS. BOYDEN:  THAT'S CORRECT.

4           THE COURT:  HAS MS. MC CLOSKEY, DO YOUR RECORDS SHOW,

5    DISCUSSED THIS WITH THE  --

6           MS. BOYDEN:  FAMILY MEMBERS.

7           THE COURT:  AND MR. HUDDLESON'S FAMILY?

8           MS. BOYDEN:  YES, YOUR HONOR.  OUR OFFICE HAS BEEN IN

9    CONTACT WITH THEM INVOLVING THE COUNSELING UNIT OF OUR OFFICE

10   AS WELL AS THAT A CIVIL ATTORNEY IS INVOLVED IN THIS MATTER IN

11   A CIVIL CASE CORRESPONDING AND MS. MC CLOSKEY HAS SPOKEN WITH

12   HIM.

13          THE COURT:  AND YOU HAVE WHATEVER INPUT

14   MS. MC CLOSKEY THOUGHT WAS APPROPRIATE?

15          MS. BOYDEN:  YES.

16          THE COURT:  IS THAT WHAT YOU WANT TO DO, MR. SHUFELT?

17          THE DEFENDANT:  YES, YOUR HONOR.

18          THE COURT:  A STATEMENT'S BEEN PREPARED, HAS IT,

19   MR. METOS?

20          MR. METOS:  IT HAS.

21          THE COURT:  HAVE YOU REVIEWED THAT WITH YOUR CLIENT?

22          MR. METOS:  YES.

23          THE COURT:  DO YOU BELIEVE HE UNDERSTANDS THE

24   CONTENTS OF IT?

25          MR. METOS:  I BELIEVE HE'S REVIEWED IT.  I HAVE

E-146

1    DISCUSSED IT WITH HIM AND HE'S PREPARED TO SIGN IT AT THIS

2    TIME.

3            THE COURT:  OKAY.  BUT ARE YOU SATISFIED HE

4    UNDERSTANDS IT?

5            MR. METOS:  I AM.

6            THE COURT:  MR. SHUFELT, I WANT TO DISCUSS SOME

7    THINGS WITH YOU WITH REGARD TO THE ENTRY OF YOUR PLEA.  YOU

8    UNDERSTAND THAT WHAT IS ANTICIPATED HERE IS YOU WOULD PLEAD

9    GUILTY TO A THIRD DEGREE FELONY, CRIMINAL AUTOMOBILE --

10   ACTUALLY, I GUESS, IT'S NOT CRIMINAL HOMICIDE.  IS IT STILL

11   CRIMINAL HOMICIDE?

12           MR. METOS:  IT IS.

13           MS. BOYDEN:  IT IS.

14           THE COURT:  WHAT IT ALL BOILS DOWN TO IS THE

15   ALLEGATION OF THE STATE THAT YOU WILL BE PLEADING GUILTY TO

16   WHAT WOULD BE A THIRD DEGREE FELONY, AND THAT WHILE

17   INTOXICATED, OPERATED A VEHICLE IN SUCH A FASHION AS THAT YOU

18   CAUSED THE DEATH OF A FRANK HUDDLESON.)  THAT'S THE SUM AND

19   SUBSTANCE OF THE ALLEGATION NOW THAT IT IS AMENDED.  DO YOU

20   UNDERSTAND THAT?

21           THE DEFENDANT:  YES, YOUR HONOR.

22           THE COURT:  IS THAT WHAT YOU WANT TO DO?  YOU WANT TO

23   PLEAD GUILTY TO THAT THIRD DEGREE FELONY?

24           THE DEFENDANT:  I'M GUILTY, YOUR HONOR.

25           THE COURT:  YOU WANT TO PLEAD GUILTY BECAUSE YOU

E-147

6

1    BELIEVE YOU ARE GUILTY OF THAT OFFENSE?

2          THE DEFENDANT:  I'M GUILTY.

3          THE COURT:  NOW MR. SHUFELT, YOU UNDERSTAND IF YOU

4    PLEAD GUILTY HERE TODAY THERE'LL BE NO TRIAL?

5          THE DEFENDANT:  YES.

6          THE COURT:  SO YOU ARE GIVING UP YOUR RIGHT TO HAVE A

7    TRIAL; DO YOU UNDERSTAND THAT?

8          THE DEFENDANT:  YES.

9          THE COURT:  DO YOU ALSO UNDERSTAND BY GIVING UP YOUR

10   RIGHT TO HAVE A TRIAL YOU GIVE UP YOUR RIGHT TO TAKE THE

11   WITNESS STAND AND TELL A JURY WHAT OCCURRED OR DID NOT OCCUR IN

12   THIS CASE IF YOU WANTED TO?

13         THE DEFENDANT:  YES, YOUR HONOR.

14         THE COURT:  YOU ARE ALSO GIVING UP YOUR RIGHT TO HAVE

15   YOUR ATTORNEY CROSS-EXAMINE THE STATE'S WITNESSES AND POINT OUT

16   ANY INCONSISTENCIES OR ELICIT ANY TESTIMONY THAT MAY BE

17   FAVORABLE TO YOUR POSITION AND OTHERWISE GIVE YOU THE

18   OPPORTUNITY THROUGH YOUR ATTORNEY TO CONFRONT YOUR ACCUSERS.

19   YOU UNDERSTAND YOU ARE GIVING UP THAT RIGHT?

20         THE DEFENDANT:  YES, YOUR HONOR.

21         THE COURT:  YOU ALSO UNDERSTAND THAT BY GIVING UP

22   YOUR RIGHT TO A TRIAL THERE WILL BE NO JURY JUDGING YOUR

23   CONDUCT OR DETERMINING WHETHER OR NOT THE STATE HAS MET ITS

24   BURDEN OF PROOF?

25         THE DEFENDANT:  YES, YOUR HONOR.

E-148

Case 3:08-cv-00991-JAH-CAB    Document 2-2    Filed 06/02/2008    Page 84 of 89
OCT-29-01 MON 10:48 AM  THIRD DISTRICT COURT    FAX NO. 801 238 7542    P. 09

7

1    THE COURT:  IF THERE WAS A TRIAL, BEFORE YOU COULD BE

2    FOUND GUILTY, THE JURY WOULD HAVE TO CONCLUDE, THAT ALL OF THEM

3    WOULD HAVE TO CONCLUDE, IT HAS TO BE UNANIMOUS, THAT YOU ARE

4    GUILTY OF THE CRIMES CHARGED, OR THE CRIME CHARGED, AND THAT

5    THE STATE HAD CONVINCED THEM BY A STANDARD OF PROOF OF PROOF

6    BEYOND A REASONABLE DOUBT, WHICH IS A VERY HIGH STANDARD OF

7    PROOF.  AND WHILE IT IS NOT AN ABSOLUTE CERTAINTY IT'S CLOSE TO

8    IT.  DO YOU UNDERSTAND YOU ARE GIVING UP THOSE OPPORTUNITIES?

9    THE DEFENDANT:  YES, YOUR HONOR.

10   THE COURT:  NOW IN THIS PARTICULAR CIRCUMSTANCE,

11   MR. SHOFELT, THE ELEMENTS, OR THE BASIS FOR THE STATE'S

12   ALLEGATIONS ARE AS FOLLOWS, AND LISTEN CAREFULLY TO THESE,

13   BECAUSE BY PLEADING GUILTY YOU ARE TELLING ME THE FOLLOWING

14   THINGS ARE TRUE.

15   FIRST, THAT THIS INCIDENT OCCURRED AT 500 SOUTH STATE

16   STREET, HERE IN SALT LAKE COUNTY; SECONDLY, THAT IT OCCURRED ON

17   OR ABOUT AUGUST 19TH OF 1994, THAT YOU WERE THE PERSON THAT

18   COMMITTED THE OFFENSE, AND THAT YOU AT THAT TIME OPERATED A

19   MOTOR VEHICLE WHILE YOU HAD A BLOOD ALCOHOL CONTENT OF

20   .08 GRAMS OR GREATER, AND THAT YOU WERE, IN FACT, UNDER THE

21   INFLUENCE OF ALCOHOL, AND THAT RENDERED YOU INCAPABLE OF SAFELY

22   OPERATING YOUR VEHICLE.  AND IN OPERATING THE VEHICLE, UNDER

23   THOSE CIRCUMSTANCES, YOU CAUSED THE DEATH OF FRANK M.

24   HUDDLESON, IN THAT YOU OPERATED YOUR VEHICLE IN A NEGLIGENT

25   MANNER.  THAT MEANS A LESS THAN SAFE MANNER.  DO YOU UNDERSTAND

E-149

Case 3:08-cv-00991-JAH-CAB     Document 2-2     Filed 06/02/2008     Page 85 of 89
OCT-29-01 MON 10:47 AM   THIRD DISTRICT COURT       FAX NO. A01 238 7542            P. 10

8

1    THOSE ELEMENTS?

2            THE DEFENDANT:  YES, YOUR HONOR.

3            THE COURT:  DO YOU UNDERSTAND THAT BY PLEADING GUILTY

4    TO THOSE THINGS YOU ARE TELLING ME THOSE THINGS ARE TRUE?

5            THE DEFENDANT:  YES, YOUR HONOR.

6            THE COURT:  IS THAT, IN FACT, THE CASE?

7            THE DEFENDANT:  YES, YOUR HONOR.

8            THE COURT:  IS THERE ANYTHING ABOUT THIS PLEA THAT

9    YOU DON'T UNDERSTAND, MR. SHUFELT?

10           THE DEFENDANT:  NOT THAT I'M AWARE OF, YOUR HONOR.

11           THE COURT:  YOU HAD SUFFICIENT TIME TO DISCUSS THE

12   MATTER WITH YOUR ATTORNEY?

13           THE DEFENDANT:  NODS YES.

14           THE COURT:  IS THAT RIGHT?

15           THE DEFENDANT:  YES.

16           THE COURT:  HAVE YOU CONSUMED ANY ALCOHOLIC BEVERAGES

17   IN THE LAST 24 HOURS?

18           THE DEFENDANT:  NOT AT ALL, YOUR HONOR.

19           THE COURT:  ARE YOU TAKING ANY KIND OF, ANY KIND --

20           THE DEFENDANT:  NOT OF ANY KIND.

21           THE COURT:  -- PRESCRIPTION DRUGS?

22           THE DEFENDANT:  NO.

23           THE COURT:  YOU BELIEVE YOU ARE THINKING CLEARLY HERE

24   TODAY?

25           THE DEFENDANT:  YES, YOUR HONOR.

E-150

OCT-29-01 MON 10:47 AM   THIRD DISTRICT COURT    FAX NO. 801 238 7542    P. 11

9

1        THE COURT:   IS THERE ANYTHING I HAVE SAID THAT YOU

2   DON'T UNDERSTAND?

3        THE DEFENDANT:   NO, YOUR HONOR.

4        THE COURT:   IS THERE ANYTHING FURTHER, MR. METOS, YOU

5   WOULD HAVE ME INQUIRE OF YOUR CLIENT?

6        MR. METOS:   NO, NOTHING FURTHER.

7        THE COURT:   MS. BOYDEN?

8        MS. BOYDEN:   THAT'S SUFFICIENT.   THANK YOU.

9        THE COURT:   YOU CAN SIGN THE STATEMENT, MR. SHUFELT,

10  IF THAT'S YOUR DESIRE.

11       (WHEREUPON, THE DEFENDANT IS EXECUTING THE

12  STATEMENT).

13       FOR THE RECORD THEN, MR. SHUFELT, TO THE AMENDED

14  INFORMATION THAT NOW CHARGES YOU WITH CRIMINAL HOMICIDE,

15  AUTOMOBILE HOMICIDE, A THIRD DEGREE FELONY, CLAIMED TO HAVE

16  OCCURRED AT 500 SOUTH STATE STREET, SALT LAKE COUNTY, STATE OF

17  UTAH, ON OR ABOUT AUGUST 19TH OF 1994, HOW DO YOU PLEAD?

18       THE DEFENDANT:   GUILTY, YOUR HONOR.

19       THE COURT:   COURT WILL ACCEPT THAT PLEA, AND IN SO

20  DOING I AM SATISFIED THAT MR. SHUFELT UNDERSTANDS THE POTENTIAL

21  CONSEQUENCES OF THE ENTRY OF HIS PLEA.

22       YOU DO UNDERSTAND, MR. SHUFELT, THAT A THIRD DEGREE

23  FELONY CARRIES THE POTENTIAL OF INCARCERATION IN THE UTAH STATE

24  PRISON FOR A TERM THAT CAN BE AS LONG AS FIVE YEARS?   DO YOU

25  UNDERSTAND THAT?

E-151

1    THE DEFENDANT:  I UNDERSTAND.

2    THE COURT:  WHETHER THAT OCCURS OR NOT WE WILL TALK

3    ABOUT LATER, BUT THAT'S A POSSIBILITY.  FURTHER, I'M SATISFIED

4    THAT MR. SHUFELT HAS ENTERED HIS PLEA VOLUNTARILY, AND FINALLY,

5    THAT THERE IS A FACTUAL BASIS THAT WOULD ALLOW THIS COURT TO

6    ACCEPT THE PLEA AND, THEREFORE, I'VE SIGNED THE PLEA AGREEMENT

7    STATEMENT.

8    MR. SHUFELT, HAVING PLED GUILTY TO A THIRD DEGREE

9    FELONY, YOU HAVE THE RIGHT TO BE SENTENCED NOT EARLIER THAN TWO

10   NOR MORE THAN 30 DAYS FROM TODAY'S DATE.

11   MR. METOS, MY CLERK TELLS ME THAT WE PROBABLY NEED TO

12   GO INTO MAY, FIRST OF MAY.  IS THAT ALL RIGHT?

13   MR. METOS:  THAT'S AGREEABLE.  WE'LL WAIVE THE

14   MAXIMUM TIME FOR SENTENCING.

15   THE COURT:  MAY 5TH.  IS THAT DATE ACCEPTABLE TO THE

16   STATE?

17   MS. BOYDEN:  IT IS.

18   MR. METOS:  I BELIEVE -- SOMETIME DURING THE FIRST OR

19   SECOND WEEK OF MAY I MAY HAVE TO BE IN NEW YORK.  IF I COULD

20   SET IT FOR THE 5TH AND I'LL DOUBLE CHECK?

21   THE COURT:  IF THAT CREATES A PROBLEM WILL YOU LET

22   MS. THOMPSON KNOW?  DOES THE STATE HAVE A PROBLEM IF WE HAVE TO

23   MOVE IT TO THE 12TH?

24   MS. BOYDEN:  NO OBJECTION.

25   THE COURT:  IF I DO MOVE IT I WILL ENTER A MINUTE

E-152

11

1   ENTRY AND SEND THAT TO BOTH SIDES.

2            MR. SHUFELT, YOU NEED TO MAKE SURE YOU GET OVER TO

3   ADULT PROBATION AND PAROLE RIGHT AWAY SO THEY CAN PREPARE A

4   PRESENTENCE REPORT.  AND RIGHT NOW YOU NEED TO BE HERE ON MAY

5   5  IF THAT CHANGES, MR. METOS WILL ADVISE YOU.  BUT UNLESS YOU

6   HEAR FROM HIM MAKE SURE YOU'RE HERE ON THE 5TH.  ALL RIGHT.

7            MR. METOS:  THANK YOU.

8            (WHEREUPON, THE HEARING WAS CONCLUDED).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

E-153

12

C E R T I F I C A T E

STATE OF UTAH          )
                       :
COUNTY OF SALT LAKE )


        I, EILEEN M. AMBROSE, C.S.R., DO CERTIFY THAT I AM A
CERTIFIED SHORTHAND REPORTER AND OFFICIAL COURT REPORTER IN AND
FOR THE STATE OF UTAH; THAT AS SUCH REPORTER, I ATTENDED THE
PROCEEDINGS OF THE ABOVE-ENTITLED MATTER AT THAT TIME AND PLACE
SET OUT HEREIN; THAT THEREAT I TOOK DOWN THE TESTIMONY GIVEN
AND THE PROCEEDINGS HAD THEREIN; AND THAT THEREAFTER MY NOTES
WERE TRANSCRIBED BY COMPUTER INTO THE FOREGOING PAGES; AND THAT
THIS CONSTITUTES A FULL, TRUE AND CORRECT TRANSCRIPTION OF THE
SAME.




                              EILEEN M. AMBROSE, C.S.R.

E-154

# EXHIBIT COVER PAGE

EXHIBT

Description of this Exhibit: California Penal Code, § 1192.8(a)

Case No.
People v.

Number of pages to this Exhibit ____1____ pages.    (155)

## JURISDICTION:  (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

CRIMINAL PROCEDURE

518

## § 1192.7

(A.B.105), § 13.5, eff. Sept. 28, 1998, operative Jan. 1, 1999; Stats.1999, c. 298 (A.B.381), § 1; Initiative Measure (Prop.21, § 17, approved March 7, 2000).)

### Cross References

Aggravation of crime, tying, binding or confining of victim, see Penal Code § 1170.84.

Amendment or repeal of initiative statute, see Const. Art. 2, § 10.

Minor convicted for offense described in this section, life or other lengthy sentence, commitment to Youth Authority prohibited, see Welfare and Institutions Code § 1732.6.

Public housing authority, access to criminal history for convictions under this section, see Penal Code § 11105.03.

Youth authority commitment exception, see Welfare and Institutions Code § 1732.5.

## § 1192.8. Serious felony under § 1192.7

(a) For purposes of subdivision (c) of Section 1192.7, "serious felony" also means any violation of Section 191.5, paragraph (1) or (3) of subdivision (c) of Section 192, paragraph (a) or (c) of Section 192.5 of this code, or Section 2800.3, subdivision (b) of Section 23104, or Section 23153 of the Vehicle Code, when any of these offenses involve the personal infliction of great bodily injury on any person other than an accomplice, or the personal use of a dangerous or deadly weapon, within the meaning of paragraph (8) or (23) of subdivision (c) of Section 1192.7.

(b) It is the intent of the Legislature, in enacting subdivision (a), to codify the court decisions of People v. Gonzales, 29 Cal. App. 4th 1684, and People v. Bow, 13 Cal. App. 4th 1551, and to clarify that the crimes specified in subdivision (a) have always been, and continue to be, serious felonies within the meaning of subdivision (c) of Section 1192.7. (Added by Stats.1989, c. 1402, § 10. Amended by Stats.1996, c. 645 (A.B.1985), § 3; Stats.1998, c. 754 (A.B.357), § 2; Stats.1999, c. 706 (A.B.1236), § 12, eff. Oct. 10, 1999.)

## § 1193. Pronouncement of judgment; felony cases; presence or absence of defendant; death sentence after affirmance on appeal; appointment of day for execution; certified copies to warden and governor; representation of pro se defendants at in absentia sentencing; misdemeanor cases

Judgment upon persons convicted of commission of crime shall be pronounced as follows:

[text obscured] the conviction is for a felony, the defendant shall be present when judgment is pronounced against him or [the] defendant, in open court and on the record, or in writing, requests that judgment be pronounced [in] her in his or her absence, and that he or she be [...] an attorney when judgment is pronounced, and [...] his or her absence during the pronouncement [un]less, after the exercise of reasonable diligence [...]ence of the defendant, the court shall find [...] interest of justice that judgment be [...] her absence; provided, that when any [...] death penalty has been affirmed by the [...] may be reimposed upon the defendant [...] the court from which the appeal was [...]ng manner : upon receipt by the [...] appeal is taken on the certificate of [...] the judgment, the judge of the [...]ake and cause to be entered an [...] against the defendant; and a [...]ttested by the clerk under the [...]d it shall state the conviction [...]n which the judgment shall [...]an 60 days nor more than [...]er; and that, within five [...] the order, attested by the [...]rt, and attached to the warrant,

shall, for the purpose of execution, be transmitted by registered mail to the warden of the state prison having the custody of the defendant and certified copies thereof shall be transmitted by registered mail to the Governor; and provided further, that when any judgment imposing the death penalty has been affirmed and sentence has been reimposed as above provided there shall be no appeal from the order fixing the time for and directing the execution of the judgment as herein provided. If a pro se defendant requests that judgment in a noncapital case be pronounced against him or her in his or her absence, the court shall appoint an attorney to represent the defendant in the in absentia sentencing.

(b) If the conviction be of a misdemeanor, judgment may be pronounced against the defendant in his absence. (Enacted 1872. Amended by Stats.1923, c. 297, p. 626, § 1; Stats.1931, c. 124, p. 170, § 2; Stats.1935, c. 679, p. 1867, § 1; Stats.1937, c. 294, p. 648, § 1; Stats.1951, c. 1674, p. 3852, § 122; Stats.1986, c. 1222, § 1.)

### Cross References

Arraignment, presence of defendant, see Penal Code § 977.

Constitutional rights of accused, see Const. Art. 1, § 15.

Execution, see Penal Code §§ 1213 et seq., 1263.

Harmless error, see Penal Code § 960, 1258, 1404; Const. Art. 6, § 13.

Return of verdict, presence of defendant, see Penal Code § 1148.

Trial, presence of defendant, see Penal Code § 1043.

## § 1194. Defendant in custody; method of bringing before court for judgment

WHEN DEFENDANT IN CUSTODY, HOW BROUGHT BEFORE THE COURT FOR JUDGMENT. When the defendant is in custody, the Court may direct the officer in whose custody he is to bring him before it for judgment; and the officer must do so. (Enacted 1872.)

### Cross References

Arraignment, see Penal Code § 978.

## § 1195. Defendant on bail or deposit; effect of appearance or nonappearance

If the defendant has been released on bail, or has deposited money or property instead thereof, and does not appear for judgment when his personal appearance is necessary, the court, in addition to the forfeiture of the undertaking of bail, or of the money or property deposited, must, on application, of the prosecuting attorney, direct the issuance of a bench warrant for the arrest of the defendant.

If the defendant, who is on bail, does appear for judgment and judgment is pronounced upon him or probation is granted to him, then the bail shall be exonerated or, if money or property has been deposited instead of bail, it must be returned to the defendant or to the person or persons found by the court to have deposited said money or property on behalf of said defendant. (Enacted 1872. Amended by Stats.1951, c. 1674, p. 3853, § 123; Stats.1959, c. 1187, p. 3272, § 1.)

### Cross References

Arraignment, see Penal Code § 979.

Bail forfeiture, see Penal Code § 1305 et seq.

Bench warrant, absence of defendant on order for increased bail, see Penal Code § 986.

## § 1196. Bench warrant; issuance

(a) The clerk, or the judge or justice, if there is no clerk, must at any time after the order issue a bench warrant into one or more counties.

(b) The clerk, or the judge or justice, shall require the appropriate agency to enter each bench warrant issued, on a private surety-bonded felony case into the national warrant system (National Crime Information Center (NCIC)). If the system (National Crime Information Center (NCIC))

E-155

[Skewed text in left margin, partially legible:]
§ 1192 [...] co[...] Upon [...] provided [...] into degree in open cou[...] specify [...] any [...] cannot be [...] attempted [...] 1955, c. 184 [...] § 2; Stats.19[...]tration.

§ 1192.3. Plea[...] probation; roll call pleading charging [...]mbership (a) A plea [...] when pleading char[...]nly when in Section 1192.5 [...] approved damage for whi[...]1399, c. condition that c[...]988, c. offenses arising [...]44, § 2.5; the defendant whi[...]16, may be ordered, m[...]ct. 1, defendant as a cond[...]18, § 19, pursuant thereto, so[...]1; Stats. made; there is factua[...] 57), § 936 conditions are approved [...]1998, c.

# EXHIBIT COVER PAGE $\boxed{S}$

EXHIBT

Description of this Exhibit: Habeas Courts Order, March 17th, 2005

Case No.
People v.
Denying first 5 claims, informal response ordered
on grounds 6 trough 27.

Number of pages to this Exhibit ___8___ pages. 156-163

JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

*Date Received 3/22/05*

F I L E D
Clerk of the Superior Court

MAR 17 2005

By: L. JACKSON, Deputy

9       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                    **COUNTY OF SAN DIEGO**

12   IN RE THE PETITION OF:            )   HC 18018
                                       )   SCD 163510
13   GEORGE SHUFELT,                   )
                                       )
14              Petitioner.            )   ORDER FOR INFORMAL RESPONSE;
                                       )   ORDER DENYING PETITION FOR WRIT
15                                     )   OF HABEAS CORPUS IN PART
                                       )
16                                     )

18          THIS COURT, HAVING READ AND CONSIDERED THE PETITION FOR WRIT OF

19   HABEAS CORPUS AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS:

20          On June 28, 2002, a jury found Petitioner guilty of one count of auto theft (Vehicle Code

21   § 10851(a)), one count of receiving a stolen vehicle (Penal Code § 496d), four counts of

22   residential burglary (Penal Code §§ 459/460), four counts of receiving stolen property (Penal

23   Code § 496(a)) and one count of resisting an officer (Penal Code § 148(a)(1)).  In a separate

24   hearing, the jury found Petitioner had a 1995 Utah conviction of automobile homicide that the

25   Court then found was a serious felony prior (Penal Code § 667(a)(1)) and a strike prior (Penal

26   Code §§ 667(b)-(i), 1170.12).

27          On August 22, 2002, the Court denied Petitioner's motion to strike the strike prior and

28   sentenced him to the total term of 19 years, eight months. Thereafter, Petitioner filed a timely

29   notice of appeal on the sole ground that the trial court erred in finding his 1995 Utah conviction

30   to be a serious felony prior and a strike prior. The Fourth District Court of Appeal disagreed with

     Petitioner's argument and affirmed the judgment on November 13, 2003 in case D040805. The

E-156

1   California Supreme Court denied review on February 18, 2004 in case S121327.

2       Petitioner has now filed the current habeas corpus petition based upon 27 grounds,

3   accompanied by numerous motions connected with it. The Court has reviewed this Petition and

4   the motions. The Petition is denied on the first five grounds that pertain to the use of the Utah

5   prior conviction, as discussed in detail below.

6       However, based upon the arguments Petitioner presents in grounds 6-27, the Court

7   requests an informal response from the People, pursuant to California Rule of Court 4.551(b), so

8   that both sides of each argument can be presented. Because of the amount of material presented

9   by Petitioner regarding these last 21 grounds, the People have 45 days to file their informal

10  response in Department 15 of the San Diego Superior Court. (The proof of service attached to

11  the Court's copy of the Petition shows that the People were served with a copy of this Petition by

12  mail on January 19, 2005.) Petitioner then will be given 45 days to file a timely reply to the

13  People's response, also in Department 15 of the San Diego Superior Court.

14      Petitioner's motions are denied as follows: (1) To transfer 3,410 pages of the record

15  prepared for the appeal before this petition is reviewed; (2) For judicial notice; (3) To conduct an

16  evidentiary hearing; (4) To appoint counsel; (5) To vacate the underlying judgment; and, (6) To

17  reinstate his direct appeal. The reasons for each denial are also set forth below.

18  **Transfer appellate record:**

19      The Fourth District Court keeps its own record of whatever is filed on each case

20  concerning direct appeals and there is no provision and no law requiring a transfer of any

21  documents back to the Superior Court.

22      Further, the Court is not under any obligation to seek out evidence on Petitioner's behalf.

23  In People v. Duvall (1995) 9 Cal.4th 464, the Court said: "[t]he petitioner bears a heavy burden

24  initially to plead sufficient grounds for relief, and then later to prove them. . . . ¶ To satisfy the

25  initial burden of pleading adequate grounds for relief, an application for habeas corpus must be

26  made by petition, and "[i]f the imprisonment is alleged to be illegal, the petition must also state

27  in what the alleged illegality consists." ([Penal Code] § 1474, subd. 2.) The petition should both

28  (i) state fully and with particularity the facts on which relief is sought (People v. Karis (1988) 46

29  Cal.3d 612, 656 [hereafter Karis]; In re Swain (1949) 34 Cal.2d 300, 304), as well as (ii) include

30  copies of reasonably available documentary evidence supporting the claim, including pertinent

E-157

1  portions of trial transcripts and affidavits or declarations. (Citations.) 'Conclusory allegations

2  made without any explanation of the basis for the allegations do not warrant relief, let alone an

3  evidentiary hearing.' (<u>Karis</u>, <u>supra</u>, at p. 656.) We presume the regularity of proceedings that

4  resulted in a final judgment (<u>In re Bell</u> (1942) 19 Cal.2d 488, 500), and, as stated above, the

5  burden is on the petitioner to establish grounds for his release. (Citations) ¶ . . . If no prima facie

6  case for relief is stated, the court will summarily deny the petition." <u>Id.</u>, at 474-475.

7       **Judicial notice:**

8       As stated immediately above, the Court is not obligated to search for any evidence for

9  any party. If Petitioner has attached a document to this Petition or if something is clearly

10 referenced and readily available in the Court file, the Court will review it. Petitioner's first five

11 grounds pertain to a matter, the Utah prior, that has already been decided by a jury, ruled upon

12 by the trial court and reviewed by the appellate court. Neither argument regarding that prior nor

13 any law from the state of Utah will be reviewed again here in this Petition because the matter is

14 final.

15      **Evidentiary hearing:**

16      California Rule of Court 4.551 sets forth the procedures for conducting a habeas corpus

17 proceeding. Subsection (c) of that rule states that before any evidentiary hearing is conducted,

18 the Court must issue an order to cause as to why the petition should not be granted, but ***only if***

19 the Petitioner has made a prima facie showing that he is entitled to relief. At this point, Petitioner

20 has not made that showing here.

21      **Appointment of counsel:**

22      The United States Supreme Court has never held that prisoners have a constitutional right

23 to counsel when mounting collateral attacks upon their convictions. (*See* <u>Pennsylvania v. Finley</u>

24 (1987) 481 U.S. 551, 555 [95 L.Ed.2d 539, 545] [citing <u>Johnson v. Avery</u> (1969) 393 U.S. 483,

25 488 [21 L.Ed.2d 718, 722].)

26      The California Supreme Court, on the other hand, has held that counsel must be provided

27 to an indigent petitioner who makes "adequately detailed factual allegations stating a prima facie

28 case for relief." <u>People v. Barton</u> (1978) 21 Cal.3d 513, 519 fn.3; <u>People v. Shipman</u> (1965) 62

29 Cal.2d 226, 232.

30      "If a petition attacking the validity of a judgment states a prima facie case leading to the

E-158

1    issuance of an order to show cause, the appointment of counsel is demanded by due process

2    concerns." In re Clark (1993) 5 Cal.4th 750, 780. Therein lies Petitioner's problem: Petitioner

3    has not set forth a prima facie statement of facts that would entitle him to habeas corpus relief.

4    **Vacate underlying judgment:**

5       "We emphasize that, because petitioner seeks to overturn a final judgment in a collateral

6    attack, he bears the burden of proof. (Duvall, supra, 9 Cal. 4th at p. 474.) " 'For purposes of

7    collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and

8    sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the

9    finality of criminal proceedings so demands, and due process is not thereby offended.' " (Ibid.,

10   quoting People v. Gonzalez (1990) 51 Cal. 3d 1179, 1260, italics in original.)" In Re Avena

11   (1996) 12 Cal.4th 694, 710.

12       Again, because Petitioner has not satisfied the burden of making a prima facie showing,

13   the judgment cannot be vacated at this time.

14    **Reinstate direct appeal:**

15       It is obvious this Court cannot consider this issue because it has no jurisdiction to

16   overturn any decision an appellate court renders. Thus, the Superior Court has no authority to

17   reinstate any appeal to a higher court. "Courts exercising inferior jurisdiction must accept the law

18   declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions

19   of a higher court. [Citations.]" Auto Equity Sales v. Superior Court (1962) 57 Cal.2d 450, 455.

20   Petitioner will have to take this issue to the Fourth District Court of Appeal to resolve."

21    **Denial of the habeas corpus petition:**

22       A Petitioner in habeas corpus bears the burden of proving the facts upon which he bases

23   his claim for relief.  In re Riddle (1962) 57 Cal.2d 848, 852. Every Petitioner, even one filing in

24   pro per, must set forth a prima facie statement of facts which would entitle him to habeas corpus

25   relief under existing law. In re Bower (1985) 38 Cal.3d 865, 872.

26       Moreover, it is generally held that habeas corpus cannot serve as a second appeal, and

27   matters were raised and rejected on appeal are not cognizable on state habeas corpus in the

28   absence of special circumstances. In re Huffman (1986) 42 Cal.3d 552, 554-55; In re Terry

29   (1971) 4 Cal.3d 911, 927.  *72-? CU 789, 724 P2d 425*

30       Nearly 50 years ago, the Court in In re Lindley (1947) 29 Cal. 2d 709, 723, stated: "Upon

*93 Cal 17*
*845 P2d 757*

E-159

1  habeas corpus, ordinarily it is not competent to retry issues of fact or the merits of a defense, . . .

2  , and the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper

3  issue for consideration. (Citations omitted.) Nor is habeas corpus an available remedy to review

4  the rulings of the trial court with respect to the admission or exclusion of evidence, or to correct

5  other errors of procedure occurring on the trial. (Citations omitted.) Also, newly discovered

6  evidence does not justify relief unless it is of such character as will completely undermine the

7  entire structure of the case upon which the prosecution was based."

8       This is still the law in California, so Petitioner cannot re-try his entire case via this habeas

9  corpus petition.

10  **Regarding grounds 1-5:**

11       Petitioner complains that his appellate counsel failed to cite relevant law to argue that his

12  Utah conviction was a strike and that the law actually cited was incorrect. He further claims that

13  because his appellate attorney failed to cite the proper law, the appellate court based its decision

14  to affirm the judgment on erroneous law.

15       That is not what occurred. First, it can be assumed that the appellate court did its own

16  independent research of this issue before rendering its decision and it is only speculation that the

17  decision was based upon incorrect law provided by counsel. It is also speculation that this was

18  the wrong law.

19       Second, Petitioner pled guilty to a violation of Utah Codes Annotated (UCA) 76-5-207,

20  automobile homicide. Petitioner complains that an earlier case than the one his appellate attorney

21  cited really discusses simple negligence being required for his conviction, which is different than

22  what is required in California. Therefore, Petitioner asserts his attorney was ineffective for

23  failing to cite and argue it. Petitioner claims that because that the earlier case he located, State v.

24  Risk (1974) 520 P.2d 215, found a difference between negligent homicide and automobile

25  homicide, that his conviction really was not the same as if he had been convicted of Penal Code

26  § 192.

27       Both the trial court and the appellate court compared UCA 76-5-207 with California

28  Penal Code § 192(c)(3). The Fourth District Court of Appeal analyzed both statutes and

29  concluded by stating at page 4 of its unpublished decision: "Thus, in Utah, as in California, a

30  defendant is guilty of vehicular manslaughter if he kills another human being while driving

E-160

1   negligently and under the influence of alcohol."

2        This Court does not find that this analysis was in error from any of the material presented

3   by Petitioner. When claiming ineffectiveness of appellate counsel, Petitioner must show

4   appellate counsel failed to raise crucial issues "which arguably might have resulted in a reversal"

5   on appeal.  In re Smith (1970) 3 Cal.3d 192, 202-203; see also, People v. Rhoden (1972) 6

6   Cal.3d 519, 529 and People v. Lang (1974) 11 Cal.3d 134, 142.)

7        To show that counsel was ineffective, Petitioner must show (1) counsel's representation

8   was deficient, in that it "fell below an objective standard of reasonableness . . . under prevailing

9   professional norms," and (2) counsel's deficient performance prejudiced his defense.  Strickland

10  v. Washington (1984) 466 U.S. 668, 688; People v. Ledesma (1987) 43 Cal.3d 171.

11       The first prong is reviewed under a standard of deferential scrutiny.  Strickland, supra, at

12  p. 689; Ledesma, supra, at p. 216.  Counsel is given the benefit of a strong presumption that his

13  or her conduct fell within the "wide range of reasonable professional assistance."  Id.  "A fair

14  assessment of attorney performance requires that every effort be made to eliminate the distorting

15  effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

16  evaluate the conduct from counsel's perspective at the time."  In re Marquez (1992) 1 Cal.4th 584,

17  603, citing Strickland, supra, at p. 689.

18       Second, if counsel's performance is shown to be deficient, the Petitioner must show that

19  the deficient performance prejudiced his defense.  Strickland, supra, at p. 687;  Ledesma, supra,

20  at p. 216.  This prong must be "affirmatively proved."  Ledesma, supra, at p. 217.  To prove

21  prejudice, a Petitioner cannot merely show that the errors had some conceivable effect on the

22  outcome of the proceeding.  People v. Davis (1995) 10 Cal.4th 463, 503, citing Ledesma, supra,

23  at p. 215.  Instead, Petitioner must establish there is a "reasonable probability that but for

24  counsel's unprofessional errors, the result of the proceeding would be different.  A reasonable

25  probability is a probability sufficient to undermine confidence in the outcome."  Strickland,

26  supra, 466 U.S. at p. 694 [80 L.Ed.2d at 698].  A court need not determine whether counsel's

27  performance was deficient if the ineffectiveness claim can be disposed of on the ground of lack

28  of sufficient prejudice.  In re Fields (1990) 51 Cal.3d 1063, 1079, citing Strickland, supra, 466

29  U.S. at p. 697.

30       Here, Petitioner has not shown that his appellate counsel's tactics "fell below an objective

F-161

1  standard of reasonableness . . . under prevailing professional norms," because he fails to

2  substantiate any claim that the result would have been different. He has made the claim, but not

3  provided any proof of what is still speculation. He assumes the appellate court compared the

4  wrong law, simply because his appellate counsel did not cite a case Petitioner believes is

5  controlling. However, a review of the case the court did cite and the cases Petitioner cites (all of

6  which were decided *before* the decision in the case the court cited) shows that, despite

7  Petitioner's argument, any claim that the appellate court's decision was erroneous is speculative.

8      Petitioner next complains in ground five that when he pled guilty in 1995 to the Utah

9  offense, he did not know it could or would be used against him in the future to enhance any

10  future sentence. He did know any of knowing

11      Regarding this issue often raised by repeat offenders, the California Supreme Court said

12  in People v. Tuggle (1991) 232 Cal.App.3d 147, 155, "In response to the defendant's argument

13  that it was unfair to allow enhancements to be predicated on matters which the defendant did not

14  know the significance of at the time of the prior proceeding, the court stated: "The law regularly

15  requires persons to suffer the consequences of their actions, even though they had not or could

16  not foresee those consequences. . . . 'Of course the admission concerning the residential nature of

17  the burglary was made without the knowledge that it could one day result in an enhanced

18  sentence for later crimes. That is true, however, of every guilty plea to a charge of felony: it is

19  seldom entered in anticipation of the commission of future crimes. Nevertheless if there are

20  subsequent crimes, in most instances there will be enhanced punishment.'" (People v. Guerrero

21  (1988) 44 Cal.3d 343, 355-356).

22      Moreover, it has been held that "In the context of habitual criminal statutes, 'increased

23  penalties for subsequent offenses are attributable to the defendant's status as a repeat offender

24  and arise as an incident of the subsequent offense rather than constituting a penalty for the prior

25  offense'" People v. Jackson (1985) 37 Cal.3d 826, 833; People v. Sipe (1995) 36 Cal.App.4th

26  468, 479.

27      When a criminal defendant chooses to plead guilty, . . . Courts have required that the

28  defendant be advised on the record that, by pleading, the defendant forfeits the constitutional

29  rights to a jury trial, to confront and cross-examine the People's witnesses, and to be free from

30  compelled self-incrimination. (Boykin v. Alabama (1969) 395 U.S. 238; In re Tahl (1969) 1 Cal.

E-162

3d 122.) In addition, the California Supreme court has required, as a judicially declared rule of state criminal procedure, that a pleading defendant also be advised of the direct consequences of his plea. (People v. Barella (1999) 20 Cal. 4th 261, 266; Bunnell v. Superior Court (1975) 13 Cal. 3d 592, 605.)

However, if the consequence is only collateral, no advisement is required.

There is no authority holding that a prior serious felony conviction enhancement pursuant to section 667, subdivision (a) cannot be imposed because the defendant had not been advised, prior to pleading in an earlier case, that his conviction could be used to enhance a future sentence should he reoffend. In such cases, the appellate courts have held that the "possible future use of a current conviction is not a direct consequence of the conviction." (People v. Bernal (1994) 22 Cal. App. 4th 1455, 1457; accord, People v. Crosby (1992) 3 Cal. App. 4th 1352, 1355, as cited in People v. Gurule (2002) 28 Cal.4th 557, 634-635.)

**Grounds 6-27:**

Petitioner claims his appellate counsel was ineffective because he deemed there were no issues worth briefing contained in 3,410 pages of trial record (Ground #6). Petitioner believes there were issues that should have been presented. Petitioner also claims that his appointed trial counsel was ineffective for numerous cited acts and/or omissions during trial.

In order for this Court to make a fully informed decision, it must have the People's response to these 21 grounds and therefore issues this request for an informal response as detailed above.

Therefore, this Petition is DENIED in part as discussed above and the informal response is requested from the People.

It is further ordered that a copy of this Order shall be served upon Petitioner and San Diego Deputy District Attorneys Kim-Thoa Hoang and Per Hellstrom.

IT IS SO ORDERED.

DATED: __3/15/05__

HOWARD H. SHORE

JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.

Attest: MAR 1 8 2005

Clerk of the Superior Court of the State of California, in and for the County of San Diego

By _____

E-163

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: Habeas courts final order Denying
Case No.
People v.     Grounds 6-28, AC18018, 1/24/07.
Recieved on March 7, 2007

Number of pages to this Exhibit ___16___ pages.  (164~179)

JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

1
2
3
4
5
6
7
8

F I L E D
Clerk of the Superior Court

JAN 2 4 2007

By: L. SANDOVAL, Deputy

9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                    **COUNTY OF SAN DIEGO**
11

| | |
|---|---|
| 12  IN RE THE PETITION OF: | )  HC 18018 |
| 13  GEORGE SHUFELT, | )  SCD 163510 |
| 14        Petitioner. | )  ORDER DENYING PETITION |
| 15 | )  FOR WRIT OF HABEAS CORPUS |
| 16 | ) |

17        THIS COURT, HAVING READ AND CONSIDERED THE PETITION FOR WRIT OF
18  HABEAS CORPUS, THE ADDITIONAL PLEADING IN SUPPORT OF THIS PETITION,
19  TWO LENGTHY INFORMAL RESPONSES FROM THE PEOPLE, AND THE FILE IN THE
20  ABOVE CAPTIONED MATTER, FINDS:
21        On March 15, 2005, this Court denied Petitioner's original habeas corpus petition
22  regarding grounds 1-5, but sought an informal response from the People regarding issues 6-28.
23  Numerous requests to extend time were granted and an attorney was appointed to assist
24  Petitioner in narrowing the issues. The first attorney was relieved and a second attorney
25  appointed. The People's final informal response was filed in December, 2006.
26        Upon review of all the documents submitted, this Petition is denied for the reasons set
27  forth below. So that the record is complete, much of what was stated in the original March 15,
28  2005, order denying grounds 1-5 is set forth here again because much of the law stated then
29  applies to all the grounds, especially any that include a claim of ineffective assistance of counsel.
30

E-164

1    It should be clearly noted once again that this Court does not have any jurisdiction over

2    anything involving the California Fourth District Court of Appeal, Division One. That is, any

3    complaint regarding the effectiveness of *appellate* counsel must ultimately be resolved in that

4    Court. However, for the record, this Court states below some of the reasons why it does not agree

5    with Petitioner regarding these claims. None of these reasons have any binding effect on the

6    appellate court.

7    On June 28, 2002, a jury found Petitioner guilty of one count of auto theft (Vehicle Code

8    § 10851(a)), one count of receiving a stolen vehicle (Penal Code § 496d), four counts of

9    residential burglary (Penal Code §§ 459/460), four counts of receiving stolen property (Penal

10   Code § 496(a)) and one count of resisting an officer (Penal Code § 148(a)(1)). In a separate

11   hearing, the jury found Petitioner had a 1995 Utah conviction of automobile homicide that the

12   Court then found was a serious felony prior (Penal Code § 667(a)(1)) and a strike prior (Penal

13   Code §§ 667(b)-(i), 1170.12).

14   On August 22, 2002, the Court denied Petitioner's motion to strike the strike prior and

15   sentenced him to the total term of 19 years, eight months. Thereafter, Petitioner filed a timely

16   notice of appeal on the sole ground that the trial court erred in finding his 1995 Utah conviction

17   to be a serious felony prior and a strike prior. The Fourth District Court of Appeal disagreed with

18   Petitioner's argument and affirmed the judgment on November 13, 2003 in case D040805. The

19   California Supreme Court denied review on February 18, 2004 in case S121327.

20   Petitioner then filed the current habeas corpus petition based upon 28 grounds,

21   accompanied by numerous motions connected with it. These motions were denied: (1) To

22   transfer 3,410 pages of the record prepared for the appeal before the petition was reviewed; (2)

23   For judicial notice; (3) To conduct an evidentiary hearing; (4) To appoint counsel; (5) To vacate

24   the underlying judgment; and, (6) To reinstate his direct appeal. The reasons for each denial were

25   set forth in detail and will not be repeated, except where relevant to the current reasons for final

26   denial of this present Petition.

27   **Transfer appellate record:**

28   The Court is not under any obligation to seek out evidence on Petitioner's behalf. In

29   People v. Duvall (1995) 9 Cal.4th 464, the Court said: "[t]he petitioner bears a heavy burden

30   initially to plead sufficient grounds for relief, and then later to prove them. . . . ¶ To satisfy the

E-165

1    initial burden of pleading adequate grounds for relief, an application for habeas corpus must be
2    made by petition, and "[i]f the imprisonment is alleged to be illegal, the petition must also state
3    in what the alleged illegality consists." ([Penal Code] § 1474, subd. 2.) The petition should both
4    (i) state fully and with particularity the facts on which relief is sought (People v. Karis (1988) 46
5    Cal.3d 612, 656 [hereafter Karis]; In re Swain (1949) 34 Cal.2d 300, 304), as well as (ii) include
6    copies of reasonably available documentary evidence supporting the claim, including pertinent
7    portions of trial transcripts and affidavits or declarations. (Citations.) 'Conclusory allegations
8    made without any explanation of the basis for the allegations do not warrant relief, let alone an
9    evidentiary hearing.' (Karis, supra, at p. 656.) We presume the regularity of proceedings that
10   resulted in a final judgment (In re Bell (1942) 19 Cal.2d 488, 500), and, as stated above, the
11   burden is on the petitioner to establish grounds for his release. (Citations) ¶ . . . If no prima facie
12   case for relief is stated, the court will summarily deny the petition." Id., at 474-475.

13        The general rule is that habeas corpus cannot serve as a substitute for an appeal, and that
14   matters that "could have been, but were not, raised on a timely appeal from a judgment of
15   conviction" are not cognizable on habeas corpus in the absence of special circumstances
16   warranting departure from that rule. In re Clark (1993) 5 Cal.4th 750, 765 [quoting In re Dixon
17   (1953) 41 Cal.2d 756, 759; In re Walker (1974) 10 Cal.3d 764, 773.)

18        Regarding guidelines for habeas corpus petitions, "We emphasize that, because petitioner
19   seeks to overturn a final judgment in a collateral attack, he bears the burden of proof. (Duvall,
20   supra, 9 Cal. 4th at p. 474.) " 'For purposes of collateral attack, all presumptions favor the truth,
21   accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden
22   of overturning them. Society's interest in the finality of criminal proceedings so demands, and
23   due process is not thereby offended.' " (Ibid., quoting People v. Gonzalez (1990) 51 Cal. 3d
24   1179, 1260, italics in original.)" In Re Avena (1996) 12 Cal.4th 694, 710.

25   **Reinstate direct appeal:**
26        As noted above, Petitioner must bring all issues relating to direct appeal to the Fourth
27   District Court of Appeal. This Superior Court cannot consider those issues because it has no
28   jurisdiction to overturn any decision an appellate court renders. Thus, the Superior Court has no
29   authority to reinstate any appeal to a higher court. "Courts exercising inferior jurisdiction must
30   accept the law declared by courts of superior jurisdiction. It is not their function to attempt to

E-166

1  overrule decisions of a higher court. [Citations.]" <u>Auto Equity Sales v. Superior Court</u> (1962) 57

2  Cal.2d 450, 455. Petitioner will have to take this issue to the Fourth District Court of Appeal to

3  resolve."

4      **Denial of the habeas corpus petition:**

5      A Petitioner in habeas corpus bears the burden of proving the facts upon which he bases

6  his claim for relief. <u>In re Riddle</u> (1962) 57 Cal.2d 848, 852. Every Petitioner, even one filing in

7  pro per, must set forth a prima facie statement of facts which would entitle him to habeas corpus

8  relief under existing law. <u>In re Bower</u> (1985) 38 Cal.3d 865, 872.

9      Moreover, it is generally held that habeas corpus cannot serve as a second appeal, and

10  matters that were raised and rejected on appeal are not cognizable on state habeas corpus in the

11  absence of special circumstances. <u>In re Huffman</u> (1986) 42 Cal.3d 552, 554-55; <u>In re Terry</u>

12  (1971) 4 Cal.3d 911, 927.

13      Nearly 50 years ago, the Court in <u>In re Lindley</u> (1947) 29 Cal. 2d 709, 723, stated: "Upon

14  habeas corpus, ordinarily it is not competent to retry issues of fact or the merits of a defense, . . .

15  and the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper

16  issue for consideration. (Citations omitted.) Nor is habeas corpus an available remedy to review

17  the rulings of the trial court with respect to the admission or exclusion of evidence, or to correct

18  other errors of procedure occurring on the trial. (Citations omitted.) Also, newly discovered

19  evidence does not justify relief unless it is of such character as will completely undermine the

20  entire structure of the case upon which the prosecution was based."

21      This is still the law in California, so Petitioner cannot re-try his entire case via this habeas

22  corpus petition. This Court is not a "reviewing court" per se as Petitioner often stated. Petitioner

23  complained about what the trial court did, or did not do, but Penal Code § 1473 essentially

24  permits the filing of a habeas corpus petition, not to review a decision, but normally when there

25  is a claim of false evidence presented and/or argued. As noted, this petition cannot serve as a

26  second appeal and by the denial herein, this Court was not inviting a dialogue with Petitioner

27  regarding any portion of the present petition.

28      It must also be clearly noted that this Order **cannot** be appealed. "Because no appeal lies

29  from the denial of a petition for writ of habeas corpus, a prisoner whose petition has been denied

30  by the superior court can obtain review of his claims only by the filing of a new petition in the

E-167

Court of Appeal. Our reference to and discussion of successive petitions has no application to that practice, or to the filing of an original petition in this court after denial of a petition by the Court of Appeal. (In re Trombley (1948) 31 Cal.2d 801, 804, fn. 1 [193 P.2d 734].) In Re Clark (1993) 5 Cal.4th 750, 767 at fn.7.

**Ineffective assistance of appellate counsel:**

As noted, the issue of the Utah prior conviction has been argued and resolved. However, the law cited below pertains to any of the other claims regarding counsel's effectiveness. This is a **crucial** point to this Order. A review of all of Petitioner's documents clearly indicates that he did not agree with the convicting jury, the trial court, the appellate court and his trial and appellate attorneys, so he has essentially sought to reargue almost every aspect of his trial under the blanket of "ineffective assistance of counsel (hereinafter IAC)." As the law discussed below states, there are **two** prongs to the test on this issue and "showing prejudice" does not mean just alleging and arguing prejudice, but providing evidence that proves prejudice. Speculation is not proof and speculation is the basis for nearly very ground for this Petition. Claiming that a jury would have found differently is speculation unless there is clear evidence provided that at least strongly indicates more than a guess.

Second-guessing what a jury might do or not do is not allowed to speculate prejudice. "The mental processes of a deliberating juror with respect to the merits of the case at hand must remain largely beyond examination and second-guessing, shielded from scrutiny by the court as much as from the eyes and ears of the parties and the public. Were a district judge permitted to conduct intrusive inquiries into--and make extensive findings of fact concerning--the reasoning behind a juror's view of the case, or the particulars of a juror's (likely imperfect) understanding or interpretation of the law as stated by the judge, this would not only seriously breach the principle of the secrecy of jury deliberations, but it would invite trial judges to second-guess and influence the work of the jury." People v. Metters (1998) 61 Cal.App.4th 1489, review denied by California Supreme Court – December 18, 2002.

When claiming ineffectiveness of counsel, Petitioner must show appellate counsel failed to raise crucial issues "which arguably might have resulted in a reversal" on appeal. In re Smith (1970) 3 Cal.3d 192, 202-203; see also, People v. Rhoden (1972) 6 Cal.3d 519, 529 and People v. Lang (1974) 11 Cal.3d 134, 142.)

E-168

1    To show that either trial and/or appellate counsel was ineffective, Petitioner must show

2  (1) counsel's representation was deficient, in that it "fell below an objective standard of

3  reasonableness . . . under prevailing professional norms," and (2) counsel's deficient

4  performance prejudiced his defense. Strickland v. Washington (1984) 466 U.S. 668, 688; People

5  v. Ledesma (1987) 43 Cal.3d 171.

6    The first prong is reviewed under a standard of deferential scrutiny. Strickland, supra, at

7  p. 689; Ledesma, supra, at p. 216. Counsel is given the benefit of a strong presumption that his

8  or her conduct fell within the "wide range of reasonable professional assistance." Id. "A fair

9  assessment of attorney performance requires that every effort be made to eliminate the distorting

10 effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

11 evaluate the conduct from counsel's perspective at the time." In re Marquez (1992) 1 Cal.4th 584,

12 603, citing Strickland, supra, at p. 689.

13    Second, if counsel's performance is shown to be deficient, the Petitioner must show that

14 the deficient performance prejudiced his defense. Strickland, supra, at p. 687; Ledesma, supra,

15 at p. 216. This prong must be "affirmatively proved." Ledesma, supra, at p. 217. To prove

16 prejudice, a Petitioner cannot merely show that the errors had some conceivable effect on the

17 outcome of the proceeding. People v. Davis (1995) 10 Cal.4th 463, 503, citing Ledesma, supra,

18 at p. 215. Instead, Petitioner must establish there is a "reasonable probability that but for

19 counsel's unprofessional errors, the result of the proceeding would be different. A reasonable

20 probability is a probability sufficient to undermine confidence in the outcome." Strickland,

21 supra, 466 U.S. at p. 694 [80 L.Ed.2d at 698]. A court need not determine whether counsel's

22 performance was deficient if the ineffectiveness claim can be disposed of on the ground of lack

23 of sufficient prejudice. In re Fields (1990) 51 Cal.3d 1063, 1079, citing Strickland, supra, 466

24 U.S. at p. 697.

25    As noted, this Court denies this Petition in full and does not find any of the remaining 22

26 grounds to have merit providing the requisite prima facie showing that warrants an Order to

27 Show Cause. Therefore, each of those 22 grounds will not be separated and discussed because

28 the same law applies to them all; specifically the law regarding the requisite showing for IAC.

29 Where appropriate, discussion of grounds is not separated by ground number and the denial

30 encompasses each. The bottom line is that each of these grounds is denied and none of them

E-169

1    warrant any further discussion.

2         As an example, the California Supreme Court stated in <u>People v. Freeman</u> (1994) 8

3    Cal.4[th] 450, 509, "Defendant argues that his attorneys did not file enough motions and written

4    points and authorities, and did not "advocat[e] or supplement[]" some of his own pro se motions.

5    He has not, however, shown a single potentially meritorious motion that was not pursued, or that

6    any motions that were pursued were done so ineffectively. As noted before, counsel is the

7    captain of the ship (Citation omitted), and need not do everything the defendant may personally

8    desire, no matter how unmeritorious or possibly even harmful to the overall defense. Competent

9    counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for

10   the sake of the record. Rather, competent counsel should realistically examine the case, the

11   evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable

12   professional judgment, seem appropriate under the circumstances."

13        It also must be reiterated that any complaints of IAC of appellate counsel should be dealt

14   with in the appellate court. As the California Supreme Court noted in 1971 when a Petitioner did

15   not receive appointed counsel for his appeal (which is similar to when an appellant receives

16   ineffective assistance of counsel on appeal): "Where the case comes before us solely on the issue

17   of denial of counsel on appeal (particularly in a pro. per. petition), we ordinarily reinstate the

18   appeal and remand to the Court of Appeal to reconsider its decision with the aid of effective

19   advocacy by appellate counsel." <u>In Re Banks</u> (1971) 4 Cal.3d 337, 343.

20        While effectiveness of appellate counsel is an appellate court issue, it should be noted

21   that Petitioner's appellate attorney sent Petitioner a letter stating that he chose to limit issues only

22   after a "painstaking" review of the record and "meticulous" research. Petitioner has not met the

23   burden required here to provide any evidence to show that this statement is incorrect.

24        As noted above, Petitioner was convicted of, among other counts, several burglaries.

25   However, he was suspected of several other burglaries, but they were not charged against him in

26   the present case. Although these offenses would come under the heading of "uncharged

27   conduct," evidence regarding that conduct was offered and admitted at Petitioner's trial.

28        Petitioner now complains that it was error to allow admission of this evidence, and that,

29   although counsel objected to entry three times, he filed no papers and argued no law on this issue

30   and used the excuse that he had only a week to prepare for trial.

E-170

1    (It should be noted that Petitioner had represented himself for nearly six months before
2    the trial began. Attorney Guthrie was his advisory counsel during that time. Eight days before
3    trial, Petitioner told the Court he wanted to not represent himself and asked that Mr. Guthrie be
4    his trial counsel. This attorney told the Court he would be ready for trial and he was appointed.
5    This issue will be discussed at the very end of this Order.)

6    Petitioner cites no law that requires the filing of Points & Authorities for every oral
7    motion made at trial because there is no such law. Further, he fails to show how written filings
8    would have changed the outcome of trial in any way. The attorney did cross-examine witnesses
9    and argued Petitioner's case. Plus, Evidence Code § 1101(b) allows admission of uncharged bad
10   conduct when it is relevant to identification, why Petitioner was chased and to link him to a
11   common design/plan and to show intent.

12   Petitioner's defense in this case was based on identity – that he was not the perpetrator of
13   these crimes. Petitioner complains about the use of a photo lineup and that uncharged offense
14   evidence should have been excluded. However, pursuant to Evidence Code § 352, the Court has
15   broad discretion regarding what was highly probative to the identity defense. Plus, the record
16   shows that the use of the photo lineup was litigated. Petitioner has still not shown that this lineup
17   was unduly suggestive and no limiting jury instruction was required. The Court did give
18   instructions regarding reasonable doubt and the use of circumstantial evidence.

19   Regarding a large portion of Petitioner's complaints in this Petition, the following long-
20   standing rule must be quoted: "It is well established that in order to raise an issue of erroneous
21   admission of evidence on appeal, the party "must object at the trial, specifically stating the
22   grounds of his objection, and directing the objection to the particular evidence which he seeks to
23   exclude. . . . [and] failure to object at all waives the defect." (Witkin, Cal. Evidence (2d ed. 1966)
24   § 1285, p. 1188, and cases there collected.)" People v. Watson (1977) 75 Cal.App.3d 385, 401.
25   Further, the California Supreme Court stated in People v. Clark (1990) 50 Cal.3d 583, 618:
26   "'Failure to object waives any claim of error on appeal (People v. Harris (1989) 47 Cal. 3d 1047,
27   1089) and, having elected to represent himself, defendant may not now claim that he received
28   ineffective representation at trial because the possibly objectionable evidence came in. (People v.
29   Bloom, supra, 48 Cal. 3d at p. 1226.)'"

30   This failure to object negates grounds #7 and #8 where Petitioner claims counsel was

ORDER - 8

E-171

1   ineffective for failing to challenge the court's error of admission of three instances involving

2   three witnesses regarding prior crimes evidence pursuant to Evidence Code § 1101(b) and further

3   court error regarding giving the CALJIC 2.50 instruction concerning them.

4          Petitioner claims that his appellate counsel was ineffective for failure to raise those issues

5   on appeal. However, that attorney apparently knew he could not raise them because of

6   Petitioner's failure to object to admission at trial.

7          On the other hand, the Court in <u>People v. Prieto</u> (2003) 30 Cal.4th 226, 248, did say:

8   "These instructional errors, however, are reviewable on appeal to the extent they "affect his

9   substantial rights." (<u>People v. Slaughter</u> (2002) 27 Cal.4th 1187, 1199; see also § 1259.)

10  Accordingly, we address the merits of defendant's claims of instructional error below."

11         As noted above, to prove ineffectiveness of counsel, a Petitioner must show prejudice.

12  Petitioner admits that some of the evidence discussed in this ground was not objected to, but then

13  states: "And because of defense counsels (sic) error's (sic) the jury was presented with

14  inadequate leagel (sic) theories, that had no business being presented to the jury under CALJIC

15  2.50 as given."

16         Even assuming that statement is true, Petitioner still has not shown the prejudice.

17         Regarding grounds #9 and #10, Petitioner argues that there was an issue for an appeal for

18  the failure to give CALJIC 2.50.1 or 2.50.2. Petitioner complains that the jury was never told that

19  he had not been charged or convicted with the alleged prior offenses or what type of offenses

20  they were. Petitioner asserts this was fatal error. But again, he faces the problem of proving

21  prejudice to his case. The US Supreme Court set forth standards in <u>Smith v. Robbins</u> (2000) 528

22  U.S. 259, that are helpful here: "[t]he proper standard for evaluating [defendant] Robbins's claim

23  that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in

24  <u>Strickland v. Washington</u>, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). (Citation)

25  Respondent must first show that his counsel was objectively unreasonable, see <u>Strickland</u>, 466

26  U.S. at 687-691, in failing to find arguable issues to appeal -- that is, that counsel unreasonably

27  failed to discover nonfrivolous issues and to file a merits brief raising them. If Robbins succeeds

28  in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a

29  reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he

30  would have prevailed on his appeal. (Citation) <u>Id.</u>, at 285.

E-172

1    The Court then said, "But where, as here, the defendant has received appellate counsel

2  who has complied with a valid state procedure for determining whether the defendant's appeal is

3  frivolous, and the State has not at any time left the defendant without counsel on appeal, there is

4  no reason to presume that the defendant has been prejudiced.. . . . Here, . . . , counsel followed a

5  procedure that is constitutional. . . , and Robbins therefore received all the procedural protection

6  that the Constitution requires. We thus presume that the result of the proceedings on appeal is

7  reliable, and we require Robbins to prove the presumption incorrect in his particular case. See

8  Strickland, 466 U.S. at 694. Id., at 286-287.

9    Continuing, the Court said, "Further, the ineffective-assistance claim that Robbins

10  presses does not fall within any of the three categories of cases, described in Strickland, in which

11  we presume prejudice rather than require a defendant to demonstrate it. First, as noted, we

12  presume prejudice in a case of denial of counsel. Second, "various kinds of state interference

13  with counsel's assistance" can warrant a presumption of prejudice. (Citation) Third, "prejudice is

14  presumed when counsel is burdened by an actual conflict of interest,". . . . None of these three

15  categories applies to a case such as Robbins's. . . . [a]ppellate counsel who files a merits brief

16  need not (and should not) raise every nonfrivolous claim, but rather may select from among them

17  in order to maximize the likelihood of success on appeal." Id., at 288.

18    Going by this standard, Petitioner actually provides the reason why this Petition cannot

19  be granted on these grounds: "It's (sic) failure here (to use these instructions) requires reversal of

20  all crimes charged, because there is no way of knowing what theory jury used, and what burden

21  was applied, before profford (sic) uncharged offenses were permitted with inferences listed

22  under CALJIC 2.50, which in this case went to the ultimate issue, guilt of all crimes charged."

23  (Page T-196, lines 19-23). The key phrase is "there is no way of knowing what theory jury

24  used." Because there is no way to know, this Court cannot speculate the jury mind and grant a

25  petition on that basis of alleged prejudice alone. Prejudice here is Petitioner's guess only.

26    On numerous occasions throughout this Petition, Petitioner has misstated what occurred

27  at trial. At ground #10 he complains the Court conditionally allowed evidence under Evidence

28  Code § 1101(b) subject to a motion to strike. However, this is incorrect. The evidence was

29  admitted unconditionally as relevant and admissible without any conditions. Moreover,

30  Petitioner's trial counsel objected to this admission and Petitioner fails to provide any indication

E-173

1    that a motion to strike would have been granted.

2        At ground #11, Petitioner continues argument regarding uncharged conduct and claims

3    prosecutorial misconduct when there was an offer of proof but the witness was never called.

4    Petitioner claims his counsel did not object, but this also is incorrect. However, the evidence was

5    admissible under several theories and once again, Petitioner has failed to show prejudice to his

6    case by this admission when there was already overwhelming evidence against him.

7        Regarding any claim of prosecutorial misconduct by this Petitioner, the California

8    Supreme Court has said: "Conduct by a prosecutor that does not render a criminal trial

9    fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of

10   deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " '

11   [Citations omitted.) "[W]hen the claim focuses upon comments made by the prosecutor before

12   the jury, the question is whether there is a reasonable likelihood that the jury construed or

13   applied any of the complained-of remarks in an objectionable fashion." People v. Smithey (1999)

14   20 Cal.4th 936, 960.

15       At ground #18, Petitioner continues the claim of misconduct when the prosecutor told

16   jurors that Petitioner stole "stuff all day long" and that he was a thief. However, "We do not

17   believe that the prosecutor committed any misconduct in making this argument to the jury. "'The

18   right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he

19   has the right to state fully his views as to what the evidence shows, and as to the conclusions to

20   be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the

21   deductions illogical, as such matters are ultimately for the consideration of the jury.'" (Citation.)

22   People v. Washington (1969) 71 Cal.2d 1061, 1084-1085.

23       Petitioner here speculates in these grounds that the jury construed what was done in an

24   objectionable fashion, but fails to provide any evidence to substantiate that claim.

25       At ground #19, Petitioner complains the prosecutor argued facts not in evidence

26   numerous times and that his attorney was ineffective for failing to object. But along those lines,

27   the Washington Court also stated that the district attorney's argument as to defendant's motive for

28   the killing was a reasonable interpretation of evidence properly before the jury. "Since matters of

29   common knowledge may be "referred to and interwoven" into the prosecution's argument

30   (Citations omitted) it was proper for the district attorney to state that Tijuana could not have been

E-174

1  the child of defendant. It was then permissible for the district attorney to infer a motive from the

2  evidence (Citations omitted); it was for the jury to determine if it was illogical." Id., at 1085.

3      Further, Petitioner has failed to show that any objection at this point would not have been

4  overruled and also failed to meet the second IAC prong of prejudice to the overall jury decision.

5      Petitioner is also confused about the law and it is obvious that he has placed too much

6  emphasis on the uncharged conduct aspect of his trial. At grounds #12, 14 and 15 he claims that

7  the prosecution failed to prove every element of the uncharged offenses. However, that makes no

8  sense. If the crime is not charged against a defendant, logically _no_ elements of that offense need

9  be proven and there is no law that requires all elements of the conduct be proven nor that

10  preliminary facts must be found to be true before the evidence can be admitted.

11      At ground #13 Petitioner continues the confusion by claiming the giving of the uncharged

12  offense instruction lessened the People's burden at trial. But nowhere does he tell this Court how

13  this adversely affects the consciousness of guilt instruction or why it is grounds for reversal.

14      At ground #16 Petitioner indicates that is unaware of trial tactics even as he accuses his

15  attorney of IAC. He complains that counsel failed to prove he was not charged with these

16  uncharged crimes, yet to do so would have highlighted that misconduct even more for the jury to

17  think about. Obviously, the defense would want to steer thought away from that conduct as much

18  as possible. Moreover, once again Petitioner has failed to indicate how this failure prejudiced his

19  case.

20      The same problem is evident at ground #17, where Petitioner complains that counsel was

21  ineffective by failing to object to the giving of the consciousness-of-guilt and efforts-to-suppress-

22  evidence instructions (and that appellate counsel was ineffective for failing to raise this issue on

23  appeal). However, there was evidence presented that Petitioner prefabricated stories to avoid

24  being caught and that he abandoned stolen property in an effort to dispose of evidence. The

25  record also shows that counsel objected to these instructions, but Petitioner complains he did not

26  do so strenuously enough. As the People note in response, had counsel argued strenuously

27  against these instructions in light of this evidence, he would have made Petitioner look foolish.

28      And, once again, Petitioner has failed to show the requisite prejudice.

29      At ground #20, Petitioner claims the prosecution misstated the law, but fails to clearly

30  articulate exactly what was said was a misstatement. More importantly, the People produced

E-175

1    ample evidence that Petitioner possessed stolen property.

2    At ground #21 Petitioner complains a violation of rights because the prosecution

3    disobeyed a Court order not to use the word "identification." The record shows the Court

4    ordered that neither party use that word except in argument, but in fact both attorneys violated

5    this order. Identification of this Petitioner as the perpetrator was ultimately made and neither

6    attorney misled the jury when the word was used. Thus the question again, what is the prejudice?

7    Ground #22 is somewhat of a jumble of reasons why Petitioner claims his attorney was

8    ineffective: mentioning an arrest warrant, Petitioner's history of running from police, arguing

9    against the client and failing to request a modification of a jury instruction. Petitioner does not

10   state how any of this shows IAC. Counsel could have been providing the jury with a reason other

11   than Petitioner's guilt for fleeing or that police were manufacturing evidence against him.

12   Moreover, there was no prejudice to Petitioner because the jury never heard any details about

13   any of this; if there was prejudice Petitioner has again failed to state it.

14   Petitioner continues to attempt to re-litigate every aspect of his trial when at ground #23

15   he complains that his trial attorney failed to call for a voice-lineup when a witness said she had

16   heard Petitioner's voice and recognized it. However, once again Petitioner has failed to show

17   how this is critical to his case when there was a great deal of independent evidence presented

18   regarding the burglary. More importantly, Petitioner was representing himself at the time so

19   there was no way the witness could have avoided hearing his voice. Again, there is no showing

20   of prejudice.

21   At grounds #24 and #25 Petitioner complains that it was IAC to call a witness who

22   provided "damaging" testimony without preparation and conceding identity. However, the theft

23   of the property had already been established and this testimony actually mitigated that theft by

24   showing small value and that the property had already been recovered. Yet again: Petitioner has

25   failed to show prejudice and tries to re-litigate his trial, making arguments without providing any

26   evidence.

27   At ground #26 Petitioner claims it was counsel error to exclude a doctor's opinions about

28   the photo lineup, forgetting that there were lengthy in limine motions before trial with the result

29   that this doctor would be prevented from giving his opinion. The Court has broad authority

30   regarding the admission/exclusion of evidence. Moreover, the jury was capable of making a

E-176

1   decision regarding identification and whether or not the lineup was unduly suggestive simply by

2   looking at it.

3        After trial, Petitioner made a motion for a new trial. He sought free transcripts of the

4   original trial and this request was denied by the trial court. However, he was provided with

5   transcripts of sidebar conversations to which he had not been privy. Petitioner was very familiar

6   with all aspects of the trial because he discussed them in detail at the time. He was required to

7   show that these transcripts were necessary for effective representation but he did not make that

8   showing. All of the participants at the new trial motion also attended the original trial. Petitioner

9   and Mr. Guthrie also attended the entire trial and the Judge was also the same. The trial,

10  therefore, was still fresh in everyone's mind and transcripts were not required. (See People v.

11  Lopez (1969) 1 Cal.App.3d 78, 82.)

12       Further, Petitioner's oral argument at the new trial motion indicates that his memory was

13  very fresh as he discussed the original trial in detail for 50 pages of transcript, thus belying any

14  claim now that he was hindered because he did not have transcripts of the original trial.

15       Finally, Petitioner asserts that the cumulative effect of all of his attorney's errors should

16  be cause enough to grant this Petition. He claims that this attorney should have sought a

17  continuance to have more time to prepare for trial. Again, Petitioner needs to look at what

18  actually occurred, not to all of his reasons for his denial of guilt and/or placing blame for his

19  conviction on his attorneys. It is clear that had counsel sought a continuance he would not have

20  obtained it because he was told he would not if he made that motion. Moreover, his appointed

21  attorney had been his advisory counsel for the six months just prior to trial and he even stated on

22  the record he did not need more time. The record shows that a thorough defense was presented,

23  even if Petitioner was convicted. A thorough defense cannot overcome the facts of guilt,

24  however, if guilt is there. Petitioner waited until eight days before trial to ask the Court to

25  appoint Mr. Guthrie. This delay was Petitioner's fault, not his attorney's. To then seek reversal

26  because his attorney was not prepared under this circumstance is to invite error. Finally,

27  Petitioner makes his claims but then fails to instruct this Court as to how more time to prepare

28  would have made any difference in the final outcome of the trial. What is the prejudice?

29       This Petition must be denied in its entirety because Petitioner has failed to provide the

30  requisite prima facie showing that it should be granted. He argues all the reasons why his

E-177

1  attorney made errors, but each time he has failed to show how those alleged errors prejudiced the

2  ultimate outcome. As noted above in detail, the Petition is denied for all of the reasons stated.

3       Therefore, this Petition is DENIED.

4       It is further ordered that a copy of this Order shall be served upon (1) Petitioner through

5  his attorney, Allan Williams, (2) Attorney Allan Williams, and (3) San Diego Deputy District

6  Attorney Stephen Carr.

7       IT IS SO ORDERED.

8  DATED: _____1/24/07_____

9                                HOWARD H. SHORE

10                         JUDGE OF THE SUPERIOR COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

E-178

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| ☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792<br>☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102 | F I L E D<br>Clerk of the Superior Court<br><br>MAY 0 9 2007<br><br>By: L. SANDOVAL, Deputy |
| PLAINTIFF(S)/PETITIONER(S)<br><br>The People of The State of California | |
| DEFENDANT(S)/RESPONDENT(S)<br><br>GEORGE SHUFELT | ANTHONY |
| CLERK'S CERTIFICATE OF SERVICE BY MAIL<br>(CCP 1013a(4)) | CASE NUMBER<br><br>HC 18018<br>SCD163510 |

I certify that: I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at: ☒ San Diego ☐ Vista ☐ El Cajon ☐ Chula Vista ☐ Oceanside ☒ Ramona, California.

| NAME | ADDRESS |
|---|---|
| GEORGE W. SHUFELT | CDC # T-65128<br>HOUSING A5, CELL 141 LOW<br>P.O. BOX 2199<br>BLYTHE, CA 92226 |

CLERK OF THE SUPERIOR COURT

Date:05/09/07 _____          By L. SANDOVAL_____, Deputy

E-179

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: Habeas Courts order 5/2/05

Case No.

People v.

Number of pages to this Exhibit ___2___ pages.  (180-181)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

1

2

F I L E D

Clerk of the Superior Court

3

MAY 0 2 2005

4

By: ꓱꓱ Deputy

5

6

7

8

9                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                              **COUNTY OF SAN DIEGO**

11

12   IN RE THE PETITION OF:              )   HC 18018
                                          )   SCD 163510
13   GEORGE SHUFELT,                      )
                                          )
14                Petitioner.             )   ORDER
                                          )
15                                        )
                                          )
16                                        )

17   ——————————————————————

18          THIS COURT, HAVING READ AND CONSIDERED THE PETITION FOR WRIT OF

19   HABEAS CORPUS AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS:

20          On or about January 26, 2005, Petitioner filed a Petition for Writ of Habeas Corpus,

21   based upon 27 grounds. On or about March 15, this Court denied the Petition based upon the first

22   six grounds presented, but requested that the People file an informal response to the remaining

23   grounds. On April 28, 2005, the People filed a request for an order extending time to respond

24   from May 2, 2005 to July 1, 2005, based upon the complexity of the issues presented, the vast

25   volume of material already generated by this case that needed to be reviewed, and the workload

26   of the deputy district attorney assigned to respond.

27          Good cause appearing, this request for an extension of time to respond is hereby granted.

28   The informal response is due in Department 15 of the San Diego Superior Court on July 1, 2005.

29          On or about April 4, 2005, Petitioner also filed a motion to reconsider the Court's denial

30   of the Petition based upon the first six grounds in the current Petition.

E-180

ORDER - 1

1       Petitioner continues to believe this Superior Court is a "reviewing court" that will review

2  what the trial court did and then review what the appellate court subsequently did regarding the

3  question of whether or not the People sufficiently pled and proved all the necessary elements of

4  Petitioner's prior Utah conviction to qualify it as a serious felony prior under California law for

5  sentencing purposes in his present California case.

6       This belief regarding this Court's role is in error. The purpose of a habeas corpus petition,

7  as indicated in the March 15, 2005 Order denying the Petition, is to present a collateral attack on

8  issues that could not be determined from the record of the trial. The purpose is not to continue to

9  argue an issue that has been determined against a party simply because of a disagreement with

10  that decision.

11       Petitioner admits that the trial court did make a finding that the Utah conviction contained

12  all elements of California Penal Code § 192(c)(3), but then argues that there was no an additional

13  adjudication regarding the personal infliction of death in his case. However, the appellate

14  opinion in which the present judgment was affirmed clearly stated: "Shufelt contends the trial

15  court erred in finding his prior Utah conviction is a serious felony and a strike prior." (Opinion,

16  page 2).

17       After a full four-page discussion of that issue, the appellate court stated as the very last

18  line of the opinion at page 6: "Here, the trial court *did not err* in determining that Shufelt's Utah

19  conviction was a conviction of a prior serious felony and a strike prior." (Emphasis added)

20       The Supreme Court said in <u>In re Clark</u> (1993) 5 Cal.4th 750, 767 footnote 7: "Because no

21  appeal lies from the denial of a petition for writ of habeas corpus, a prisoner whose petition has

22  been denied by the superior court can obtain review of his claims only by the filing of a new

23  petition in the Court of Appeal."

24       Again, this Superior Court is not a "reviewing court" regarding what decision the Fourth

25  District Court of Appeal did or did not do and therefore, this motion to reconsider is denied.

26       It is further ordered that a copy of this Order shall be served upon Petitioner and San

27  Diego Deputy District Attorney Stephen Carr.

28       IT IS SO ORDERED.

29  DATED: _____5/2/05_____        _____

30                                            HOWARD H. SHORE

                                            JUDGE OF THE SUPERIOR COURT

E-181

EXHIBIT COVER PAGE $\boxed{V}$

EXHIBT

Description of this Exhibit: Habeas Coarts order, Dated: July 26, 2005

Case No.
People v.

Number of pages to this Exhibit ____4____ pages. (182 - 185)

JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

F i l e D
Clerk of the Superior Court

JUL 2 6 2005

By: L. JACKSON, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| IN RE THE PETITION OF: | ) HC 18018 |
| GEORGE SHUFELT, | ) SCD 163510 |
| Petitioner. | ) ORDER EXTENDING TIME; ORDER |
| | ) DENYING REQUEST FOR APPELLATE |
| | ) TRANSCRIPTS |
| | ) |

THIS COURT, HAVING READ AND CONSIDERED PETITIONER'S REQUEST FOR AN EXTENSION OF TIME AND A REQUEST FOR APPELLATE TRANSCRIPTS AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS:

On or about January 26, 2005, Petitioner filed a Petition for Writ of Habeas Corpus, based upon 27 grounds. On or about March 15, this Court denied the Petition based upon the first five grounds presented, but requested that the People file an informal response to the remaining grounds. On April 28, 2005, the People filed a request for an order extending time to respond from May 2, 2005 to July 1, 2005, based upon the complexity of the issues presented, the vast volume of material already generated by this case that needed to be reviewed, and the workload of the deputy district attorney assigned to respond. That request was granted on May 2, 2005, and the People filed that response on June 30, 2005.

Petitioner has now filed his own request for a 60-day extension of time to respond from August 15, 2005, to October 15, 2005. Good cause appearing, this request for an extension of

ORDER - 1

E-182

1    time to respond is hereby granted. The informal response is due in Department 15 of the San

2    Diego Superior Court on or before October 14, 2005 (October 15 is a Saturday).

3        Also, on or about February 22, 2005, Petitioner filed a motion for the Superior Court to

4    provide him with free copies of the prosecution's opening argument on appeal and the transcripts

5    of oral arguments on his direct appeal. This Court did not respond to that motion because it had

6    no jurisdiction to grant or deny a request that should have been directed to the Fourth District

7    Court of Appeal.

8        The Superior Court does not possess and does not have access to the record of any

9    proceeding that takes place in a higher court. Whatever requests for transcripts Petitioner

10    believes he must have regarding appellate proceedings must be directed to that appellate court.

11        Apparently, Petitioner is still having difficulty in understanding that the purpose and role

12    of a habeas corpus petition is to make a collateral attack regarding issues that are not necessarily

13    on the record. In other words, a convicted felon may not appeal a case simply because he does

14    not like the result. He may only appeal factual, legal and procedural errors that appear on the

15    record so that the higher court can rule on what took place at the trial level.

16        However, while acts and/or omissions by trial counsel may or may not appear on the

17    record, they often do not. A habeas corpus petition is available to raise the issue of ineffective

18    assistance of counsel, ***BUT IT MAY NOT BE USED TO REHASH WHAT HAS ALREADY***

19    ***BEEN DECIDED ON APPEAL***.

20        It is obvious that Petitioner still does not understand this concept, because he continues to

21    argue the sufficiency of the evidence even in his request for extension of time, as if his appeal

22    was still pending. ***IT IS NOT***. That appeal process in the California state courts was officially

23    concluded on February 18, 2004, when the California Supreme Court denied Petitioner's request

24    for review of the Fourth District Court of Appeal's decision affirming the underlying conviction

25    and judgment rendered on November 13, 2003.

26        By the language contained in his request for an extension of time it is apparent that he

27    believes this Court has or will review more than 3000 pages of the trial record to rule on the

28    habeas corpus petition. This is a mistaken belief.

29        If Petitioner wants to direct this Court's attention to a certain portion of the trial and/or

30    appellate record to substantiate or illustrate a claim of perceived ineffectiveness of counsel, he

E-183

1  may do so, but he must provide that part of the record. This Court is **_not_** required to either

2  provide that record to Petitioner or to sift through the entire record to find it. People v. Duvall

3  (1995) 9 Cal.4th 464, 474-475.

4   This Court attempted to set forth the parameters for this habeas corpus petition in the

5  order granting the People's request for an Order Extending Time to file the informal response.

6   However, it appears that even after that full discussion, Petitioner continues to believe

7  this Superior Court is a "reviewing court" that will review what the trial court did and then

8  review what the appellate court subsequently did regarding the question of whether or not the

9  People sufficiently pled and proved all the necessary elements of Petitioner's prior Utah

10  conviction to qualify it as a serious felony prior under California law for sentencing purposes in

11  his present case, plus any other evidentiary issues that could have, or should have been raised on

12  appeal. So that Petitioner is very clear regarding the proper procedure, what was stated in that

13  earlier order extending time is set forth again verbatim in bold italics: (Although the discussion

14  below centers on the dispute concerning the prior Utah conviction, the language also fully

15  pertains to all other evidentiary issues that could, or should, have been argued on appeal.):

16   *This belief regarding this Court's role is in error. The purpose of a habeas corpus*

17  *petition, as indicated in the March 15, 2005 Order denying the Petition, is to present a*

18  *collateral attack on issues that could not be determined from the record of the trial. The*

19  *purpose is not to continue to argue an issue that has been determined against a party simply*

20  *because of a disagreement with that decision.*

21   *Petitioner admits that the trial court did make a finding that the Utah conviction*

22  *contained all elements of California Penal Code § 192(c)(3), but then argues that there was not*

23  *an additional adjudication regarding the personal infliction of death in his case. However, the*

24  *appellate opinion in which the present judgment was affirmed clearly stated: "Shufelt*

25  *contends the trial court erred in finding his prior Utah conviction is a serious felony and a*

26  *strike prior." (Opinion, page 2).*

27   *After a full four-page discussion of that issue, the appellate court stated as the very last*

28  *line of the opinion at page 6: "Here, the trial court did not err in determining that Shufelt's*

29  *Utah conviction was a conviction of a prior serious felony and a strike prior." (Emphasis*

30  *added)*

E-184

1    The Supreme Court said in *In re Clark* (1993) 5 Cal.4th 750, 767 footnote 7: "Because
2    *no appeal lies from the denial of a petition for writ of habeas corpus, a prisoner whose petition*
3    *has been denied by the superior court can obtain review of his claims only by the filing of a*
4    *new petition in the Court of Appeal."*
5        Again, this Superior Court is not a "reviewing court" regarding what decision the
6    *Fourth District Court of Appeal did or did not do and therefore, this motion to reconsider is*
7    *denied.*
8        This Court will fully review Petitioner's collateral attack, the People's informal response,
9    and Petitioner's reply and then render a decision. However, it will ***NOT*** review the record of
10   either the trial or the appeal unless Petitioner provides (or points to) a specific page or pages that
11   he believes substantiates his claim that either trial or appellate counsel was ineffective.
12       Petitioner also needs to be aware that the issue of the use of the Utah prior for sentencing
13   purposes in this case has been resolved and this Court's decision regarding Petitioner's motion
14   for reconsideration of that denial will be set forth in the one Order regarding resolution of all of
15   the other issues Petitioner has chosen to present.
16       It is further ordered that a copy of this Order shall be served upon Petitioner and San
17   Diego Deputy District Attorney Stephen Carr.
18       IT IS SO ORDERED.
19   DATED: ___7/26/05___
20
21                                            HOWARD H. SHORE
                                             JUDGE OF THE SUPERIOR COURT

22   I hereby certify that the foregoing instrument is a
     full, true & correct copy of the original on file in
23   this office, that said document has not been revoked,
     annulled or set aside, and it is in full force and effect.
24   Attest: ___JUL 27 2005___ @ 4PM
25           Clerk of the Superior Court of the State
     of California, in and for the County of San Diego
26   By_____ Deputy
27
28
29
30

E-185

ORDER - 4

# EXHIBIT COVER PAGE

W

**EXHIBIT**

Description of this Exhibit: *CALJIC 2.50, CT-0510-0511*

Case No.
People v.

Number of pages to this Exhibit ____2____ pages.    *(186-187)*

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

CALJIC 2.50 (1998 Revision)

EVIDENCE OF OTHER CRIMES

Evidence has been introduced for the purpose of showing that the defendant committed ▮▮▮▮ [crimes] other than that for which [he] ▮▮▮▮ is on trial.

[Except as you will otherwise be instructed,] ▮▮▮▮ [this] evidence, if believed, [may not be considered by you to prove that defendant is a person of bad character or that [he] ▮▮▮▮ has a disposition to commit crimes. It] may be considered by you [only] for the limited purpose of determining if it tends to show:

[A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case which would further tend to show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ [or] [the identity of the person who committed the crime, if any, of which the defendant is accused] [or] [a clear connection between the other offense and the one of which the defendant is accused so that it may be inferred that if defendant committed the other offense[s] defendant also committed the crime[s] charged in this case];]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

[The identity of the person who committed the crime, if any, of which the defendant is accused;]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

E-186

[The defendant had knowledge of the nature of things found in [his] [her] possession;]

[The defendant had knowledge or possessed the means that might have been useful or necessary for the commission of the crime charged;]



For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case.

[You are not permitted to consider such evidence for any other purpose.]

Exact copy of CALJIC No. 2.50, except adaptations.

E-187

# EXHIBIT COVER PAGE ☒

EXHIBT

Description of this Exhibit: *CALJIC 2.50.1, NOT GIVEN*

Case No.
People v.

Number of pages to this Exhibit ____1____ pages.    (188)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

*CALJIC 2.50.1*

California Jury Instructions
Copyright 2003 West Group. All Rights Reserved.
This material is made available under a license from West Group.

CALIFORNIA

John M. Dinse, Ritchie E. Berger and Frederick S. Lane III

PART 2. EVIDENCE AND GUIDES FOR ITS CONSIDERATION
B. EVALUATION OF EVIDENCE
(c) Other Evidence

CALJIC 2.50.1

California Jury Instructions, Criminal, 6th Ed.

2.50.1 EVIDENCE OF OTHER CRIMES BY THE DEFENDANT PROVED BY A PREPONDERANCE OF THE EVIDENCE

Within the meaning of the preceding instruction[s], the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed [a] [crime[s]] [or] [sexual offense[s]] other than [that] [those] for which [he] [she] is on trial.

You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other [crime[s]] [or] [sexual offense[s]].

Service: **Get by LEXSTAT®**
Citation: **CALJIC 2.50.1**
View: Full
Date/Time: Thursday, November 6, 2003 - 12:20 PM EST

---

About LexisNexis | Terms and Conditions

---

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

E

E-188

# EXHIBIT COVER PAGE

## Y

EXHIBT

Description of this Exhibit: CALJIC 2.50.2, Not Given

Case No.
People v.

Number of pages to this Exhibit _____1_____ pages.    (189)

## JURISDICTION:  (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

### CALJIC 2.50.2

California Jury Instructions
Copyright 2003 West Group. All Rights Reserved.
This material is made available under a license from West Group.

### CALIFORNIA

John M. Dinse, Ritchie E. Berger and Frederick S. Lane III

PART 2. EVIDENCE AND GUIDES FOR ITS CONSIDERATION
B. EVALUATION OF EVIDENCE
(c) Other Evidence

CALJIC 2.50.2

California Jury Instructions, Criminal, 6th Ed.

2.50.2 DEFINITION OF PREPONDERANCE OF THE EVIDENCE

"Preponderance of the evidence" means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

You should consider all of the evidence bearing upon every issue regardless of who produced it.

Service:  Get by LEXSTAT®
Citation:  CALJIC 2.50.2
View:  Full
Date/Time:  Thursday, November 6, 2003 - 12:23 PM EST

---

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

E-189

11/6/2003 10:33 AM

# EXHIBIT COVER PAGE

EXHIBT

Description of this Exhibit: First hearing on §1101(b) evidence.
RT. 1379-1384

Case No.
People v.

Number of pages to this Exhibit ___6___ pages. (190-195)

## JURISDICTION: (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

```
 1        MR. HELLSTROM:  YEAH.  NO, IT WAS BEFORE THIS.

 2   HE'S BEEN IN JAIL SINCE AUGUST OF 2001.

 3        ACTUALLY, HE WAS WANTED FOR A STOLEN CAR.

 4   THAT'S WHAT HE WAS WANTED FOR.

 5        AND HE MAY HAVE HAD A DV WARRANT FOR HIS

 6   RELATIONSHIP WITH HIS GIRLFRIEND OR WIFE.

 7        I DON'T RECALL IF IT WAS '99 OR 2000.  THERE

 8   MAY HAVE BEEN A COUPLE OF ARRESTS.

 9        THE COURT:  OKAY.

10        MR. GUTHRIE:  YOUR HONOR, THE DEFENSE MOVES THAT

11   THE PROSECUTION INDICATE IF THE PROSECUTION'S GOING TO

12   USE ANY BAD ACTS AS OPPOSED TO CRIMES IN THEIR CASE IN

13   CHIEF.

14        THE COURT:  SO, IS THERE ANY 1101(B) EVIDENCE,

15   MR. HELLSTROM?

16        MR. HELLSTROM:  I HAVE A TWO-TIER ARGUMENT ON

17   THAT.  WE'LL NEED TO TALK SPECIFICS ABOUT EACH AND

18   EVERY CASE.

19        MY INITIAL ARGUMENT IS I'M GOING TO USE

20   RELEVANT CONDUCT FROM THE DAY OF AUGUST 12TH WHEN HE

21   WAS ARRESTED.  I DO NOT BELIEVE THAT FALLS UNDER

22   1101(B) EVIDENCE.

23        I BELIEVE EVEN IF THE COURT WERE TO ENGAGE IN

24   AN 1101(B) ANALYSIS IT WOULD BE ADMISSIBLE.

25        SO, NO AND YES IS MY LAWYERS'S RESPONSE TO

26   THAT QUESTION.

27        AND I HAVE THREE INSTANCES.  IT WAS ACTUALLY

28   INTENDED TO DRAW THE COURT'S ATTENTION TO THAT SO THAT
```

E-190

1    WE CAN RESOLVE THOSE ISSUES.

2        THE COURT:  OKAY.  WHAT ARE THEY?

3        MR. HELLSTROM:   IN THE MORNING OF AUGUST 12TH,

4    THE DEFENDANT'S CHARGED WITH STEALING MR. WADSWORTH'S

5    CAR.  IT'S AN OLD SAAB, RED SAAB.

6        ACTUALLY, AFTER HE STEALS IT HE IS SEEN MAYBE

7    A BLOCK OR TWO AWAY.  WHAT HAPPENS IS, THE PEOPLE'S

8    PROPOSED WITNESS, MR. JACK BIESER -- MR. BIESER'S AN

9    APARTMENT MANAGER THERE AT THE WIND AND SEA AREA OF

10    LA JOLLA.  HE COMES OUTSIDE EARLIER IN THE MORNING.

11    HE SEES MR. SHUFELT IN A PAIR OF SHORTS, NO SHIRT,

12    GOING THROUGH HIS WIFE'S CAR.

13        HE YELLS AT HIM.  HE RECOGNIZES -- HE KNOWS

14    GEORGE FROM BEFORE.  AND HE YELLS AT HIM AND GIVES

15    CHASE.  ACTUALLY, HE GETS IN A BRIEF SCUFFLE.

16        MR. SHUFELT RUNS OFF.  MR. BIESER'S PRETTY

17    HOT AS A RESULT OF THAT.  HE CALLS THE POLICE.

18    THERE'S A 911 CALL, AND WE HAVE ALL OF THAT.  AND HE

19    GOES OUT AND HE GOES LOOKING FOR MR. SHUFELT.

20        HE FINDS MR. SHUFELT ABOUT 30 MINUTES LATER.

21        AT THAT TIME MR. SHUFELT IS DRESSED IN

22    DIFFERENT ATTIRE, IN A PAIR OF PANTS AND A SHIRT.

23        AND HE GIVES -- HE YELLS AT HIM AND

24    MR. SHUFELT STARTS RUNNING.  AND MR. BIESER'S CHASING

25    AFTER MR. SHUFELT.  MR. SHUFELT GOES AROUND THE CORNER

26    AND IS OUT OF SIGHT FOR ABOUT TEN SECONDS.

27        MR. BEISER HEARS A CAR DOOR SLAM.  HE COMES

28    AROUND THE CORNER AND SEES THE RED SAAB TAKING OFF IN

1    THE DISTANCE.

2         THAT'S ACT NUMBER ONE.

3         A LITTLE LATER ON IN THE MORNING, MR. SHUFELT

4    BURGLARIZES, OR THE ALLEGATION IS THAT HE BURGLARIZED

5    THE RAHILLY RESIDENCE.

6         I ACTUALLY HAVE A CHART I CAN SHOW THE COURT

7    IF IT AIDS IN THE COURT'S UNDERSTANDING WHERE IT ALL

8    OCCURS, BECAUSE I THINK IT WILL BE RELEVANT IN MAKING

9    A DECISION ON THE RELEVANCE OF THIS TYPE OF CONDUCT.

10        THIS IS AN EXHIBIT THAT HAS NOT YET BEEN

11   MARKED.  WE CAN MARK IT AS PEOPLE'S ONE FOR

12   IDENTIFICATION.

13        THE COURT:  OKAY.

14        MR. HELLSTROM:  SINCE IT WILL BE AN EXHIBIT I

15   INTEND TO SHOW AT TRIAL.

16        AMONG THE ACTIVITY I JUST DESCRIBED AT THE

17   200 PLAYA DEL NORTE, 330 PLAYA DEL SUR AREA OF THE

18   WIND AND SEA AREA IN LA JOLLA, THE CONDUCT I'M ABOUT

19   TO DESCRIBE IS AT THE 2106 BELLOC COURT, 2168 BELLOC

20   COURT AREA IN SOUTH LA JOLLA.

21        IT'S NOW A LITTLE LATER ON IN THE MORNING.

22   IT'S PROBABLY 11:30ISH OR SO IN THE MORNING.  AND

23   MR. RAHILLY HAS HIS ATTACHED GARAGE BURGLARIZED.

24        HIS NEIGHBOR, MR. MIRABILE, THAT IS THE

25   UNCHARGED CONDUCT, HAS HIS UNLOCKED CAR -- AND HE'S

26   MR. RAHILLY'S NEIGHBOR -- BROKEN INTO AND THINGS ARE

27   STOLEN FROM HIM AS WELL.

28        WELL, DURING THE COURSE OF THE DAY, FROM

E-192

1    ABOUT TWO O'CLOCK TO 3:00 P.M., THERE'S A POLICE

2    CHASE, AND HELICOPTERS.  THERE'S A LOT OF COMMOTION

3    GOING ON IN THIS NEIGHBORHOOD.

4            AND THE POLICE FIND A LOT OF PROPERTY IN

5    DIFFERENT AREAS BELONGING TO BURGLARY VICTIMS OF THAT

6    DAY.

7            SPECIFICALLY, MR. MIRABILE'S ID CARD IS FOUND

8    IN THE SAAB AT THE ARREST SCENE.  AND ANOTHER CARD IS

9    FOUND IN A PAIR OF PANTS WHERE THE PEOPLE'S THEORY IS

10    THAT MR. SHUFELT DOES A CLOTHING CHANGE AT THE SITE OF

11    ANOTHER BURGLARY SCENE, WHICH IS THE MC CARTHY

12    RESIDENCE.

13          SO, IN OTHER WORDS, WHEN THE POLICE GET

14    THERE, WHEN THE MC CARTHY'S DISCOVER THERE WAS A

15    BURGLARY, THEY GO INTO THE GARAGE AND THEY FIND THE

16    STRANGE PANTS.  IN THE BACK POCKET IS SOMETHING THAT

17    BELONGS TO MR. MIRABILE.

18          AS A MATTER OF FACT, MR. MIRABILE'S PROPERTY

19    IS FOUND IN THREE SEPARATE LOCATIONS.

20          IT'S FOUND IN CONJUNCTION WITH OTHER CHARGED

21    BURGLARIES IN THIS CASE.

22          THE RELEVANCE OF THIS IS, OF COURSE, TO TIE

23    ALL THE BURGLARIES TOGETHER.

24          WE ALSO HAVE TO BE ABLE TO PROVE TO THE JURY

25    THAT MR. MIRABILE ISN'T THE CROOK, IT'S NOT HIS PANTS

26    OR HIS ID THAT HE'S BEEN LEAVING WILLY NILLY AS HE

27    CROSSES THE COUNTRYSIDE, AS HE BURGLARIZES THESE

28    PEOPLE'S RESIDENCES.

1          SO, THAT'S WHY HE'S RELEVANT

2          SO, BEISER WAS FIRST, MIRABILE IS SECOND.  I

3    HAVE TO GO TO MY NOTES FOR THE THIRD ONE.

4          JANICE BONER, B-O-N-E-R.  MS. BONER IS NOT

5    CHARGED, OR SHE'S NOT CHARGED AS A VICTIM IN THIS

6    CASE.

7          SHE HAD HER CAR BROKEN INTO PROBABLY LATE IN

8    THE EVENING OF THE 11TH, MAYBE THE EARLY MORNING OF

9    THE 12TH, AND SOME PROPERTY WAS STOLEN FROM HER.

10          HER ID CARD IS FOUND IN THE STOLEN SAAB, NEXT

11   TO MR. MIRABILE'S, AND HER PROPERTY IS FOUND IN

12   SHUFELT'S POCKETS WHEN HE'S ARRESTED.

13          SO, IT LINKS THE SAAB TO SHUFELT, WHICH, OF

14   COURSE, IS A CHARGED CRIME IN THIS CASE.

15          SO, MY POSITION ON THIS IS IT'S NOT CLASSIC

16   1101(B) CONDUCT.

17          I HAVE FURTHER ARGUMENT FOR THE COURT ON THAT

18   ISSUE IF THE COURT WISHES TO HEAR IT.

19       THE COURT:  I'M FINE.  I THINK THAT GIVES

20   MR. GUTHRIE THE EVIDENCE THAT HE WAS ASKING FOR WHICH

21   IS 1101(B).  IF THERE IS SOME RELEVANCE.  AND THEN IF

22   HE HAS OBJECTIONS TO THOSE THREE ITEMS, THEN WE CAN

23   HAVE A FULL HEARING ON IT.

24          CAN YOU LET ME KNOW AFTER LUNCH --

25       MR. GUTHRIE:  YES YOUR HONOR.

26       THE COURT:  -- IF YOU NEED A FULL HEARING ON

27   THOSE?

28       MR. GUTHRIE:  I HAVE TO THINK ABOUT THIS A LITTLE

E-194

1    BIT.

2        THE COURT:  OKAY.  THAT'S THE ANSWER TO THE

3    QUESTION.

4        MR. GUTHRIE:  YES, IT IS.  THANK YOU, YOUR HONOR.

5        THE COURT:  WHICH 1101(B) EVIDENCE.

6        MR. GUTHRIE:  THANK YOU, MR. HELLSTROM.

7        MR. HELLSTROM:    YES.

8        MR. GUTHRIE:  WHAT THE DEFENSE WOULD REQUEST TO

9    SEE, OR ASK THE PROSECUTION IF THEY ARE GOING TO USE,

10   IS ANY ARREST PHOTOS WITH MR. SHUFELT AT THE TIME HE

11   WAS ARRESTED.

12         THERE WAS SOME -- THERE WAS VIDEOTAPE GOING

13   ON.  THERE WAS SOME PICTURES THAT I HAVE SEEN THAT

14   LOOK INFLAMMATORY.  ONE IN PARTICULAR IS HERE IN

15   COURT, IF I COULD SHOW THE COURT.  I DON'T KNOW IF THE

16   COURT'S SEEN IT.

17       THE COURT:  PROBABLY NOT.  THERE IS THE PHOTOGRAPH

18   OF MR. SHUFELT THAT WAS OBJECTED TO THAT WAS USED IN

19   THE LINEUP.

20         ARE YOU REFERRING TO THAT ONE ALSO?

21       MR. GUTHRIE:  ACTUALLY, THAT'S NOT THE ONE,

22   BUT --

23       THE COURT:  OKAY.  THIS IS A PICTURE OF

24   MR. SHUFELT BEING HELD BY ONE POLICE OFFICER.

25   ACTUALLY, IT LOOKS LIKE  --

26       THE COURT:  IT SAYS GEORGE SHUFELT'S VIDEO STILLS

27   ON IT.  A, B, C AND D.

28       MR. GUTHRIE:  YES.  AND IT LOOKS LIKE C, PICTURE C

E-195

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit: Second discussion, on 1101(b) evidence

Case No.
People v.    RT. 1626- 1629

Number of pages to this Exhibit ___4___ pages.    (196-199)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

1626

1   TALK ABOUT COMING BACK AT 12:30.  IN OTHER WORDS,

2   TAKING A LONGER LUNCH.  TAKING AN EARLIER LUNCH,

3   BUT NOT A LONGER LUNCH.  I'LL LET YOU KNOW THAT

4   FOR SURE TOMORROW.

5           OTHERWISE, IT SHOULD BE A NORMAL

6   SCHEDULE.

7           OKAY.  ON THE WAY OUT, YOU CAN HAND THE

8   SHEETS TO THE BAILIFF, AND I'LL SEE YOU TOMORROW

9   AT 1:30.

10          REMEMBER THE ADMONITION.

11

12          (THE FOLLOWING PROCEEDINGS WERE

13          HAD IN OPEN COURT, OUTSIDE THE

14          PRESENCE AND HEARING OF THE

15          JURY:)

16

17      THE COURT:  OKAY.  IS THERE ANYTHING WE CAN

18  TAKE CARE OF THIS AFTERNOON?

19          IT'S MY UNDERSTANDING THAT WE TALKED

20  TO -- BOTH OF YOU WERE OKAY WITH STARTING AT 9:30?

21      MR. GUTHRIE:  YES, YOUR HONOR.

22      THE COURT:  OKAY, GREAT.

23      MR. GUTHRIE:  THAT'S FINE.

24      THE COURT:  IS THERE ANYTHING THAT WE CAN

25  START ON THIS AFTERNOON?

26      MR. HELLSTROM:  MY ONLY CONCERN IS IF WE

27  DON'T, WE'RE GOING TO RUN INTO TIME PROBLEMS

28  TOMORROW BECAUSE WE'RE LOOKING AT AN HOUR FOR

E-196

1627

1  DR.MAC SPEIDEN FROM 9:30 TO 10:30.  MR. GUTHRIE IS

2  ASKING ME TO HAVE DETECTIVE SHULTZ HERE.  SO SHE

3  WOULD COME BACK AT 10:30.

4      THE COURT:  FOR THE 402?

5      MR. HELLSTROM:  PORTION OF THE 402 AS IT

6  RELATES TO THE UNDULY SUGGESTIVE LINEUP MOTION.

7      THE COURT:  OKAY.

8      MR. HELLSTROM:  THEN WE HAVE ARGUMENT ON ALL

9  OF THE ABOVE.  I'M ALL YOURS.

10     THE COURT:  WELL, IS THERE ANYTHING WE CAN DO

11  TODAY?

12     MR. HELLSTROM:  I DON'T KNOW IF THE COURT HAS

13  HAD AN OPPORTUNITY TO REVIEW THE FINGERPRINT

14  MATERIAL AND CASES ON THAT.

15     THE COURT:  NO.

16     MR. HELLSTROM:  LET'S SEE, WHAT ELSE?  WE'RE

17  DEALING WITH THE 1101, THE OTHER ACTS ON THE SAME

18  DAY.  WE HAVE NOT YET HAD A RULING ON THAT.

19     THE COURT:  I BELIEVE WE NEEDED TO GIVE

20  MR.GUTHRIE SOME TIME TO --

21     MR. HELLSTROM:  YES.

22     MR. GUTHRIE:  CAN I ADDRESS IT ORALLY FOR A

23  SECOND, YOUR HONOR?

24     THE COURT:  ABSOLUTELY.  THAT'S WHAT I WAS

25  GOING TO SAY, IF YOU HAVE HAD A CHANCE TO EVALUATE

26  ALL THE MATERIAL FOR THAT.

27     MR. GUTHRIE:  NOT ALL OF THE MATERIAL, BUT --

28     THE COURT:  WHY DON'T WE WAIT UNTIL TOMORROW?

E-197

1628

1     MR. GUTHRIE:  THAT WOULD BE FINE.  I JUST

2 WANTED TO -- AS TO WHAT ELEMENTS WERE ISSUES WITH

3 REGARD TO THE 1101(B) MATERIAL.

4     THE COURT:  IDENTIFICATION, WHICH IS WHAT I

5 TOOK WAS THE IMPORT WAS.

6     MR. HELLSTROM:  WELL, MY POSITION IS IT'S NOT

7 1101(B) MATERIAL.  IT IS CIRCUMSTANTIAL EVIDENCE

8 CORROBORATING THE CRIME.

9         SO, IT DOES NOT FIT NEATLY WITHIN THE

10 1101 CRITERIA.  AND THEN IF THE COURT WISHES TO

11 CONDUCT AN 1101 ANALYSIS IT CAN DO SO.

12         IT'S NOT REALLY AN I.D. MATTER.  IT HAS

13 TO DO WITH THE LINKING THE DEFENDANT TO THE CAR

14 AND LINKING HIM TO THE CRIMES IN GENERAL.  SO, I

15 THINK IT WOULD BE NOT CORRECT TO CHARACTERIZE IT

16 AS I.D. EVIDENCE.

17     THE COURT:  OKAY.

18     MR. GUTHRIE:  WELL, REALLY QUICK?

19     THE COURT:  SURE.

20     MR. GUTHRIE:  THE DEFENDANT IS NOT BEING

21 CHARGED WITH THE CRIME, AND IT'S WITH A CRIME OR

22 THIS ACTIVITY, THEN WE ARGUE THAT IT IS AN 1101(B)

23 AT LEAST OFFERED AS TO 1101(B) EVIDENCE.  AND

24 ASSUME THE COURT, FOR PURPOSES OF ARGUMENT, GRANTS

25 THE MOTION, WE WILL LOOK AT IT TOMORROW WITH

26 REGARD TO WHAT THE ISSUES ARE, WHETHER IT'S

27 IDENTIFICATION, OR PLAN OR DESIGN, OR WHATEVER

28 THAT MIGHT BE, WE WOULD BE LOOKING FOR A LIMITING

E-198

1629

1    INSTRUCTION WITH REGARD TO THAT EVIDENCE WHEN IT

2    IS IN FACT INTRODUCED.

3            SO, THAT'S WHERE I'LL BE COMING FROM

4    TOMORROW.

5        THE COURT:  OKAY.  ALSO, MR. HELLSTROM, I

6    THINK YOU WERE HERE FOR THIS PART OF IT.  I

7    BELIEVE THERE WAS A MOTION TO BIFURCATE, TO SEVER

8    THE DIFFERENT COUNTS.  THAT WAS DENIED BECAUSE

9    EVERYTHING WAS, YOU KNOW, INTERTWINED IN TERMS OF

10   THE EVIDENCE BASED UPON HOW ONE INCIDENT,

11   CONNECTED TO THE NEXT INCIDENT CONNECTED TO THE

12   NEXT INCIDENT.

13           SO THAT ISSUE WAS ADDRESSED PREVIOUSLY

14   IN TERMS OF THE MOTION TO SEVER.

15       MR. HELLSTROM:  FINALLY, YOUR HONOR, THERE

16   WAS SOME DISCUSSION -- I DON'T KNOW IF WE'RE

17   PREPARED TO PROCEED ON THAT.  MR. GUTHRIE AND I

18   HAD A VERY INFORMAL DISCUSSION OFF THE RECORD

19   REGARDING THE PRIOR INVOLVED.

20           I BELIEVE IT WAS ORIGINALLY THE REQUEST

21   FROM -- FOR MR. GUTHRIE WE LITIGATE THAT PRIOR TO

22   THE JURY MAKING ANY FACTUAL FINDINGS IN THIS CASE.

23           I'M AT THE COURT'S DISPOSAL ON THAT.

24       THE COURT:  WHY DO WE WANT TO DO THAT,

25   MR.GUTHRIE, BECAUSE IT'S NOT IMPEACHABLE FELONY,

26   NOT SOMETHING THAT IS COMING IN?

27       MR. GUTHRIE:  THE COURT'S ASKING ME WHY WE

28   WANT TO TRY THAT IN THE CASE IN CHIEF?

E-199

# EXHIBIT COVER PAGE  **BB**

EXHIBT

Description of this Exhibit: 402 hearing on 1101(b) evidence,

    Case No.          RT, 1741~1750

    People v.

Number of pages to this Exhibit _____10_____ pages.   (200~209)

## JURISDICTION:  (Check only one)

- ☐ Municipal Court
- ☐ Superior Court
- ☐ Appellate Court
- ☐ State Supreme Court
- ☐ United States District Court
- ☐ State Circuit Court
- ☐ United State Supreme Court
- ☐ Grand Jury

1          SAN DIEGO, CALIFORNIA, JUNE 18, 2002,1:28 PM

2     AFTERNOON SESSION

3                        --oOo--

4                      PROCEEDINGS

5          (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

6     COURT, OUT OF THE PRESENCE OF THE JURY.)

7          THE COURT:  MR. HELLSTROM, I BELIEVE THIS IS YOUR

8     MOTION.

9          MR. HELLSTROM:  YES, IT IS, YOUR HONOR.

10          AS WE'VE LEFT IT A FEW DAYS BACK, IT IS MY

11     MOTION TO INCLUDE I THINK I'LL CALL IT RELEVANT

12     CIRCUMSTANTIAL EVIDENCE THAT MAY DRAW AN OBJECTION

13     FROM THE DEFENSE IN THREE AREAS.

14          THE FIRST IS PROPOSED TESTIMONY OF A WITNESS,

15     MR. JACK BIESER.

16          AS WE BRIEFLY OUTLINED BEFORE, MR. BIESER

17     WILL TESTIFY THAT IN THE EARLY MORNING OF AUGUST 12TH

18     MR. BIESER CAME IN CONTACT WITH MR. SHUFELT.  HE SAW

19     MR. SHUFELT RUMMAGING IN HIS WIFE'S CAR.  MR. SHUFELT

20     WAS DRESSED IN A PAIR OF GREEN SHORTS, NO SHIRT, NO

21     SHOES.

22          THEY SCUFFLED.  MR. SHUFELT GOT AWAY.

23          MR. BIESER THEN CALLED THE POLICE AND WENT

24     OUT AND LOOKED THROUGH THE NEIGHBORHOOD TO SEE IF HE

25     COULD FIND MR. SHUFELT.  HE FINDS HIM IN THE SAME

26     GENERAL AREA ABOUT 30 MINUTES LATER, 45 MINUTES LATER.

27          THIS TIME MR. SHUFELT IS WEARING DIFFERENT

28     CLOTHING.  HE YELLED AT MR. SHUFELT.  MR. SHUFELT

E-200

1    FLEES, AND MR. SHUFELT GOES AROUND THE CORNER TO A

2    VERY NARROW ALLEY. HE'S OUT OF THE SIGHT ALL OF TEN

3    SECONDS.

4         MR. BIESER HEARS A DOOR SLAM, AND A CAR TAKE

5    OFF.

6         HE COMES AROUND THE CORNER, AND HE SEES WHAT

7    LOOKS LIKE A RED SAAB FLEEING THE AREA.

8         THAT'S THE FIRST INSTANCE.

9         THE RELEVANCE OF THAT IS IT TIES MR. SHUFELT

10   CIRCUMSTANTIALLY TO THE VEHICLE. IT ALSO DEMONSTRATES

11   THAT MR. SHUFELT CHANGED CLOTHES. HE'S IN THE

12   CLOTHING-CHANGING BUSINESS.

13        SECONDLY, MR. CHARLES MIRABILE, HE'S A

14   NEIGHBOR OF ONE OF THE CHARGED RESIDENTIAL BURGLARY

15   VICTIMS. MR. MIRABILE'S UNLOCKED CAR IS OUTSIDE OF

16   HIS RESIDENCE. THERE WAS PROPERTY THAT WAS TAKEN FROM

17   IT. IT WAS NOT LOCKED.

18        THAT PROPERTY IS FOUND AT A VARIETY OF

19   LOCATIONS, ALONG WITH OTHER PROPERTY TAKEN IN THE RES

20   BURG THAT OCCURRED ON THE 12TH.

21        FOR EXAMPLE, SOME OF HIS IDENTIFICATION

22   CARDS, ONE OF HIS ID CARDS WAS FOUND IN THE RED -- THE

23   STOLEN RED SAAB.

24        ONE OF HIS IDENTIFICATION CARDS WAS FOUND AT

25   THE RESIDENTIAL BURGLARY SCENE OF THE MC CARTHY

26   RESIDENCE.

27        I BELIEVE SOME ADDITIONAL PROPERTY WAS FOUND

28   ALONG WITH PROPERTY BELONGING TO OTHER BURGLARY

E-201

1    VICTIMS ON THAT DAY.

2        THE COURT:  HOW DO YOU LINK -- HOLD ON ONE MOMENT.

3        OKAY.  GO AHEAD.

4    MR. HELLSTROM:  THE RELEVANCE OF HIS TESTIMONY IS

5    I HAVE TO ELIMINATE HIM AS A SUSPECT IN THE JURY'S

6    EYES, SINCE HIS PROPERTY IS FOUND IN THE STOLEN

7    VEHICLE.  IT WOULD BE -- ONE CONCLUSION THAT THE JURY

8    COULD DRAW IS MAYBE THIS GUY IS MIRABILE.

9        SECONDLY, HIS PROPERTY IS FOUND AT ONE OF THE

10   BURGLARY SCENES.  AGAIN, SAME SITUATION.

11       THE THIRD BASIS IS SINCE PROPERTY IS FOUND IN

12   CONJUNCTION WITH MR. MIRABILE AND OTHER VICTIMS, I

13   NEED TO BE ABLE TO HAVE THIS OTHER PROPERTY MAKE SENSE

14   FOR THE JURY PANEL.

15       SO, THREE BASES OF RELEVANCE AS TO  --

16       THE COURT:  HOW DO YOU TIE MR. SHUFELT TO

17   MIRABILE?

18       MR. HELLSTROM:  OH, BECAUSE MR. SHUFELT -- FIRST

19   OFF, THE ALLEGATION IS THAT THE BURGLARY THAT OCCURS

20   RIGHT NEXT DOOR TO WHERE HE DUMPS THE PROPERTY IS

21   CONNECTED TO OTHER PROPERTY FROM BURGLARIES THAT

22   OCCURRED THAT DAY THAT WE'VE CHARGED MR. SHUFELT WITH.

23       MR. SHUFELT IS CHARGED WITH BURGLARIES

24   WHEREIN -- WITH BURGLARIES WHERE MR. MIRABILE'S

25   PROPERTY IS FOUND.

26       FOR EXAMPLE, THE MC CARTHY RESIDENCE,

27   MIRABILE'S ID CARD IS FOUND THERE.  PART OF THE ID

28   CARD IS FOUND THERE.

E-202

1          SO, I NEED TO BE ABLE TO LINK HIM TO THAT.

2          THE COURT:  BUT YOU DON'T HAVE ANYBODY WHO SEES

3     MR. SHUFELT GO INTO THE MIRABILE'S VEHICLE OR ANYTHING

4     LIKE THAT?

5          MR. HELLSTROM:  I DO NOT, NO.

6          THE COURT:  BASICALLY THE MIRABILE PROPERTY WAS

7     FOUND IN THE SAAB AT THE MC CARTHY RESIDENCE AND WHERE

8     ELSE?

9          MR. HELLSTROM:  AT THE CORDON RESIDENCE, I

10    BELIEVE.  HANG ON A SECOND.  LET ME PULL OUT THE TAGS.

11          HE'S FOUND AT THE STEIBEL RESIDENCE, HE HAS

12    PROPERTY BELONGING TO THE HAMMERLINGS, MR. RAHILLY,

13    MR. WADSWORTH AND MS. BONER.

14          HIS ID CARD IS FOUND IN THE STOLEN RED SAAB.

15    AND FURTHER PROPERTY IS FOUND AT THE MC CARTHY

16    RESIDENCE, ALONG WITH PROPERTY BELONGING TO

17    MR. RAHILLY.

18          AND, FURTHER, PROPERTY IS FOUND NEAR THE

19    ARREST SCENES, ALONG WITH PROPERTY OF MR. RAHILLY.

20          THE COURT:  OKAY.  AS FAR AS -- MR. MIRABILE'S

21    RESIDENCE IS CLOSE TO WHICH RESIDENCE?

22          MR. HELLSTROM:  MR. RAHILLY, THEY'RE ABOUT TWO

23    DOORS APPROACHING THE SAME CUL DE SAC.

24          THE COURT:  OKAY.  GO AHEAD.

25          MR. HELLSTROM:  FINALLY IS MS. BONER.  HER CAR WAS

26    BURGLARIZED EITHER THE EVENING BEFORE OR THE VERY

27    EARLY MORNING HOURS OF THE 12TH.  JANICE BONER.

28          IN THE DEFENDANT'S POCKET, WHEN HE IS

JOHN R. AVERY, CSR (8605), RDR, CMRS
OFFICIAL REPORTER

E-203

```
1    ARRESTED, IS STOLEN PROPERTY BELONGING TO MS. BONER.

2         MS. BONER ALSO HAS PROPERTY THAT IS FOUND AT

3    THE STEIBEL AREA, THE ARREST SITE, AND IN THE STOLEN

4    RED SAAB.

5         SO, IT LINKS MR. SHUFELT TO THE STOLEN RED

6    SAAB.

7         HE HAS PROPERTY BELONGING TO MS. BONER ON

8    HIS PERSON, AND PROPERTY IN THE SAAB.

9    THE COURT:  GOT YOU. OKAY.

10   MR. HELLSTROM:  AND DO YOU WISH TO HAVE FURTHER

11   ARGUMENT ON THIS?

12   THE COURT:  NOT AT THIS POINT.  OKAY.

13   MR. GUTHRIE?

14   MR. GUTHRIE:  FIRST, AS TO MR. BIESER, THE

15   INCIDENT THAT THE DISTRICT ATTORNEY IS TALKING ABOUT

16   OCCURRED EARLIER IN THE MORNING, AND IT OCCURRED

17   PERHAPS AT LEAST TWO MILES AWAY FROM THE OTHER

18   OCCURRENCES THAT HE SPEAKS ABOUT.

19        IT'S REMOVED IN TIME, AND IT'S REMOVED IN

20   DISTANCE.

21        THERE'S NO IDENTIFICATION THAT THIS IS, IN

22   FACT, THE RED SAAB THAT WAS RECOVERED OR STOLEN.

23        IN FACT, THERE'S GOING TO BE A DEARTH OF

24   EVIDENCE THAT MR. SHUFELT ACTUALLY STOLE THE SAAB

25   VEHICLE.

26        THE DISTRICT ATTORNEY'S RELYING ON THAT TO

27   PUT ALL OF THIS BAD CONDUCT EVIDENCE TOGETHER.

28        THERE'S NO EVIDENCE THAT MR. SHUFELT WENT
```

E-204

1    INTO MIRABILE'S HOUSE.  THERE'S NO EVIDENCE THAT -- NO

2    EYE WITNESSES, NO EYE WITNESSES WITH REGARD TO THE

3    RAHILLY RESIDENCE.

4              THE PLACEMENT OF THE CAR, THE PROPERTY, COULD

5    HAVE OBVIOUSLY BEEN DONE BY SOMEONE ELSE OTHER THAN

6    MR. SHUFELT.

7              AND ONCE MS. BONER'S SITUATION IS -- ONCE

8    AGAIN, SHE'S REMOVED SOMEWHAT IN TIME FROM THE

9    INCIDENTS IN THIS CASE.

10             THERE'S GOING TO BE SOME SPECULATION, WE

11   BELIEVE, AS TO WHETHER SHE CAN ACTUALLY IDENTIFY THE

12   PROPERTY THAT IS ALLEGEDLY RECOVERED ON MR. SHUFELT.

13             WE WOULD ARGUE THAT TO LET THIS EVIDENCE IN

14   IS HIGHLY PREJUDICIAL TO MR. SHUFELT'S CASE, AND

15   ESPECIALLY WHEN IT OUTWEIGHS ANY PROBATIVE VALUE WHEN

16   THERE ARE NO EYE WITNESSES THAT PUT MR. SHUFELT INTO

17   THE MIRABILE RESIDENCE, OR THE RAHILLY RESIDENCE.

18             IT COULD BE SOMEONE ELSE DOING THIS.

19             SO, FOR THOSE REASONS, WE OBJECT ON GROUNDS

20   OF 352, AND ALSO WE OBJECT ON GROUNDS THAT THE BIESER

21   TESTIMONY, AND THE BONER TESTIMONY, IS REMOVED IN

22   TIME.

23             THE BONER BURGLARY, ALBEIT OCCURRED IN THE

24   SAME LOCATIONS AS THE DISTRICT ATTORNEY BROUGHT

25   INDICATING A SERIES OF BURGLARIES IN A CIRCULAR

26   FASHION.

27             DOWN THE STREET FROM THE ONE THAT OCCURRED ON

28   BAHIA DRIVE.

E-205

1          MR. HELLSTROM:  WITH RESPECT TO MR. BIESER, HE

2     LIVES ABOUT THREE DOORS AWAY FROM MR. WADSWORTH,

3     WHERE THE CAR WAS STOLEN, RIGHT IN THAT NEIGHBORHOOD.

4     WE'RE TALKING ABOUT 100 YARDS.

5          THE COURT:  OKAY.  I BELIEVE THAT THE EVIDENCE

6     OFFERED RELATING TO THE BIESER INCIDENT, THE MIRABILE

7     INCIDENT, AND THE BONER INCIDENT IS RELEVANT AND

8     ADMISSIBLE AS CIRCUMSTANTIAL EVIDENCE.

9               AND IT IS ALSO 1101(B) EVIDENCE.  AN

10    APPLICATION OF CALJIC 2.50 IS APPLICABLE IN THE SENSE

11    THAT IT IS EVIDENCE OF A CHARACTERISTIC PLAN --

12    METHOD, PLAN OR SCHEME IN THE CRIMINAL ACTS SIMILAR TO

13    THE METHOD, PLAN OR SCHEME TO THE CRIMES IN THIS CASE,

14    WHICH WOULD FURTHER SHOW THE IDENTITY OF THE PERSON

15    WHO COMMITTED THE CRIME, IF ANY, OF WHICH THE

16    DEFENDANT IS ACCUSED.  AND A CLEAR CONNECTION BETWEEN

17    THE OTHER OFFENSES AND THE ONE IN WHICH THE DEFENDANT

18    IS ACCUSED, SO THAT IT MAY BE INFERRED THAT IF THE

19    DEFENDANT COMMITTED THE OFFENSES, THE DEFENDANT ALSO

20    COMMITTED THE CRIMES CHARGED IN THIS CASE.

21              ALSO, SEPARATE AND DISTINCT, UNDER 2.50, THE

22    SEPARATE CATEGORY OF THE IDENTITY OF THE PERSON WHO

23    COMMITTED THE CRIME, IF ANY, OF WHICH THE DEFENDANT IS

24    ACCUSED.  MOTIVE FOR THE COMMISSION OF THE CRIME

25    CHARGED.  THAT THE DEFENDANT HAD KNOWLEDGE OF THE

26    NATURE OF THE THINGS FOUND IN HIS POSSESSION

27    SPECIFICALLY RELATING TO THE PROPERTY OF HIS -- OF

28    MS. BONER THAT WAS IN HIS POSSESSION.

E-206

```
1              AND, FOR THOSE REASONS, I WOULD ADMIT IT.

2              I WILL FOREWARN THE PEOPLE THAT IT'S MY HABIT

3    AND CUSTOM FOR 2.50 NOT TO USE THE PREPONDERANCE OF

4    EVIDENCE INSTRUCTION, BUT TO JUST HAVE IT ALL PROVED

5    BEYOND A REASONABLE DOUBT.  I THINK IT IS FRAUGHT WITH

6    PROBLEMS TO TRY TO SEPARATE IT OUT, ESPECIALLY IN A

7    CIRCUMSTANCE LIKE THIS, TO TRY TO SAY THAT SOME OF IT

8    COULD BE PROVED BY A PREPONDERANCE OF THE EVIDENCE,

9    AND THEN TO USE BEYOND A REASONABLE DOUBT.

10        MR. HELLSTROM:  NO OBJECTION FROM THE PEOPLE.  I

11   BELIEVE THAT IT WOULD BE APPROPRIATE, ESPECIALLY SINCE

12   I'M SEEKING ADMISSION UNDER CIRCUMSTANTIAL EVIDENCE AS

13   IT RELATES TO THE CRIME.

14        THE COURT:  I BELIEVE I'M OKAY FOR YOUR PURPOSES

15   ALSO; IS THAT CORRECT --

16        MR. GUTHRIE:  YES.

17        THE COURT:  -- MR. GUTHRIE?

18        MR. GUTHRIE:  YOU HAVE LAID IT OUT SPECIFICALLY,

19   YOUR HONOR.

20             I JUST WANTED TO DISTINGUISH.  I'M HEARING

21   THE DISTRICT ATTORNEY SAY I WANT THIS IN FOR

22   CIRCUMSTANTIAL EVIDENCE, AND I HEARD THE COURT RULE

23   ONLY BAD ACTS.

24        THE COURT:  I DID, AND I'M DOING IT UNDER BOTH

25   GROUNDS.  AND, ACTUALLY, I THINK THEY'RE BOTH ONE IN

26   THE SAME, FRANKLY.

27             BUT UNDER EITHER THEORY, IN BOTH THEORIES I

28   WOULD DO IT.
```

E-207

1    THE DISTINCTION I'M MAKING IS THAT IF I WERE

2    ADMITTING IT ONLY AS 1101(B), WHICH WOULD BE

3    CIRCUMSTANTIAL EVIDENCE, WHICH IS WHAT 1101(B)

4    EVIDENCE IS, I'M NOT USING THE PREPONDERANCE OF

5    EVIDENCE INSTRUCTION.  AND THE PEOPLE ARE NOT OPPOSING

6    IT.

7    IN OTHER WORDS, 1101(B) EVIDENCE NEED NOT BE

8    PROVEN BY A PREPONDERANCE OF THE EVIDENCE BUT USED FOR

9    CIRCUMSTANTIAL EVIDENCE TO SUPPORT ANY ELEMENT OF THE

10   OFFENSE, IT IS SUPPOSED TO BE PROVED BEYOND A

11   REASONABLE DOUBT, FRANKLY.

12   I MEAN, I THEORETICALLY UNDERSTAND THE

13   DISTINCTION.  I THINK IT IS UNWISE TO TRY TO HAVE A

14   JURY PIN THINGS ON THAT PINHEAD.

15   MR. GUTHRIE:  I WOULD NOT OBJECT WITH THAT RULING

16   WITH REGARD TO BEYOND A REASONABLE DOUBT, YOUR HONOR.

17   THE COURT:  THAT'S WHY I WAS SEPARATING IT OUT.

18   THAT'S WHY I APPROACH THE RULE THE WAY I DID.

19   AND IF YOU NEED ANY FURTHER CLARIFICATION,

20   THAT'S FINE.

21   MR. GUTHRIE:  JUST WITH REGARD TO THE LIMITING

22   INSTRUCTION, THE COURT'S FINDING IT'S RELEVANT AS TO

23   ID, PLAN AND DESIGN, KNOWLEDGE AND MOTIVE, ALL OF

24   THOSE FACTORS?

25   THE COURT:  YES.  IT'S CHARACTERISTIC METHOD, PLAN

26   ID.

27   BUT UNDER CHARACTERISTIC METHOD AND PLAN, IT

28   HAS -- THE SUBHEADING ALSO IS SEPARATELY, YES.  THE

E-208

1    LIMITING INSTRUCTION IS APPROPRIATE.  I WILL GIVE IT

2    AS THE EVIDENCE COMES IN.  OR, IF YOU WANT, I WILL

3    GIVE IT AT THE END, OR I'LL GIVE IT ALL AT ONCE AT THE

4    BEGINNING, YOU KNOW.

5        MR. GUTHRIE:  WE'RE ASKING THAT THE COURT GIVE IT

6    AS IT COMES IN.

7        THE COURT:  THANK YOU.

8        MR. GUTHRIE:  THANK YOU.

9        THE COURT:  THEN I JUST NEED TO BE SURE THAT YOU

10   GIVE ME A MINUTE AS YOU INTRODUCE THOSE THINGS.

11       MR. HELLSTROM:  YES.  MY FIRST WITNESS WILL BE

12   WADSWORTH, MY SECOND WITNESS WILL BE MR. BIESER.

13       THE COURT:  OKAY.  GO AHEAD AND BRING IN THE JURY.

14          (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

15   COURT, IN THE PRESENCE OF THE JURY.)

16       THE COURT:  ONE MOMENT, PLEASE.

17          WELCOME BACK, LADIES AND GENTLEMEN.

18          THE RECORD WILL REFLECT WE HAVE ALL OF OUR

19   JURORS, WE HAVE THE ATTORNEYS, AND WE HAVE THE

20   DEFENDANT.

21          LADIES AND GENTLEMEN OF THE JURY, BEFORE WE

22   HEAR THE OPENING STATEMENTS OF COUNSEL, AND BEGIN TO

23   TAKE EVIDENCE, I BELIEVE IT WOULD BE HELPFUL TO YOU IF

24   I WERE TO GIVE YOU SOME PRELIMINARY INSTRUCTIONS TO

25   FOLLOW IN LISTENING TO AND CONSIDERING THE EVIDENCE

26   WHICH YOU WILL HEAR IN THIS CASE.

27          I WILL ALSO GIVE YOU SOME FURTHER

28   INSTRUCTIONS AFTER YOU'VE HEARD ALL THE EVIDENCE THAT

E-209

# EXHIBIT COVER PAGE  CC

EXHIBT

Description of this Exhibit: CALJIC's, 2P3, 2.06, 2.15, & 2.52

Case No.                          CT. 499, 500, 504, 512,
People v.

Number of pages to this Exhibit ____4____ pages.   (210-213)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

0499

CALJIC 2.03

CONSCIOUSNESS OF GUILT--FALSEHOOD

If you find that before this trial ███ [the] defen-
dant made a willfully false or deliberately misleading
statement concerning the crime[s] for which [he] ████ is
now being tried, you may consider that statement as a
circumstance tending to prove a consciousness of guilt.
However, that conduct is not sufficient by itself to prove
guilt, and its weight and significance, if any, are for
you to decide.

Exact copy of CALJIC No. 2.03, except adaptations.

E-210

0500

CALJIC 2.06

EFFORTS TO SUPPRESS EVIDENCE

If you find that a defendant attempted to suppress evidence against [himself] ██████████ in any manner, such as ████████████████████████████████ ████████████████████████████████ [by concealing evidence] or [by disposing of evidence], this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

Exact copy of CALJIC No. 2.06, except adaptations.

E-211

0504

CALJIC 2.15

POSSESSION OF STOLEN PROPERTY


If you find that a defendant was in conscious possession of recently [stolen] ▮▮▮▮▮ property, the fact of that possession is not by itself sufficient to permit an inference that the defendant ▮▮▮▮▮ is guilty of the crime of burglary . Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.

As corroboration, you may consider [the attributes of possession--time, place and manner,] [that the defendant had an opportunity to commit the crime charged,] [the defendant's conduct,] [[his] ▮▮▮ false or contradictory statements, if any,] ▮▮▮ [or] [other statements [he] ▮▮▮▮may have made with reference to the property] ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [any other evidence which tends to connect the defendant with the crime charged].


Exact copy of CALJIC No. 2.15, except adaptations.

E-212

Exhibit D

# SAN DIEGO POLICE DEPARTMENT

**Admonition:**

You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not under any obligation to identify anyone. It is just as important to free innocent persons from suspicion as it is to identify guilty persons. Do not be influenced by the fact that the persons in the photographs may have beards, mustaches, or long hair. Do not be influenced by the fact that some of the pictures may have different background color or lighting. Please do not discuss the case with other witnesses nor indicate in any way that you have or have not identified someone.

Case #01052553    Viewed By Gogolinos    Detective: Shultz

Comments: #5 More Inclined    Date: 8-14-01    Time: 0950
To say him - Looks more like him

| [1] | [2] | [3] |
|-----|-----|-----|
| FMOS7T05.JPG | FMOS5705.JPG | FMSFJX05.JPG |

  

| [4] | [5] | [6] |
|-----|-----|-----|
| FMSCLR05.JPG | GHZLQH05.JPG | FMTXDK05.JPG |

  

E-214

# EXHIBIT COVER PAGE  EE

EXHIBT

Description of this Exhibit: Photo lineup, Phillip Hammerling

Case No.
People v.
"4 or 5, more the facial features of five."

Number of pages to this Exhibit _____1_____ pages.    (215)

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

Exhibit DI

# SAN DIEGO POLICE DEPARTMENT

## Admonition:

You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not under any obligation to identify anyone. It is just as important to free innocent persons from suspicion as it is to identify guilty persons. Do not be influenced by the fact that the persons in the photographs may have beards, mustaches, or long hair. Do not be influenced by the fact that some of the pictures may have different background color or lighting. Please do not discuss the case with other witnesses nor indicate in any way that you have or have not identified someone.

Case # 0105260I    Viewed By: P. Hammerling    Detective: Schultz 2545

Comments: 4 or 5    Date: 8-14-01    Time: 0900

more the facial features of 5

| **[1]** | **[2]** | **[3]** |
|---|---|---|
| FMOS7T05.JPG | FMOS5705.JPG | FMSFJX05.JPG |

  

| **[4]** | **[5]** | **[6]** |
|---|---|---|
| FMSCLR05.JPG | GHZLQH05.JPG | FMTXDK05.JPG |

  

E-215

000116

Γ

# EXHIBIT COVER PAGE 

EXHIBT

Description of this Exhibit:  Appellate courts opinion
                              denying petition for habeas

  Case No.
  People v.               Corpus; Dated August 17, 2007

Number of pages to this Exhibit _____2_____ pages.

## JURISDICTION:  (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☐ United States District Court
☐ State Circuit Court
☐ United State Supreme Court
☐ Grand Jury

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
AUG 1 7 2007
Court of Appeal Fourth District

| | |
|---|---|
| In re GEORGE W. SHUFELT | D051016 |
| on | (San Diego County |
| Habeas Corpus. | Super. Ct. No. SCD163510) |

THE COURT:

      The petition for a writ of habeas corpus has been read and considered by Justices Haller, McDonald, and McIntyre.  We take judicial notice of the direct appeal D040805.

      On June 27, 2002, a jury found George Shufelt guilty of taking or knowingly driving a stolen vehicle, receiving a stolen vehicle, four counts of residential burglary, four counts of receiving stolen property and resisting an officer.  The jury also found Shufelt was convicted of automobile homicide in 1995 in Utah.  The court found the Utah conviction qualified as a prior serious felony conviction and a strike conviction.  The court denied Shufelt's motion to dismiss the prior strike conviction and sentenced him to prison for 19 years eight months.  On appeal, Shufelt challenged only the use of the 1995 Utah conviction to enhance his sentence.  This court affirmed on November 13, 2003.

      Shufelt challenges the use of the Utah conviction to enhance his sentence.  "[I]n the absence of strong justification, any issue that was *actually* raised and rejected on appeal cannot be renewed in a petition for a writ of habeas corpus."  (*In re Harris* (1993) 5 Cal.4th 813, 829.)

      Shufelt claims appellate counsel should have challenged the sufficiency of the evidence, and raised instructional error, prosecutorial misconduct, ineffective assistance of trial counsel and the improper denial of trial transcripts for a new trial motion.  "[C]ourts will presume that a litigant received sufficient review of his or her legal claims, both constitutional and otherwise, on direct appeal." (*In re Harris, supra,* 5 Cal.4th at p.

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit: INMATE APPEAL DISIPLINARY HAEARING

Case No.
People v.

Petition for Reconsideration to the
California Court of Appeals; Dated 8/27/07

Number of pages to this Exhibit ___16___ pages.

JURISDICTION:  (Check only one)

    ☐ Municipal Court
    ☐ Superior Court
    ☐ Appellate Court
    ☐ State Supreme Court
    ☐ United States District Court
    ☐ State Circuit Court
    ☐ United State Supreme Court
    ☐ Grand Jury

1  George W. Shufelt
   CDC# T-65128
2  HOUSING, 4B-1A-102
   CALIFORNIA CORRECTIONAL INSTITUTE
3  P.O. BOX 1906
   Tehachapi, CA 93581
4

5  In Pro-Per

6

7          CALIFORNIA COURT OF APPEALS
8           DIVISION ONE, FOURTH DISTRICT

9

10  In re George W. Shufelt  }    Case No. D051016
11  On                       }    MOTION FOR RECONSIDERATION,
12  Habeas Corpus            }    REQUEST FOR EVIDENTIAL
13  _____    }    HEARING, AND ORAL ARGUMENTS

14

15  TO THE ABOVE ENTITLED COURTS, TO THE DISTRICT
16  ATTORNEYS OFFICE;
17     COMES NOW, George W. Shufelt, (herein petitioner) in
18  Light of the recent Court of Appeals opinion filed
19  August 17, 2007, which denied all petitioners fourteen
20  claims, without addressing their merits, petitioner
21  moves this Court to reconsider.
22     Petitioners motion for reconsideration will be based
23  on the Following statements of Facts, and points
24  and authorities.
25     Petitioner humbley requests this court to reconsider
26  based on the Fact, twelve of petitioners fourteen
27  claims, were not argued on direct Appeal, and
    default under In re Harris, does not apply.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

                    —1—                    218

<u>STATEMENT OF FACTS</u>

On March 20, 2003, Appellate Counsel, Lewis A. Wenzell, filed his opening Brief, on behalf of petitioner, alleging just two claims of error; However, none of those claims pretained to petitioner's trial and subsequent convictions on case no. SCD163510.

Petitioner's trial was some two weeks long, and contained a trial record that was over 5,400 pages.

Yet, Appellate Counsel deemed all issues that challenged petitioners trial and convictions, were not worth Briefing.

Appellate Counsels sole claims or error pretained to use of petitioners prior Utah conviction as a "serious" felony, strike prior, which was used to increase petitioners sentence by some ~~twenty~~ years, four months.

The two grounds which were the basis of Appellants claims of error, was that; One, Utahs vehical manslaughter Statute U.C.C. § 76-5-207 does not contain all the elements of penal code § 192(c)(3); Two, petitioner had a right to jury trial on the strike allegation.

On November 13, 2003, this court denied both contentions raised on Direct Appeal.

On February 19, 2004, petition for review was also denied.

On or about ~~February~~ 19, 2005, petitioner filed a massive petition on the Superior Court, County

1  of San Diego, which was assigned to Judge
2  Howard Shore, and case no. HC 18018.
3      After two sets of informal briefings, two different
4  appointed Counsel's, and two years of careful study,
5  Judge Shore, finally denied petitioners petition
6  on January 24, 2007. However, petitioner did not
7  receive notice of this denial until May 7, 2007.
8      Petitioner immediately began working on narrowing
9  his petition from twenty-seven claims, to fourteen
10 grounds, then resubmitted his petition, de novo, in
11 this Court on or about June 7, 2007.
12     Of the fourteen grounds contained in his
13 petitions for habeas corpus, only two were
14 similar to the two contentions raised on Direct
15 Appeal. Grounds Two, and Ground Four.
16     Petitioner would like to note, he had to Federalize
17 the two contentions raised by Appellate Counsel,
18 in order to preserve them for federal review.
19     But none of the remaining twelve claims, (although
20 grounds One, Three, and five collaterally attacked
21 use of prior as a Strike) were raised on
22 Direct Appeal.
23     Petitioners grounds six trough fourteen pertained
24 exclusively to trial claims of error, all of which
25 were overlooked by Appellate Counsel.
26     Grounds One, eight, ten, and thirteen, alleged
27 ineffective assistance of trial Counsel.

1   In addition, petitioners claims one through five,
2   also properly allege ineffective assistance of
3   trial Counsel, and Appellate counsel.
4       On August 17, 2007, this court summarily denied
5   all fourteen grounds contained in the petition,
6   under the procedural default doctrine, that
7   a petition for habeas Corpus does not lie as a
8   second appeal, to challenge "issues that was
9   actually raised and rejected on appeal."
10      This ruling, has the affect of denying petitioner
11  access to this Court on all of petitioners claims
12  alleged in his petition, and without any basis
13  in Law.
14      Simply put, the opinion filed on August 17, 2007,
15  cites a procedural default under the Dixon rule
16  that should not, nor can not properly be applied
17  to petitioners claims of error, Especially, claims
18  that were never raised on Direct Appeal, and
19  are properly framed under I.A.C. grounds.
20      Moreover, the courts opinion denying petition for
21  habeas Corpus, without addressing the merits of His
22  Contentions, in effect has erroneously denied
23  petitioners right to petition the government for
24  redress of grievances, in violation of the 1st
25  Amendment of the United States Constitution.
26      Please, reconsider;
27

# Points And Authorities

## Habeas Corpus Only Remedy For IAC Claims

It should be noted that although writ relief is ordinarily discretionary, "[W]hen an extraordinary writ proceeding is the only avenue of appellate review, a reviewing courts discretion is quite restricted." (Powers V. City of Richmond (1995) 10 C.4th 85, 113, 40 C.R.2d 839.) Thus,

When there is no remedy on appeal, or the remedy is inadequate, and a procedurally proper and apparently meritorious petition for relief is timely presented to a reviewing court, it is an abuse of discretion to deny the petition merely because the issue is not important, or because the reviewing court considers it unworthy of attention. (Powers V. City of Richmond, supra)

The California Constitution provides that the Supreme Court, court of Appeals, Superior Courts, and their judges have original jurisdiction in habeas corpus proceedings. (See; Cal.Const. Art VI, §10)

Habeas corpus petitions in criminal cases is also authorized by statutes, penal codes §1473-1508.

If postconviction relief is sought by way of petition for Habeas Corpus, a number of rules limit its availability. For example, habeas corpus cannot serve as a substitute for an appeal. (In re Dixon (1953) 41 C.2d 756, 264 P.2d 513.)


COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 98 10924

222

1    Furthermore, It will not ordinarily serve as a
2   second appeal for raising issues previously rejected.
3   (In re Waltreus (1965) 62 C.2d 218, 42 C.2. 9)
4       The Penal Code calls for the issuance of a writ
5   of habeas Corpus, which commands the petitioner
6   custodian to bring him or her before the court, if
7   the petition states a prima facie case for relief
8   and if the claim is not procedurally barred. (Penal
9   Code §1476).
10      Because there is a statutory right of appeal
11  from a judgment of conviction (Pen Code §1237), the
12  rule has evolved that contentions that could have
13  been, but were not, raised on appeal ordinarily
14  cannot be reviewed in a petition for habeas Corpus.
15  (In re Dixon (1953) 41 C.2d 756, 264 P.2d 513)
16      This procedural bar is sometimes known as the
17  Waltreus rule (see In re Harris (1993) 5 C.4th 813,
18  21, C.R. 2d 373).
19      In addition, contentions that could not be raised
20  on appeal because of a failure to raise them in the
21  trial court cannot be considered in a habeas
22  corpus proceeding. (In re Seaton (2004) 34 C.4th 193,
23  199, 17 C.R.3d 633)
24      The corollary to the rule that habeas corpus
25  will not lie to raise contentions that could have
26  been, but were not, raised on Appeal (the Waltreus
27  rule) bars consideration of claims that were
    raised and rejected on Appeal. In re Waltreus

1  (1965) 62 C.2d 218, 225, 42 C.R. 9. See also *In re*
2  *Harris* (1993) 5 C.4th 819, 21 C.R 2d 373).

3       The "*Waltreus rule*" that a petition for habeas
4  corpus does not lie to raise issues already
5  raised and considered on direct appeal, and
6  rejected, appears to be the sole basis that the
7  court of appeal denied all fourteen of petitioners
8  claims, without considering their merits, as
9  procedurally barred.
10      Petitioner contends this was error, and that
11 Petitioner has a State and Federal Constitutional
12 right to have the California Court of Appeals,
13 of the Fourth District, Division One reconsider
14 petitioners grounds; One, Three, five, and six through
15 14 considered on their merits.

16

17 *Appellate Courts Opinion*
18

19      Petitioner received his copy of the Court of
20 Appeals decision filed August 17, 2007, on August
21 21, 2007 via prison legal mail officer.
22      In reference to petitioners claims that
23 Collaterally attack use of his Utah conviction
24 as a "Serious" Felony prior, the Appellate
25 courts opinion states;

26

27      "Shufelts challenges the use of the Utah

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

conviction to enhance his sentence. "[I]n the absence of strong justification, any issue that was <u>actually</u> <u>raised and rejected</u> on appeal cannot be renewed in a petition for a writ of habeas corpus." (In re Harris (1993) 5 Cal. 4th 813, 829.) (emphasis in opinion)(Exhibit "A")

However, as petitioner clearly stated in his factual basis in support of his first claim, the failure to adjudicate, and the trial courts failure to make a finding of the additional elements listed under paragraph (8) or (23) of Section 1192.7(c), was never argued or raised on Direct Appeal.

In addition failure to adjudicate and find true, all the elements that are necessary in order to qualify a prior offense, as a "serious" felony, is clear and fundamental, and strikes at the heart of the trial process, thus permitting a third chance at judicial review.

Petitioners first claim also alleged ineffective trial counsel, for failing to object to the prosecutors misstatement of law that California's penal code § 192(c)(3) was automatically a "serious" felony, and I.A.C. on Appellate counsel, because the court had no jurisdiction to impose increased sentencing without making a finding that petitioner "inflicted personally" G.B.I, or "personally used a deadly weapon". Thus, this claim should have been, but wasn't raised by Appellate Counsel.

-8-

225

The Appellate Courts opinion regarding the remaining grounds states;

"Shufelt claims appellate counsel should have challenged the sufficiency of the evidence, and raised instructional error, prosecutorial misconduct, ineffective assistance of trial Counsel and improper denial of trial transcripts for new trial motion." (in reference to grds 6-14)

"Courts will presume that a litigant received sufficient review of his or her legal claims both constitutional and otherwise, on direct appeal." (In re Harris, supra, 5 Cal. 4th at p. 834.)

"Only where the claimed constitutional error is both clear and fundamental, and strikes at the heart of the trial process, is an opportunity for a third chance at judicial review (trial, appeal, postappeal habeas corpus) justified." (ibid.)

"Shufelt has not established clear and fundamental Constitutional error to entitle him to further review."

Petitioner contends, grounds six through fourteen were never raised on direct appeal. So, why is the Court of Appeal reviewing petitioners claims

1  and ineffective appellate counsel, under this
2  incredibly higher standard of review?
3      For example;

5  Ground seven states;

7  "APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE
8  FOR FAILING TO CHALLENGE CALJIC 2.50's LIST OF
9  PERMITTED INFERENCES AND TRIAL COURTS
10 RULING ON 1101(b) EVIDENCE ON DIRECT APPEAL.
11 WHICH ERRONEOUSLY REDUCED THE PROSECUTIONS
12 BURDEN OF PROOF ON THE ELEMENTS AND IDENTITY
13 OF PERSON WHO COMMITTED CHARGED OFFENSES
14 IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS
15 OF THE U.S. CONSTITUTION."

17     Now we all know appellate counsel didn't raise
18 any issues that challenged petitioners jury trial, &
19 subsequent convictions on ten felony counts, so
20 why is this court reviewing this claim as if it
21 was already decided on direct Appeal?

23     More over, Caljic 2.50's list of permitted inferences
24 allowed the jury to infer that the petitioner was
25 guilty of All charges, based on any one of three
26 uncharged crimes, two of which, had no eyewitnesses,
27 This and was cognizable on direct Appeal, as a matter
   of Law, under P.C. §1259.

227

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 98 10924

"Presumably most erroneous deprivations of an accused's constitutional rights that occur at trial will be corrected on appeal.

"Many that are not corrected on appeal are the result of either ineffective assistence of trial counsel or Appellate Counsel.

"As such, those claims would be cognizable in a postappeal habeas Corpus petition under the ineffective counsel rubric, and there would be no need to resort to the amorphous, ill-defined "fundamental Constitutional rights" exception."

(See; In re Harris (1993) supra, 5 Cal. 4th 834,)

All petitioners claims, with the exception of petitioners constitutional challenge to California's practice of using out-of-State convictions as strikes that are not listed on the serious or violent felony statues, ground five, come under the guines, or are clothed in "ineffective assistance of Counsel raiment."

Because appellate counsel failed to raise any issues that challenged petitioners trial and subsequent conviction, his only remedy is by this petition for habeas Corpus.

"[I]n excusable failure of appellate Counsel to raise crucial assignments of error that arguably could have resulted in reversal deprived defendant of effective assistance of Appellate Counsel" (In re Banks (1971) 4 Cal. 3d 337, 343)

-11-

Deprivation of the right to effective assistance of counsel on appeal may be reviewed by a petition for a writ of habeas corpus. (In re Smith (1970) 3 C.3d 192 90 C.R. 1; In re Martin (1962) 58 C.2d 133, 23 C.R. 1607; In re Greenfield (1970) 11 C.A.3d 536, 89 C.R. 847

In regard to petitioners first claim that trial Court failed to make any finding that petitioners record of Utah conviction contained conduct that the petitioner "personally inflicted G.B.I." or "personally used a Dangerous or deadly weapon," rendered the trial Courts finding that the Utah record was to a "Serious" Felony, Void; Habeas Corpus will always issue to review the validity of a sentence when the face of the record shows that it was imposed in excess of the Courts jurisdiction. (In re Estrada (1965) 63 C.2d 740, 750, 48 C.R. 172; In re Huffman (1986) 42 C.3d 552, 229 C.R. 789)

Habeas corpus lies when sentence is augmented by invalid prior conviction. (People v. Sumstine (1984) 36 C.3d 909, 206 C.R. 707; In re Rogers (1980) 28 C.3d 429, 169 C.R. 222)

Just because a issue was raised challenging use of petitioners prior as a strike, then denied on Direct Appeal, does not act as a bar to all other claims of error regarding use of prior as a "Strike", by his petition for habeas Corpus; Especialy, where petitioner is arguing I.A.C. Of trial Counsel for failing to object, and IAC of Appellate Counsel for not raising claim on Direct Appeal.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

OSP 98 10924

229

1    Finally, this very court, in making its ruling, denying
2  petitioner contention raised on direct Appeal, on case
3  number D040805 stated for the record;

5      "Because the only issue Shufelt raises on appeal
6      is whether his prior Utah conviction is a serious
7      felony and strike prior, we need not discuss
8      the facts underlying his convictions." (see; Opinion,
9      D041155, pg. 2 fn 2, exhibit "B" attached)

10    Now, after petitioner filed his petition for relief
11  arguing erroneous jury instructions, prosecutor misconduct,
12  trial error on admissability of uncharged crime evidence,
13  under the Rubic of ineffective assistance of trial,
14  and appellate Counsel, which are facts underlying his
15  convictions, The Court of Appeals says;

17      "Courts will presume that a litigant received sufficient
18      review of his or her legal claims, both constitutional
19      and otherwise, on direct appeal." (In re Harris, supra,
20      5 Cal.4th at p. 834.) "Only where the claimed constitu-
21      tional error is both clear and fundamental, and
22      strikes at the heart of the trial process, is an op-
23      portunity for a third chance at judicial review
24      (trial, appeal, postappeal habeas corpus) justified." (Ibid)
25      Shufelt has not established clear and fundamental
26      constitutional error to entitle him to further
27      review." (see; Opinion, attached exhibit "B")

1  The courts inherent power to correct its own ruling
2  is based on the State constitution and cannot be
3  impaired by statute. (Wozniak v. Lucutz, (2002) 102 C.A.
4  4th 421, 104 C.R. 612; Remsen v. Lavacot, 87 C.A. 4th 421,
5  104 C.R. 2d 612)

6  Thus, the fact that a party brings the basis for such
7  a change to the courts attention, even if via a statutory
8  motion for such a change, does not negate this power.
9  (Wozniak v. Lucutz, supra, 102 C.A. 4th 1031; Blake v. Ecker
10 (2001) 93 C.A. 4th 728, 113 C.R.2d 422)

11  Petitioner, in essence, was denied his right to
12  a direct appeal regarding his trial and convictions by
13  appellate counsel, and now in essence, petitioner is
14  being denied his right to challenge the effectiveness
15  of assistance of appellate and trial counsel, by
16  way of collateral attack, which was reviewed by this
17  court under "fundamental constitutional error" which is
18  the wrong standard of reviewing I.A.C issues.

19  Under penalty of perjury I testify that the foregoing
20  is true and correct.

21  Date: 8/24/07                    Respectfully Submitted

22                                   George W. Shufelt

24                                   George W. Shufelt
25                                   In Pro-Per



## PROOF OF SERVICE

### Declaration of service by mail

I, _George W. Shickett_ , declare that I am over the age of eighteen (18) and that I am ~~not~~ a party to this action. on _8/27_, 200~~6~~, I deposited a copy of the following documents:

- _Application for reconsideration_
- _Exhibits A & B_

I placed the above listed documents in a sealed envelope with the postage prepaid into the United States mail outlet via an authorized California Department of Corrections employee at Ironwood State Prison, in Riverside County, Blythe, California, and addressed as follows:

_California Court of Appeals_
_Fourth District, Division One_
_750 B Street, Suite 300_
_San Diego, CA 92101_

_District Attorney's Office_
_Hall of Justice, Suite 920_
_330 West Broadway_
_San Diego, CA 92101_

I declare under penalty of perjury by the laws of the State of California that the foregoing is true and correct.

Date _8/27/07_,          Signature _George W. Sh_

234

4/26/06

# EXHIBIT COVER PAGE  HH

EXHIBT

Description of this Exhibit: Appellate Courts denial of

Case No.    Application for Reconsideration; Date 9/11/07
People v.

Number of pages to this Exhibit _____1_____ pages.

## JURISDICTION:  (Check only one)

☐  Municipal Court
☐  Superior Court
☐  Appellate Court
☐  State Supreme Court
☐  United States District Court
☐  State Circuit Court
☐  United State Supreme Court
☐  Grand Jury

# COURT OF APPEAL - FOURTH APPELLATE DISTRICT

## DIVISION ONE

FILED
Stephen M. Kelly, Clerk

## STATE OF CALIFORNIA

SEP 1 1 2007

Court of Appeal Fourth District

| | |
|---|---|
| In re GEORGE W. SHUFELT | D051016 |
| on | (San Diego County Super. Ct. No. SCD163510) |
| Habeas Corpus. | |

THE COURT:

　　The motion for reconsideration filed on August 31, 2007, has been read and considered by Justices Huffman, Haller and O'Rourke. The denial of a petition for a writ within the appellate court's original jurisdiction without issuance of an alternative writ or order to show cause is final immediately. (Cal. Rules of Court, rule 8.264(b)(2)(A).) George W. Shufelt's petition for a writ of habeas corpus was summarily denied on August 17, 2007. This court has no jurisdiction to reconsider the matter.

　　The motion is denied.

_____
O'ROURKE, Acting P. J.

Copies to: All parties

EXHIBIT "II"

Appellate Courts

George W. Shufelt III.   **Copy**
CDC # T-65128
Housing B4, Cell 134 low.
Ironwood State Prison
P.O. Box 2199
Blythe, CA 92226

In pro-per

### TO THE SUPERIOR COURT STATE OF CALIFORNIA

#### COUNTY OF SAN DIEGO

| | |
|---|---|
| IN RE THE PETITION OF; )<br>)<br>GEORGE SHUFELT, )<br>)<br>)<br>Petitioner. )<br>)<br>)<br>_____) | HC 18018<br>SCD 163510<br><br>**MOTION FOR REHEARING OR RECONSIDERATION OF PETITIONERS FIRST CLAIM; ISSUE WAS NOT RAISED ON DIRECT APPEAL; SENTENCE IS UNAUTHORIZED; TRIAL COURT FAILED TO FIND ALL ELEMENTS THAT WOULD QUALIFY UTAH CONVICTION AS SERIOUS** |

Dept: 15
Honorable Judge Howard H, Shore

TO THE ABOVE INTITLED COURT, AND TO THE DISTRICT ATTORNEY OF SAN DIEGO COUNTY, STATE OF CALIFORNIA.

COMES NOW Petitioner, George W. Shufelt, in pro-per, moves that the Superior Court, State of California, County of San Diego, reconsider and rehear Petitioners first claim, his sentence is unauthorized.

Prosecution did not plead or prove all necessary elements nor did trial court make finding of all necessary elements that would qualify Petitioners Utah conviction as a California Serious felony under California law. In addition, Appellate Counsel should have raised this issue on direct appeal but didn't.

Although trial court did make finding that Utah record of conviction contained all elements of California Penal Code §192(c)(3),

245

### PRAYER FOR RELIEF

Petitioner respectfully pray's that reviewing court for good cause will reconsider petitioners first claim and issue anyone of the following order;

1.) Order to show cause, or grant writ with remand for resentencing.

2.) in the alternative, order informal responce to assist court in making an informed decision.

3.) give a more detailed explination to petitioner as to reason for denial of habeas petitioners first claim. (this would help petitioner a great deal).

Date: 3/29/05

Respectfully submitted

George W. Shufelt III.

IN pro-per.

pg. 14

259

## LIST OF EXHIBITS

EXHIBIT

"A"    Reviewing court order for informal response (claim 6-27); order denying petition for writ in part (claims 1-5). Filed 03/17/05, received 03/22/05.

"B"    Pititioners claim One of habeas corpus petition filed on March 18, 2005, HC18018, with citations to exhibits attached to habeas petition.

"C"    Penal Code § 1192.8(a)(b)

"D"    Trial courts ruling on "strike" allegation inwhich court failed to make any findings of elements listed under 1192.8(a) and 1192.7(c)(8)(personal infliction) or (23)(personal use of a dangerous or deadly weapon.

EXHIBIT "JI"

| Date | Name | CDC# | Housing | Sender |
|------|------|------|---------|--------|
| 1/8/07 | SHUFELT | T65128 | A5-113U | CHIEF INMATE APPLS. BRANCH DEPT. OF CORR. & REHAB P.O BX 942883 SAC., CA 94283 |
| 1/30/07 | SHSUELT | T65128 | A5-113U | WILLIAMS LAW FIRM W. ALLAN PMB 106 2650 JAMACHA RD. STE # 147 EL CAJON, CA 92019 |
| 2/2/07 | SHUFELT | T65128 | A5-113U | CHIEF, I/M APPLS BRANCH, DEPT CORR, & REHAB, PO BOX 942883, SAC, CA 94283-0001 |
| 2/2/07 | SHUFELT | T65128 | A5-113L | SUPR CRT CA, CNTY SAN DIEGO, CNTY CRTHOUSE, 220 W BROADWAY, PO BOX 120128, SAN DIEGO, CA 92112-0128 |
| 2/9/07 | SHUFELT | T65128 | A5-113U | CHIEF, I/M APPLS BRANCH, DEPARTMENT OF CORR, & REHAB, PO BOX 942883, 0001 |
| 3/5/07 | SHUFFELT | T65128 | A5-113U | STATE OF CA DEPT. OF JUSTICE OF THE ATTNY. GEN. 110 W. A ST STE 1100 P.O BX 85266 SAN DIEGO, CA 92186 |
| 3/6/07 | SHUFELT | T65128 | A5-113U | STATE CA, DEPT JUSTICE, OFC ATTY GEN, 110 W "A" ST, STE 1100, SAN DIEGO 92186 |
| 3/20/07 | SHUFFELT | T65128 | A5-113L | STATE OF CA DEPT. OF JUSTICE OFFICE OF THE ATTNY. GEN. 110 W. A ST STE 1100 SAN DIEGO, CA 92186 |
| 4/3/07 | SHUFELT | T65128 | A5-141L | WILLIAMS LAW FIRM PMB 106 EL CAJON, CA 92019 |
| 4/3/07 | SHUFFELT | T65128 | A5-141L | STATE OF CA DEPT. OF JUSTICE OFFICE OF THE ATTNY. GEN. 110 W. A ST STE 1100 P.O BX 85266 SAN DIEGO, CA 92186 |
| 5/7/07 | SHUFELT | T65128 | A5-141L | SUP. CRT. OF CA CNTY. OF SAN DIEGO CNTY, CRTHOUSE P.O BX 120128 SAN DIEGO CA 92112 |
| 5/16/07 | SHUFELT | T65128 | A5-141L | SUP. CRT. OF CA CNTY. OF SAN DIEGO CNTY. CRTHOUSE P.O BX 120128 SAN DIEGO, CA 92112 |

251

Legal In

6/20/07

| Date | Name | CDC# | Housing | Sender |
|------|------|------|---------|--------|
| 6/6/07 | SHUFELT | T65128 | A5-141L | SUPERIOR CRT OF CA. CNTY OF SAN DIEGO, CA. 92112 |
| 6/12/07 | SHUFELT | T65128 | A5-141L | CLRK OFFICE CRT OF APPEALS, SAN DIEGO,CA. 92101 |
| 6/14/07 | SHUFELT | T65128 | A5-141L | CLRK OFFICE CRT OF APPEAL, SAN DIEGO, CA. 92101 |
| 6/20/07 | SHUFLET | T65128 | A5-142L | CHIEF INMAE APPEALS BRANCH, DEPT OF CORR, AND REHAB, SAC, CA. 94283 |

252

EXHIBIT "KK"

| Date | Name | CDC# | Addressee |
|------|------|------|-----------|
| 2/9/07 | SHUFELT | T65128 | AL WILLIAMS, ATTY, 2650 JAMACHA RD, STE 147, EL CAJON, CA 92019-4318 |
| 3/21/07 | SHUFELT | T65128 | DIR CORR, PO BOX 942883, SAC, CA 94283-0001, ATTN: CHIEF, I/M APPLS |
| 3/28/07 | SHUFELT | T65128 | DIR. OF CORR. P.O BX 942883 SAC., CA 94283 ATTN: CHIEF INMATE APPLS. |
| 4/18/07 | SHUFELT | T65128 | DIR. OF CORR. SAC. CA 94283 CHIEF INMATE APPLS. |
| 5/7/07 | SHUFELT | T65128 | W. ALAN WIILIAMS ATTNY. AT LAW 2650 JAMACHA RD. #147-106 EL CAJON., CA 92019 |
| 5/9/07 | SHUFELT | T65128 | AL WILLIAMS ATTNY. AT LAW 2650 JAACHA RD. #147-106 EL CAJON, CA 92109 |
| 5/25/07 | SHUFELT | T65128 | CHIEF INMATE APPEALS, SAC, CA. 94283 |
| 5/25/07 | SHUFELT | T65128 | JOHN T. MCGLOTHLIN, DEPUTY ATRNY GEN, SAN DIEGO, 92101 |
| 5/25/07 | SHUFELT | T65128 | SUPERIOR CRT, OF CA. CNTY OF SAN DIEGO, HON, JUDGE CHARLES HAYES, SAN DIEGO CA. 92101 |
| 6/1/07 | SHUFELT | T65128 | CRT OF APPEALS FOURTH DISTRICT DIVISON, SAN DIEGO CA 92101 |
| 6/1/07 | SHUFELT | T65128 | DIST ATRNY OFFICE SAN DIEGO HALL OF JUSTICE SAN DIEGO CA, 92101 |
| 6/8/07 | SHUFELT | T65128 | MORRIS HILL SAN DIEGO CNTY COUNSEL, SAN DIEGO, CA. 92101 |
| 6/8/07 | SHUFELT | T65128 | JOHN T. MCGOLOTHLIN, DEPUTY ATRNY GEN, SAN DIEGO CA. 92101 |
| 6/8/07 | SHUFELT | T65128 | CA. CRT OF APPEALS, FOURTH DIST DIV ONE, SAN DIEGO, CA. 92101 |



Notice
of
Appeal ⟶

253

INMATE'S OUT GOING LEGAL AND REGISTER MAIL

| INMATES NAME | NUMBER | DATE |
|---|---|---|
| SHUFELT | T-65128 | 10/17/2007 |

TO
SAN DIEGO CO DIST ATTY
  ADDRESS
330 W BROADWAY

| CITY | STATE | ZIP CODE |
|---|---|---|
| SAN DIEGO | CA | - |

REGISTER            NUMBER
CERTIFIED
EXPRESS

---

INMATE'S OUT GOING LEGAL AND REGISTER MAIL

| INMATES NAME | NUMBER | DATE |
|---|---|---|
| SHUFELT | T-65128 | 10/17/2007 |

TO
CAL SUPREME COURT
  ADDRESS
350 MCALLISTER ST

| CITY | STATE | ZIP CODE |
|---|---|---|
| SAN FRAN    - 2 ENVELOPES | CA | 94102- |

REGISTER            NUMBER
CERTIFIED
EXPRESS

---

INMATE'S OUT GOING LEGAL AND REGISTER MAIL

| INMATES NAME | NUMBER | DATE |
|---|---|---|
| SHUFELT | T-65128 | 11/01/2007 |

TO
CAL SUPREME COURT
  ADDRESS
350 MCALLISTER ST

| CITY | STATE | ZIP CODE |
|---|---|---|
| SAN FRAN | CA | 94102- |

REGISTER            NUMBER
CERTIFIED
EXPRESS

---

254

EXHIBIT "LL"

# LEWIS A. WENZELL
## ATTORNEY AT LAW

February 19, 2004

GEORGE W. SHUFELT
# T65128
P.O. BOX 2199
BLYTHE, CA  92226

**CONFIDENTIAL ATTORNEY-CLIENT PRIVILEGED CORRESPONDENCE**

Re:    *People* v. *George W. Shufelt,* No. S121327 (D040895).

Dear Mr. Shufelt:

I am sorry to inform you that on February 18, 2004, the supreme court denied review in your case.

Because the federal constitutional issue was raised in the direct appeal, the issue has technically been exhausted and a federal writ could be filed.  However, I would not advise this since this might preclude federal review of the other claims you will be making in your habeas petition in the state courts.

With respect to the latter, as you may know, I am under no obligation to assist you in the filing of a petition for a writ of habeas corpus because you are not entitled to the appointment of counsel to file such a writ.  Upon the filing of your writ of habeas corpus, you can ask the court to appoint counsel and the court has discretion to do so.

In order to prevail on a claim of ineffective assistance of counsel, it must be shown that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  When courts make this assessment, they entertain a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  The courts accord great deference to counsel's tactical decisions and do not second-guess tactical decisions by hindsight.  Moreover, and more importantly, prejudice must be shown.  This means it must be proved that there is a reasonable probability that, but for counsel's ostensible unprofessional errors, the result of the proceeding would have been different, i.e., there would have been not guilty verdicts.  Although I know you feel differently, I do not believe there are sufficient grounds under this test for me to proceed on your behalf.

---

5070 NARRAGANSETT AVENUE • SUITE 303 • SAN DIEGO, CA • 92107
(619)224–9422 • FAX (775)205–6708 • E–MAIL lawyer@wenzell.net

E-132
755

**Page 2 -- Feb. 19, 2004**
**Confidential & Privileged**


You should be aware that there is a one year statute of limitations in which you can file a federal writ of habeas corpus. This period began to run on February 18, 2004. However, the time in which a state writ of habeas corpus is pending tolls the federal limitations period. To qualify for such tolling, the state writ must proceed with all reasonable speed. Although these timing issues have not been definitively resolved, to play it safe, you should waste as few of the 365 days you have regarding the federal limitations period. Your state writ should be filed as quickly as possible in the superior court and should be pursued through the state appellate and supreme court with all due diligence. Just to make it clear, you should assume the following is the law: Say for example, you do not file your writ until March 19, 2004. That is 30 days after the February 18, 2004, denial of review. Therefore, 30 days is subtracted from the 365 day limitations period meaning that any federal writ would have to be filed within 335 days of denial of your writ petition by the supreme court or the supreme court's denial of review from an adverse decision of the Court of Appeal regarding the writ. In your state petition be sure to raise anew the arguments I made in the courts regarding the applicability of *Apprendi* to your Utah prior conviction. This issue has yet to be definitively resolved.

I do not know if you have the appropriate state and federal forms so I have enclosed them.


Sincerely,

Lewis A. Wenzell
State Bar No. 54786


encs.

EXHIBIT "mm"

1

2

3

4

5

6

7

8

F I L E D
Clerk of the Superior Court

OCT 2 0 2005

By: _____ Deputy

9                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                              **COUNTY OF SAN DIEGO**

11

12    IN RE THE PETITION OF:              )  HC 18018
                                          )  SCD 163510
13    GEORGE SHUFELT,                     )
                                          )
14              Petitioner.               )  ORDER APPOINTING ATTORNEY
                                          )
15                                        )
                                          )
16                                        )

17    _____

18          THIS COURT, HAVING READ AND CONSIDERED THE PETITION FOR WRIT OF

19    HABEAS CORPUS, THE PEOPLE'S INFORMAL RESPONSE, PETITIONER'S REPLY

20    AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS:

21          On or about January 26, 2005, Petitioner filed a Petition for Writ of Habeas Corpus,

22    based upon 27 grounds. On or about March 15, this Court denied the Petition based upon the first

23    five grounds presented, but requested that the People file an informal response to the remaining

24    grounds. On April 28, 2005, the People filed a request for an order extending time to respond

25    which was granted and the People filed that response on June 30, 2005. Petitioner sought an

26    order extending time to file a reply, which was granted. On October 17, 2005, Petitioner filed

27    one copy of a 208-page, single-spaced reply, plus exhibits, stating that the prison authorities

28    would not allow him to make a copy to be served upon the People.

29          Based upon the massive amount of documentation and depth of the issues presented in

30    this case, this Court hereby appoints the San Diego Office of the Public Defender as attorney of

      record to

                                          ORDER - 1

257

1  review all of this material. The Public Defender is instructed to narrow the issues wherever

2  possible and focus the argument so that the People may properly respond and to give the Court

3  the full opportunity to rule on the merits of the issues appropriately presented via a habeas corpus

4  petition.

5        Said appointed counsel will have full access to all documents presented and may obtain

6  all of that material by contacting the habeas desk on the second floor of the courthouse at 220

7  West Broadway, San Diego.

8        The Public Defender shall have 90 days from the date of the execution of this Order to

9  file with the Court, with service to Deputy District Attorney Stephen Carr, focused pleadings

10  with the issues properly narrowed and argued. The People shall have 60 days to respond

11  thereafter.

12        It is further ordered that a copy of this Order be served upon the San Diego Office of the

13  Public Defender, the Petitioner, and Deputy District Attorney Stephen Carr.

14        IT IS SO ORDERED.

15  DATED:    _10/20/05_                    _____

16                                          HOWARD H. SHORE

17                                          JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a
18  full, true & correct copy of the original on file in
this office, that said document has not been revoked,
19  annulled or set aside, and it is in full force and effect.

20  Attest: ___OCT 2 1 2005___ 4pm
              Clerk of the Superior Court of the State
21  of California, in and for the County of San Diego

22      By _____ Deputy

23

24

25

26

27

28

29

30

ORDER - 2

258

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA  92101-3814
☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6ᵀᴴ AVE., SAN DIEGO, CA 92101-3296
☐ MADGE BRADLEY BLDG., 1409 4ᵀᴴ AVE., SAN DIEGO, CA 92101-3105
☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3ᴿᴰ AVE., CHULA VISTA, CA 91910-5649
☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792
☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102

**FOR COURT USE ONLY**

F I L E D
Clerk of the Superior Court

**OCT 2 1 2005**

By: [signature]   Deputy

PLAINTIFF(S)/PETITIONER(S)

The People of The State of California

DEFENDANT(S)/RESPONDENT(S)

GEORGE SHUFELT

JUDGE: ____
DEPT: ____

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**
(CCP 1013a(4))

CASE NUMBER
HC18018
SCD163510

I, **STEPHEN LOVE**, certify that:  I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER APPOINTING ATTORNEY

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:   ☒ San Diego   ☐ Vista   ☐ El Cajon   ☐ Chula Vista   ☐ Oceanside   ☐ Ramona, California.

| NAME | ADDRESS |
|---|---|
| GEORGE SHUFELT<br>T-65128      HOUSING B4. CELL 134LOW | IRONWOOD STATE PRISON<br>P.O. BOX 2199<br>BLYTHE, CA 92226 |
| STEPHEN CARR<br>DEPUTY DISTRICT ATTORNEY | SAN DIEGO COUNTY DISTRICT ATTORNEY'S OFFICE<br>APPELLATE DIVISION<br>P.O. BOX 121011<br>SAN DIEGO, CA 92112-1022 |
| DEPARTMENT OF THE PUBLIC DEFENDERS | 233 "A" STREET, SUITE 400<br>SAN DIEGO, CA 92101-4007 |

STEPHEN LOVE
CLERK OF THE SUPERIOR COURT

Date: 10/21/05 _____

By [signature] , Deputy

SDSC CIV-286(Rev 11-99)        **CLERK'S CERTIFICATE OF SERVICE BY MAIL**

259

EXHIBIT "NN"

**CENTRAL OFFICE**
'233 "A" Street, Suite 500
San Diego, CA 92101-4009
(619) 338-4700
FAX (619) 338-4811

**NORTH COUNTY BRANCH**
400 S. Melrose Drive, Suite 200
Vista, CA 92083-6627
(760) 945-4000
FAX (760) 726-1308

**SOUTH BAY BRANCH**
765 Third Avenue, Suite 100
Chula Vista, CA 91910-5842
(619) 498-2001
FAX (619) 498-2039

**EAST COUNTY BRANCH**
250 E. Main Street, Sixth Fl.
El Cajon, CA 92020
(619) 579-3316
FAX (720) 441-4744

**JUVENILE DELINQUENCY**
8525 Gibbs Drive, Suite 105
San Diego, CA 92123-2709
(858) 974-5700
FAX (858) 974-5858

**JUVENILE DEPENDENCY**
8525 Gibbs Drive, Suite 300
San Diego, CA 92123-2709
(858) 974-5757
FAX (858) 974-5711



# County of San Diego

## DEPARTMENT OF THE PUBLIC DEFENDER

**STEVEN J. CARROLL**
**PUBLIC DEFENDER**

January 17, 2006

Mr. George W. Shufelt III, #T65128
Ironwood State Prison
P.O. Box 2199
Blythe, CA 92226

Dear Mr. Shufelt,

This is to inform you that I have declared a conflict of interest in your case and the court is in the process of appointing counsel from PCC. This will not affect your case at all, other than you will get another attorney. The new filing date is May 18, 2006 and the court has indicated it will give successor counsel additional time if needed.

I have taken this action since it is clear that there is a breakdown in our ability to communicate on a meaningful level. I'm sure you would agree.

The research attorney at the courthouse called me last week, prior to the declaration, and informed me that he found a box in his office containing the trial transcripts. I had them picked up late last week. I was told that we had been "given everything" when I previously inquired about the transcripts and you had refused to send me your copy.

I began reviewing the transcripts immediately and soon discovered that our office had represented you on the underlying case until it was dismissed, re-filed, and you decided to go pro per. When your subsequent motion to continue the trial was denied, you asked for appointment of counsel. Judge Lasater stated she would likely re-appoint Ms. Courtney Cutter from our office and you objected, based on "her lack of effectiveness". You also expressed "frustrations" with our office in the past and asserted your "lack of confidence" in the quality of our representation. Judge Lasater found, based on your comments, the Office of the Public Defender may have a conflict of interest at that point anyway and appointed Mr. Guthrie from PCC.

**ATTORNEY-CLIENT**
**PRIVILEGED COMMUNICATION**
Pen Code, § 2601(b); Evid. Code, § 954;
C.C.R., Tit. 15, §3141 (c) (3)

26D

Based on your previously expressed lack of confidence in our office in this case, your current dissatisfaction with me, and, most importantly, our inability to meaningfully converse, I feel that our relationship is irreparably broken to the point that there is an on-going conflict of interest.

I have all the materials in your case organized and ready to hand over to successor counsel. Rest assured that I have not revealed anything to the court or the DA about your case other than to say I believe there is a conflict of interest due to our "inability to communicate in a meaningful fashion" and that your dissatisfaction with our office appeared on-going, based on the statements previously made in court.

I wish you the best in your endeavors.

Sincerely,

Edward Kinsey
Deputy Public Defender

261

EXHIBIT "DO"

# W. Allan Williams
**Attorney at Law**

March 15, 2006

## CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION

George M. Shufelt, III
CDC # T-65128
Housing B-4 Cell 134-Low
Ironwood State Prison
P.O. Box 2199
Blythe, CA 92226

Re: In Re George Shufelt on *Habeas Corpus* . San Diego Superior Court HC 18018 SCD
163510  DA AAO 614

Dear Mr. Shueflet

I am writing to inform you that I have been appointed to represent you in your Petition
for Writ of *Habeas Corpus*.in San Diego County Superior Court.  You may have already
received a copy of the court's appointment order.

I believe you have,because I was fortunate to speak with Ms Christy Robertson who
informed me that you are NOT in Tehachapi State Prison as I was told.  Please accept my
apologies for misdirecting the initial letter.  *I will not discuss your case WITH Christy
without your express written permission and waiver of attorney-client privilege.*

I have completed the initial exhaustive (and exhausting) review of all the materials
provided to me my your previous attorneys..  I am interested in any comments you may
have about your case.  I will be contacting your trial attorney, also.

2650 Jamacha Road # 147-106  El Cajon, California 92019-4319  (619) 593-3790  Fax (619 401-1791  E-mail AllanWilliamsLaw@aol.com

EXHIBIT "PP"

39

W. ALLAN WILLIAMS
State Bar Number 75213
2650 Jamacha Road #147-106
El Cajon, California 92019
Telephone: (619) 593-3790

Attorney for Petitioner
GEORGE SHUFELT.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| GEORGE SHUFELT<br><br>  Petitioner,<br><br>  vs.<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>  Real Party in Interest. | Case No. SCD163510<br>HC No. 18018<br>D.A. No. AAO 614<br><br>**DEFENDANT'S ADDITIONAL PLEADINGS IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS** |

TO:   The People of the State of California and it's attorneys, BONNIE M

DUMANIS, District Attorney and STEVEN CARR, Deputy District Attorney and the

Superior Court of the State of California, Honorable HOWARD H. SHORE, Judge of

the Superior Court:

Petitioner and Defendant GEORGE SHUFELT, by and through his appointed

attorney, W. ALLAN WILLIAMS, hereby respectfully submits the following

DEFENDANT'S PLEADINGS IN SUPPORT OF PETITION FOR WRIT OF

HABEAS CORPUS.

In doing so, Petitioner GEORGE SHUFELT reaffirms his original Petition for

Writ of Habeas Corpus.

1

# STATEMENT OF THE CASE AND PROCEDURAL HISTORY

The Petitioner was charged by Information on December 5, 2001 with two counts of residential burglary wile a non-accomplice was at the residence (aka "hot prowl ") in violation of Penal Code section 459,460 and 667.5(c) (21); two counts of residential burglary in violation OF penal Code section 459/460; four counts of receiving stolen property (Penal code section 496(a); one count of taking a vehicle in violation of Vehicle Code section 10851(a); one count of receiving a stolen vehicle in violation of Penal Code section 496(d), and one count of resisting arrest in violation of Penal Code section 148(a)(1). Also alleged was that Petitioner had a 1995 prior conviction for automobile homicide in Utah, which was alleged as a serious felony prior under Penal Code sections (667(a)(1), 668, and 1192.7(c), and also a "strike "prior under Penal Code sections 667(b) through (1) and 668. (CT 1-5.)

Also alleged was that Petitioner had suffered a 1995 prior conviction for automobile homicide in Utah, which was alleged as a serious felony prior under Penal Code sections (667(a)(1), 668, and 1192.7(c), and also a "strike "prior under Penal Code sections 667(b)

The Petitioner chose to represent himself and, on or about December 17, 2000, attorney Charles Guthrie is appointed advisory counsel. (RT 1; CT p. 610.) ,. On Monday June 3, 2002, Petitioner appeared *in pro per* in the trial court before the Honorable Melinda J. Lasater and proceedings and *in limine* motions began. Advisory counsel Charles Guthrie was **not** present. The entire day was spent on trial matters. (CT .667-668.) On June 4, 2002, the matter reconvened with Attorney Guthrie present as advisory counsel. Petitioner requests that Mr. Guthrie be present at all times unless his appearance is waived. The court grants that request. A full day is spent in court and the matter recessed until June 5, 2002 at 1:30 p.m. (CT . 660-671.)

2

On June 5, 2002 the matter reconvenes and Guthrie is **not** present. The court reviews Guthrie's schedule as submitted by him. Petitioner makes a motion for the appointment of counsel and that is deferred and the matter is trailed until June 7, 2002 (CT 672-672 )

On June 7, 2002 the matter reconvenes with Petitioner and Attorney Guthrie both present. Petitioner still wants appointed counsel. The People oppose the appointment of counsel and any further delay and a continuance. The court finds that appointment of counsel at this time is not required. The court tells Petitioner there will be no lengthy continuance and that she needs to confer with PCC . The court finds that appointment of counsel at this point is not required. As a courtesy, the Court will consider Petitioner's request in light of the People's witness availability problems. The court then advises counsel to be prepared to begin actual trial no later than June 12, 2002. (CT 674.)

On June 10, 2002, the mater reconvened with all parties present. Petitioner is still *pro per* and advisory counsel Guthrie is present. Petitioner asked the trial court to appoint him an attorney. Judge Lasater advised Petitioner that this would not justify a continuance of the trial and Petitioner acquiesced, and Judge Lasater terminated his self representation and appointed Mr. Guthrie to represent Petitioner at trial. (RT 1235, 1257, 1261; CT 675-676.)

Mr. Guthrie, after being advised by the court that she does not want a continuance, that she does not believe the appointment is required, that she is only doing this as "a courtesy" and that she wants to make sure that he is ready to go, accepts the appointment. In doing so, he states that he believes he would be ready to go, but that his only fear is that it might run into July. The court responds that she does not think the case will go that long and Guthrie replies "I don't believe either if I

3

years and eight months in state prison.  This was calculated at 8 years for one of the burglaries (the 4 year mid-term doubled due to the "strike", one third the mid=term consecutive, also doubled, for three of the other burglaries and the Vehicle Code 10851, and five years for the serious felony prior under Penal Code section 667(a)(1). (RT 3185-3188, CT 722-723).

Petitioner filed a Notice of Appeal on September 16, 2002.  Attorney Lewis Wenzel was appointed to represent Petitioner on Appeal.  On November 13, 2003, Division One of the Fourth District Court of Appeal affirmed the case in an unpublished opinion, and the California Supreme Court denied review.

Petitioner filed a *pro per* Petition for Writ of *Habeas Corpus* on or about January 19, 2005.  On or about March 15, 2005, the court denied the first five grounds.  On March 17, 2005 this court asked the San Diego County District Attorney's Office to file an informal response to the Petition and the District Attorney did so on June 30, 2005.  Petitioner then filed a 208-page single-spaced reply. plus exhibits. On October 20, 2005, this court appointed the San Diego County Public Defender as attorney of record to review all of this material and "instructed" the Public Defender "to narrow the issues wherever possible and focus the argument so that the People may properly respond and to give the Court `the full opportunity to rule on the merits of the issues appropriately presented via a habeas corpus petition. "

The Public Defender had 90 days to file "focused pleadings with the issues properly narrowed and argued".  On January 6, 2006 this was extended until May 18, 2006.

On January 13, 2006, the San Diego County Public Defender, by Deputy Public Defender Edward Kinsey, declared a conflict and the Public Defender was relieved.

5

269

On January 25, 2006, Private Conflicts Counsel, by W. Allan Williams, took over the representation of Petitioner. . On or about May 12, 2006; time was extended to August 10, 2006.

## ADDITIONAL INFORMATION, FORMAT AND PRESENTATION

Appointed counsel desires to preserve the record and avoid prejudicing Petitioner's claims. Accordingly; counsel will attempt to make cogent arguments to place Petitioner in the best possible position. At the same time, preservation of the record and Petitioner's claim for Federal proceedings is necessary to protect the Petitioner.

As Petitioner and the District Attorney have made numerous citations to the record, there will not be exhaustive citations to the record except where deemed necessary and which would add something. . The format followed will be that of California Courts Form MC-275 (Rev. July 1, 2005, where it calls for a statement of Grounds, Facts and "supporting cases, rules or authority". As the later are referred to as **optional,** string citations will be avoided wherever possible.

As Grounds 1 through 5 have already been denied by this Court, we will begin with Ground 6 raised by Petitioner

## GENERAL STANDARDS FOR EFFECTIVE ASSISTANCE OF COUNSEL

As the vast majority of the claims raised in the Petition relate to claims of ineffective assistance of counsel, it is felt that some general briefing at this point could help narrow the inquiry.

The United States Constitution's Sixth and Fourteenth Amendments, together with the California Constitution's article I, section 15, guarantee every criminal defendant the right to the effective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404]; *Strickland v. Washington* (1984) 466 U.S. 668, 691-692 [80 L.Ed.2d 674, 104 S.Ct. 2052].) To demonstrate a violation, an

appellant must: demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the [appellant]. [Citations omitted.] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*In re Wilson* (1992) 3 Cal.4th 945, 950 [13 Cal.Rptr.2d 269], quoting *Strickland v. Washington,* supra, 466 U.S. at p. 694.)

A proceeding may be shown to be unreliable "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)

Included in the right to effective assistance of counsel is the right to have trial counsel invoke the procedural and substantive safeguards that distinguish our system of justice (*Cuyler v. Sullivan* (1980) 446 U.S. 335, 343 [64 L.Ed.2d 333, 100 S.Ct. 1708]), and provide the "meaningful adversarial testing" of the prosecution's case that the Sixth Amendment requires (*People v. Ledesma, supra*, 43 Cal.3d at p. 245 (Grodin J., conc.), quoting *United States v. Cronic* (1984) 466 U.S. 54, 66 [80 L.Ed.2d 41, 104 S.Ct. 1621]), for example, by registering objections and seeking curative admonitions when appropriate (*People v. Bonin* (1988) 46 Cal.3d 659, 689 [250 Cal.Rptr. 687].) Counsel must investigate carefully the possible grounds for seeking the suppression of incriminating evidence, and make appropriate motions to suppress or exclude such evidence. (*In re Jones* (1996) 13 Cal.4th 552, 581-582 [54 Cal.Rptr.2d 52].)

*Strickland* means more than merely putting in an effort, even a substantial effort, if that effort is not reasonable under prevailing norms of practice. (United

7

States v. Mojica (7th Cir. 1993) 984 F.2d 1426, 1452 (quoting Strickland, 466 U.S. at pp. 687-691); *Jones v. Wood* (9th Cir. 1997) 114 F.3d 1002, 1009.) The American Bar Association, Standards for Criminal Justice, may inform what is reasonable under "prevailing norms of practice." (*United States v. Loughery* (D.C. Cir. 1990) 908 F.2d 1014, 1018.) They are guides, but they should not distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. (*Strickland v. Washington*, supra, at p. 689.)

The ABA Standards instruct: "[I]ncluded in defense counsel's obligations to the client is the responsibility of furthering the defendant's interest to the fullest extent that the law and the applicable standards of professional conduct permit." (ABA Standards for Criminal Justice Prosecution Function and Defense Function, Third Addition (3rd ed.1993), § 4-1.2, p. 122 [hereinafter, ABA Standards].) A lawyer cannot be half-hearted in the application of his or her energies to a case. (Id. at pp. 122-123.) "Once a case has been undertaken, a lawyer is obliged not to omit any essential lawful and ethical step in the defense, without regard to compensation or the nature of the appointment." (Id. at p. 123.) "Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial or to conduct plea discussions effectively." *(Id.* at p. 183.) "[W]ithout careful preparation, the lawyer cannot fulfill the advocate's role." *(Ibid.)* "Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case ...." (ABA Standards, *supra*, Standard 4-4.1 (a), Duty to Investigate at p. 181, emphasis added.)

8

A defense attorney must look into readily available sources of evidence. (Hall v. Washington (7th Cir. 1997) 106 F.3d 742, 749.) When the issue is guilt, defense counsel's duty of investigation is fairly well defined; counsel must interview potential witnesses likely to provide material evidence favorable to the defense. (*Williams v. Washington* (7th Cir.1995) 59 F.3d 673, 680-681; *United States v. Shetterly* (7th Cir.1992) 971 F.2d 67, 74; *Sullivan v. Fairman* (7th Cir.1987) 819 F.2d 1382, 1391-1392.) "Interviewing of all witnesses is crucial because it may produce valuable information which may have been omitted in the original statements taken from a subjective standpoint." (Wells, Validating The Credibility Of A Criminal Defense Witness, (August 1996) The Legal Investigator, at p. 32, a publication of the National Association of Legal Investigators, Inc.)

The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. (*United States v. DeCoster* (D.C. Cir. 1973) 487 F.2d 1197, 1203-1204, citing *United States v. Ash* (1973) 413 U.S. 300 [37 L.Ed.2d 619, 93 S.Ct. 2568].)

The Ninth Circuit has repeatedly recognized that the unique circumstances of each case dictate the requisite avenues for a thorough defense investigation. (See *Phillips v. Woodward* (9th Cir. 2001) 267 F.3d 966, 976-977 [failure to develop facts that would mitigate client's involvement in the shooting and thereby reduce the likelihood of the jury opting for the death penalty even where it would not have changed the outcome as to his guilt]; *Schell v. Witek* (9th Cir. 1999) 181 F.3d 1094, 1103-1104 [failure to consult a fingerprint expert constituted ineffective assistance of counsel where a single fingerprint tied him to the crime]; *Hart v. Gomez* (9th Cir. 1999) 174 F.3d 1067 [failure to investigate and introduce evidence central to Petitioner's defense that corroborated defense witnesses]; *Jones v. Wood, supra*, 114

9

F.3d 1002 [failure to investigate third party culpability and test hairs found on victim's body where defendant had the opportunity but no motive for the homicide [1]]; *Baylor v. Estelle* (9th Cir. 1996) 94 F.3d 1321 [failure to follow-up on a criminalist's report that semen sample taken might not have come from the defendant even where the defendant had confessed, although later recanted alleging the confession was coerced]; *Lord v. Wood* (9th Cir. 1999) 184 F.3d 1083 [failure to investigate evidence that victim was alive day after prosecution's theory for death]; *Brown v. Myers* (9th Cir. 1998) 137 F.3d 1154 [failure to investigate alibi claim and corroborate the defendant's testimony].)

"[W]here the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed." (*People v. Pope* (1979) 23 Cal.3d 412, 425.) Whether to call certain witnesses is a matter of trial tactics unless the decision results from unreasonable failure to investigate. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1059.)

In some cases, the appellate record sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the appellate court affirms, because a claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding, because in such proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of. (*People v. Pope, supra*, 23 Cal.3d at p. 426; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; *People v. Lewis* (1990) 50 Cal.3d 262, 288.)

/////

/////

10

**GROUND 6**

**APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT FILING AN "ON THE MERITS" BRIEF ATTACKING THE CONVICTION, THUS DENYING PETITIONER HIS RIGHT TO COUNSEL UNDER THE 6th and 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION**

The only issues raised by Appellate Counsel were that the Utah conviction did not constitute a strike or serious felony and that Petitioner had a right to a jury determination as to whether the Utah standard met the California standard under Penal Code section 1192.8.

Petitioner alleges that there were many issues that could have been raised, namely: an incorrect analysis under Evidence Code section 1101(b) allowing evidence of uncharged conduct to be introduced to the jury;. the failure of the trial court to instruct under Evidence Code section 403()2); the giving of CALJIC 2.50 (which is claimed to violate due process) and not CALJIC 2.50.1 or 2.50.2,; that the giving of CALJIC 2.50 was exacerbated by also giving CALJIC 2.03, 2.06 2.15 and 2.52; that the trial court should have instructed the jury on the elements of the "uncharged crimes" from the Biser, Mirabile and Boner incidents ; the evidence of Miabile was prosecutorial misconduct and should have been stricken , the trial court erred in giving CALJIC 2.03 "consciousness of guilt falsehood" and CALJIC 2.06 "efforts-to-suppress-evidence; and that the trial court improperly denied him a trail transcript to prepare a Motion for New Trial.  He further states these in Grounds 8, 10,11,12,13,14 17, and 27.

The issues regarding claims regarding Ineffective Assistance of Appellate Counsel in this regard have been framed for further review in the proper court.

11

275

## GROUND 7

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY ALLOWING THE INTRODUCTION OF THE JACK BEISERS, CHARLES MIRABILE AND JANICE BONER INCIDENTS AS WELL AS NOT INVESTIGATING BEISER'S TESTIMONY , THUS DENYING PETITIONER HIS RIGHT TO COUNSEL UNDER THE 6th and 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION**

Trial counsel sought to have the evidence excluded on June 14, 2002.  (RT 1379-1384)  He repeated these objections on July 17, 2002. (RT .1627-1628.)  He objected further just before the Prosecution called the first witness. (RT 1741-1746)  However; he filed no moving papers and failed to argue any law governing the admissibility of the prior crime evidence.

Additionally, the first time Mr. Guthrie talked to the witness Jack Beisers was when he was on the stand in front of the jury.

It was Mr. Guthrie who said he could be ready in a week.  It was Mr. Guthrie who did not move for a continuance to prepare himself for a trial in which his client was facing in excess of 40 years in prison and had a very questionable out of state conviction.  It was Mr. Guthrie who had been advisory counsel on this case for over six months.  It was Mr. Guthrie who worried about the case going into July and flatly stated that with him trying the case it would not.

To say that any failure of investigation or preparation on Mr. Guthrie's part is excused because he only had the case for a week (when he "had it" for over half a year), reduces the Sixth Amendment to an illusory promise.

## GROUND 8

**THE TRIAL COURT ERRED IN DENYING THE MOTION TO EXCLUDE THE JACK BEISERS, CHARLES MIRABILE AND JANICE BONER INCIDENTS, THE PHOTOGRAPHIC LINEUP WAS UNDULY SUGGESTIVE; AND THE TRIAL COURT SHOULD HAVE INSTRUCTED THE JURY TO DISREGARD EVIDENCE OF THE JANICE BONER THEFT ABSENT A FINDING THE DEFENDANT POSSESSED HER PROPERTY AND APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT FILING AN "ON THE MERITS" BRIEF ON THESE**

276

**ISSUES, , THUS DENYING PETITIONER HIS RIGHT TO COUNSEL UNDER THE 6th and 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION**

A motion to exclude the photographic lineup was litigated before trial and denied. (RT 1648-1729).

The trial court denied Mr. Guthrie's motion to exclude the Beisers. Mirabile and Boners incident under Evidence Code section 352. Or, more accurately, overruled his oral objection.

The issues regarding claims regarding Ineffective Assistance of Appellate Counsel in this regard have been framed for further review in the proper court.

**GROUND 9**

**THE TRIAL COURT FAILED TO GIVE A MODIFIED VERSION OF CALJIC 2.50.1 WHICH WOULD INSTRUCTED THE JURY THAT THE PROSECUTION WAS REQUIRED TO PROVE THE UNCHARGED MISCONDUCT BEYOND A REASONABLE DOUBT. THIS WAS A STRUCTURAL DEFECT UNDER FULMINATE AND IT WAS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL NOT TO RAISE IT, THUS DENYING PETITIONER HIS RIGHT TO COUNSEL UNDER THE 6th and 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION**

The trial court made a finding that the prosecution would be required to prove the uncharged misconduct beyond a reasonable doubt. (RT 1748-1749).

Thus, the court declined to give CALJIC 2.50.1, which requires proof of uncharged conduct by a mere preponderance. Neither side objected. (RT 1748 -1749, 2722.)

Petitioner asserts that the court should have given a modified version of CALJIC 2.50.1 that told the jury that the prosecution was required to prove the uncharged misconduct beyond a reasonable doubt.

Petitioner asserts that the failure of Appellate Counsel to raise this issue was ineffective assistance of counsel.

13

## GROUND 10

**THE TRIAL COURT ERRED IN NOT GIVING AN INSTRUCTION UNDER EVIDENCE CODE SECTION 403(C)(2) REGARDING THE MIRABILE INCIDENT EVIDENCE AND THAT APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT RAISIN THIS ISSUE AND TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT MOVING TO STRIKE THE EVIDENCE THUS DENYING PETITIONER HIS RIGHT TO COUNSEL UNDER THE 6th AND 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION. THE EVIDENCE ALSO VIOLATED PETITIONER'S RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE 6TH AND 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

The trial court conditionally allowed evidence of the Charles Mirabile incident under Evidence Code section 1101(b) subject to a motion to strike under Evidence Code section 403(b) . (RT 1741-1750, CT 510-511)

Charles Mirabile never testified.

Appellate Counsel did not raise this issue.

Trial counsel did not make a motion to strike.

By failing to act, Trial Counsel denied, or at least acquiesced in the denial, Petitioner his federal rights to confrontation under *Crawford v. Washington* (2004) 541 U,S, 36,[157 L.Ed.2d 177, 124 S.Ct. 1354]

## GROUND 11

**IT WAS MISCONDUCT FOR THE PROSECUTOR TO INTRODUCE EVIDENCE OF THE MIRABILE INCIDENT, FAIL TO CALL MIRABILE AND ARGUE IT TO THE JURY.  IT WAS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL TO NOT OBJECT TO THIS MISCONDUCT AND ARGUMENT AND INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL TO NOT RAISE THIS ISSUE THUS DENYING PETITIONER HIS RIGHT TO COUNSEL AND CONFRONTATION UNDER THE 6th AND 14th AMENDMENTS TO THE UNITED STATES CONSTITUTION**

The prosecution never introduced evidence of anyone seeing Petitioner enter Mirabile's vehicle and never called Mirabile.

14

The prosecution never introduced any evidence that anyone ever saw Petitioner with Mirabile's property (which was then found at other crime scenes).

Yet, the Trial Court allowed the introduction of evidence of the Mirabile incident as some means of preventing Petitioner from showing Mirabile did the burglaries Petitioner was charged with. (RT 1742-1750)

Trial counsel never objected to this highly prejudicial evidence and the introduction of hearsay evidence. He also failed to make any motions to strike the evidence regarding the testimony or ask for any limiting instructions to the jury. He did not object when the Prosecutor argued these facts not in evidence in Final Argument. All of this denied Petitioner his Right to Counsel and Confrontation and Fair Trial under the Sixth Amendment and to due process under the Fourteenth Amendment.

Appellate counsel failed to raise the issue. He also failed to preserve the issue under *Crawford*, *infra*.

## GROUND 12

**GIVING CALJIC 2.50 VIOLATED PETITIONER'S RIGHT TO DUE PROCESS BECAUSE THE INSTRUCTION REMOVED OR LESSENED THE PROSECUTION'S BURDEN OF PROOF REGARDING ALL THE ELEMENTS OF THE CHARGED CRIMES APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ISSUE ON APPEAL**

Petitioner adequately addressed Ground 12 in his Petition (pp. T-228-245) and desires that it remains.

## GROUND 13

**BY GIVING CALJIC 2.50 REGARDING UNCHARGED CONDUCT WITHOUT ADEQUATE PROOF AND IN CONJUNCTION WITH CALJIC'S 2.03, 2.06, 2.15 AND 2.52 IMPROPERLY LESSENED THE PROSECUTION'S BURDEN OF PROOF AND FAILURE TO RAISE THIS ISSUE ON APPEAL WAS INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL UNDER THE 6th AMENDMENT AND THE FEDERAL DUE PROCESS PROTECTIONS**

15

279

Petitioner adequately addressed Ground 13 in his Petition (pp. T-246-258) and desires that it remains.

### GROUND 14

**THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE ELEMENTS OF THE UNCHARGED CRIMES IN VIOLATION OF PETITIONER'S TRIAL RIGHTS UNDER THE 6th AND 14th AMENDMENT AND APPELLATE COUNSEL FAILED TO RAISE THE ISSUE ON DIRECT APPEAL THUS RENDERING INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF PETITIONER'S 6th AND 14th AMENDMENT RIGHTS.**

Petitioner adequately addressed Ground 14 in his Petition (pp. T-259-267) and desires that it remains.

### GROUND 15

**THE TRIAL COURT FAILED TO INSTRUCT THAT THE JURY MUST FIND THE PRELIMINARY FACTS OF THE UNCHARGED MIRABILE AND, BONER AND BIESER INCIDENTS TRUE BEFORE THEY COULD FIND ANY INFERENCES UNDER CALJIC 2.50 TO BE TRUE. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO REQUEST SUCH INSTRUCTION AND APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT RAISING THE ISSUE ON DIRECT APPEAL**

Petitioner adequately addressed Ground 15 in his Petition (pp. T-268-282) and desires that it remains. He further requests that the Court incorporate by reference all arguments made under Grounds 8, 10 and 14 above.

### GROUND 16

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT INTRODUCING INTO EVIDENCE THE FACT THAT PETITIONER WAS NEVER PROSECUTED OR CHARGED WITHIN THE MISCONDUCT PRESENTED THUS DENYING PETITIONER OF A MERITORIOUS DEFENSE AND VIOLATING HIS RIGHTS UNDER THE 6th AND 14th AMENDMENT.**

Petitioner adequately addressed Ground 16 in his Petition (pp. T-283-288) and desires that it remains.

16

290

A reviewing court will not find ineffective assistance of counsel where the challenged omission could have been the result of an informed reasonable tactical choice rather than of neglect. (*People v. Pope* (1979) 23 Cal.3d 412, 425-426.) In some cases, however," there simply could be no satisfactory explanation," and it is appropriate to seek relief via direct appeal as opposed to habeas corpus. *(Id.* at pp 425-426.) If a diligent, ordinarily prudent lawyer in a criminal case would not have made the tactical decision, then it may prove that counsel was incompetent to elect to follow such a tactical course. (*Id.* at p. 424.) "This is true even if the decision was not made from ignorance of the law or a fact." (*Ibid.)* If trial counsel did these acts out of ignorance of the law, there would not be invited error. (People v. *Cooper,* (1991) 53 Cal.3d 771, 830.) Thus, "where the record shows that counsel has failed to research the law or investigate the facts in the manner of a diligent and conscientious advocate, the conviction should be reversed since the defendant has been deprived of adequate assistance of counsel. [Citation.]" (*People v. Pope, supra*, 23 Cal.3d at pp. 425-426.)


## GROUND 17

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT OBJECTING TO THE GIVING OF INSTRUCTIONS REGARDING CONSCIOUSNESS OF GUILT AND DESTRUCTION OF EVIDENCE AND APPELLATE COUNSEL WAS INEFFECTIVE BY NOT RAISING THE ISSUE ON DIRECT APPEAL.**

The Trial Court gave CALJIC 2.03, the standard "consciousness-of-guilt-falsehood" instruction. (RT 2760).

This was apparently based on Petitioner statements allegedly made during the commission of the charged and uncharged offenses. He allegedly told a Ms. Goedhuys that he was looking for the manager of a construction site. (RT 1838). He

17

also supposedly told Mr. Hammerling that he was looking for a neighbor and was at the wrong address.  Finally, evidence was introduced that he falsely told the arresting officer that he left his identification at home.

Petitioner concedes that *People v. Edwards* (1992) 8 Cal.App.4th 1092 says at 1103 that "The giving of CALJIC No. 2.03 is justified when there exists evidence that the defendant prefabricated a story to explain his conduct".  However,  the record is devoid of any evidence that these were prefabricated stories. Also, in *Edwards*, the statement was made to the police and the Defendant testified. (*id.*).  That is not what happened here.

Trial counsel should have made these distinctions and objected strenouly, if for no other reason to protect the record.

The Trial Court also gave CALJIC 2.06, the standard "efforts to suppress evidence" instruction. (RT 2760).

The alleged "effort to suppress evidence" occurred as the Petitioner "abandoned" allegedly stolen property.  (RT 2111-2113, 2097-210).  How this logically could be suppression of evidence is difficult to see.  However the real claim is that trial counsel appears to have not been prepared for this and failed to make an adequate objection and preserve the record.

A trial attorney may be found to have rendered inadequate assistance on the basis of an appellate record whenever there simply could be no satisfactory, plausible or rational explanation for the act or omission complained of. (*People v. Plager* (1987) 196 Cal. App. 3d 1537, 1543; *People v. Moreno* (1987) 188 Cal. App. 3d 1179, 1191; *People v. Marquez* (1986) 188 Cal. App. 3d 363, 368.)

/////

/////

18

**GROUND 18**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
WHEN HE FAILED TO OBJECT TO THE PROSECUTOR ARGUING TO
THE JURY THAT THE EVIDENCE OF THE UNCHARGED REGARDING
JACK BIESER AND CALLING HIM A THIEF AND SAYING HE STEALS
ALL DAY LONG.  THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER
THE 6th AND 14th AMENDMENTS**

Petitioner adequately addressed Ground 18 in his Petition (pp. T-299-311) and

desires that it remains.

In Argument to the jury, the Prosecutor argued that the uncharged evidence

showed that Petitioner "steals stuff out of people's cars.  That's what he did all day

long.  He called Petitioner "a thief".  (RT  2812; 11-27.)

**GROUND 19**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
WHEN HE FAILED TO OBJECT TO THE PROSECUTOR COMMITTING
NUMEROUS ACTS OF MISCONDUCT IN ARGUMENT TO THE JURY.
THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th
AMENDMENTS**

Petitioner adequately addressed Ground 19 in his Petition (pp. T-312-355) and

desires that it remains.

**GROUND 20**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
WHEN HE FAILED TO OBJECT TO THE PROSECUTOR MISSTATING
THE LAW IN ARGUMENT TO THE JURY.  THIS DEPRIVED PETITIONER
OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

Petitioner adequately addressed Ground 20 in his Petition (pp. T-356-366) and

desires that it remains.

At this point, Petitioner desires to amplify Grounds 18, 19 and 20.

SHUFELT Defendant's Pleadings in Support of *Habeas Corpus* SCD 163510 HC 18018

1    Ordinarily, prosecutorial misconduct during final argument is waived, unless

2  defense counsel timely objects to the remarks, and asks the court to admonish the jury

3  to disregard them. "'[I]n the heat of a trial, defense counsel is best able to determine

4  proper tactics in the light of the jury's apparent reaction to the proceedings. The

5  choice of when to object is inherently a matter of trial tactics not ordinarily

6  reviewable on appeal.'" (*People v. Freeman* (1994) 8 Cal.4th 450, 516.)x However,

7

8  due process requires that counsel's performance fulfill the right of the accused to "the

9  reasonably competent assistance of an attorney acting as his diligent and

10  conscientious advocate." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)

11  Consequently, a failure to object does warrant reversal for ineffective assistance of

12  counsel in the unusual case where "the record on appeal affirmatively discloses that

13  counsel had no rational tactical purpose" in not objecting. (*People v. Bradford* (1997)

14  14 Cal.4th 1005, 1052.)

15    This is such a case. No particular decision by trial counsel to act or not to act

16

17  in a particular manner can be regarded as "tactical" or "strategic" unless the decision

18  was both "rational and informed." (*In re Marquez* (1992) 1 Cal.4th 584, 606.). It is

19  inconceivable that defense counsel's permitting the prosecutor to so trivialize the

20  state's burden of proof, argue facts not in evidence, hint that the defense team (Dr.

21  MacSpeiden was committing perjury (reasonable doubt for a reasonable fee", and

22  allowing Petitioner to be called a thief who steals all day long, could have benefited

23  Petitioner t in any way.  Therefore, no further inquiry should be required before this

24  court can reliably adjudicate this issue.

25    The appellate courts of this state have consistently and repeatedly held that a

26

27  prosecutor is not permitted to attack the personal integrity of defense counsel or to

28  suggest that defense counsel is manufacturing evidence or suborning perjury. (*People*

20

284

*v. Charlie* (1917) 34 Cal.App.411, 415; *People v. Talle* (1952) 111 Cal.App.2d 650; *People v. Bain* (1971) 5 Cal.3d 839; *People v. Thompson* (1988) 45 Cal.3d 86, 112; *People v. Bell* (1989) 49 Cal.3d 502, 537; *People v. Espinoza* (1992) 3 Cal.4th 806, 820; *People v. Herring* (1993) 20 Cal.App.4th 1066, 1075.) As explained in *Espinoza*, a prosecutor's rude and intemperate behavior may be so egregious as to infect a trial with fundamental unfairness and render any conviction a denial of due process in violation of the federal constitution. However, conduct by a prosecutor that does not render a criminal trial fundamentally unfair is nonetheless prosecutorial misconduct under state law if it involves the use of deceptive or reprehensible methods to attempt to persuade a jury.

Included within the deceptive or reprehensible methods condemned are personal attacks on the integrity of defense counsel.

The prosecutor got a little too loose when he talked about Dr. MacSpeiden giving "reasonable doubt for a reasonable fee.." The implication is that defense counsel had trotted out performers for his case, which would be less than honest.

The prosecutor made light of the standard of proof of Beyond a Reasonable Doubt.

The prosecutor's improper argument deprived Petitioner t of his rights to due process of law and a fair jury trial inherent in the proof-beyond-a-reasonable-doubt standard. (*Victor v. Nebraska* (1994) 511 U.S. 1, 14-15 [114 S.Ct.1239, 127 L.Ed.2d 583, 590].) Where, as is the case here, error serves to effectively deprive a defendant of such federal constitutional safeguards, review is required at a minimum under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S. Ct. 824; 17 L. Ed. 2d 705]. The State must prove beyond a reasonable doubt that the error did not contribute to the verdict. (*Delaware v. Van Arsdall supra* 475 U.S. 673, 684;

21

*People v. Bolton* (1979) 23 Cal.3d 208, 212-215; fn 4 [indicating *Chapman* appropriate standard for prosecutorial misconduct infringing constitutional safeguards].)  The inquiry is therefore whether this error was "harmless beyond a reasonable doubt." (*Delaware v. Van Arsdall ibid.*  Moreover, this error is truly subject to per se reversal.  The prosecutor's argument violated due process of law by undercutting the required level of certainty to which a jury must be persuaded before it can reliably determine that the prosecution has met its burden of proof beyond a reasonable doubt. (*Cage v. Louisiana* (1990) 498 U.S. 39, 41 [111 S.Ct. 328, 112 L.Ed.2d 339].  Thus, this was an error which violated Petitioner's state and federal constitutional rights to due process of law.  This type of error is a structural defect which requires per se reversal because a defendant is entitled to have the jury, not a reviewing court, apply a correct reasonable doubt standard in determining the issue of guilt. (*Sullivan v. Louisiana*, supra, 508 U.S. 275 at pp. 281-282)

In *Arizona v. Fulminante* (1991) 499 U.S. 279, 306-310 [111 S.Ct. 1246, 113 L.Ed.2d 302], where the United States Supreme Court held that the erroneous admission of a coerced confession was not reversible per se, the high court distinguished between "trial errors,' which are subject to the general rule that a constitutional error does not require automatic reversal, and 'structural' errors, which 'defy analysis by harmless-error standards' and require reversal without regard to the strength of the evidence or other circumstances.  Fulminante characterized trial errors as those that occur 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt.'  Structural errors, on the other hand, are "structural defects in the constitution of the trial mechanism ... affecting the framework within which the trial proceeds, rather than

22

286

simply an error in the trial process itself.'" With regard to such structural errors, Fulminante explained: " 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." (*People v. Flood* (1998) 18 Cal.4th 470, 493, citing *Fulminant*e, 499 U.S. at pp. 306-310).

The errors here were structural. The failure to object to these very structural errors was ineffective assistance.

It is well-established that a prosecutor may not go beyond the evidence in his closing argument to the jury. Likewise, his personal opinion has no place in a criminal trial. (*People v. Benson* (1990) 52 Cal.3d 754, 794; *People v. Ledesma* (1987) 43 Cal.3d 171, 238; *People v. Kirkes* (1952) 39 Cal.2d 719, 724

"Statements of supposed facts not in evidence, either because never offered, or offered and excluded or stricken, or admitted for a limited purpose outside the scope of the comment, are a highly prejudicial form of misconduct, and a frequent basis for reversal. The effect of such remarks is to lead the jury to believe that the district attorney, a sworn officer of the court, has information which the defendant insists on withholding; or that they may consider matters which could not properly be introduced in evidence."

Argument asserting facts outside the record is improper in part because it makes the prosecutor a witness, rather than a mere advocate. "The prosecutor's statement constituted improper argument, for he was attempting to smuggle in by inference claims that could not be argued openly and legally. In essence, the prosecutor invited the jury to speculate about - and possibly base a verdict upon- 'evidence' never presented at trial." (*People v. Bolton* (1979) 23 Cal.3d 208, 212.) Because "the prosecutor, serving as his own unsworn witness, is beyond the reach of

23

cross examination," misconduct of this form violates a defendant's Sixth Amendment right to confrontation. (*Id.*, at 214, fn 4.) Expression of personal opinion by a prosecutor encroaches upon a defendant's Sixth Amendment right to confront and cross-examine witnesses since the prosecutor, by expressing an opinion, effectively becomes an unsworn witness against the defendant.

The failure to know this body of law and to object was ineffective assistance of counsel.

## GROUND 21

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO OBJECT TO THE PROSECUTION USING THE WORD "IDENTIFICATION" AND WHEN HE HIMSELF DID IT, DESPITE AN ORDER FROM THE TRIAL COURT NOT TO USE THE WORD. THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THEEth AND 14TH AMENDMENTS** 6

In addition to the arguments posed by Petitioner in his Petition at pp. T-367 - 393, this is just another example of the lack of preparation and effectiveness by Trial Counsel.

This was a "i.d." case.  The best defense Petitioner had was in identification and casting doubt of the identification.

This was not a mere "tactical choice."

What possible defense l trial tactic would include basically stipulating that your client had been identified as the burglar?

## GROUND 22

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE INTRODUCED EVIDENCE THAT PETITIONER HAD AN ARREST WARRANT OUTSTANDING, A HISTORY OF RUNNING FROM POLICE, ARGUED AGAINST HIS CLIENT AND FAILED TO REQUEST A DEFENSE MODIFICATION TO CALJIC 2,52.. THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

288

SHUFELT Defendant's Pleadings in Support of *Habeas Corpus* SCD 163510 HC 18018

Petitioner adequately addressed Ground 22 in his Petition (pp. T-394-402) and desires that it remains.

## GROUND 23

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO IN-COURT-VOICE IDENTIFICATION BY WITNESS DIANE GOEDUHY AND BY FAILING TO ASK THE COURT TO ASK THE WITNESS TO PARTICIPATE IN A 'VOICE LINEUP.' THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

Petitioner adequately addressed Ground 23 in his Petition (pp. T-403-411) and desires that it remains.

## GROUND 24

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY CALLING JACK BIESER AS A WITNESS WITHOUT ANY PREPARATION AND CONCEDING IDENTITY. THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

In addition to the points raised by Petitioner regarding Ground 24 in his Petition (pp. T-412-429), as stated above, Trial Counsel never interviewed Jack Beiser prior to calling him to the stand.

This lack of preparation can not be for any tactical purpose.

## GROUND 25

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY CONCEDING IDENTITY, ALLOWING IN COURT IDENTIFICATION USING THE PHRASE IDENTIFICATION AND ALLOWING A WITNESS TO GIVE AN OPINION. THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

Petitioner adequately addressed Ground 25 in his Petition (pp. T-430-460) and elsewhere and desires that it remains.

/////

/////

289

25

# GROUND 26

**APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT RAISING THE ERRONEOUS EXCLUSION OF PARTS OF DR. MACSPEIDEN'S TESTIMONY.  THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

Petitioner adequately addressed Ground 26 in his Petition (pp. T-461-460) and elsewhere and desires that it remains.

# GROUND 27

**APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT RAISING THE TRIAL COURT DENIAL OF A TRANSCRIPT FOR PETITIONER TO PREPARE A NEW TRIAL MOTION. TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ASSISTING PETITIONER, AS HE REMAINED ON THE CASE AS ADVISORY COUNSEL THIS DEPRIVED PETITIONER OF HIS RIGHTS UNDER THE 6th AND 14th AMENDMENTS**

The following facts bear briefly restating here.

On June 17, 2007, trial began and on June 27, 2002 a jury found Petitioner guilty of all counts and allegations.  (RT 2899-2905.)  On June 28, 2002, the same jury found the Petitioner's prior conviction to be true. (RT 2952.)

At a special setting on July 12, 2002, Judge Lasater granted Petitioner's motion for self-representation, so he could file a Motion for New Trial and set the matter for Motions and Sentencing for August 12, 2002. (RT 2291-2997.) (CT 719)

On June 21, 2002, Petitioner filed a "Motion for Trial Transcripts. Waiver of Fee" dated June 21, 2002.  In an Ex Parte Order on June 30, 2002, the court grants the motion for transcripts of sidebar conferences only and denies the motion in all other respects. (CT p. 720.)

August 12, 2002, Judge Lasater denied Petitioner's motion to continue the matter and made Petitioner argue his Motion for New Trial orally and limited him to the end of the day to finish his argument. (RT p. 3012., CT p. 721)

SHUFELT Defendant's Pleadings in Support of *Habeas Corpus* SCD 163510 HC 18018

After denying the Motion for New Trial, the sentencing in the matter was continued until August 22, 2002 to comply with the requirement that Petitioner had the Probation Report for five days.

A New Trial Motion is an integral part of the trial itself. It is not a collateral attack.

A New Trial Motion must be heard and decided before Judgment. A Judgment is not effective until the clerk of the court enters it. (*People v. Sainz* (1967) 253 Cal.App.2d 496, 500; *People v. Jaramillo* (1962) 208 Cal.App.2d 620, 627.) Without Judgment being entered there is no "conviction", so a New Trial Motion is not a post conviction remedy.

California Penal Code Section 1181 provides as follows:

> Grounds; modification of verdict, finding or judgment to conform to evidence
> When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:
> 1. When the trial has been had in his absence except in cases where the trial may lawfully proceed in his absence;
> 2. When the jury has received any evidence out of court, other than that resulting from a view of the premises, or of personal property;
> 3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented;
> 4. When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors;
> 5. When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial, and when the district attorney or other counsel prosecuting the case has been guilty of prejudicial misconduct during the trial thereof before a jury;
> 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting

or ordering a new trial, and this power shall extend to any court to which the cause may be appealed;

7. When the verdict or finding is contrary to law or evidence, but in any case wherein authority is vested by statute in the trial court or jury to recommend or determine as a part of its verdict or finding the punishment to be imposed, the court may modify such verdict or finding by imposing the lesser punishment without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed;

8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable.

9. When the right to a phonographic report has not been waived, and when it is not possible to have a phonographic report of the trial transcribed by a stenographic reporter as provided by law or by rule because of the death or disability of a reporter who participated as a stenographic reporter at the trial or because of the loss or destruction, in whole or in substantial part, of the notes of such reporter, the trial court or a judge, thereof, or the reviewing court shall have power to set aside and vacate the judgment, order or decree from which an appeal has been taken or is to be taken and to order a new trial of the action or proceeding.

There is another ground for a new trial in California, that of ineffective assistance of counsel. (*People v. Fosselman* (1983) 33 Cal.3d 572, 582-583)

When a motion for new trial is made, the trial court not only has the power to rule on the sufficiency of the evidence, but the duty to do so. (*People v. Borchers* (1958) 50 Cal.2d 321.)  The right to have a motion for new trial is important because the standard of review by the court of the sufficiency and credibility of the evidence is more favorable to the defendant than that standard of review which is exercised by the appellate court. The trial court may grant a new trial if it finds that the prosecution's

28

evidence is not credible, even if the evidence would otherwise be legally sufficient. (*People v. Veitch* (1982) 128 Cal.App.3d 460, 467.)

Additionally, Penal Code Section 1202 provides in relevant part:

. . . If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment . . . then the defendant shall be entitled to a new trial..

Because California Law establishes that a New Trial Motion is a critical stage of he proceeding, California defendants are entitled to counsel at such proceedings. Denial of a transcript operates as a denial of counsel.

Since the present California Penal Code was enacted in 1872, all criminal defendants in California who are convicted after trial have enjoyed the statutory right to move for a new trial. Pen. Code § 1181. The state courts have long recognized the critical importance of bringing a new trial motion. See, e.g., *People v. Edgmon*, (1968) 267 Cal.App.2d 759, 766-767 ("The new trial motion is a powerful weapon in the arsenal of the defense in a criminal case. . . . [A]lthough the chances that the judge actually will grant such a motion may seem slight, vigilant advocacy would usually demand the effort.").

In large part, the importance of a new trial motion under California law is premised on the fact that, under California law, the trial court is the last entity which can assess the weight and credibility of the evidence.

In this regard, Penal Code section 1181(6) authorizes a trial court to grant a new trial when the verdict is "contrary to the evidence." In passing upon such a motion the trial court must independently weigh the evidence and determine its adequacy. *People v. Diaz*,(1983) 140 Cal.App.3d 821, 826 ; *People v. McClellan* (1980) 107 Cal.App.3d 297, 301); People v. Baldwin (1979) 97 Cal.App.3d 396, 402.

The trial court's function is not merely to assess the sufficiency of the evidence, but the weight of the evidence. *People v. Robarge* (1953) 41 Cal.2d 628, 633-35 People v. *Sarazzawski,* (1945) 27 Cal.2d 7, 15.

In making this assessment, the state Supreme Court has made clear that the trial court is not bound by the jury's decision as to conflicts in the evidence or credibility of witnesses, but must independently assess these factors. *People v. Robarge, supra*, 41 Cal.2d at 633-635; *People v. Sarazzawski, supra*, 27 Cal.2d at 15-16; People v. Veitch, (1982) 128 Cal.App.3d 460, 467. Indeed, a trial court may grant a new trial motion even where the evidence is legally sufficient and where the only evidence presented is from the prosecution. *Sarazzawski, supra,* 27 Cal.2d at 16.

In contrast, an appellate court may review the evidence only for its legal sufficiency. *Ibid.* at 15. Unlike the trial court the reviewing court may not assess the weight of the evidence, and is bound by the jury's decision as to conflicts in the evidence or credibility of witnesses. *Ibid.,* at 15-16. Accord *People v. Veitch, supra,* 128 Cal.App.3d at 467-468 ("[T]he trial judge acts as a '13th juror' . . . since the judge independently weighs the evidence rather than applying the substantial evidence rule and determining legal sufficiency [as an appellate court].")

Because of the critical nature of new trial motions under state law, the Ninth Circuit Court of Appeals has held that the constitutional right to counsel applies and must be honored at such proceedings. ( See, e.g., *Menefield v. Borg,* (9th Cir, 1989) 881 F.2d 696, 699.) There, defendant waived his right to counsel at trial. He was convicted. He then requested appointment of an attorney for post-conviction proceedings, including a new trial motion. The state refused. In a subsequent federal habeas proceeding, the Ninth Circuit Court of Appeals held that the right to counsel attached to California's statutory right to file a new trial motion under § 1181. 881

30

F.2d at 699.  Accordingly, "at least in the absence of extraordinary circumstances, an accused who requests an attorney at the time of a motion for a new trial is entitled to have one appointed, unless the government can show that the request is made for a bad faith purpose." *Id.* at 701; emphasis added.  The Court explained the fundamental rationale behind its decision:

"Forcing the defendant to stumble through post-trial proceedings serves neither the individual nor our system of adversarial justice well.  Therefore, . . . ; we start with the strong presumption that a defendant's post-trial request for assistance of an attorney should not be refused." *Id* at 700.

Thus, California's statutory scheme requires counsel.  However, if counsel does not have the proper "tools" then the right becomes a hollow one and without substance or meaning.

This is especially true when it is new counsel and not the original trial counsel.

Petitioner does not mean to imply that his only grounds were insufficiency of the evidence, he is merely using that as an example.

Petitioner needed to look at the trial transcript to see if evidentiary rulings were correct, if misconduct occurred, if the jury was instructed and behaved properly, etc. In short – to do his job under the 6th and 14th Amendment, Defendant's counsel needs a full transcript.  As advisory counsel, Mr. Guthrie should have ensured that he matter was properly briefed and argued.

In *Roberts v. LaVallee* 3(1967), 89 U.S. 40, [88 S.Ct. 194, 19 L.Ed.2d 41] the United States Supreme Court observed: "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution". (389 U.S. at 42, 88 S.Ct. at 196)

31

295

In *Gardner v. California* (1969) 393 U.S. 367, [89 S.Ct. 580, 21 L.Ed.2d 601] the Supreme Court once again faced the question of an indigent's right to a free transcript. In Gardner, the petitioner, a California state prisoner, filed a request for habeas corpus relief which the state trial court denied. Under California law, the petitioner possessed no right to appeal from that denial, but the law afforded him the opportunity to file a new petition with either the Intermediate Court of Appeals or with the California Supreme Court. Since petitioner Gardner wished to file a new petition with a higher court, he requested a free transcript of his evidentiary hearing before the California state court. The California courts denied his request. The United States Supreme Court granted certiorari and reversed. Speaking for the Court, Mr. Justice Douglas said:

> It is argued that since petitioner attended the hearing in the Superior Court, he can draw on his memory in preparing his application to the appellate court. And that court, if troubled, can always obtain the transcript from the lower court. But we deal with an adversary system where the initiative rests with the moving party. Without a transcript the petitioner, as he prepared his application to the appellate court, would have only his own lay memory of what transpired before the Superior Court. For an effective presentation of his case he would need the findings of the Superior Court and the evidence that had been weighed and rejected in order to present his case in the most favorable light. Certainly a lawyer, accustomed to precise points of law and nuances in testimony, would be lost without such a transcript, save perhaps for the unusual and exceptional case. Since our system is an adversary one, a petitioner carries the burden of convincing the appellate court that the hearing before the lower court was either inadequate or that the legal conclusions from the facts deduced were erroneous. A transcript is therefore the obvious starting point for those who try to make out a case for a second hearing. So long as this system of repeated hearings exists and so long as transcripts are available for preparation of appellate hearings in habeas corpus cases, they may not be furnished those who can afford them and denied those who are paupers. (393 U.S. at 369-370, 89 S.Ct. at 582-583.

32

296

1    This is Petitioner in a nutshell.

2    Under California statute and law, Petitioner had the right to a new trial motion

3    and the assistance of counsel. To deny a transcript is to deny that right.

4    In *Wade v. Wilson*, (1970) 396 U.S. 282,[90 S.Ct. 501, 24 L.Ed.2d 470], the

5    Court declined to rule on the issue of whether or not the Constitution requires a state

6    to furnish an indigent state prisoner a free trial transcript to aid him in preparing a

7    **collateral** attack upon his conviction. In remanding the case, however, the Supreme

8    Court directed the federal district court to retain jurisdiction of the matter on its

9    docket pending the petitioner's successful efforts to obtain access to the original

10   transcript or a copy thereof. As stated, a Motion for New Trial is (1) not a collateral

11   attack (2) based on a California statute that is over 130 years old.

12   Petitioner is and was indigent. He has been convicted and faced in excess of

13   40 years in state v prison. There were court reporters at his trial. The attorney at his

14   trial is no longer his attorney for the New Trial Motion. .

15   The state bore the burden of showing why Petitioner did not need the total trial

16   transcript.

17   Petitioner should not have had to bear the burden of showing with any

18   particularity why he needs trial transcripts to assist his counsel in assisting him in

19   pursuing a statutory and constitutional right.

20   The state is obligated to provide an indigent defendant in a criminal case with a

21   transcript of prior proceedings where the transcript is "needed for an effective defense

22   or appeal." (*Britt v. North Carolina* (1971) 404 U.S. 226, 227 [30 L.Ed.2d 400, 403,

23   92 S.Ct. 431]; *People v. Hosner*, (1975) 15 Cal.3d 60. Two factors are relevant to the

24   determination of need: (1) the value of the transcript to the defendant in connection

25   with the proceeding for which it is sought, and (2) the availability of alternative

33

297

1  devices that would fulfill the same functions as a transcript. (*Hosner, supra,* 15 Cal.3d

2  at p. 65.) The defendant is presumed to have a particularized need for complete

3  transcripts.  To overcome the presumption, the state must show defendant's lack of

4  need for, or access to, adequate alternatives that afford him an effective defense. (*Id.*

5  at pp. 66, 68.)

6

7      Here, the Petitioner needed the trial transcript to see if the errors that he

8  complained about happened.  He has stated in his Petition that not only was previous

9  counsel deficient in investigation, he did not make proper objections, he allowed

10  inadmissible evidence in, he did not request the proper jury instructions, the

11  prosecutor committed misconduct in argument, that the trial judge erred in excluding

12  evidence, etc.  Whether these are arguable or just the "sour grapes" of a convicted

13  man was certainly open to debate.  The problem is that new counsel is duty bound by

14  the law and ethics to look at the record to see if there are any arguable issues.

15

16      Under *Britt, supra,* 404 U.S. 226 and *Hosner, supra,* 15 Cal.3d 60, absent a

17  proper showing by the prosecution, a defendant is entitled to complete transcripts to

18  prepare for retrial after a mistrial.  Unwarranted denial of a timely motion for

19  transcripts constitutes reversible error. (*People v. Hosner*, supra, 15 Cal.3d at p. 66;

20  *People v. Vaughn* (1981) 124 Cal.App.3d 1041, 1044; *People v. Coats* (1984) 154

21  Cal.App.3d 1153, 1155-1156.  A contention that *Hosner's* presumption of need and

22  per se rule of reversal, which apply to requests for transcripts to prepare for retrial, do

23  not apply to a request for transcripts to prepare a motion for new trial is dangerous

24  and not applicable to this case where there is new counsel, the Petitioner.

25

26      Nor is the partial transcript method employed by the Trial Court here adequate.

27  *Kennedy v. Locklear* (9th Cir. 2004) 379 F.3d 1041.

28

34

298

Petitioner concedes that an indigent defendant "is not entitled, as a matter of absolute right, to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial; but, since a motion for a new trial is an integral part of the trial itself, a full reporter's transcript must be furnished to all defendants ... whenever necessary for effective representation by counsel at that important stage of the proceeding." (*People v. Lopez* (1969) 1 Cal.App.3d 78. There are no mechanical tests for deciding when the denial of transcripts for a motion for new trial is so arbitrary as to violate due process or to constitute a denial of effective representation. Each case must be considered on its own peculiar facts and circumstances. (*Ibid.*)

In *Lopez, supra,* the defendant had been represented at trial by a public defender. After trial he substituted **retained** counsel for his new trial motion and unsuccessfully requested a free trial transcript for his new attorney's use. The appellate court affirmed the denial of his request, noting that a transcript is "absolutely essential" for an appeal which is heard before a tribunal different from the trial court, usually months after the trial concluded. On the other hand, a motion for new trial is **generally made by the lawyer who tried the case** before the judge who presided at trial at a time when the testimony is still fresh in everyone's mind. Thus, there is no need for a full trial transcript in the **ordinary** motion for new trial. (*Lopez,* at p. 82.) That is not what we have here. We have a different lawyer, the Petitioner, and this is no ordinary motion.

In *Lopez,* the denial may have been proper. There was no contention the public defender failed to conduct a competent defense on defendant's behalf; no reason why a substitution of attorneys was necessary or desirable at that late stage; and no showing why the public defender could not have assisted the new attorney in

299

1  preparing for the motion. (*Id.* at 83)  We do not have that here.  The court has made

2  the determination that new counsel is needed and that the Defendant has the right to

3  assert the ineffectiveness of counsel claim, thus making cooperation impossible.

4

5      In *People v. Westbrook* (1976) 57 Cal.App.3d 260, defendant was represented

6  at trial by the public defender but after trial substituted **retained** counsel to prepare a

7  new trial motion.  New counsel's request for a transcript of the trial was denied.  The

8  appellate court noted that *People v. Lopez, supra,* sustained a denial of a request for

9  transcripts to prepare a motion for new trial on two grounds: the problems involved in

10 potential delay and the availability of trial counsel for consultation on the only issue

11 that new counsel indicated he hoped to raise.  Neither ground existed in the

12 *Westbrook* case.  Delay was not an issue since the trial court had granted new counsel

13 a continuance to prepare for the motion.  Further, since one of the grounds that new

14 counsel indicated he hoped to raise was inadequate representation by the original

15 counsel, trial counsel was unlikely to be of assistance. *People v. Lopez* was

16 distinguishable, and *Westbrook's* motion should have been granted if he had shown he

17 was unable to procure a transcript at his own expense.  *Westbrook, supra,* 57

18 Cal.App.3d at p. 263. This was with **retained** counsel.

19

20      It is incumbent upon trial lawyers to know this body of law.  It was incumbent

21 on Trial Counsel as Advisory Counsel to act to preserve Petitioner's rights.  Failure to

22 do so can in no way be considered tactical.  It was ineffective assistance of counsel.

23      /////

24      /////

25      /////

26      /////

27

28

300

# GROUND 28

## TRIAL COUNSEL'S DEFICIENCIES WERE CUMULATIVELY PREJUDICIAL AND THE CONVICTIONS CAN NOT STAND

Even assuming that this Court determines defense counsel's various failings, are not sufficiently prejudicial to compel relief when considered individually, the **cumulative** effect of all of these errors and omissions combined irreparably prejudiced Petitioner's constitutional rights to a fair trial, due process of law, and a reliable verdict as guaranteed by the Fifth, Sixth and Fourteenth Amendments.

The cumulative effect of multiple errors may constitute a miscarriage of justice even though the prejudicial impact of any one error may be slight. Furthermore, where one or more of the errors is a federal constitutional dimensions, all of the errors must be evaluated under the strict "harmless beyond a reasonable doubt" standard adopted in *Chapman v. California* (1967) 386 U.S. 18.) *People v. Buffum* (1953) 40 Cal.2d 709, 726; *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 388; *United States* v. *McLister* (9th Cir. 1979) 608 F.2d 785.)

The cumulative error rule requires relief in this case where a continuing series of trial court errors and defense counsel omissions deprived Petitioner of any semblance of a fair trial.

Trial counsel was unprepared on the law. He was unprepared on the facts. He did not move to continue the case to prepare when he was finally given the lead to tray the case seven days before the jury walked in. As some courts have put it, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend . . . an empty formality." (*Ungar v. Sarafite* (1964) 376

37

301

U.S. 575, 589 [84 S.Ct. 841, 11 L.Ed.2d 921]].) He failed to make a record on many points.

This can not all be acceptable tactics. "Even a deliberate tactical choice by counsel, however, may be an incompetent one." *People v, Wader* (1993) 5 Cal.4[th] 610, 658.

Trial counsel stood by while his client was denied many substantial constitutional rights and did nothing to attempt to stop it.

This trial was a sham.

As Mr. Justice Stewart stated: "Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar. (*Jackson v, Virginia* (1979) 433 U.S. 307, at p. 324., [61 L.Ed.2d 560, 99 S.Ct. 2781.]

The Petitioner is entitled to relief.

## CONCLUSION

Petitioner prays that this Court issue an Order to Show Cause why relief should not be ranted.

Dated:  August 21, 2006

Respectfully Submitted,

W. ALLAN WILLIAMS
Attorney for Petitioner
GEORGE SHUFELT

38

302

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO, CENTRAL DIVISION
### 220 West Broadway; San Diego, CA 92101

| | |
|---|---|
| In the matter of the application of | No. HC 18018 |
| GEORGE SHUFELT, | Case No.  SCD 163510 |
| Petitioner, | D.A. No.  AAO614 |
| For Writ of Habeas Corpus | **PROOF OF SERVICE BY MAIL**<br>**CCP S 1013A AND 2015.5** |

I, the undersigned, declare as follows:

I am employed in the county of San Diego, over eighteen years of age and not a party to the within action.  My business address is 330 West Broadway, Suite 860, San Diego, CA 92101.

On September 20, 2006, a member of our office served a copy of the within REQUEST FOR EXTENSION OF TIME TO FILE SUPLEMENTAL INFORMAL HABEAS RESPONSE AND DECLARATION SUPPORTING EXTENSION REQUEST AND PROPOSED ORDER to the interested parties in the within action by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, in the United States Mail at 330 West Broadway, San Diego, CA 92101, addressed as follows:

W. Allan Williams
Attorney at Law
2650 Jamacha Road #147-106
El Cajon, CA  92019
(619) 593-3790
Attorney for Petitioner Shufelt

George Shufelt
Housing B4, Cell 134
Ironwood State Prison
P.O. Box 2199
Blythe, CA  92226

The Honorable Howard H. Shore
Judge of the Superior Court
220 West Broadway
San Diego, CA  92101

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on September 20, 2006 at 330 West Broadway, San Diego, CA  92101.

_Sherry Crawford_
Sherry Crawford

303

EXHIBIT "QQ"



**JESUS RODRIGUEZ**
ASSISTANT DISTRICT ATTORNEY

**THE DISTRICT ATTORNEY**
COUNTY OF SAN DIEGO

**BONNIE M. DUMANIS**
DISTRICT ATTORNEY

San Diego
330 West Broadway
San Diego, CA 92101
(619) 531-4040

http://www.sandiegoda.com

December 12, 2006

The Honorable Howard H. Shore
Judge of the Superior Court
San Diego County, Central Division

**In re George Shufelt (HC 18018; SCD 163510)**
**Informal Response to Petition for Writ of Habeas Corpus.**

Dear Judge Shore:

The District Attorney's Office responds herein to the supplemental petition for writ of habeas corpus filed by the petitioner, George Shufelt, on August 21, 2006.

Petitioner neither raises new claims in his supplemental petition (SP), nor retracts any of the previous ones. Instead, he merely incorporates all the claims from his original petition, and expands on some of them.

The District Attorney's Office has already responded at length to petitioner's claims in our first informal response (FIR) filed in June 2005, which we incorporate herein. Rather than fully repeat those responses, we would like to expand on some key points.

## ARGUMENT

### I

### Ground Six

Petitioner claims his appellate counsel rendered ineffective assistance by challenging only petitioner's prior conviction on appeal, rather than raising alleged errors committed during his trial in an effort to get his current conviction reversed. (SP p. 11.)

1

304

In Re George Shufelt (HC 18018; SCD 163510)

This claim fails for several reasons:

First, appellate counsel is entitled to a "strong presumption" of competence, and his tactical decisions are entitled to "great deference." (See cases cited at FIR pp. 9-10.)

Second, we have cited cases holding that limiting the issues on appeal, rather than raising every possible issue, to avoid distracting the court with weaker arguments, is a reasonable tactical choice. (FIR pp. 11-12.) Under these cases, appellate counsel properly limited the instant appeal to a challenge of petitioner's prior conviction. This was especially true given that overturning the prior conviction would have spared petitioner seven-and-a-half years of actual time, a substantial benefit that justified focusing on the prior. (FIR p. 12.)

Third, appellate counsel sent petitioner a letter detailing why various possible claims of trial error—including Penal Code section 1385 issues, *Trombetta* issues, photo-lineup issues, right-to-counsel issues, Penal Code section 654 issues, and alleged instruction error—weren't valid. (Original Petition Exhibit Five; FIR p. 12.) The letter said counsel chose to limit the issues only after a "painstaking" review of the record and "meticulous" research. This letter shows that limiting the issues was an informed tactical choice, not the result of incompetence.

Fourth, petitioner hasn't shown that limiting the appellate issues prejudiced him, which is an element of an ineffectiveness of counsel claim. (*People v. Cox* (1991) 53 Cal.3d 618, 656.) He wasn't prejudiced because, as discussed throughout our original response, he hasn't alleged any valid, let alone reversible, trial errors. Thus, there was no reasonable probability that raising these alleged errors would have resulted in reversal, which is the test of prejudice on appeal. (*Smith v. Robbins* (2000) 528 U.S. 259, 285.)

Finally, even if appellate counsel had rendered ineffective assistance, under cases cited in our original response, the remedy would be a new appeal, not a reversal. (FIR pp. 13-14.) Thus, if this court finds appellate counsel was ineffective we ask the court to deny the petition without prejudice to renew it in the court of appeal, which has jurisdiction to recall the remittitur and order a new appeal.

2

305

In Re George Shufelt (HC 18018; SCD 163510)

## II

## <u>Ground Seven</u>

### 1. Mr. Guthrie Objected Properly to the Uncharged Misconduct.

Petitioner's trial counsel, Charles Guthrie, objected to the introduction at trial of petitioner's uncharged misconduct against victims Jack Beiser, Janice Boner and Charles Mirabile on the ground that this evidence was inadmissible under Evidence Code section 352. (Trial Transcript pp. 1379, 1745-1746.) The trial court overruled this objection and admitted the evidence. (*Id.* at p.1747-1748.)

Petitioner claims Mr. Guthrie rendered ineffective assistance because "he filed no moving papers" supporting his objection, and "failed to argue any law governing the admissibility of the prior crime evidence." (SP p. 12, lns. 10-11.)

These claims fail for several reasons:

First, there is no requirement that counsel support an evidentiary objection with written points and authorities. In fact, most evidentiary objections are made orally rather than in writing.

Second, petitioner's allegation that Mr. Guthrie didn't cite any law isn't true. Mr. Guthrie cited Evidence Code 352 in moving to exclude the evidence. (Trial Transcript p. 1746.)

Third, petitioner offers no evidence the trial court would have reversed itself and excluded the uncharged misconduct had Mr. Guthrie supported his objection with written points and authorities or argued differently. Such a reversal would have been unlikely since, as discussed in our original response, the uncharged misconduct was plainly admissible. (FIR pp. 15-21.) Since filing P&A's or arguing differently would therefore have been futile, failing to do so wasn't ineffective assistance of counsel. (*People v. Ferraez* (2003) 112. Cal.App.4th 925, 934 [failing to make a futile objection isn't ineffective assistance of counsel]; FIR p. 19.)

Fourth, absent proof that the trial court would have reversed itself had Mr. Guthrie filed written points and authorities or argued differently, the defendant hasn't met his burden of proving prejudice, which is an element of his ineffectiveness claim.

306

In Re George Shufelt (HC 18018; SCD 163510)

## 2. Mr. Guthrie Had no Duty to Interview Mr. Beiser.

Petitioner also claims Mr. Guthrie rendered ineffective assistance by not investigating Mr. Beiser's prospective testimony, including not interviewing him before he testified. (SP p. 12, lns. 4, 12-13.)

There was no need for any further investigation or interview, however, because Mr. Guthrie had access to reports of three separate law-enforcement interviews with Mr. Beiser, as well as the photo-lineup form he signed, that detailed what he would testify to. (See Attachment.) Petitioner cites no case requiring defense counsel to further investigate prospective testimony that has already been detailed in police reports.

Mr. Guthrie, moreover, cross examined Mr. Beiser, and argued his alleged lack of credibility to the jury, skillfully and thoroughly. (Trial Transcript pp. 1789-1803, 2829-2830.) Thus, Mr. Guthrie rendered reasonable representation regardless of whether he interviewed Mr. Beiser in advance or conducted any further investigation.

Also, to show prejudice, "a defendant alleging ineffective assistance based on counsel's failure to obtain favorable evidence must . . . demonstrate the evidence which would have been obtained and, to the extent possible, its effect." (*People v. Geddes* (1991) 1 Cal.App.4th 448, 454.)

Petitioner hasn't made this showing. He doesn't allege that interviewing Mr. Beiser in advance or further investigating his prospective testimony would have uncovered new evidence not contained in the police reports, let alone explain how such evidence was important enough to result in an acquittal. Thus, under *People v. Geddes, supra,* petitioner hasn't met his burden of proving prejudice.

For these reasons, Mr. Guthrie's alleged failure to interview Mr. Beiser wasn't ineffective assistance of counsel.

Citing *William v. Washington* (1995) 59 F.3d 673, *United States v. Shetterly* (1992) 971 F.2d 67 and *Sullivan v. Fairman* (1987) 819 F.2d 1382, petitioner claims that "[defense] counsel must interview potential witnesses likely to produce material evidence favorable to the defense." (SP p. 9.)

In fact, none of these cases so held. *United States v. Shetterly*, which affirmed a conviction, stated that "in most cases" pretrial preparation "will include . . . interviews with important witnesses," but added that this duty is "subject to the reasonable judgment

4

307

In Re George Shufelt (HC 18018; SCD 163510)

of defense counsel in light of the facts of the particular case." (*Id.* at p. 74.) Nowhere did *Shetterly* hold that an attorney must interview witnesses.

*Williams v. Washington* and *Sullivan v. Fairman* upheld the reversal of a conviction for defense counsel's failure to properly investigate the defendant's case, including a failure to interview key witnesses. But neither case held that counsel must interview witnesses.

### III

### Grounds Eight and Nine

Petitioner doesn't elaborate on the claims he raised in grounds eight or nine. He merely repeats them to preserve them "for further review in the proper court." (SP p. 13.) The People have already addressed these claims in pages 22 through 26 of our original response, and have nothing to add at this time.

### IV

### Ground Ten

Petitioner alleges the trial court "conditionally" admitted the evidence relating to Charles Mirabile "subject to a motion to strike under Evidence Code section 403(b)," and claims Mr. Guthrie should have made a motion to strike this evidence. (SP p. 14, lns. 9-15.)

Contrary to petitioner's allegation, however, the trial court didn't admit this evidence conditionally subject to a motion to strike. Instead, the court admitted the evidence unconditionally, simply finding that it was "relevant and admissible," without setting any conditions of admission, or saying anything about a motion to strike. (Trial Transcript p. 1747, lns. 5-9; pp. 1748-1750.) Since petitioner's claim is based on the mis-assumption that the court admitted the evidence conditionally, subject to a motion to strike, his claim fails.

As discussed more fully in Argument IV below, we also note that Mr. Guthrie objected to the evidence relating to Mr. Mirabile, which fulfilled his duty of reasonable representation as to this evidence. (Trial Transcript pp. 1745-1746.)

5

308

In Re George Shufelt (HC 18018; SCD 163510)

# V

## Ground Eleven

Petitioner claims in ground eleven that Mr. Guthrie rendered ineffective assistance of counsel because he "never objected" to the evidence relating to Mr. Mirabile. (SP p. 15, lns. 3-11.)

In fact, Mr. Guthrie did object to this evidence. He objected under Evidence Code section 352 to the introduction of all of petitioner's uncharged misconduct, and expressly included in this objection the evidence relating to Mr. Mirabile. (Trial Transcript pp. 1745-1746.) Mr. Guthrie argued that the prejudicial effect of the evidence relating to Mr. Mirabile outweighed its probative value because there were "no eyewitnesses that put Mr. Shufelt into the Mirabile residence . . . ." (Trial Transcript, p. 1746.) Since Mr. Guthrie expressly objected to the Mirabile evidence, petitioner's claim that Guthrie rendered ineffective assistance by not objecting fails.

As discussed in our original response, moreover, the evidence relating to Mr. Mirabile was admissible under numerous theories. (FIR pp. 15-18.) Since, given this admissibility, objecting to the evidence would have been futile, Mr. Guthrie alleged failure to object wasn't ineffective assistance of counsel. (*People v. Ferraez, supra,* 112 Cal.App.4th at p. 934.) Nor has petitioner proved prejudice. He offers no evidence, in other words, that the trial court would have excluded the evidence had Mr. Guthrie argued his objection differently.

Petitioner also claims Mr. Guthrie's alleged failure to object "failed to preserve the issue under *Crawford, infra,*" a reference to *Crawford v. Washington* (2004) 541 U.S. 36. (SP p. 15, ln. 15.) *Crawford* doesn't apply here, however, because it wasn't decided until 2004, two years after petitioner's trial. *Crawford* is inapplicable in any case because it dealt this the admissibility of hearsay, rather than uncharged misconduct.

# VI

## Grounds Twelve through Sixteen

Petitioner doesn't elaborate on the claims he raised in grounds twelve through sixteen. (SP pp. 15-16.) The People answered these grounds in pages 30 through 33 of our original response, and have nothing to add at this time.

309

In Re George Shufelt (HC 18018; SCD 163510)

# VII

## Ground Seventeen

CALJIC 2.03 states that a willfully false or misleading statement by a defendant concerning the charged crime may show consciousness of guilt. Citing *People v. Edwards* (1992) 8 Cal.App.4th 1092, petitioner claims this instruction wasn't justified here because none of his admissions was a "prefabricated story." (SP p. 18, ln. 8.)

We disagree. As noted in our original response, petitioner made false statements during his crime spree to avoid being caught, including telling Ms. Goedhuys he was in her neighborhood because he was looking for a construction manager, and telling Mr. Hammerling he was looking for a neighbor and was at the wrong house. (FIR p. 34.)

We know these statements were false because petitioner's real purpose for being in Ms. Goedhuys' and Mr. Hammerling's neighborhoods was to commit burglary, not to find a construction manager, or Mr. Hammerling's neighbor. Petitioner made these false statements to explain his presence in the victims' neighborhoods. Thus, petitioner "prefabricated a story to explain his conduct," justifying the consciousness of guilt instruction under *People v. Edwards, supra.* (*Id.* at 8 Cal.App.4th 1103.)

Petitioner also claims Mr. Guthrie rendered ineffective assistance by failing to "strenuously" object to the consciousness-of-guilt instruction. (SP p. 18, lns. 11-12.)

We note, Mr. Guthrie did in fact object to that instruction. (Trial Transcript p. 2748, lns. 8-19.) Petitioner cites no case requiring that an attorney making an objection do so "strenuously." This isn't surprising since whether to object is "inherently tactical" and even a total failure to object "will seldom establish ineffective assistance." (*People v. Ferraez, supra,* 112 Cal.App.4th at p. 935.) Here, strenuously objecting to an obviously appropriate instruction would have been a poor tactical choice because it would have made Mr. Guthrie look foolish and hurt his credibility with the trial court. Therefore, his failure to object more strenuously wasn't ineffective assistance.

Nor has petitioner proved prejudice. He doesn't even allege, let alone prove, that objecting more strenuously to the consciousness of guilt instruction would have persuaded the court to reject that instruction.

Petitioner also claims Mr. Guthrie rendered ineffective assistance of counsel by failing to object to the effort-to-suppress-evidence instruction in CALJIC 2.06. (SP p. 18, lns. 19-20; See Trial Transcript p. 2749.)

310

In Re George Shufelt (HC 18018; SCD 163510)

The instruction stated that the defendant's attempt to suppress evidence against him "by concealing [or] disposing of" it may show consciousness of guilt. (Trial Transcript p. 2760.)  The instruction was proper because just before being arrested the defendant abandoned some of the stolen property near the scene of the arrest, thus disposing of evidence against him.  (Trial Transcript pp. 2111-2113; 2097-2101.)  Since the instruction was proper, Mr. Guthrie properly declined to object to it.  This decision was especially proper given that whether to object is a tactical choice that seldom results in ineffective assistance of counsel.  (*People v. Ferraez, supra,* 112 Cal.App.4th at p. 935.)

## VIII

## Grounds Eighteen through Twenty

Petitioner claims in grounds eighteen through twenty that Mr. Guthrie's failure to object to alleged prosecutorial misconduct was ineffective assistance of counsel.  (SP pp. 19-24.)  Having already answered these grounds in pages 35 through 39 of our original response, the People would like to add these comments:

Petitioner claims the trial prosecutor, Per Hellstrom, committed misconduct by making "personal attacks" on Mr. Guthrie's integrity while arguing to the jury.  (SP p. 20, lns. 26-27; p. 21, lns. 13-14.)  Petitioner, however, doesn't identify which of Mr. Hellstrom's arguments constituted these personal attacks.  Absent specifics, this allegation of misconduct should be summarily rejected.

The petitioner also wrongly claims Mr. Hellstrom's alleged improper comments during argument were "subject to per se reversal." (SP p. 22, lns. 5-6.)  In fact, improper prosecutorial argument is subject to the harmless error rule.  (*People v. Miller* (1996) 46 Cal.App.4th 412, 430 [mild references in argument to defendant's failure to testify were harmless].)  Even an argument by a prosecutor that violates a defendant's constitutional rights isn't reversible error if the prosecution can show the error was harmless beyond a reasonable doubt.  (*People v. Guzman* (2000) 80 Cal.App.4th 1282, 1290 [prosecution didn't prove prosecutor's comments regarding defendant's failure to testify were harmless].)

In Re George Shufelt (HC 18018; SCD 163510)

## IX

### Grounds Twenty-One through Twenty-Six

Petitioner elaborates only slightly, if at all, on grounds twenty-one through twenty-six of the original petition. (SP pp. 24-26.) The People answered these grounds in pages 39 through 47 of our original response, and have nothing to add at this time.

## X

### Ground Twenty-Seven

**1. Appellate Counsel Properly Declined to Challenge the Denial of Petitioner's Transcript Request.**

The jury convicted petitioner on June 27, 2002. On July 12th, at petitioner's request, the court relieved Mr. Guthrie and permitted petitioner to represent himself, with Mr. Guthrie as advisory counsel. (Trial Transcript pp. 2991, 2997.)

On July 25th, petitioner filed a motion requesting a transcript of the trial to help him bring a new trial motion. (Clerk's Transcript p. 575.) The court ordered that petitioner receive a transcript of the sidebar conferences that occurred during trial, but otherwise denied his request for a transcript. (Trial Transcript p. 3025; Clerk's transcript p. 720.)

On August 12th, petitioner made an oral motion for a new trial, which the court denied. (Trial Transcript pp. 3031-3085.)

Petitioner claims appellate counsel rendered ineffective assistance by failing to raise on appeal the denial of petitioner's request for a transcript. (SP p. 26, lns. 8-10.)

We contend that, since the trial court properly denied the request for the transcript, appellate counsel properly declined to challenge this denial on appeal. Moreover, since the denial was proper, there was no reasonable probability that challenging it would have resulted in reversal. Thus, petitioner hasn't shown the failure to make such a challenge prejudiced him.

"A defendant is not entitled as a matter of right to a reporter's transcript of the proceedings for use in a motion for new trial." (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 555.) Denying a transcript for use at a new trial motion is not error absent a

9

312

In Re George Shufelt (HC 18018; SCD 163510)

showing that the denial "violated due process and denied the defendant effective representation of counsel." (*Ibid.*)

"[A]n indigent defendant is not entitled as a matter of right to a full reporter's transcript of his trial proceedings for his lawyer's use in connection with a motion for a new trial." (*People v. Lopez* (1969) 1 Cal.App.3d 78, 83.) "[B]ut since a motion for a new trial is an integral part of the trial itself, a full reporter's transcript must be furnished to all defendants, rich or poor, whenever necessary for effective representation by counsel at that important stage of the proceedings." (*Ibid.*)

There is "nothing in the United States Constitution to absolutely require a trial court to interrupt its regular work schedule on each occasion that a motion for new trial is made in order to give the court reporter time to prepare a full transcript . . . . " (*Id.* at pp. 82-83.) "[T]he need for a full trial transcript to argue a motion for new trial simply does not exist in the ordinary case" especially where the motion is made "by the lawyer who participated in the trial, before the judge who presided, and at a time when the testimony adduced is still fresh in everyone's mind." (*Id.* at p. 82.)

No "presumption of need" applies "to a defendant's request for transcripts to prepare a motion for new trial." (*People v. Bizeff* (1991) 226 Cal.App.3d 1689, 1702.) Thus, "the trial court may properly deny a request for a free transcript to prepare a motion for new trial where the indigent defendant fails to show a particularized need for transcripts." (*Ibid.*)  The defendant "must show that the requested transcripts are necessary for effective representation by counsel on the motion for new trial." (*Ibid.*) This showing must be made "with specificity." (*Id.* at p. 1704.)

The instant petitioner didn't make the required showing.  All the participants at the new trial motion also attended the trial.  The defendant, who represented himself at the new trial motion, attended the trial, Mr. Guthrie, who was advisory counsel at the new trial motion, attended it, and the same court that presided at trial heard the new trial motion.  Since they had all attended the trial, and since the new trial motion was heard just six weeks after the verdict, the trial evidence was "still fresh in everyone's mind" during the new trial motion, eliminating the need for a transcript. (*People v. Lopez, supra,* 1 Cal.App.3d at p. 82.)

Petitioner's oral argument during the new trial motion shows just how fresh in his mind the evidence was.  During his argument, which covers over fifty pages of transcript, he discussed the trial evidence in detail  (Trial Transcript pp. 3031-3084.)  The fact that he could recall the evidence so well shows that he was able to effectively represent himself without a transcript. (*People v. Bizeff, supra,* 226 Cal.App.3d at p. 1702.)

313

In Re George Shufelt (HC 18018; SCD 163510)

We also note that the trial court provided petitioner a transcript of the trial's sidebar conferences. Thus, for those parts of the trial where petitioner couldn't rely on his memory because he hadn't been present, he had access to a transcript.

Since, for these reasons, petitioner didn't sustain his burden of showing he needed a trial transcript to effectively represent himself at the new trial motion, the trial court properly denied his request for the transcript. (*People v. Lopez, supra,* 1 Cal.App.3d at p. 83.) Given the correctness of this ruling, appellate counsel properly declined to challenge the ruling on appeal. (*Jones v. Barnes* (1983) 463 U.S. 745, 752 [appellate counsel may properly winnow out weaker arguments].)

Nor has petitioner shown appellate counsel's failure to challenge the ruling prejudiced him, which is an element of ineffective assistance of counsel. Since the ruling below was correct, there was no reasonable probability that challenging it would have resulted in reversal, which is the test for prejudice on appeal. (*Smith v. Robbins, supra,* 528 U.S. at p. 285.) A reversal would have been especially unlikely given that, since petitioner had no absolute right to a transcript, whether to provide him one was discretionary. Thus, on appeal petitioner would have had to overcome the deferential abuse-of-discretion standard. (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

Also, even if appellate counsel had raised the denial of the transcript on appeal and won, the remedy would presumably have been to relitigate the new trial motion with a transcript, rather than reverse the verdict. Petitioner offers no evidence that the trial court would have changed its ruling and granted the new trial motion had petitioner relitigated it with a transcript, further defeating any prejudice claim.

Therefore, appellate counsel didn't commit ineffective assistance by failing to raise the transcript issue on appeal.

Moreover, even assuming appellate counsel rendered ineffective assistance by not raising the issue, the remedy would be a new appeal, not a new trial. (See cases cited at FIR pp. 13-14.) Thus, if this court finds appellate counsel was ineffective, we ask the court to deny the petition without prejudice to renew it in the court of appeal, which has jurisdiction to recall the remittitur and order a new appeal.

11

314

In Re George Shufelt (HC 18018; SCD 163510)

## 2. Mr. Guthrie Didn't Render Ineffective Assistance Regarding the Transcript Request.

Petitioner also claims Mr. Guthrie, who was advisory counsel during the new trial motion, rendered ineffective assistance by not ensuring petitioner's transcript request "was properly briefed and argued." (SP p. 31.)

"The standard for advisory counsel's effectiveness must reflect the narrow role played by advisory counsel—that of giving legal advice and assistance to a defendant who has control and responsibility for his own defense." (*People v. Doane* (1988) 200 Cal.App.3d 853, 864.) "To effectively fulfill this role . . . advisory counsel must be reasonably available to the defendant and should provide the advice and assistance to be expected of a reasonably competent attorney acting as a diligent, conscientious advisor and assistant." (*Ibid.*) Ineffective assistance of advisory counsel "almost never" denies a defendant a fair trial. (*Ibid.*)

Here, petitioner filed nine-page points and authorities to support his request for the transcript, which state his grounds for the request lucidly and in detail. (Clerk's Transcript pp. 575-583.) These points and authorities belie his claim that Mr. Guthrie didn't ensure the issue was properly briefed and argued. Petitioner doesn't explain why these points and authorities weren't adequate, or what Mr. Guthrie should have done to improve them. Thus, petitioner's claim that Mr. Guthrie didn't render reasonable advice fails.

Nor has petitioner shown prejudice. He doesn't even allege, let alone prove, that the trial court would have reversed itself and granted his request for a transcript had Mr. Guthrie better advised him.

Therefore, especially given the "narrow role" of advisory counsel, and the fact that ineffective assistance by advisory counsel "almost never" denies a defendant a fair trial, petitioners claim that Mr. Guthrie rendered ineffective assistance regarding the transcript request fails. (*People v. Doane, supra,* 200 Cal.App.3d at p. 864.)

## 3. Petitioner, Not the Prosecution, Had the Burden of Proof Regarding the Need for a Transcript.

As noted, *People v. Bizeff, supra,* held that there is no presumption of need for a transcript to help a defendant prepare a new trial motion, and that the defendant has the burden of showing such need. (*Id.* at 226 Cal.App.3d 1702.) *People v. Bizeff* is on point because it involved a new trial motion, the same proceeding involved here. Under *Bizeff,*

3(5

In Re George Shufelt (HC 18018; SCD 163510)

the petitioner, not the prosecution, had the burden of proof regarding the need for the transcript.

Citing *People v. Hosner* (1975) 15 Cal.3d 60, and *Britt v. North Carolina* (1971) 404 U.S. 226, petitioner claims he was "presumed to have" a need for the transcript, and that the prosecution "bore the burden" of rebutting this presumption. (SP pp. 33-34.)

*People v. Hosner* is distinguishable, however, because it dealt with a defendant's request for a trial transcript to help prepare for a retrial, rather than a new trial motion. This distinction matters because a defendant can't "properly cross-examine" the prosecution witnesses at a retrial without a transcript of their original trial testimony. (*Id.* at 15 Cal.3d 67.) No such problem exists at a new trial motion, which doesn't require cross-examining the prosecution witnesses with their trial testimony. Thus, the need for a trial transcript is normally greater at a retrial than at a new trial motion, making the presumption of need that *Hosner* created inapplicable here.

*Britt v. North Carolina*, which, like *California v. Hosner*, dealt with a defendant's request for a trial transcript to prepare for a retrial, rather than a new trial motion, is distinguishable for these same reasons.

*Britt*, moreover, held that the fact that the same judge heard the first trial and retrial, and that they were only a month apart, justified denying the defense's request for a trial transcript. (*Id.* at 404 U.S. 228.) As already noted, similar facts justified denying the instant transcript request. Thus, *Britt* actually supports the People's position.

Since, contrary to petitioner's claim, petitioner, not the prosecution, had the burden of proof regarding the transcript, and since, as discussed above, petitioner didn't meet this burden, the trial court properly denied his request for a transcript.

### 4. *Gardner v. California* and *People v. Westbrook* are Distinguishable.

In *Gardner v. California* (1969) 393 U.S. 367, which petitioner relies on, the lower court denied a pro per defendant's request for a transcript of the hearing at which his habeas petition had been denied. (SP p. 32.) The defendant sought the transcript to aid in seeking review of the denial of his petition. The Supreme Court reversed the denial of the request for the transcript because it was improper to require the defendant to rely solely on his memory of the hearing below in seeking review. (*Id.* at 393 U.S. 369.)

*Gardner* is distinguishable for multiple reasons. First, the defendant in *Gardner* sought the transcript to aid in seeking review of the denial of a habeas petition, not to

13

In Re George Shufelt (HC 18018; SCD 163510)

help prepare a new trial motion. *Gardner* doesn't deal with whether a defendant is entitled to a trial transcript to help prepare a new trial motion, which is the instant issue.

Second, *Gardner* doesn't say how long after the habeas hearing the defendant sought review of the denial of his petition, or discuss whether the hearing evidence was still fresh in his mind. Here, only six weeks elapsed between the verdict and new trial motion, at which time, as petitioner's argument at the motion shows, the trial evidence was very fresh in his mind, thus eliminating the need for a transcript. (*People v. Lopez, supra,* 1 Cal.App.3d at p. 83; Trial Transcript pp. 3031-3084.) *Gardner* doesn't discuss whether the defendant would still have had a right to a transcript under these circumstances.

Third, in *Gardner* different courts presided over the habeas hearing and the review of the denial of the habeas petition. Thus, the reviewing court needed a transcript to acquaint itself with the hearing evidence. Here, in contrast, the same court heard the trial and the new trial motion. Since the court already knew the trial evidence, it didn't need a transcript of the trial to decide the motion. *Gardner* doesn't discuss whether the defendant would still have been entitled to a transcript if the same court had presided over the original hearing and the review.

In *People v. Westbrook* (1976) 57 Cal.App.3d 260, which petitioner also relies on, the appellate court upheld the denial of petitioner's request for a transcript to help prepare a new trial motion. (SP p. 36.) In a dictum, however, the appellate court stated the defendant would have been entitled to a free transcript if he'd shown he couldn't afford one. (*Id.* at p. 263.)

Since this was a dictum, this court needn't follow it. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1300-1301.) In any case, *People v. Westbrook* is distinguishable because the attorney who represented the defendant at the new trial motion hadn't represented him at trial. (*Id.* at 57 Cal.App.3d 262.) Thus, the new attorney needed a transcript to become acquainted with the trial evidence. Here, in contrast, the defendant, who represented himself at the new trial motion, attended the trial, and had a good memory of the trial evidence, eliminating his need for a transcript.

*People v. Westbrook* is also distinguishable because, as the appellate court noted, ordering a transcript wouldn't have delayed the new trial motion because the motion had already been continued. (*Id.* at p. 263.) Here, in contrast, since the new trial motion hadn't been continued, ordering a transcript would have delayed the motion.

14

317

In Re George Shufelt (HC 18018; SCD 163510)

## XI

### Ground Twenty-Eight

On June 9, 2002, eight days before trial began, the petitioner, who had been representing himself with Mr. Guthrie as advisory counsel, asked the trial court to appoint Mr. Guthrie to represent him at trial. (Trial Transcript p. 1235.) The court told petitioner this change in representation wouldn't justify a continuance of the trial. (Trial Transcript pp. 1235, 1250.) Petitioner said he still wanted Mr. Guthrie appointed counsel, and Mr. Guthrie agreed to represent petitioner, after which the court terminated petitioner's self-representation and appointed Mr. Guthrie as his attorney. (Trial Transcript pp. 1255, 1257, 1261; Clerk's Transcript p. 675.) Mr. Guthrie represented petitioner at trial.

Petitioner claims Mr. Guthrie rendered ineffective assistance by failing to move to continue the trial to give him more time to prepare after being appointed to represent petitioner. (SP p. 37, lns. 23-26.)

This claim fails for several reasons:

First, moving for a continuance would have been futile because the court had stated that Mr. Guthrie's appointment wouldn't justify a continuance. Failing to engage in such a futile act isn't ineffective assistance of counsel. (*People v. Ferraez, supra,* 112 Cal.App.4th at p. 934 [Failing to make futile objections isn't ineffective assistance of counsel].)

Second, before being appointed to represent petitioner, Mr. Guthrie had been advisory counsel on the case for at least six months. (See Trial Transcript p. 1.) Thus, he had plenty of time before trial as advisory counsel to familiarize himself with the case, eliminating the need for a continuance to give him more time to prepare. Had Mr. Guthrie needed more time to prepare, he undoubtedly would have told the court this and moved for a continuance. The fact that he didn't shows he was sufficiently prepared for trial.

Third, Mr. Guthrie presented a thorough defense at trial, which included calling ten defense witnesses, including two experts—Criminalist Richard Whalley and an identification expert, Dr. Thomas Mac Speiden. This thoroughness shows he was well prepared for trial and didn't need a continuance.

15

In Re George Shufelt (HC 18018; SCD 163510)

Fourth, petitioner waited until just eight days before trial to ask the court to appoint him an attorney. Thus, Mr. Guthrie's late appointment was petitioner's fault, not Mr. Guthrie's. For petitioner to delay his request for an attorney until just before trial, and then claim his case should be reversed because his attorney wasn't prepared, is tantamount to invited error.

Fifth, petitioner hasn't shown prejudice. He doesn't explain, in other words, how giving Mr. Guthrie more time to prepare would have aided petitioner's defense. Thus, he hasn't shown a reasonable probability that Mr. Guthrie's alleged ineffectiveness in failing to move for a continuance would have resulted in an acquittal, which is the test for prejudice in the context of an ineffectiveness claim. (*People v. Cox* (1991) 53 Cal.3d 618, 656.)

Dated: December 12, 2006

Respectfully submitted,

BONNIE M. DUMANIS
District Attorney

By:

STEPHEN E. CARR
Deputy District Attorney

Attorneys for Real Party

16

EXHIBIT "RR"

# W. Allan Williams
### Attorney at Law

March 30, 2007

## CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION

George M. Shufelt, III
CDC # T-65128
Housing A-4  Cell 113
Ironwood State Prison
P.O. Box 2199
Blythe, CA 92226

Re: In Re George Shufelt on *Habeas Corpus* . San Diego Superior Court HC 18018
SCD 163510  DA AAO 614

Dear George:

The Superior Court has denied your Petition for Writ of *Habeas Corpus,* without
granting a hearing.

As we have discussed before, relief or victory at the Superior Court level is difficult
to achieve.  You are certainly aware that this was just the "opening shot."

As I am sure you are aware, your next step is to file a Petition for a Writ of *Habeas
Corpus* in the Fourth District Court of Appeal.  Their address is 750 B Street, Suite
300 San Diego, CA 92101.

Generally speaking, you must exhaust all state remedies in order to file subsequent
petitions in the Federal Courts.

This concludes my appointment.  The Court of Appeals has the **discretion** to appoint
an attorney to assist you, once they have received a petition form you. You may
want to request the appointment of counsel.

336

EXHIBIT "SS"

F I L E D
Clerk of the Superior Court

JAN 3 0 2007

By: B. TOM, Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

GEORGE W. SHUFELT III,                    )    Case No.: GIC 848071
                                          )
            Plaintiff,                    )
                                          )
    vs.                                   )
                                          )    ORDER ON MATTERS UNDER
JAMES HALL, et al,                        )    SUBMISSION
                                          )
            Defendants.                   )
                                          )

        The Court having read and considered the pleadings and arguments presented

by the Parties, hereby denies plaintiff's motion for reconsideration for failure to show via

declaration new facts, circumstances or law as required under CCP §1008(a).

        However, the Court on its own motion, modifies and vacates the Court's June 30,

2006 Ruling as follows:

    1.    Judicial notice of statutes and exhibits taken as requested by the plaintiff.

    2.    Defendants Beaumont and Hall's demurrer on the ground that declaratory

          relief is not the proper remedy to challenge the use of a prior foreign

//

322

ORDER - 1

EXHIBIT "TT"

S157353

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re GEORGE W. SHUFELT III on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

APR 3 0 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**

_____
Chief Justice

324



MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO

—

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES

☒ SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000

—

☐  LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570



## $\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{California}$

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

March 20, 2008

George W. Shufelt  T-65128
Kern Vallen State Prison
P. O. Box 5103
Delano, CA 93216

### Re: S157353 – Shufelt (George W.) on Habeas Corpus

Dear Sir:

We acknowledge receipt of your change of address, received today. Please be advised that your writ petition received and filed October 19, 2007 is still pending.

The California Rules of Couurt do not set a time limit within which the Supreme Court must act on habeas corpus petitions.  The length of time the court requires to rule on such a petition depends on the complexity of the issues raised in the petition, and on the constraints imposed by the court's workload.

While we do not know in advance when the court will decide your case, a copy of the court's decision will be mailed to you the same day it is filed.  Counsel is not appointed in these cases unless the court files an order to show cause.  If such an order is filed, counsel would be appointed to represent you in any proceeding that may be scheduled.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By:  H. Miner, Deputy Clerk

HM/hm

327